# ATTACHMENT E



EXHIBIT

Perry v. Shadanger

CA 06-1371

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT T. PERRY,      )
                             )
       Plaintiff       )
                             )
       v.          )     Case No. 06-CV-01371-CKK
                             )
VINCENT K. SNOWBARGER[1],  )
Interim Director             )
Pension Benefit Guaranty Corporation,  )
                             )
       Defendant.    )

## AFFIDAVIT OF STEVEN A. WEISS

I, Steven A. Weiss, declare as follows:

1.     I am over eighteen years of age, have personal knowledge of the facts stated in this Declaration, and I am competent to testify to the matters stated herein.

2.     I am employed by the Pension Benefit Guaranty Corporation ("PBGC" or "Agency") as a Senior Counsel. I have been employed by PBGC for approximately 20 years.

3.     As part of my Senior Counsel duties, I am responsible for advising PBGC's Equal Employment Opportunity ("EEO") Director and EEO office with regard to EEO legal issues. In my performance of these duties, I review formal EEO complaints filed against PBGC by its employees, and I advise the EEO Director whether to accept or dismiss the complaints pursuant to federal sector EEO regulations. I also draft the EEO Director's acceptance and dismissal decision letters.

4.     In performing these duties, I was responsible for reviewing the entire formal EEO complaint file, which is maintained by the agency in the regular course of

---

[1] The caption has been modified to reflect the proper title of the defendant in this matter, Vincent K. Snowbarger, is Interim Director of PBGC.

business, for Robert Perry's EEO complaint number 06-04 ("EEO complaint"), which he filed on February 2, 2006. A copy of the formal complaint 06-04, without the thousands of pages of attachments, is attached hereto as Ex. 1. I also drafted the EEO Director's dismissal letter for Robert Perry's formal complaint 06-04. A copy of the dismissal letter is attached hereto as Ex. 2. My review of this complaint file revealed that Robert Perry initially sought EEO counseling for the issues raised in the complaint on January 5, 2006, which is reflected in the dismissal letter. My review also revealed that Robert Perry's formal EEO complaint 06-04 identified race, sex, and reprisal as the bases for the complaint. Ex. 1.

5.   One allegation raised in Robert Perry's EEO complaint was a hostile work environment claim. Mr. Perry alleged that his claim was based on flyers and emails that were disseminated by PBGC employees Stuart Bernsen, Valda Johnson, and Rhonda Baird. Ex. 1, Page 4.

6.   I am aware that on November 8, 2005, a Stipulation of Settlement and Dismissal ("Stipulation") was entered in two United States District Court for the District of Columbia cases between Robert Perry and PBGC, Civil Action Nos. 03-2495 and 04-1996 (CKK). As part of the Stipulation, Robert Perry released "Defendants and PBGC's past and present employees, officers, agents and representatives concerning all maters related to his employment with Defendants up to and including the date of [the] Stipulation of Settlement and Dismissal." Ex. 3, Page 2.

7.   I am also aware that Robert Perry and other PBGC employees, including Robert Perry's union representative, Dwayne Jeffers, and Stuart Bernsen, Valda Johnson, and Rhonda Baird, have been involved on different sides of a long-running, contentious intra and inter-union dispute. During the course of the dispute, which has continued for several years, all of these employees have traded email accusations, in addition to filing various complaints with PBGC management, Federal Labor Relations Authority Unfair Labor Practice charges, and legal actions.

8.   I have conducted a comprehensive review of the over 2000 pages of documents Robert Perry submitted to support his formal EEO complaint 06-04. Contained within all of this material are several flyers and hundreds of emails.

9.   Some of the flyers do not mention Robert Perry, and all but one of the flyers naming Robert Perry are undated. Robert Perry did not identify any specific flyers that were disseminated after November 8, 2005.

10.  Based on the emails Robert Perry included in support of his EEO complaint, it is possible to identify general time periods, if not specific dates, for all but one of

the flyers that name Robert Perry, because the flyers are referenced within the emails.

11.    Of the flyers naming Robert Perry that can be linked to a more specific date, all but two flyers were disseminated in May and June of 2005, according to emails Robert Perry submitted in support of his EEO complaint. One of the two flyers was disseminated on November 8, 2005, according to a November 9, 2005 email. The November 9, 2005 email references the flyer, as well as the fact that Robert Perry was aware of the flyer on November 8, 2005. The flyer and corresponding email are attached as Ex. 4. The second flyer was disseminated on November 9, 2005, according to a November 10, 2005 email. The flyer and corresponding email are attached as Ex. 5.

12.    Also revealed during my comprehensive review of the documents Robert Perry submitted to support his EEO complaint, is the fact that he submitted eleven (11) email messages from Rhonda Baird that were sent to Mr. Perry after November 8, 2005. Those emails are attached as Ex. 6. Most of the emails were sent to multiple recipients, and most of them referenced union related matters. *Id.*

13.    Robert Perry submitted no emails post-dating November 8, 2005 from Valda Johnson or Stuart Bernsen to Mr. Perry in support of his EEO complaint.

14.    Robert Perry identified no specific examples or instances, post-dating his November 8, 2005 Stipulation, of the harassment, intimidation, or threats of violence he alleges in his EEO complaint, other than the few emails and flyers, which are attached to this Affidavit.

15.    In my capacity as Senior Counsel, I was also responsible for reviewing the entire formal EEO complaint files for Robert Perry's formal EEO complaint numbers 06-11 and 06-18, which are maintained by the agency in the regular course of business. Copies of formal EEO complaint numbers 06-11 and 06-18, without the thousands of pages of attachments, are attached hereto as Exs. 7 and 8 respectively. Following my reviews of these two complaint files, I advised the EEO Director regarding the complaints, and I drafted the EEO Director's dismissal letter for the complaints, which were consolidated pursuant to 29 CFR §1614.606. A copy of the EEO Director's dismissal letter for complaint numbers 06-11 and 06-18 is attached hereto as Ex. 9. My reviews of these complaint files revealed that Robert Perry initially sought EEO counseling for the issues raised in complaint number 06-11 on March 15, 2006, and on May 10, 2006 for complaint number 06-18, which is reflected in the dismissal letter. My reviews also revealed that Robert Perry's formal EEO complaints numbered 06-11 and 06-18 identified only race, sex, and reprisal as the bases for the complaints. Exs. 7 and 8.

I hereby declare under penalty of perjury under the laws of the United States of America that the above statement is true and complete to the best of my knowledge and belief.

Steven A. Weiss

2/16/2007

Date

Subscribed and sworn to before me this _16_ day of _February_, 2007.

Notary Public

My commission expires _____ **Patricia Reiersen**
**Notary Public, District of Columbia**
**My Commission Expires 5/31/2011**

Page 4 of 4

# WEISS AFFIDAVIT
# EXHIBIT 1

## Formal Complaint of Discrimination

1. Complainant's Name:  Robert T. Perry                    *06-04*

   Home Address:     1354 Monaco Drive
                     Severn, MD 21144
   Home Telephone:   (410) 294-8969

2. Department/Division:    IPD/STCD/CAB
   Office Telephone:       (202) 326-4000, ext. 3495

3. Basis(es) for Complaint

   a.  [ X ]      Race (Specify)
   b.  [   ]      Color (Specify)
   c.  [   ]      National Origin (Specify)
   d.  [ X ]      Sex (Specify)
   e.  [   ]      Age (Date of Birth)
   f.  [   ]      Mental Disability (Specify)
   g.  [   ]      Physical Disability (Specify)
   h.  [   ]      Religion (Specify)
   i.  [   ]      Sexual Orientation (Specify)
   j.  [ X ]      Reprisal (Identify earlier event and/or opposed
                  practice, give date:  Retaliation for engaging in
   prior EEO claims - (PBGC EEO Case #01-01, #03-09, #04-06, #04-07, #04-11,
   representing PBGC employees EEO claims against PBGC - Ruby Taylor and
   Dwayne Jeffers.

4. Nature of Alleged Discriminatory Action (i.e., Promotion,
   Selection, Performance, etc.)   See attached document

   Please provide the reasons why you believe discrimination has
   occurred.  (Continue on a separate sheet if needed.)
                              See attached document

6. Representative's Name:   Dwayne C. Jeffers
   Address:                 Pension Benefit Guaranty Corporation
                            1200 K Street, NW
                            Washington, DC 20005-4026
   Telephone Number:        (202)326-4000, ext. 3750

7. Have you filed a grievance under a negotiated grievance procedure
   or an appeal to the Merit Systems Protection Board on the same
   matter(s) as described in 4 above?      Yes: _____    No:XXXXXX

   Complainant's Signature:
   Date:    February 2, 2006         *Robert T. Perry*
   ----------------------------------------------------------------
              For PBGC Administrative Use Only

Date Complaint Received with CD labeled Robert T. Perry EEO Formal Complaint
Dated - February 2, 2006.

Complaint Received By:
Title:                  *Vince Snowden*
                        *EEO Director*  PBGC Form 176(Revised 03/20/01)

0604-PERRY-00094

**Subject:**     EEO Complaint of Retaliation, Harassment, and Disparate Treatment
of My Protected EEO Rights

**PBGC Offending Officials:**          Bradley Belt, Executive Director
Steven Barber, Chief Administrative Officer
Judith Starr, General Counsel
Philip Hertz, Deputy General Counsel
Vincent Snowbarger, EEO Director
Lori Bledsoe, EEO Manager
Michele Pilipovich, HRD Director
Richard Lattimer, HRD Program Manager
Ricardo Silva, HRD Labor Specialist
Gigi McDaniel, HRD Personnel Specialist
Jackie Isaac, HRD Personnel Specialist

**PBGC Offending Employees:**          Stuart Bernsen, OGC Attorney
Rhonda Baird, OGC Attorney
Valda Johnson, Actuary

**Supporting Evidence:**          **Attachments 1 though 40**

**Note:**     This EEO complaint is an individual complaint for Robert T.
Perry only and not intended to join another party to this
compliant filing. This complaint is not intended to violate a
settlement agreement executed by me on November 3, 2005
(Attachment 1).

**Formal Complaint Form: answer #4**

**EEO Offenses Committed by PBGC Offending Officials:**

1.     PBGC committed retaliatory and  reprisal acts and violated my protected
employee rights when it issued me (3) SF-50s for personnel actions with
private and personal information.   PBGC senior and HRD officials were
informed of my complaint regarding the information contained on these
inappropriate SF-50s. PBGC officials refused to amend my SF-50s to

conform with established reporting standards for documenting actions as a result of a settlement agreement.

2.    PBGC officials for knowingly, deliberately, and recklessly committed retaliatory and reprisal acts and violated my protected employee rights. PBGC permitted, allowed, and supported actions of work place intimidation and hostile work environment with threats of physical violence by PBGC employees. PBGC officials are informed of my complaint regarding severe forms of harassment and have not taken swift and appropriate actions to alleviate my various forms of work place harassment.

3.    PBGC committed retaliatory acts toward me and violated my protected employee rights when its officials knowingly dismissed my need for a safe work environment. PBGC opted to have discussions for a safer work environment with an identically similarly situated employee (Dwayne Jeffers) and committed disparate treatment toward me.

NOTE:    I signed a settlement agreement with PBGC on November 3, 2005 which was executed by a Federal Magistrate on November 8, 2005. This settlement agreement included various forms of harassment against me. This EEO complaint is in accordance with the settlement agreement with PBGC in that it contains complaints regarding EEO activities which occurred after November 8, 2005.

**Formal Complaint Form:    answer #5**

**1.    Retaliation/Harassment - Inappropriate SF-50s**

**Date of Last EEO Offenses:**    November 23, 2005

On November 22, 2005, I requested that PBGC provide me an SF-50 form to complete personnel actions required in a settlement agreement signed by me on November 3, 2005 and an a Federal Magistrate on November 8, 2005. I was provided three SF-50s by PBGC on November 23. 2005 dated November 14(1-detail) and November 23, 2005 (2-promotions) for various personnel actions. The SF-50 forms received from PBGC contained explicit and detailed information which I consider private and personal actions as a result of my Federal settlement agreement with PBGC.

0604-PERRY-00096

PBGC's HRD personnel are aware that I as a Federal employee am required to provide a copy of my latest SF-50 form to seek promotion and employment within the Federal government. I believe PBGC knowingly placed unneeded personal and private information on my SF-50 forms in retaliation for my EEO protected activity. PBGC HRD and senior PBGC officials rejected my request to remove its unnecessary information on my SF-50 forms. In fact, PBGC HRD manager Richard Lattimer informed me that the information was required per OPM for audit purposes. I further requested that PBGC HRD removed all unnecessary information which referred to actions regarding our settlement agreement.

My settlement agreement requires that I terminate PBGC and I believe PBGC's will include similar language on my final SF-50 form in retaliation for my EEO actions. The below text is taken from EEOC Manual, MD-110 to further support that PBGC officials with malice included language on my SF-50 forms to retaliate and harass me. PBGC contains work units of EEO, HRD, and OGC employees that are trained in personnel and labor laws.

### CHAPTER 12, SETTLEMENT AUTHORITY

### IMPLEMENTING SETTLEMENT AGREEMENTS

There may be some instances where a proposed informal settlement appears to be at odds with normal personnel procedure or practice contained in regulations implementing Title 5 of the United States Code or processing guidance of the Office of Personnel Management. Such situations could arise where Office of Personnel Management regulations or guidance foresee personnel actions taken in the normal course of business and do not generally discuss personnel actions taken pursuant to court order or a settlement. Title VII provides authority to enter into settlements of EEO complaints[6], and, likewise, Title VII provides authority for agencies to effectuate the terms of those settlements.

Chapter 32, Section 6(b) of OPM's Guide to Processing Personnel Actions describes the procedure for documenting personnel actions taken as the result of a settlement agreement, court order, EEOC or MSPB decision. The purpose of this procedure is to protect the privacy of the employee.

Rather than including personal and irrelevant settlement information on the employee's SF-50, the SF-50 may be processed with the computer code "HAM." ("HAM" is a computer code that prints on the SF-50 a citation to 5 C.F.R. §§ 250.101.) If an agency's computer system does not permit the use of the citation "HAM," then the SF-50 may cite to 5 C.F.R. §§ 250.101. This section of the Code of Federal Regulations indicates that the personnel action is processed under an appropriate legal authority.

0604-PERRY-00097

2.     Retaliation/Harassment - Work place Harassment

**Dates of Last EEO Offenses:**     November 8, 9, 2005(flyers) and various
e-mails

December (flyers) and various e-mails

January 9 and 11, 2006(flyers)  and various
e-mails

I believe PBGC officials used their authority to delay decisions against Bernsen, Johnson, Baird, and others identified as flagrant harrassers from one or more of PBGC's investigations into my harassment complaints.  PBGC issued its employees a memo on June 16, 20005 stating that it has a zero tolerance for harassment within its workplace.   However, since that date and before, PBGC has taken no actions against my harassing offenders.  None action on the part of PBGC has encouraged my harrassers such as Stuart Bernsen, Valda Johnson, and Rhonda Baird to harass, intimidate, and commit threats of workplace harassment against me.  The fact is that PBGC has conducted three investigations and is more than knowledgeable of Mr. Bernsen's, Ms. Valda Johnson's, and Ms. Baird's outrageous harassment and false assertions made against me.

PBGC was notified on November 14, 2005 of my recent harassment complaint against Stuart Bernsen, Rhonda Baird, Valda Johnson and others after my November 8, 2005 settlement agreement with PBGC for harassment of my work place environment.  PBGC employees such as Stuart Bernsen and Rhonda Baird have admitted to some of their inappropriate harassment behavior and actions such as disseminating and distributing false information of me to other PBGC employees.  I have provided copies of false and slanderous flyers and e-mails disseminated against me to used to cause me harassment within my workplace to PBGC officials such as PBGC Executive Director Belt and HRD Labor Specialist and investigator Ricardo Silva.

PBGC is fully aware of Mr. Bernsen, an attorney with PBGC, that he has admitted and signed confessions of his prior participation in disseminating of harassing material, engaging in workplace violence, and fostering sexist and racist behavior and actions against PBGC employees.  PBGC has completed several charges such as harassment, racism, threats of violence, and sexism against Mr. Bernsen with definitive findings of guilt of Mr. Bernsen.  Again, Mr. Bernsen's PBGC file

0604-PERRY-00098

consists of self confessions and apologies for his behaviors against his fellow
PBGC employees within PBGC's workplace which includes more than 15 years of
inappropriate activity.

NOTE:    I signed a settlement agreement with PBGC on November 3, 2005
which was executed by a Federal Magistrate on November 8, 2005.
This settlement agreement included various forms of harassment
against me.

PBGC has yet to secure me a safe work environment conducive for my
employment and has been informed of its **"vicarious employers' liability"** for its
failure to take appropriate and corrective actions as needed. This is even after
PBGC harassment investigator Ricardo Silva has stated to me that PBGC has as a
result of its first harassment investigation that Stuart Bernsen and Rhonda Baird
committed harassment actions toward me. I was further informed by Mr. Silva
further that a final harassment investigation report was pending a decision of
punishment of the offending employees from its HRD management and OGC staff.

PBGC conducted its first investigation of harassment charges against me in June
2005. Since PBGC initial investigation, it has conducted two additional
investigations into my harassment complaints. PBGC initial investigation did not
issue a formal finding of a fault after its investigation and I was further harassed
by the same offending PBGC employees.

**PBGC Harassment Investigations:**

First:      June 6, 2005 by HRD Specialist Ricardo Silva
Second:    November 3, 2005 by Littler Mendelson Law Firm
Third:      January 20, 2006 by HRD Specialist Ricardo Silva

I discussed my initial complaint of workplace harassment and threats of violence
with Mr. Silva and Mr. Forster and I provided them with harassing flyers against
me. On each subsequent receipt of threatening and slanderous flyers, I e-mailed
Mr. Belt, Mr. Silva, and Mr. Forster notice of the flyers and provided hard copies
of these flyers to them that had circulated PBGC headquarters building.

PBGC retained the law firm Littler and Mendelson to further conduct investigation
of my harassment complaints. My first interview with Littler and Mendelson was
conducted on January 23, 2005. I was informed by PBGC HRD Director

0604-PERRY-00099

Pilipovich that PBGC has decided to have a law firm reinvestigate my June 2005 charges in addition to my current harassment complaints. PBGC official notified me that Littler and Mendelson had completed its investigation into my harassment on January 10, 2006.

PBGC is currently conducting its third investigation of me regarding my harassment complaint of January 20, 2006. PBGC investigator Silva again requested that I provide documents provided in my prior two harassment investigation complaints.

**Prior Harassment Violations:**

PBGC officials have not taken meaningful actions to date to effectively halt or curtail harassment against me by PBGC employees. I filed similar charges of PBGC workplace harassment against two of my current harrassers (Stuart Bernsen and Valda Johnson) in January 2004 for harassment, liable, slander, and extortion. My prior complaint was filed with HRD Director Michele Pilipovich with supporting direct evidence of my claims. Ms. Pilipovich terminated my harassment complaint without an investigation and soon thereafter initiated a complaint against me of sexual harassment. Ms Pilipovich sexual harassment charge was completely based on an order of the Deputy Chief for the Office of General Counsel (Philip Hertz) for his attorney (Diane Woods) to conduct a record search of the Federal courts for information against me. Needless to say that I was not a party of the court filing in which my name was mentioned and I believe the court case was dismissed.

PBGC initiated a complaint against me with under a false pretense to prevent sexual harassment within PBGC workplace. Arbitrator Robert Moore presided over a grievance complaint between PBGC and its local union and determined that the action taken against me by PBGC officials was in essence a witch hunt for any information it could use against me in my Federal court preceding against PBGC. Arbitrator Moore's transcription of the arbitration proceeding establishes that I was a target of PBGC officials to retaliate against me. Moreover, PBGC sexual harassment complaint and decision against me relied on witnesses such as Valda Johnson, Stuart Bernsen, Stacy Williams (Wilson), Elizabeth Baker and two others PBGC employees who credibility and statements do not support PBGC's charges against me.

3.    **Retaliation/Harassment  - Vicarious Liability**

0604-PERRY-00100

**Date of Last EEO Offenses:**    December 28, 2005

PBGC committed Disparate retaliatory acts toward me and violated my protected rights when its officials knowingly dismissed my need for a safe work environment and opted to discussion a safer work environment with Dwayne Jeffers who is harassed by the same PBGC employee.

PBGC began discussions a safer work environment for Dwayne Jeffers approximately November 17, 2005 and these discussions ended approximately December 28, 2005. I believed PBGC dismissed my need for a safe work environment after I signed my settlement agreement with the agency on November 3, 2005. I was force to inform PBGC officials and its investigation firm after my settlement agreement with PBGC that I am still being victimized of harassment and required a work environment free of harassment.

PBGC is aware that I was Mr. Jeffers HRD and EEO representative during the period of Mr. Jeffers harassment discussions for a safe work environment before and after November 3, 2005. PBGC is fully aware of my similar harassment and that Mr. Jeffers was my representative for my PBGC HRD and EEO harassment complaints prior to November 3, 2005. PBGC is aware that Mr. Jeffers is my representative for an HRD investigation complaint filed November 14, 2005 with PBGC HRD officials. PBGC has settled its responsibility to me for a safe work environment free of threats of violence and various form of harassment.

Throughout the distribution period of threatening and slanderous material, Mr. Jeffers and I were informed by supportive colleagues to be careful of people we meet and places we go to within PBGC. Several PBGC employees are fearful for our physical health. Mr. Silva and Mr. Forster were told of one such comment by an employee that we should "duck if you see a crown victoria with tented glass driving by the building." The intent of this comment was that a traveling car near PBGC could be a "drive by shooting" for us. Needless to say that I am concern and fearful of what the flyers and e-mails distributed to PBGC and contract employees by Mr. Bernsen, Ms. Johnson, and Ms. Baird would do in their effort to foster an animosity toward me and Mr. Jeffers.

I consider the information, evidence, and self confessions of some of the actors of my workplace harassment and intimidation, such Mr. Bernsen, Mrs. Valda Johnson and Ms. Baird, more than sufficient to make an investigation finding.

I consider the complaints made by me and Mr. Jeffers and the evidence used to support particularly my complaints are based on actions and evidence which occurred after my settlement agreement executed on November 8, 2005 with PBGC.

PBGC has conducted three investigations into my harrassers and has not issued its decision to punish any PBGC employee for inappropriate harassment action in the workplace. PBGC has been cited several times for its abuse by management officials. I too agree with several arbitrator decisions that PBGC officials have acted inappropriately in their duties toward its employees to include me. PBGC has been cited for an EEO program that chills the rights of employees with its flawed EEO program. PBGC EEO program has not received a final decision from an arbitrator decision to correct its EEO program. Another arbitrator has cited PBGC officials for inappropriate harassment actions toward a disabled employee. And again, PBGC has been cited for improper investigation practices to protect its management officials' misdeeds. I concur with these arbitrators decisions and commend the efforts to overcome these legal tricks of PBGC to unsuccessfully defend these claims by its employees.

Attachments **to this declaration: 1 through 40**

1.    **Settlement Agreement between PBGC and Robert T. Perry executed November 8, 2005**

2.    **PBGC HRD SF-50s for Robert T. Perry executed November 14 and 23, 2005**

3.    **E-mails regarding SF-50s of Robert T. Perry**

4.    **Memorandum from Michele Pilipovich regarding Littler Mendelson Investigation dated stamped November 2, 2005**

5.    **Flyers regarding harassment disseminated within PBGC of Robert T. Perry**

6.    **E-mails regarding harassment complaint disseminated within PBGC of Robert T. Perry**

7.    **Arbitrator Robert T. Moore grievance decision for Rhonda Baird with key to unidentified people listed in decision dated August 3, 2004**

8.    **Rhonda Baird's post hearing brief regarding arbitration before Arbitrator Robert T. Moore dated December 20, 2004**

9.    **PBGC letter to Shaw, Branford, Veilleux & Roth law firm regarding appointment**

0604-PERRY-00102

to conduct sexual harassment complaint of Elizabeth Baker dated January 8, 2004

10. Shaw, Branford, Veilleux & Roth law firm letter to Robert T. Perry regarding authorization to conduct sexual harassment complaint of Elizabeth Baker dated January 22, 2004

11. Shaw, Branford, Veilleux & Roth law firm to Philip Hertz, PBGC Deputy General Counsel regarding a report of sexual harassment complaint of Elizabeth Baker dated March 24, 2004

12. NAGE letters to Robert T. Perry regarding false sexual harassment complaint of Elizabeth Baker dated December 7, 2004

13. NAGE letters to Robert T. Perry regarding no investigation necessary for false sexual harassment complaint of Elizabeth Baker dated December 7, 2004

14. Arbitrator Gloria Johnson's decision against PBGC for an unfair and non-impartial processing of EEO complaints dated October 30, 2001

15. NAACP letter to PBGC regarding allegations of racism & abuse of authority at PBGC dated December 15, 2002

16. NAACP Interim Report IV, National EEO Summit IV dated January 17, 2004

17. Rhonda Baird's United States District Court transcript of James J. Keightley, PBGC General Counsel dated May 20, 2004

18. Rhonda Baird's United States District Court transcript of Jeffrey Cohen, PBGC Deputy General Counsel dated July 22, 2004

19. Rhonda Baird's United States District Court transcript of Stanley M. Hecht, PBGC Senior Counsel in the office General Counsel dated August 3, 2004

20. Rhonda Baird's United States District Court transcript of Noisette Smith, Jr., PBGC Acting EEO Manager dated May 27, 2004

21. Robert T. Perry 's United States District Court transcript of Noisette Smith, Jr., PBGC EEO Specialist dated May 19, 2005

22. Rhonda Baird's United States District Court transcript of Rhonda Baird, PBGC Attorney in OGC dated June 14, 2004

23. Affidavit of Philip Hertz, PBGC Deputy General Counsel regarding Rhonda Baird's EEO complaint dated May 27, 2004

24. Rhonda Baird's FLRA affidavit, PBGC Attorney in OGC dated December 23, 2003

0604-PERRY-00103

25. Rhonda Baird's United States District Court transcript of Rhonda Baird, PBGC Attorney in OGC dated June 14, 2004

26. PBGC letter from James Keightley, General Counsel regarding Stuart Bernsen's inappropriate and unprofessional behavior to Robin Horning, PBGC Labor Attorney dated March 7, 2002

27. PBGC letter from James Keightley, General Counsel regarding investigation of allegations of Stuart Bernsen's March 6, 2002 incident to Williams Beyer, Deputy General Counsel incident dated March 20, 2002

28. E-mail from Attorney Abbey Hairston, Seyfarth Shaw LLP to Rhonda Baird regarding Deposition/Document Production in Bernsen Matter dated November 30, 2005

29. Federal Labor Relations Authority charge sheet against Stuart Bernsen dated October 29, 2003

30. PBGC HRD documents regarding PBGC investigation for improper use of PBGC computers to distribute and share pornography (18-pages)

31. Memorandum from Bennie Hagans, Jr., IOD Department Director to Stacy Williams, Program Assistance regarding notice of proposed suspension for viewing and sharing pornography information dated February 10, 2005

32. Memorandum from Bennie Hagans, Jr., IOD Department Director to Wendell Holmes, Pension Law Specialist regarding Proposed Letter of Reprimand for viewing and sharing pornography information dated February 10, 2005

33. Document regarding Ruby Taylor's EEO complaint (39-pages) for sexual harassment against Robert Bacon, PBGC Financial Manager

34. PBGC merit promotion list for period March 6, 2005 through September 18, 2005 (13-pages)

35. Frederick T. Zigan, PBGC Assistance Inspector General for Investigations declaration regarding electronic messages from Robert Perry dated September 21, 2004

36. NAGE fax to Richard Petta, NAGE Local R3-77, President regarding decision against Stuart Bernsen challenge to an IUPE and NAGE Local election dated January 24, 2006

37. Federal Labor Relations Authority decision against Stuart Bernsen's allegation of wrongful withholding of pay (dues) from him dated January 30, 2006

0604-PERRY-00104

38.    **Formal EEO Complaint filing of Dwayne C. Jeffers to PBGC regarding Title VII violations dated January 10, 2005**

39.    **Compact Disc (CD) labeled Robert T. Perry, Formal EEO Complaint Dated February 2, 2006**

40.    **PBGC Letter from HRD Director Sharon Barbee-Fletcher to Valda Johnson regarding institutional grievance for Johnson's allegations of racism dated June 20, 2001**

MORE DOCUMENTS WILL BE PROVIDED AS THIS EEO COMPLAINT PROCESS PROCEEDS.

The PBGC's actions and inactions, through its officials, agents, and employees, have directly damaged my reputation, my career, and caused personal damage as well as undue stress and tension. I have problems concentrating and carrying out PBGC work duties while under continual violations of harassment and intimidation.

**Respectfully Submitted,**

**Robert T. Perry**
**EEO Complainant**

          0604-PERRY-00105

**WEISS AFFIDAVIT
EXHIBIT 2**

**PBGC**
Protecting America's Pensions

**Pension Benefit Guaranty Corporation**
1200 K Street, N.W., Washington, D.C. 20005-4026

Dwayne Jeffers
Representative of Robert T. Perry
Room 8749
Pension Benefit Guaranty Corporation
1200 K Street, NW
Washington, D.C.  20005

Re:      **Robert T. Perry**
         **Dismissal of PBGC Formal Complaint No. 06-04**

Dear Mr. Jeffers:

On February 2, 2006, Mr. Perry filed a formal complaint of discrimination that has been docketed as PBGC Formal Complaint No. 06-04.  PBGC acknowledged receipt of the complaint by letter dated February 13, 2006.  Mr. Perry's initial contact with the EEO Office took place on January 5, 2006.  In the formal complaint, Mr. Perry alleges that he has been discriminated against based on race, color, sex, and retaliation when: (1) as a result of a settlement of a prior EEO action, Perry v. Chao, Civil Action Nos. 03-2495 and 04-1996 (U.S.D.C., dated November 8, 2005) (the "Settlement Agreement" found at Perry Exhibit 1), PBGC issued several Notifications of Personnel Action ("Form SF-50") containing private and personal information; (2) he was subjected to a hostile work environment by certain individuals through emails and flyers in the workplace; and (3) PBGC did not offer to give Mr. Perry flexible work arrangements to prevent this hostile work environment, as it had offered to Mr. Jeffers.[1]  As a remedy, Mr. Perry requests that (1) the "offending language" contained in the Form SF-50's be removed, and (2) all remedies and relief available under the law.

1. Form SF-50 Claim

A brief review of the background behind this matter is helpful to an understanding of the claim at hand.  On November 8, 2005, Mr. Perry entered into a settlement agreement with PBGC to settle various EEO claims of Mr. Perry, which was approved by the U.S. District Court for the District of Columbia.  Under the settlement, Mr. Perry received a promotion and a cash payment, but would resign from the agency no later than twelve (12) months after the execution of the agreement.  Settlement Agreement, at para. 2.  In consideration of this arrangement, Mr. Perry agreed to settle "any and all matters that Plaintiff raised or could have raised [in the litigation], as well as all other matters related to Plaintiff's employment with PBGC."  Settlement Agreement, at para. 1.  As

_____
[1]      The statement of Mr. Perry's claims in this letter is in all respects a summary of the allegations, and shall not be interpreted to establish the truth, causality, or interrelationship of any of the matters contained in the statement.

part of the agreement, Mr. Perry negotiated that PBGC will provide him with a mutually acceptable letter of recommendation. Settlement Agreement, at para. 2(n). The agreement was silent as to PBGC's obligation to provide Mr. Perry with a mutually acceptable Form SF-50. In addition, the agreement did not contain a "confidentiality" clause, as sometimes is the case with EEO settlements. The District Court retained jurisdiction to enforce the terms of the settlement. Settlement Agreement, at p. 8.

In order to effectuate the settlement, on November 14, 2005, PBGC issued several Form SF-50's to Mr. Perry. These forms all had the notation "Pursuant to a Stipulation and Settlement presented to the U.S. District Court for the District of Columbia on November 8, 2005" in the Remarks box. Mr. Perry objected to this language, arguing that this notation was unwarranted and contrary to the intent of the settlement. The parties exchanged views on whether PBGC was required by OPM to include that notation. Without conceding to Mr. Perry's position, PBGC ultimately issued another set of Form SF-50's without the notation.

I have carefully reviewed this matter, and I conclude that this claim must be dismissed for several reasons. First, Mr. Perry's claim must be dismissed as moot, pursuant to EEOC Regulation 29 C.F. R. § 1614.107(a)(5), since the relief that he requested – removal of the notation on the Form SF-50's – has already occurred. Second, the District Court retained jurisdiction over the settlement. It is that body, rather than the EEO process, that has jurisdiction over this dispute. Therefore, this claim must be dismissed, pursuant to EEOC Regulation 29 C.F. R. § 1614.107(a)(3). See Lehman v. Potter, Appeal No. 01A24866 (February 27, 2003) (agency properly dismissed complaint under 29 C.F.R. § 1614.107(a)(3) as a collateral attack on a prior District Court settlement).

Mr. Perry's claim must also be dismissed for failure to state a claim under EEOC Regulation 29 C.F. R. § 1614.107(a)(1). In order for a complaint to state a claim, the complainant must be an "aggrieved employee" under the laws administered by the EEOC. The EEOC's federal sector case precedent has long defined an "aggrieved employee" as one who suffers a present harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy. Diaz v. Department of the Air Force, EEOC Request No. 05931049 (April 21, 1994). Mr. Perry has not demonstrated any "harm." Contrary to Mr. Perry's assertions, EEOC Management Directive, 110, Ch. 12, Section 7 allows, but does not require, agencies to process a personnel action without such a notation. In addition, he has not demonstrated that PBGC violated either the letter or the spirit of the settlement. The settlement agreement was silent on whether PBGC had to provide Mr. Perry with a mutually acceptable Form SF-50 and on whether there were any confidentiality obligations on either party. Moreover, Mr. Perry has provided no concrete evidence of his allegation that PBGC was attempting to undermine his ability to find a new job. Bejar v. Dep't of Veterans Affairs, EEOC Appeal No. 01A11321 (April 3, 2001) (agency properly dismissed complaint because allegations "merely speculative without supporting evidence in the record."). In sum, in addition to EEOC Regulation 29 C.F.R. §§ 1614.107(a)(3) and (5), Mr. Perry's claim must also be dismissed for failure to state a claim under EEOC Regulation 29 C.F. R.

§ 1614.107(a)(1).

2. <u>Hostile Work Environment Claim</u>

I have carefully reviewed Mr. Perry's hostile work environment claim, as well as the related Memorandum from the Director, Human Resources Department, dated February 16, 2006, which is incorporated in its entirety by reference (the "HRD Memo", a copy of which is enclosed). Based on that evaluation, I conclude that Mr. Perry's claim must be dismissed for failure to state a claim under EEOC Regulation 29 C.F.R. § 1614.107(a)(1).

As earlier stated, in order for a complaint to state a claim, the complainant must suffer a present harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy under the EEO Laws. <u>Diaz v. Department of the Air Force</u>, EEOC Request No. 05931049 (April 21, 1994). As explained in more detail below, Mr. Perry's allegations involve incidents that occurred during the course of an internal union upheaval, and in that context, he has not been subjected to impermissible workplace harassment or workplace safety issues, for which the EEOC can provide a remedy.

As you are aware, over the past several years, Mr. Perry and other union members have been involved on different sides of a long-running, contentious intra-union and inter-union dispute. On numerous occasions these matters have carried over into the workplace. Indeed, <u>all</u> of you have traded numerous email accusations sent to many individuals, in addition to various complaints, FLRA Unfair Labor Practice charges, and legal actions against each other (and other entities you represent).

While the record is not clear what triggered this latest round of actions, PBGC conducted an internal investigation of Mr. Perry's complaints together with those raised by others. Both PBGC staff and attorneys in a private law firm retained by PBGC's Office of the General Counsel met with the parties on several occasions, reviewed numerous flyers and emails that were submitted, and interviewed other involved persons.

The HRD investigation found that neither the creation nor distribution of the flyers violated PBGC policies or requirements. HRD Memo, at 2. In addition, the investigation found that while PBGC did not approve of, or support, the content of the flyers, there was no evidence that their content or distribution violated the Collective Bargaining Agreement or any PBGC policy or directive. HRD Memo, at 3. More importantly, the HRD investigation concluded that, when an employee is engaged in "protected activity" in the labor relations contest, employees are <u>required</u> to be given wide latitude to express themselves, even for behavior that otherwise would not be condoned. <u>See, e.g. Overseas Education Association</u>, 11 FLRA 377 (1983) (when union requested agency to discipline non-member employee for distributing letter publicizing union's failure to help employee and urging union president be "recalled" from position, union violated employee's protected activity rights). Thus, PBGC management was required to give each of you wide latitude to engage in your protected activities, absent

- 3 -

"flagrant misconduct." Importantly from the EEO context, Mr. Perry did not provide any evidence in his complaint (or the voluminous 40 exhibit attachment) that these legal protections were not <u>equally</u> applied to each of you.

Similarly, the HRD investigation found that, in the context of this union dispute, the flyers do not constitute impermissible workplace harassment. HRD Memo, at 3. The investigation found that the flyers were not demonstrably "false," but rather expressed what are obviously your opponents' opinions and innuendos. <u>See, e.g.,</u> <u>Pension Benefit Guaranty Corp.</u>, Case No. WA-RP-05-002 (Reg. Dir. September 27, 2005), at 44-45 (NAGE flyers publicizing misconduct by Mr. Bernsen not actionable), <u>remand on other grounds</u>, 61 FLRA No. 85 (January 20, 2006). Indeed, the EEOC has consistently held that the EEO process is <u>not</u> a mechanism to attack internal union matters, and that such claims are properly dismissed pursuant to 29 C.F. R. § 1614.107(a). <u>Mitchell v. Department of Veterans Affairs</u>, EEOC Appeal No. 01951941 (November 12, 1998); <u>see also</u> <u>Dennis v. Department of Veteran Affairs</u>, EEOC Appeal No. 01A05224 (November 8, 2000) (complainant, a union vice president, failed to state a claim when union members spread rumors and email messages). In addition, the HRD investigation found that, contrary to Mr. Perry's assertions, the flyers did not pose a safety threat. HRD Memo, at 3.

Furthermore, Mr. Perry's hostile work environment claim must be dismissed because he settled "any and all matters that Plaintiff raised or could have raised in the above actions, as well as all other matters related to Plaintiff's employment with PBGC." Settlement Agreement, at para. 1. The alleged hostile work environment incidents described in Mr. Perry's EEO complaint existed prior to November 8, 2005. Thus, Mr. Perry released PBGC from any claims he could have raised in connection with these events. And, while Mr. Perry alleges that flyers and emails continued past November 8, 2005, they were part of the same series of incidents and raise no new basis or arguments from those that were occurring when he released PBGC from "all matters related to his employment ... up to and including the date of this Stipulation of Settlement and Dismissal." <u>See Gallagher v. Barnhart</u>, EEOC Appeal No. 01A21583 (June 12, 2003). In addition, all of the flyers submitted with Mr. Perry's complaint are undated and Mr. Perry failed to identify any specific flyer that was disseminated after November 8, 2005. Ultimately, if Mr. Perry wanted to pursue his hostile work environment claim, he should have carved that cause of action out of the settlement. Accordingly, this claim must also be dismissed, pursuant to EEOC Regulation 29 C.F. R. § 1614.107(a)(3). <u>See Lehman v. Potter</u>, Appeal No. 01A24866 (February 27, 2003).

Finally, to the extent that Mr. Perry's claims raised issues that were not resolved in the HRD investigation or not released as part of his prior EEO settlement, I find that those allegations to be general, unspecified allegations that have no support in the record. <u>See Brown v. SSA</u>, EEOC Appeal No. 01A15254 (January 28, 2003) (agency properly dismissed complaint for failure to state a claim when complainant failed to identify a specific incident or occurrence); <u>Bejar v. Dep't of Veterans Affairs</u>, <u>supra.</u> (agency properly dismissed complaint because allegations "merely speculative without supporting evidence in the record."). For example, Mr. Perry claims that the harassment included

intimidation, blackmail, slander, libel, defamation, and threats of violence. However, other than a few, isolated flyers and emails, which were discussed above, Mr. Perry did not provide any examples of such activity. He did not identify any specific instances of intimidation, blackmail, slander, libel, defamation or threats of violence. And while he alleges in the complaint that "several PBGC employees were fearful for his health," he does not identify who made those comments, when they were made, or which specific individuals he should be afraid of. And, while he did provide 40 exhibits to his complaint,[2] those exhibits largely presented background material that did not substantiate any of his current allegations.[3]

In summary, the emails and flyers involve internal union matters, which are not actionable under the EEO laws. Dennis v. Department of Veteran Affairs, supra. In addition, Mr. Perry released any hostile work environment claim he may have had when he recently settled his EEO issues in U.S. District Court. Finally, to the extent that Mr. Perry's allegations were not resolved as part of the HRD investigation or released as part of his prior EEO settlement, I find that his allegations to be general and unspecified, which are too vague to state a claim under EEOC regulations. Williams v. Department of the Air Force, EEOC Appeal No. 01A01983 (July 13, 2000). For those reasons, Mr. Perry's hostile work environment claim is dismissed pursuant to EEOC Regulation 29 C.F.R. §§ 1614.107(a)(1) and (3).

3.    Disparate Treatment Claim

Finally, Mr. Perry complains that PBGC did not offer him a flexible work arrangement to prevent the above hostile work environment, as it had offered to Mr. Jeffers. This claim must be dismissed for failure to state a claim under EEOC Regulation 29 C.F.R. § 1614.107(a)(1).

On September 28, 2005, both Mr. Jeffers and Mr. Perry contacted the EEO Office to complain about a hostile work environment. Each complainant was assigned an EEO Counselor and engaged in informal counseling.

As you know, informal counseling is designed to attempt to resolve a matter at the earliest possible point. On October 28, 2005, the EEO Counselor requested an extension up to 60 days in which to further seek resolution of Mr. Perry's complaint. However, he declined to extend counseling, advising on November 4, 2005 that he wished to terminate his EEO complaint against PBGC. ( see EEO Counselor's Report, dated November 25, 2005.) On the other hand, Mr. Jeffers elected to extend counseling past October 28, 2005. It was during this extension period that Mr. Jeffers requested a flexiplace work schedule. Ultimately, the parties were not able to agree on a resolution.

---

[2]    I would note that, in the future, if Mr. Perry intends to rely on voluminous materials to support an EEO complaint, he must specifically provide where in such materials that support can be found. It is Mr. Perry's, not the EEO Office's, responsibility to substantiate his case.

[3]    In his complaint, Mr. Perry also raises a January 2004 incident and an earlier sexual harassment claim. Both of these claims were released when he signed the Settlement Agreement.

After carefully reviewing this matter, I conclude that this claim must be dismissed for failure to state a claim under EEOC Regulation 29 C.F.R. § 1614.107(a)(1). First, as explained above, Mr. Perry's allegations involve incidents that occurred during the course of an internal union upheaval, and in that content, he has not been subjected to impermissible workplace harassment. Importantly, the HRD investigation found that, contrary to Mr. Perry's assertions, the flyers did not pose a safety threat, and that he presented no evidence of any person approaching him, or situation confronting him, which would have created a reasonable fear of harm. HRD Memo, at 3.

The negotiations with Mr. Jeffers, which ultimately did not result in Mr. Jeffers being granted flexiplace, took place in the context of informal EEO counseling. At that point, Mr. Perry had already terminated his EEO counseling, and settled all EEO matters that were pending at the time, including the instant matter. See EEOC Regulation 29 C.F.R. § 1614.107(a)(3).

In summary, Mr. Perry cannot demonstrate that he was harmed: (1) he was not subjected to a hostile work environment, (2) he released PBGC from any claims that he may have had when he settled his EEO action in District Court, and (3) his situation was distinguishable from that of Mr. Jeffers. Accordingly, his claim must be dismissed, pursuant to EEOC Regulation 29 C.F.R. .§§ 1614.107(a)(1) and (3).

Conclusion

Mr. Perry's claims that PBGC issued several Form SF-50's containing confidential information, he was subjected to a hostile work environment, and alleged disparate treatment must be dismissed pursuant to EEOC Regulation 29 C.F.R. §§ 1614.107(a)(1), (3) and (5), and therefore, he is entitled to no relief under the EEO laws.

Mr. Perry has the right to appeal this decision to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036-9848, within 30 calendar days after you receive this decision. Mr. Perry must use EEOC Form 573, a copy of which is enclosed, in connection with an appeal. He may also deliver an appeal in person or by facsimile to the Office of Federal Operations, provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with an appeal, Mr. Perry must submit proof to the EEOC that a copy of the appeal and any supporting documentation or brief also were submitted to the PBGC, to the attention of the undersigned, at the EEO Office, Tenth Floor, 1200 K Street NW, Washington, D.C. 20005. Mr. Perry is advised that if he files an appeal beyond the 30 day period set forth in EEOC regulations, he should provide an explanation as to why the appeal should be accepted despite its untimeliness. If he cannot explain why any untimeliness should be excused in accordance with EEOC Regulation 29 C.F.R. § 1614.604, the EEOC may dismiss the appeal as untimely.

Alternatively, if Mr. Perry is dissatisfied with PBGC's decision in this case, he may file a civil action in an appropriate United States District Court within 90 calendar

days of the receipt of this decision, or within 90 days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been issued. If Mr. Perry chooses to file a civil action, that action should be captioned <u>Robert T. Perry v. Bradley D. Belt, Executive Director, Pension Benefit Guaranty Corporation</u>. Mr. Perry may also request the court to appoint an attorney for him and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the United States District Judge. Such an application must be filed within the same time period for filing the civil action.

If you or Mr. Perry have any questions about this complaint, please contact Lori J. Bledsoe, PBGC's EEO Manager, at (202) 326-4000, extension 3345.

Sincerely,

Dated: _5-3-06_

Vincent K. Snowbarger
EEO Director

Enclosures:    Memorandum from Director, Human Resources Department, dated February 16, 2006

EEOC Form 573

cc:    Robert T. Perry
Lori J. Bledsoe

# WEISS AFFIDAVIT
# EXHIBIT 3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT T. PERRY,                                )
                                                )
      Plaintiff,                          )
                                                )
v.                                              )Civil Action Nos. 03-2495 & 04-1996 (CKK)
                                                )
ELAINE L. CHAO, *et al.*,                       )
                                                )
      Defendants.                         )
_____)

### STIPULATION OF SETTLEMENT AND DISMISSAL

All Parties to this action hereby enter into the following Stipulation of Settlement and Dismissal. In order to resolve the matters in dispute in the above-styled actions and all other matters related to Plaintiff's employment without further litigation, expense or delay, Plaintiff and Defendants unconditionally agree to the following terms:

    1. Release

Plaintiff and Defendants enter into this Stipulation of Settlement and Dismissal in order to make full and final settlement of any and all matters that Plaintiff raised or could have raised in the above actions, as well as all other matters related to Plaintiff's employment with PBGC. Plaintiff, in consideration of the action Defendants agree herein to take, knowingly and voluntarily agrees to accept the terms set forth herein in full satisfaction of any and all claims, demands, rights and causes of action of whatever kind and nature based upon his employment with the Pension Benefit Guaranty Corporation ("PBGC") up to the date Plaintiff signs this Stipulation of Settlement and Dismissal, including but not limited to the claims asserted in the above-styled actions.

In particular, and without limitation, this Stipulation of Settlement and Dismissal includes all possible claims for damages, backpay, front pay, loss of leave, loss of retirement and equitable relief by Plaintiff against Defendants prior to and including the date Plaintiff signs this Stipulation of Settlement and Dismissal. Further, and without limitation, this Stipulation of Settlement and Dismissal includes all possible claims for attorney's fees and costs that Plaintiff incurred or may incur in connection with this litigation and any other administrative proceeding involving the claims Plaintiff raised or could have raised in these actions.

Plaintiff withdraws, with prejudice, the above-styled complaints and all other pending, existing or putative causes of action, charges, complaints and appeals against Defendants in any forum, whether administrative or judicial. This Stipulation of Settlement and Dismissal constitutes the full, final and complete relief that Plaintiff may have for the conduct alleged in these actions.

Plaintiff agrees not to institute any other actions, charges, complaints, appeals or other proceedings against Defendants or any of Defendants' past or present employees, officers, agents or representatives concerning any matter related to his employment with PBGC and the termination of his PBGC employment that are based in any way on action or inaction as of this date by Defendants or Defendants' past or present employees.

Plaintiff releases Defendants and PBGC's past and present employees, officers, agents and representatives concerning all matters related to his employment with Defendants up to and including the date of this Stipulation of Settlement and Dismissal.

2. In consideration for the promises made herein, the Parties agree to take the following actions:

a) Defendants shall enter a formal Personnel Action in Plaintiff's Official Personnel File indicating Plaintiff was promoted, without back pay, to a GS-13, Step 3 auditor position one year prior to the date the Stipulation of Settlement and Dismissal is executed.

b) Defendants shall promote Plaintiff to a GS-13, Step 10, Series 511 Auditor position and increase his pay accordingly, effective the first full pay period following the execution of this Stipulation, which Plaintiff shall occupy for a period no longer than twelve (12) months ("the 12-Month Period", which period shall commence on the day that Plaintiff's promotion begins and end on the one-year anniversary of that date). The appointment to GS-13, Step 10, Series 511 Auditor position shall expire upon the earlier of (1) Plaintiff obtaining employment outside PBGC, or (2) the expiration of the 12-Month Period described above;

c) During the first six (6) months of Plaintiff holding a GS-13, Step 10, Series 511 Auditor position, Plaintiff shall be detailed to PBGC's Contracts and Control Review Department (CCRD), during which time Plaintiff shall be granted reasonable administrative time to attend job interviews and/or pursue training opportunities.

d) Following the execution of this Stipulation, PBGC shall pay for training opportunities not to exceed $10,100.00, the arrangements for which plaintiff may make up to and including the date of his resignation from employment with PBGC. To effect payment for such training opportunities, Plaintiff shall submit the invoices or requests for payment for such training to PBGC, and PBGC shall tender payment for the training to the appropriate training provider.

e) Plaintiff shall endeavor to find a detail to another federal agency to commence anytime during the first six (6) months of the 12-Month Period described above. If Plaintiff secures such a detail to another federal agency, PBGC shall cooperate and shall continue to compensate Plaintiff at a GS-13, Step 10 salary for the 12-Month Period described in Paragraph 2(b). Prior

to commencing a detail to another federal agency, Plaintiff shall surrender any and all PBGC property, credentials, access cards, and/or keys to PBGC premises.

f) If Plaintiff does not secure a detail to another federal agency during the first six (6) months of the 12-Month Period described above, PBGC shall pay Plaintiff a one time payment of $60,000.00 as soon as practicable, and PBGC shall place Plaintiff on leave without pay for the remainder of the 12-Month Period, during which time Plaintiff may continue to pursue the training opportunities referenced in paragraph 2(d) of this Stipulation. Upon the expiration of the first six (6) months of the 12-Month Period, Plaintiff shall immediately surrender any and all PBGC property, credentials, access cards, and/or keys to PBGC premises. During the time which Plaintiff is on leave without pay, PBGC shall pay Plaintiff's health insurance premiums. If Plaintiff secures employment outside PBGC anytime during the period he is on leave without pay, he shall immediately tender his resignation from employment with PBGC. Once the 12-Month Period expires, unless Plaintiff has already resigned, Plaintiff's resignation referenced in Paragraph 2(i) of this Stipulation shall be effected.

g) If Plaintiff secures employment outside PBGC anytime prior to the expiration of the first six (6) months of the 12-Month Period described above, he shall immediately tender his resignation from employment with PBGC. Defendants shall pay Plaintiff the one time payment of $60,000.00 as soon as practicable following Plaintiff's resignation. But Plaintiff shall only be entitled to one $60,000.00 payment under either Paragraph 2(f) or 2(g). Plaintiff acknowledges that payments can be expected to take a number of weeks. Plaintiff shall immediately surrender any and all PBGC property, credentials, access cards, and/or keys to PBGC premises.

h) If Plaintiff secures a detail to another federal agency within the first six (6) months of the 12-Month Period described above, and during that detail to another federal agency Plaintiff

secures employment outside PBGC, he shall immediately tender his resignation from employment with PBGC. Defendants shall pay Plaintiff a pro-rated portion of the $60,000.00, pro-rated over the 6-month period, which payment shall be made as soon as practicable following the date of his resignation.

i)  Upon signing this Stipulation, Plaintiff shall submit to Defendants his irrevocable resignation from the PBGC effective at the end of the 12-Month Period, unless Plaintiff has earlier resigned.

j)  If Plaintiff wishes to resign from PBGC prior to the end of the 12-Month Period, he shall submit a letter of resignation with an effective date earlier than the letter referenced in Paragraph 2(i) of this Stipulation.

k)  During Plaintiff's detail to CCRD, Plaintiff may use PBGC computers, electronic mail, phones, fax, Lexis/Nexis and other equipment to facilitate his job search, pursue training opportunities, and to perform his job duties as are assigned to him by his supervisor in CCRD. Plaintiff shall not abuse his use of these agency resources and agrees to use these resources only in compliance with PBGC directives and policies.

l)  If Plaintiff goes on leave without pay as described in Section 2(f) of this Stipulation, Plaintiff may have access to PBGC electronic mail and voicemail to assist him in his job search. Plaintiff shall not abuse his use of these agency resources and agrees to use these resources only in compliance with PBGC directives and policies.

m)  Plaintiff shall abide by any and all PBGC directives and/or policies, including but not limited to the policy against harassment in the workplace and improper use of electronic mail, although no inference is intended by this provision that Plaintiff has ever engaged in such harassment and Plaintiff expressly denies having done so.

n) PBGC shall provide Plaintiff with a mutually acceptable letter of recommendation, such as the one attached hereto as Exhibit 1, for use with potential employers, and a designated contact person (and a mutually agreeable script similar to Exhibit 1) in CCRD to receive reference inquiries for one year after his resignation.

o) If Plaintiff should require unemployment compensation at the expiration of the 12-Month Period, and if eligible, PBGC shall not oppose his request.

p) PBGC shall pay Plaintiff's reasonable attorney's fees and costs, as defined by Title VII fees provision(42 U.S.C. § 2000e-5(k)), not to exceed $80,000.00. Plaintiff's counsel shall provide Defendants with an accounting of his attorney's fees and costs.

q) Plaintiff shall not seek or attempt employment with PBGC for a period beginning on the date of signing this Stipulation and extending for five (5) years from the effective date of his resignation.

r) By signing this Stipulation, Plaintiff withdraws any and all applications for employment or promotions within PBGC, and Plaintiff shall not accept any offers of employment or promotion within PBGC for a period beginning on the date of signing this Stipulation and extending for five (5) years from the effective date of his resignation.

s) Defendants shall issue Plaintiff a FY2005 "fully successful" performance appraisal upon the execution of this Stipulation.

3. Plaintiff acknowledges his duty to adhere to any applicable tax filing requirements and other obligations with regard to the proper payment of taxes.

4. This Stipulation of Settlement and Dismissal shall not constitute an admission of liability or fault on the part of Defendants or PBGC's past or present agents, employees, representatives or officers, and Defendants expressly deny any and all liability and/or fault. The

Case 1:06-cv-02495-CKK-AK    Document 10-6    Filed 02/20/2007    Page 34 of 84
Case 1:03-cv-02495-CKK-AK    Document 30    Filed 11/08/2005    Page 7 of 10
Case 1:04-cv-01996-CKK-AK    Document 19-1    Filed 11/08/2005    Page 7 of 9

Parties enter into this stipulation solely for the purpose of compromising disputed claims and avoiding the expenses and risks of litigation.

5. Plaintiff acknowledges that he has read this entire agreement and that he understands all of its terms and conditions. Plaintiff acknowledges that his attorney has reviewed and explained the provisions of this agreement to him and that Defendants have provided sufficient time for this purpose.

6. Pursuant to 29 U.S.C. § 626(f), the Plaintiff understands that by executing this Agreement, he is relinquishing any rights or claims which arose or could have arisen under 29 U.S.C. § 633a (the Age Discrimination in Employment Act) prior to the effective date of this ADEA waiver. Plaintiff does not waive rights or claims which may arise after this waiver is executed; he understands and agrees that he is waiving these rights and claims only in exchange for consideration in addition to anything of value which he is already entitled; he agrees that he is hereby being advised by the Agency in writing to consult with an attorney prior to executing this Agreement; and he agrees that he has been provided a reasonable period of time of not less than three (3) calendar days in which to consider this Agreement prior to executing it. Plaintiff represents that he has read this Agreement and that he enters into this Agreement knowingly and voluntarily, with full understanding of its terms and conditions.

7. Plaintiff acknowledges that he has entered into this Stipulation of Settlement and Dismissal knowingly and voluntarily and with the advice of counsel. Further, Plaintiff acknowledges that no one has imposed any undue hardship, duress or coercion in connection with the execution of this document.

8. The Parties agree that the terms expressly recited herein represent the entire compromise settlement and that, except for the sums set forth in Paragraph 2 above, the

Case 1:06-cv-01371-CKK    Document 10-6    Filed 02/20/2007    Page 35 of 84
Case 1:03-cv-02495-CKK-AK    Document 30    Filed 11/08/2005    Page 8 of 10
Case 1:04-cv-01996-CKK-AK    Document 19-1    Filed 11/08/2005    Page 8 of 9

respective parties shall each bear their own costs, fees, expenses, and attorneys' fees. There are no terms or conditions to this agreement except those expressly stated herein. This agreement may not be altered, modified, withdrawn, waived, rescinded or supplemented except by a written instrument executed by duly authorized representatives of both Parties.

WHEREFORE, these actions are hereby dismissed, subject only to the Court retaining jurisdiction as necessary to enforce the terms of this Stipulation of Settlement and Dismissal.

Respectfully submitted,

David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO, P.C
1225 Eye Street, N.W.
Suite 1290
Washington, D.C. 20005
Tel. 202-842-0300

Attorney for Plaintiff

Robert Tyrone Perry
1354 Monaco Drive
Severn, Maryland 21144
Tel. 410-294-8969

Plaintiff

Kenneth L. Wainstein
D.C. Bar No. 451058
United States Attorney

R. Craig Lawrence
D.C. Bar No. 171538
Assistant United States Attorney

Benton Peterson
Assistant United States Attorney
WI Bar No. 1029849

W. Mark Nebeker
Assistant United States Attorney
D.C. Bar No. 396739
555 4th Street, N.W.
Civil Division
Washington, DC 20530
Tel. 202-514-7230/202-307-0258
Attorneys for Defendants

Case 1:06-cv-01371-CKK    Document 10-6    Filed 02/20/2007    Page 36 of 84
Case 1:03-cv-02495-CKK-AK    Document 30    Filed 11/08/2005    Page 9 of 10
Case 1:04-cv-01996-CKK-AK    Document 19-1    Filed 11/08/2005    Page 9 of 9

Co-Counsel:

PHILIP R. HERTZ
Deputy General Counsel
JAY A. RESNICK
Assistant General Counsel
ROBIN S. HORNING
MARGARET DRAKE
Attorneys
PENSION BENEFIT GUARANTY
CORPORATION
1200 K. Street, N.W.
Washington, D.C. 20005-4026
(202) 326-4020

It is so ORDERED by the Court this _3rd_ day of

_November_, 2005.

_Collen Kollar-Kotelly_

UNITED STATES DISTRICT JUDGE

Case 1:06-cv-01371-CKK    Document 10-6    Filed 02/20/2007    Page 37 of 84
Case 1:03-cv-02495-CKK-AK    Document 30    Filed 11/08/2005    Page 10 of 10
Case 1:04-cv-01996-CKK-AK    Document 19-2    Filed 11/08/2005    Page 1 of 1

## DRAFT STATEMENT OF RECOMMENDATION
## FOR ROBERT PERRY

**To Whom it May Concern:**

As Robert Perry's supervisor, I have been asked to recommend Mr. Perry for a leadership position within the auditing field or other positions that would require analysis of financial or program information. I understand that Mr. Perry is seeking to broaden his career experiences after working more than 10 years with PBGC, and wish him well as he pursues other professional opportunities.

Having started at PBGC in 1993, Mr. Perry has gained a significant amount of experience performing a variety of compliance audits. For example, using PBGC regulations and ERISA as criteria, he has determined whether pension plans seeking standard terminations were paying participants the amount they were due under the plan. In working for my department, he has performed contract evaluations to determine whether amounts proposed or billed by contractors performing services for PBGC were supported and in compliance with the Federal Acquisition Regulation. With a degree in accounting, Mr. Perry was initially hired as a GS-9 auditor, and has progressed to the full-performance level as a GS-13 auditor. In working at PBGC, he has been recognized as an important contributor to the agency's mission and for readily sharing his knowledge and skills with both peers and more junior employees.

Mr. Perry has shown a continued interest in professional development having completed a variety of courses during his time at PBGC. Recent courses that he has identified and completed are entitled _____ offered by Business Management Research Associates. Such development efforts have allowed Mr. Perry to improve and update his skills to meet the dynamic demands of the changing auditing and federal government procurement professions.

Based on his accounting degree, his years of audit experience, and accomplishments at PBGC, I wholeheartedly believe that Mr. Perry would add value to your organization and do not hesitate in recommending that he receive the utmost consideration for professional opportunities in the auditing field (or another position that requires the analysis of financial or program information).

# WEISS AFFIDAVIT
# EXHIBIT 4

# NAGE Ordered to Pay $2.2 M llion to Union Member

## *Jury Finds Retaliation*

A federal jury has ordered NAGE to pay a union member over $2.2 million in damages because of retaliation. The jury found that NAGE violated the member's civil rights.

NAGE officials harassed the member and tried to get her fired. When she complained, NAGE waged a public campaign to smear and humiliate her and drive her out of the union.

The jury issued its verdict on October ..6, 2005, according to court records and the *Boston Globe*. (See the case of Vanessa Dixon against NAGE's subdivision, the International Brotherhood of Police Officers, Case 01-11806 (D. Massachusetts) and the *Boston Globe*, Oct. 19, 2005, article by Shelley Murphy. See web at www.nagemembers.blogspot.com.)

NAGE National President David Holway and current NAGE officials have continued to support the outrageous retaliation.

In addition to winning her case against NAGE, the union member, Vanessa Dixon, won a jury award of $25,000 against NAGE Local 382 and $2,500 against AGE National Vice President Gerald Flynn. Flynn is the NAGE official who headed the retaliatory heari s against the former local union officers PBGC.

Reportedly, the N/ E National Board held an emergenc meeting to discuss how it could pay th $2.2 million. One proposal would requir every NAGE member around the countr to pay a $75 assessment.

The verdict comes wh NAGE is in serious financial trouble. N GE has been running deficits, and has hac lay off staff. According to Department o Labor reports, since 2002 NAGE has los 9 million in assets, and expenses have e eded income by $5 million. NAGE h been paying exorbitant salaries to top off als, including about $230,000 to its Nat nal President Holway and about $125,00 o Flynn.

PBGC employees v o heard the news reacted with disgu . Said one, "NAGE — they are a sham. ul and rotten bunch of bullies." Anoth commented, "Sounds just like what NA E did here at PBGC. NAGE atta s its own members." Added anothe "Right. And look what the NAGE local ere has done. Petta, Perry and Jeffers b mouth other employees and rat on t m to PBGC management to get peopl into trouble. NAGE needs to go."

0604-PERRY-00055

**Perry Robert**

| | |
|---|---|
| ¯¯om: | Perry Robert |
| ¸nt: | Monday, November 14, 2005 8:31 AM |
| ¯o: | Belt Bradley; Barber Stephen; Pilipovich Michele; Lattimer Rick; Silva Ricardo; Starr Judith; Hertz Philip; Forster Raymond; Williams Steve; Snowbarger Vince |
| Cc: | Perry Robert; Jeffers Dwayne; Bledsoe Lori |
| Subject: | FW: New Complaint : More Flyers / Harassment / Workplace Violence / Workplace Disruption |
| Importance: | High |
| Sensitivity: | Confidential |

**Dear PBGC Officials, I concur with Mr. Jeffers' e-mail below and state that my complaint is new. I also must state that I request the support of my PBGC officials to prevent such continuing work place harassment in the future. I understand that PBGC has hired a law firm to conduct another investigation into previous workplace harassment of Mr. Jeffers and myself.**

Robert T. Perry
(202) 326-4000, Ext. 3495

-----Original Message-----
| | |
|---|---|
| From: | Jeffers Dwayne |
| Sent: | Wednesday, November 09, 2005 6:23 PM |
| ¯¯¸: | Belt Bradley; Barber Stephen; Pilipovich Michele; Lattimer Rick; Silva Ricardo; Starr Judith; Hertz Philip; Forster Raymond; Williams Steve; Snowbarger Vince |
| ¸c: | Perry Robert; Jeffers Dwayne; Bledsoe Lori |
| Subject: | New Complaint : More Flyers / Harassment / Workplace Violence / Workplace Disruption |
| Importance: | High |
| Sensitivity: | Confidential |

Dear PBGC,

\*\*\*\*\*\*\*\* I started drafting this e-mail on November 8, 2005 at about 6:20pm, but decided to leave work so that I could write with some sense of composure. \*\*\*\*\*\*\*\*\*

On November 3, 2005, I received a sealed white envelope from my supervisor, Marjorie Brown. It contained a November 3, 2005 memorandum from Michele Pilipovich to myself. It informed me that PBGC hired an outside law firm to conduct an investigation of my June 9, 2005 complaint. To my knowledge the investigation was already completed by PBGC lead investigator, Ricardo Silva, with the assistance of Raymond Forster. It was my understanding that **Stuart Bernsen** and **Valda Johnson** were found guilty and PBGC was deciding the corrective action to be taken. Robert Perry and myself met with lead investigator, Ricardo Silva who agreed to open/re-open an investigation on **Rhonda Baird** for violations of the June 16, 2005 memorandum from John Seal. Check enclosed e-mail.



INAPPROPRIATE
SE OF PBGC RESC



Thank You

I was out of the office on November 7, 2005. I returned to the office on November 8, 2005. On November 8, 2005 at approximately 6:00pm, I received a phone call from Robert Perry who was out of the office. Robert Perry informed me that he received a phone call from a PBGC employee who informed him that some more **prohibited flyers** had been ¸tributed around PBGC with our names on the flyers. The flyer is titled **NAGE Ordered to Pay $2.2 Million to Union ...ember, Jury Finds Retaliation**. I will provide PBGC a copy of the latest flyer. I have seen this flyer in the inboxes of fellow TPD-6 employees such as Daniel Lee and Yvette Rodgers. I have also seen this flyer on the desk of fellow TPD-6 employee Quyen Pham. The flyer makes false, slanderous, libelous, and defamatory statements that "**Perry and Jeffers**

1

0604-PERRY-00279

bad mouth other employees and rat on them to PBGC management to get people into trouble." This statement is in reference to previous flyers about the PBGC IG's pornography investigations that contained **threats of violence towards Robert Perry and myself**. The flyer is a **tabloid publication**.

·as not aware of this situation in Boston, Massachusetts until Rhonda Baird approached the Local about it.

$2.2 Million Dollar    The Latest From    Re: The Latest
Verdict Ag...      Rhonda Baird    From Rhonda Bai...

As you can see from my e-mails, the situation in Boston, Massachusetts is not NAGE Local R3-77 union business. This fact was confirmed by Susanne Pooler-Johnson, NAGE National Representative.
The flyer falsely states that **"current NAGE officials have continued to support the outrageous retaliation"**. I as a current NAGE official have had no involvement in this Boston, Massachusetts situation. I cannot recall being in the state of Boston, Massachusetts in my lifetime.
The jury verdict quoted in the Boston Globe article is against the International Brotherhood of Police Officers (IBPO), who is affiliated with NAGE and SEIU. I am unsure of how this verdict is directly against NAGE, since the Boston Globe article states that IBPO was ordered to pay $2.2 million. Once again, the flyer is a **tabloid publication**.

I think that PBGC should already know that I believe that **Stuart Bernsen, Valda Johnson,** and **Rhonda Baird** are behind the latest flyer.

Please inform me if this new complaint that I am making to you will be merged into the November 3, 2005 memorandum. I am still forced to work in an unsafe work environment. **I am formally requesting an armed guard to stand outside of my office and protect my safety and well being in the workplace.** One of the offending individuals, Valda Johnson, works in the office next to my office.


Dwayne Jeffers
Federal Employee

**0604-PERRY-00280**

# WEISS AFFIDAVIT
# EXHIBIT 5

# BELT - PETTA STOP NEW BENEFITS FOR EMPLOYEES
## MANAGEMENT AND NAGE PREPARE FOR CUTS

Employees are continuing to lose major new benefits as the Executive Director and the NAGE Local officers fail to sign and implement the new collective bargaining agreement. The lost benefits — a fair appraisal system, improvements in awards and flexiplace, protections against retaliatory discipline, holding managers accountable to merit system principles, more attendance and leave options, and better health and safety standards — are working conditions that are good for PBGC and for employees and managers. So, what's going on? Why stop something good?

...ll, Mr. Belt let the cat out of the bag. In his speeches to groups of employees, Mr. Belt's plan became clear — he wants to implement the Bush administration's anti-employee personnel policies instead of the new benefits in the collective bargaining agreement. For example, Mr. Belt wants to implement pay for performance systems that eliminate career ladders and step increases.

As for the so-called union — Dick Petta, Robert Perry and Dwayne Jeffers — they have sat back and let management do as it pleases. In fact, documents show that Petta has gone along with management's tactics.

For two years now, the N... GE union has played along with manag... nent to stop the benefit improvements. Th... next step is that management will tak... away basic career progression rights ...nd opportunities.

This acquiescence by the ...IAGE union and its mis-leaders is not ...n accident. It is not that Dick Petta, Robe... Perry and Dwayne Jeffers are in ov... their heads. and are clueless. The pro... em is that management was dedica... l all along to stopping a new collectiv... argaining agreement, and Petta, Pe... y and Jeffers helped them. You don't ...ar them speaking out and educati... g employees about management's tact... s.

As employees learn the r... d truth, and lose out on improvement... more and more are starting to complain. ...ut, employees also need to realize how ... anagement has played and suckered emp... oyees.

Don't let Mr. Belt, or ma... agement, or NAGE or Dick Petta and ...is sidekicks fool you. Think for yours...f. Think about how employees can start ... re-unite and work together for our co... mon interests. Demand that the new be... fits be implemented, and that th... more generous appraisal scale and awar... system be implemented for the last ... ppraisal year.

## DEMAND THE NEW CBA NOW!

0604-PERRY-00056

## Perry Robert

| | |
|---|---|
| ⊃m: | Jeffers Dwayne |
| ⊃ent: | Thursday, November 10, 2005 10:26 AM |
| To: | Belt Bradley; Barber Stephen; Pilipovich Michele; Lattimer Rick; Silva Ricardo; Starr Judith; Hertz Philip; Forster Raymond; Williams Steve; Snowbarger Vince |
| Cc: | Perry Robert; Jeffers Dwayne; Bledsoe Lori |
| Subject: | New Complaint : Additional Flyers / Harassment / Workplace Violence / Workplace Disruption |

| | |
|---|---|
| Importance: | High |
| Sensitivity: | Confidential |

Dear PBGC,

\*\*\*\*\*\*\*\* I almost started drafting this e-mail on November 9, 2005 at about 6:30pm, but decided to leave work so that I could write with some sense of composure. \*\*\*\*\*\*\*\*\*

On November 9, 2005, at approximately 6:30pm, I was leaving the PBGC workplace to go home. I noticed the latest flyer titled **BELT - PETTA STOP NEW BENEFITS FOR EMPLOYEES, MANAGEMENT AND NAGE PREPARE FOR CUTS** laying face up in the inboxes of TPD-6 and 8th floor DISC (formerly PPD). I had returned to my office to re-boot my computer system to start drafting this e-mail, but then decided to just leave.

I believe that this new flyer is a prohibited flyer in violation of the June 16, 2005 memorandum from John Seal. Check enclosed e-mail.



INAPPROPRIATE
OF PBGC RESC

The flyer is a **tabloid publication** similar to the flyer that I complained about yesterday. Check enclosed e-mail.



New Complaint :
More Flyers / ...

I will deliver copies of the 2 latest flyers to OGC, HRD, and EEO departments today.

I think that PBGC should already know that I believe that **Stuart Bernsen, Valda Johnson**, and **Rhonda Baird** are behind the latest flyer.

Please inform me if this new complaint that I am making to you will be merged into the November 3, 2005 memorandum. I am still forced to work in an unsafe work environment. **I am formally requesting an** <u>armed guard</u> **to stand outside of my office and protect my safety and well being in the workplace.** One of the offending individuals, Valda Johnson, works in the office next to my office.

Dwayne Jeffers
Federal Employee
EEO Complainant

0604-PERRY-00316

1

# WEISS AFFIDAVIT
# EXHIBIT 6

## Perry Robert

| | |
|---|---|
| **From:** | Baird Rhonda |
| **Sent:** | Monday, November 21, 2005 6:04 PM |
| **To:** | Montgomery Delarse |
| **Cc:** | Perry Robert; Jeffers Dwayne; Petta Richard; Greenhill Barry; Batsell Samuel |
| **Subject:** | RE: RE: "Local Leadership" Meeting with the Executive Director |

**Monty, you misread my message. If you look at the change in the addressees in the message you will see that in my last message you were moved from being copied to being an actual addressee. Therefore, my request for an explanation of the meeting was made to you directly in the second message. Sorry you missed the distinction. It is disappointing that I am not going to get a response from you regarding the substance of the meeting because from Mr. Perry's response, it appears that this was a meeting to discuss BU issues, not anyone's personal case. As you should very well know, I am not the one running around misusing people's confidential information and setting up employees.**

**My reference to a ULP was to what the UNION should be filing against PBGC. I give up on trying to get the union to do its work vis-à-vis the CBA. Time to focus on my arbitration again and as you can see from my message this evening, I have my hands full with the misconduct of Mr. Perry and Mr. Jeffers.**

-----Original Message-----
**From:** Montgomery Delarse
**Sent:** Monday, November 21, 2005 2:15 PM
**To:** Baird Rhonda
**Cc:** Perry Robert; Jeffers Dwayne; Petta Richard; Greenhill Barry; Batsell Samuel
**Subject:** RE: RE: "Local Leadership" Meeting with the Executive Director

Ms. Baird:
Your assumption that your request was expressly made to each attending officer/representative is very inaccurate. You initially sent your request to the Executive Board, with courtesy copies to Stewards. Your request for any official union document must be addressed to the Secretary of the Union who is required to maintain the official records.

As an attendee, I have no obligation to provide you or any member an account of my meeting. What I choose to disclose will be within line of need to know and relevancy. The matter I addressed to the Executive did not pertain to you or the Union. Regrettable, you choose to make allegations and innuendos. Should you choose to file an ULP and include an assumption regarding the September 13 meeting with the Executive Director, I do hope your professional decorum will guide your filing.

-----Original Message-----
**From:** Baird Rhonda
**Sent:** Monday, November 21, 2005 5:50 AM
**To:** Perry Robert; Jeffers Dwayne; Petta Richard; Greenhill Barry; Montgomery Delarse; Batsell Samuel
**Subject:** RE: "Local Leadership" Meeting with the Executive Director

**My request for a summary of the entire discussion at the September meeting with the ED is expressly made to each of the attendees. While you may choose not to respond to me, a dues-paying member of the union, please document your memory of the meeting ASAP because it may become important in any ULP or other action filed by the union challenging management's inaction on the CBA, among other issues. It would be the responsible thing**

to do— especially in light of the ED's clearly expressed desire to bring in pay for
performance and other anti-employee changes.

-----Original Message-----
**From:** Perry Robert
**Sent:** Friday, November 18, 2005 3:15 PM
**To:** Baird Rhonda
**Cc:** Jeffers Dwayne; Petta Richard; Greenhill Barry; Montgomery Delarse
**Subject:** RE: "Local Leadership" Meeting with the Executive Director

**Ms. Baird, I gave you my summary of events for the meeting. If you
want more please consult with other attendees.**

Robert T. Perry
NAGE

-----Original Message-----
**From:**        Baird Rhonda
**Sent:**        Friday, November 18, 2005 3:08 PM
**To:** Perry Robert
**Cc:** Jeffers Dwayne; Petta Richard; Greenhill Barry; Montgomery Delarse
**Subject:**     RE: "Local Leadership" Meeting with the Executive Director

**Not so fast, Mr. Perry! You're able to provide much more information.
Telling me the "topic" of discussion is not "summarizing the
discussion." For example, during an hour long discussion Mr. Belt must
have said more than express his desire for his "new management" to
negotiate the CBA, and the Union "leaders" did not sit like bumps on a
log and just listen—or did you? What, pray tell, was the union "leaders"
response to hearing that Mr. Belt wants to circumvent the law and
renegotiate a legally binding document? Did you immediately tell him he
has no authority to require the CBA renegotiated at this time and should
first approve the CBA as is, and await mid-term negotiations for any
changes he wishes to make?**

**I eagerly look forward to a comprehensive response from you and the
other attendees at the meeting.**

-----Original Message-----
**From:** Perry Robert
**Sent:** Friday, November 18, 2005 2:52 PM
**To:** Baird Rhonda
**Cc:** Jeffers Dwayne; Petta Richard; Greenhill Barry; Montgomery Delarse;
Perry Robert
**Subject:** RE: "Local Leadership" Meeting with the Executive Director

**Ms. Baird, the meeting of the Union with the Executive
Director occurred on September 13, 2005. The attendees
were: Petta, Jeffers, Perry, Montgomery, Greenhill, Batsell.
There were no promises nor documents provided by the**

parties in the room.  The Local has not had a meeting with Mr. Barber or any other executive management official as a board.  I cannot speak for others in regards to meetings independently with management officials.  We met with Mr. Belt for approximately an hour and discussed very few topics such as:  Promotion parity of Auditors with PLS's and actuaries, the need to have a CBA (Belt expressed that he wanted his new management to negotiate the CBA), and Reorganization of PBGC to better align our employees with our mission.   These are the major issues discussed in summary.  This is the extent of what I am able to provide.

Have a great NAGE day.


Robert T. Perry
NAGE

**From:**      Baird Rhonda
**Sent:**      Friday, November 18, 2005 1:12 PM
**To:**        Perry Robert; Jeffers Dwayne; Petta Richard
**Cc:**        Greenhill Barry; Montgomery Delarse
**Subject:**   "Local Leadership" Meeting with the Executive Director


It just dawned on me that one of the messages sent to me in the past week mentioned a meeting between the Local Board and PBGC's Executive Director, Bradley Belt.  How could I have missed that bit of information!?!?  Really, I am tired and stuff just doesn't register like it used to.  Anyway, please provide me with a summary of the meeting— when was it held, where was it held, who attended, what was discussed, etc.  Were any promises made?  If so, by whom and what was the specific promise?  Was the CBA or any other working condition discussed?  If so, please state the specific issues that were addressed and summarize the discussion about the issue.

On a related matter, since Mr. Barber, the new Chief Administrative Officer ahs been here for a few months now, has the Local also held a meeting with him?  If you have, can you also provide the details of that meeting.

If you have any correspondence or documents related to the questions above, I am expressly requesting a copy of them.  Of course, I am willing to pick them up and copy them at my expense.

Thank you for your cooperation in providing an appropriately

0604-PERRY-00292

Message

responsive reply to this e-mail. Frankly that kind of
information should have been immediately disseminated to the
bargaining unit.

0604-PERRY-00293

## Perry Robert

| | |
|---|---|
| **From:** | Baird Rhonda |
| **Sent:** | Monday, November 21, 2005 6:15 PM |
| **To:** | Petta Richard; Jeffers Dwayne; Perry Robert; 'shapiro@swickandshapiro.com'; 'dholway@nage.org'; 'rbarry@nage.org'; Bernsen Stuart; 'nage@erols.com'; 'spooler@nage.org' |
| **Cc:** | Montgomery Delarse; Greenhill Barry |
| **Subject:** | RE: Misuse of Union Records From the Rhonda Baird Arbitration |
| **Importance:** | High |

**Mr. Petta, you more than anyone else have an obligation to secure ALL of the records. Since it is all union records, it should not have been released without official action. So, please do not attempt to bifurcate the responsibilities of the union now, and just work to get an accounting of all the records that were disseminated and comply with the arbitrator's order. There is also a protective court order regarding the medical information in the record so the union is also in violation of the Court's decree re those records.**

-----Original Message-----
**From:** Petta Richard
**Sent:** Monday, November 21, 2005 6:08 PM
**To:** Baird Rhonda; Jeffers Dwayne; Perry Robert; 'shapiro@swickandshapiro.com'; 'dholway@nage.org'; 'rbarry@nage.org'; Bernsen Stuart; 'nage@erols.com'; 'spooler@nage.org'
**Cc:** Montgomery Delarse; Greenhill Barry
**Subject:** RE: Misuse of Union Records From the Rhonda Baird Arbitration

Please advise as to what specific records you are addressing.

-----Original Message-----
**From:** Baird Rhonda
**Sent:** Monday, November 21, 2005 5:16 PM
**To:** Petta Richard; Jeffers Dwayne; Perry Robert; 'shapiro@swickandshapiro.com'; 'dholway@nage.org'; 'rbarry@nage.org'; Bernsen Stuart; 'nage@erols.com'; 'spooler@nage.org'
**Cc:** Montgomery Delarse; Greenhill Barry
**Subject:** Misuse of Union Records From the Rhonda Baird Arbitration
**Importance:** High

**It is with shock and surprise that I learned today that Mr. Jeffers produced a great portion (if not all) of the evidentiary record from my arbitration to Robert Perry's private attorney, David Shapiro. Mr. Jeffers obtained all of the information in the evidentiary record in his capacity as a union official, as the arbitrator noted today when he learned about this action. He was aware of the existence of a protective order involving much of what he admitted producing. Mr. Jeffers, therefore, knowingly violated the confidentiality and privacy that should have been accorded the documents. In fact, much of the information he produced exceeded the scope of the subpoena and is clearly not responsive (thus begging the question of why it was produced in the first place). Additionally, the union, both Local and National, has received several expressions of concern about Mr. Jeffers' conduct vis-à-vis his responsibilities as a union official. These concerns**

0604-PERRY-00294

02/01/2006

included requests to return these very records to me to stem any likelihood of just this type of abuse.

This message is sent to each of you in your official capacities to inform you of the fact that this violation has in fact occurred and to request your assistance to stem the damage done by the misconduct of this union official.  Please know that Mr. Jeffers has been ordered to retrieve any and all medical and disciplinary information that has been produced and to ensure it is destroyed or turned over to the arbitrator.  Mr. Perry is ordered to do the same.  In fact, I expressly ask anyone who received any information from the Rhonda Baird arbitration records to please defer from using it or copying it or in anyway disseminating the information to allow me time to determine how best to address this matter.

I welcome the comments or suggestions of each of you on how this matter should be handled.  It would be most constructive if we can resolve this consensually.  It must be noted that in my opinion, Mr. Jeffers should be disciplined for his intentional misconduct.  It seems readily apparent that Mr. Jeffers hoped to put the information in Mr. Perry's hands so they both could use it for their own cases and actions against the agency and other bargaining unit members.  This type of behavior should not be countenanced by the Local, National, or anyone else involved in this situation.  I ask each of you to contact me to discuss this issue at your earliest convenience.

Thank you for your time and attention to this very serious matter.

0604-PERRY-00295

## Perry Robert

**From:**   Baird Rhonda

**Sent:**   Friday, January 13, 2006 1:01 PM

**To:**   Petta Richard; Montgomery Delarse; Greenhill Barry; Perry Robert; Jeffers Dwayne; Bernsen Stuart

**Subject:** FW: OIG's Semiannual Report to Congress for the period April 1, 2005 through September 30, 2005

**Looks like the e-mail sting was shutdown shortly after *folks* started asking too many questions, pointing out discrepancies between IG and HR statements, and poked holes in PBGC's explanation of what lead to the sting. The questions must have come too close to revealing that PBGC was engaged in disseminating information containing *truthiness* (statements PBGC wishes are true that aren't factually true). The last report said the investigation was *ongoing*; this report just summaries the information on actions already mentioned in the two prior reports. Another shining example of why we need a strong union willing to stand up against management—instead of one that causes "collateral damage" to its own members.**

-----Original Message-----
**From:** Bernsen Stuart
**Sent:** Friday, January 13, 2006 12:09 PM
**To:** Baird Rhonda
**Cc:** Bernsen Stuart
**Subject:** FW: OIG's Semiannual Report to Congress for the period April 1, 2005 through September 30, 2005

page 19


PBGC's E-systems Uses for Offensive Material

In a prior reporting period, we issued Reports of Investigation involving 30 federal employees and contractors who were using U.S. Government computers and the PBGC e-mail system to view, share, and store pornographic and other inappropriate material. Based on the investigation, PBGC contractors terminated 8 employees and counseled 3 others. PBGC suspended one federal employee and isssued letters of reprimand/counseling to 15 others.


-----Original Message-----
**From:** Emmons Robert
**Sent:** Friday, January 13, 2006 11:36 AM
**To:** ALL PBGC
**Subject:** OIG's Semiannual Report to Congress for the period April 1, 2005 through September 30, 2005

The Office of Inspector General's Semiannual Report to Congress for the period April 1, 2005 through September 30, 2005 is now available on the OIG website: http://oig1pbgc.gov/ <http://oig.pbgc.gov/>.

Bob Emmons
Inspector General

**0604-PERRY-00306**

0604-PERRY-00307

02/01/2006

## Perry Robert

| | |
|---|---|
| ᴐm: | Noble Nikki |
| ᴇnt: | Thursday, November 10, 2005 10:41 AM |
| To: | Baird Rhonda; Perry Robert |
| Cc: | Petta Richard; Jeffers Dwayne; Montgomery Delarse; Greenhill Barry; Johnson Valda; Johnson Loraine; Nickens Todd; Bernsen Stuart; Brickhouse Gennice; Long Andre |
| Subject: | RE: Copy of the Pending CBA |

Please keep my name off of these emails.  Thanks.

-----Original Message-----
**From:** Baird Rhonda
**Sent:** Thursday, November 10, 2005 10:38 AM
**To:** Perry Robert
**Cc:** Petta Richard; Jeffers Dwayne; Montgomery Delarse; Greenhill Barry; Johnson Valda; Johnson Loraine; Nickens Todd; Bernsen Stuart; Brickhouse Gennice; Long Andre; Noble Nikki
**Subject:** RE: Copy of the Pending CBA


**So, Robert, PBGC did come through and you decided to take some $$ and run!  GS-13 step 10 guaranteed for one year, $60,000 at the end of six months and leave without pay from the six month mark until 12 months.**

**You know on principle, I refused to let them by me off.  You sold yourself out and the people you represent by settling instead of fighting to make real long lasting change in the workplace.  You are no leader!**

**So, Dwayne, you next?**

-----Original Message-----
**From:** Baird Rhonda
**Sent:** Friday, November 04, 2005 11:30 AM
**To:** Perry Robert
**Cc:** Petta Richard; Jeffers Dwayne; Montgomery Delarse; Greenhill Barry
**Subject:** RE: Copy of the Pending CBA


**Robert, you mean a simple request for a copy today you can't handle without politics.  You're right, I got a copy.  Unfortunately, I can't find it and need another one today.  Is that too hard for you to appreciate?  Don't tax your brain or nothing, if you don't get it, you don't get it.  Next time you and your cohort want to put a copy of the streamlined version and letter from Barber under my door so that I can help you beat up on Dick, don't worry I'll still step in and help you out of your predicament because I get it!**

**Hey, on another note, how was the District Court hearing yesterday?  PBGC come through yet?**

| | |
|---|---|
| -----Original Message----- | |
| **From:** | Perry Robert |
| **Sent:** | Friday, November 04, 2005 11:11 AM |
| **To:** | Baird Rhonda |
| **Cc:** | Petta Richard; Jeffers Dwayne; Perry Robert; Montgomery Delarse; Greenhill Barry |
| **Subject:** | RE: Copy of the Pending CBA |

**0604-PERRY-00314**

**Ms. Baird, I believe that you have a copy of the pending CBA that was negotiated and signed by both management and agreed to by the prior Local NAGE Board.**

1

**Dues paying members such as yourself will receive a copy of the final CBA with all Articles for ratification early next week. It is the Board's desire to begin the ratification process next week pending signature of management. If management does not agree to begin the ratification process as it has stated to the President, the Local board will notify dues paying members of our next course of action at our next week Union monthly meeting.**

**NAGE**

Robert T. Perry
NAGE–Local R3–77, Secretary
(202) 326–4000, Ext. 3495

-----Original Message-----
| | |
|---|---|
| **From:** | Baird Rhonda |
| **Sent:** | Friday, November 04, 2005 8:50 AM |
| **To:** | Petta Richard; Jeffers Dwayne; Perry Robert |
| **Subject:** | Copy of the Pending CBA |
| **Importance:** | High |

Where can I get a copy of the pending CBA?  I need it ASAP.  Thanks.

0604-PERRY-00315

2

## Perry Robert

| | |
|---|---|
| From: | Perry Robert |
| nt: | Wednesday, January 25, 2006 4:38 PM |
| .o: | Baird Rhonda |
| Cc: | Petta Richard; Montgomery Delarse; Jeffers Dwayne; Greenhill Barry; Perry Robert |
| Subject: | FW: PBGC/Baird agq48000.PDF |

| | |
|---|---|
| Sensitivity: | Confidential |

Your block has been removed.

Robert T. Perry
NAGE

-----Original Message-----
| | |
|---|---|
| From: | Baird Rhonda |
| Sent: | Monday, January 23, 2006 8:25 AM |
| To: | Jeffers Dwayne; Montgomery Delarse |
| Cc: | Petta Richard; Greenhill Barry; Perry Robert |
| Subject: | RE: PBGC/Baird agq48000.PDF |
| Sensitivity: | Confidential |

Testing to see if the blocks have been removed.

-----Original Message-----
**From:** Jeffers Dwayne
**Sent:** Friday, January 20, 2006 5:32 PM
**To:** Montgomery Delarse; Baird Rhonda
**Cc:** Petta Richard; Greenhill Barry; Perry Robert; Jeffers Dwayne
**Subject:** FW: PBGC/Baird agq48000.PDF
**Sensitivity:** Confidential

Dear NAGE Local R3-77 Members,

Please be advised that Ricardo Silva of HRD informed me that PBGC unilaterally implemented that block which was not requested or authorized by myself.
Ricardo Silva informed that the block was implemented in regard to that Littler Mendelson investigative matter.
Ricardo Silva informed me that Rhonda Baird should contact him regarding the block.
Ricardo Silva informed me that the block has been "resolved".

I have neither requested that the block be implemented or removed by PBGC. I merely inquired as I was dumbfounded about the matter when I found out about the block.

Thank you,
Dwayne Jeffers
Vice President at Large, NAGE Local R3-77

-----Original Message-----
| | |
|---|---|
| From: | Jeffers Dwayne |
| Sent: | Friday, January 20, 2006 3:38 PM |
| To: | Montgomery Delarse; Baird Rhonda |
| Cc: | Petta Richard; Greenhill Barry; Perry Robert; Jeffers Dwayne |
| Subject: | RE: PBGC/Baird agq48000.PDF |
| Sensitivity: | Confidential |

Dear NAGE Local R3-77 members,

0604-PERRY-00527

I believe that PBGC unilaterally installed a block of Rhonda Baird's e-mails to myself, without any notice or authorization of myself.

As previously stated, I never requested, initiated, or authorized PBGC to block of Rhonda Baird's e-mails to myself.

I was able to successfully send Rhonda Baird an e-mail response below on January 20, 2006 at 3:30pm.

<< Message: Delivered:RE: PBGC/Baird agq48000.PDF >>

I believe that NAGE Local R3-77 Executive Committee may have to contact PBGC about this matter. Rhonda Baird is also free to independently handle the matter with PBGC.


Thank you,
Dwayne Jeffers
Vice President at Large, NAGE Local R3-77


-----Original Message-----
**From:**    Jeffers Dwayne
**Sent:**    Friday, January 20, 2006 3:30 PM
**To:**    Montgomery Delarse; Baird Rhonda
**Cc:**    Petta Richard; Greenhill Barry; Perry Robert; Jeffers Dwayne
**Subject:** RE: PBGC/Baird agq48000.PDF
**Sensitivity:**    Confidential

Please be advised that I have notified the Executive Committee that I have been experiencing computer problems since Tuesday, January 10, 2006. The computer problems are ongoing. I have also lost files due to the matter. To this very date the OIT has not resolved my computer problems.

Please be advised that I have not initiated or approved any e-mails blocks against Rhonda Baird. It is possible that the PBGC has been messing around with the system and unilaterally installed a block. I repeat that the block is not my doing.

Please let Rhonda Baird know that I have not blocked or attempted to block Rhonda Baird as a dues paying member of NAGE Local R3-77 from her sending e-mails to me.

I have included Rhonda Baird as a dues paying member on this e-mail to test and see if I am blocked from sending her e-mails. I will let you know if I get a blocking message.


Thank you,
Dwayne Jeffers
Vice President at Large, NAGE Local R3-77


-----Original Message-----
**From:**    Montgomery Delarse
**Sent:**    Friday, January 20, 2006 3:16 PM
**To:**    Jeffers Dwayne; Perry Robert
**Cc:**    Petta Richard; Greenhill Barry
**Subject:** FW: PBGC/Baird agq48000.PDF

Is there any particular reason(s) this member is restricted from contacting her union representatives? I thought Ms. Baird's arbitration was finished. At the next board meeting, I would like to be briefed on the status of this matter.
Thanks
Monty


-----Original Message-----
**From:**    Baird Rhonda
**Sent:**    Wednesday, January 18, 2006 7:11 AM
**To:**    Petta Richard
**Cc:**    Bernsen Stuart; Montgomery Delarse; Greenhill Barry
**Subject:** FW: PBGC/Baird agq48000.PDF


**How can Mr. Jeffers be the Local's representative on my arbitration when he is not going to accept e-mail messages from me to the parties in the arbitration matter (see below)? You have ignored the flagrant conflicts of interest between us. You cannot ignore this anymore. I repeat my request for a meeting with**

2

the full Board to discuss how the Local would be involved in my arbitration.  Mr. Perry isn't included in this message because he too is blocking my messages.

----Original Message----
**From:** System Administrator
**Sent:** Wednesday, January 18, 2006 7:07 AM
**To:** Jeffers Dwayne
**Subject:** Undeliverable:RE: PBGC/Baird agq48000.PDF

Your message did not reach some or all of the intended recipients.

    Subject:       RE: PBGC/Baird agq48000.PDF
    Sent: 1/18/2006 7:07 AM

The following recipient(s) could not be reached:

    Jeffers Dwayne on 1/18/2006 7:07 AM
        You do not have permission to send to this recipient.  For assistance, contact your system administrator.
        <hqweisoitexc01.prod.ent.pbgc.gov #5.7.1>

3

0604-PERRY-00529

# WEISS AFFIDAVIT
# EXHIBIT 7

# Formal Complaint of Discrimination

*06-11*

1. Complainant's Name: Robert T. Perry

   Home Address:     1354 Monaco Drive
                     Severn, MD 21144

   Home Telephone:   (410) 294-8969

   RECEIVED

2. Department/Division:   IPD/STCD/CAB
   Office Telephone:      (202) 326-4000, ext. 3495

   2006 APR 18 PM 4:50

   PBGC/EEO

3. Basis(es) for Complaint

   a. [ X ]  Race (Specify)
   b. [   ]  Color (Specify)
   c. [   ]  National Origin (Specify)
   d. [ X ]  Sex (Specify)
   e. [   ]  Age (Date of Birth)
   f. [   ]  Mental Disability (Specify)
   g. [   ]  Physical Disability (Specify)
   h. [   ]  Religion (Specify)
   i. [   ]  Sexual Orientation (Specify)
   j. [ X ]  Reprisal (Identify earlier event and/or opposed
             practice, give date: Retaliation for engaging in
   prior EEO claims – (PBGC EEO Case #01-01, #03-09, #04-06, #04-07, #04-
   11, representing PBGC employees EEO claims against PBGC – Ruby Taylor
   and Dwayne Jeffers.

4. Nature of Alleged Discriminatory Action (i.e., Promotion,
   Selection, Performance, etc.)   See attached document

5. Please provide the reasons why you believe discrimination has
   occurred.  (Continue on a separate sheet if needed.)
                              See attached document

6. Representative's Name:   Dwayne C. Jeffers
   Address:                 Pension Benefit Guaranty Corporation
                            1200 K Street, NW
                            Washington, DC 20005
   Telephone Number:        (202)326-4000, ext. 3750

7. Have you filed a grievance under a negotiated grievance procedure
   or an appeal to the Merit Systems Protection Board on the same
   matter(s) as described in 4 above?     Yes: _____   No: XXXXXX

   Complainant's Signature:
   Date:     April 18, 2006            Robt T. Perry

-----------------------------------------------------------------
For PBGC Administrative Use Only

Complaint Received By: J.Willie

Title: EEO Spec

PBGC Form 176(Revised 03/20/01)

06-11-0006

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

**Noisette Smith (Prior EEO Manager and EEO Specialist):**

I had several conversations with me that PBGC is an old white boy network and that it treats white employees EEO complaint differently than black. Noisette Smith stated that PBGC does not take a case serious until you obtain an attorney for your complaint. Noisette Smith has described his discrimination by PBGC officials since his employment with PBGC to include Joseph Grant and Stanley Hecht. Noisette Smith stated that OGC has discriminated against hiring black attorneys for PBGC.

PBGC is an independent governmental agency with very little oversight of its internal operations. As a result of PBGC's lack of operational oversight and laws which governs it employment actions, PBGC is able to skirt and avert many labor laws to its benefit with the use of its OGC, HRD and EEO staff and management officials. I contend with supporting evidence that PBGC provides favorable and or disparaging treatment for management and selected employees in the areas of employment and other labor issues as compared to employees such as myself.

I have attached Dwayne Jeffers' complete EEO file complaint with PBGC dated April 18, 2006. I consider Dwayne Jeffers' complete EEO file and separate attachments as evidence of my EEO charge in addition to my attachment listed below. My EEO file is package to prevent redundancy of documents and in keeping with the Federal government paper reduction act.

**MORE DOCUMENTS WILL BE PROVIDED AS THIS EEO COMPLAINT PROCESS PROCEEDS.**

Attachments:

1.    HRD Director Michele Pilipovich decision to Robert T. Perry regarding various forms of my harassment within PBGC dated February 16, 2006

06-11-0007

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

**Formal Complaint Submitted: April 18, 2006**

**Subject:**  EEO Complaint of Retaliation, Reprisal, Harassment and Disparate
Treatment Against Robert T. Perry

**PBGC Offending Officials:**        Bradley Belt, Executive Director
Steven Barber, Chief Administrative Officer
Judith Starr, General Counsel
Philip Hertz, Deputy General Counsel
Vincent Snowbarger, Chief Administrative
   Office and EEO Director
Stephen Weiss, EEO Neutral Attorney
Michele Pilipovich, HRD Director
Richard Lattimer, HRD Manager
Ricardo Silva, HRD Labor Specialist
Lori Bledsoe, EEO Manager

**PBGC Offending Employees:**        Stuart Bernsen, OGC Attorney
Rhonda Baird, OGC Attorney
Valda Johnson, Actuary

**Additional Supporting Evidence:**        **Attachments 1 though 5**

**NOTE:**        This EEO complaint is an individual complaint for
Robert T. Perry only and not intended to join another
party to this complaint filing.  This complaint is not
intended to violate a settlement agreement executed by
me on November 3, 2005.

Page 1 of 10

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

**answer #4**

**EEO Offenses Committed by PBGC Offending Officials:**

PBGC officials knowingly, deliberately, and or recklessly committed retaliatory, reprisal and harassment acts against me which violated my protected employee rights. PBGC officials are and were informed of my complaints regarding severe forms of harassment and have not taken swift and appropriate actions necessary to alleviate my various forms of work place harassment.

NOTE:     I signed a settlement agreement with PBGC on November 3, 2005 which was executed by a Federal Magistrate on November 8, 2005. This settlement agreement included various forms of harassment against me. This EEO complaint is in accordance with the settlement agreement with PBGC in that it contains complaints regarding EEO activities which occurred after November 8, 2005.

**answer #5**

Retaliation/Reprisal/Harassment/Disparate Treatment - Hostile Work place

**Dates of Last EEO Offenses:**  February 16, 2006 - PBGC's Human Relations Department (HRD) Director Michele Pilipovich issued PBGC's investigatory decision of harassment against me.

I believe PBGC officials to include HRD Director Michele Pilipovich have abused their position as senior Federal officials of the United States government when I was issued a flagrantly false investigation report that I was not harassed in any form by Stuart Bernsen (PBGC attorney), Valda Johnson, and Rhonda Baird (PBGC attorney). Stuart Bernsen, Rhonda Baird, and Valda Johnson were initially identified to PBGC Labor attorney Raymond Forster and PBGC HRD Labor Specialist and Harassment Investigator Ricardo Silva of my HRD harassment

06-11-0009

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

complaint. I was forced to file a formal EEO complaint of harassment on January 13, 2004 due to inaction of PBGC officials. I consider my current harassment complaint as a continuation of those charges which occurred after my settlement agreement with PBGC.

I have made many PBGC officials aware of harassment charges against me to include: PBGC Executive Director Bradley Belt, PBGC General Counsel Judith Starr, PBGC Deputy General Counsel Philip Hertz, PBGC Deputy Executive Director and Equal Employment Officer Vincent Snowbarger, PBGC Chief Administrative Officer Stephen Barber, PBGC Human Resource Director Michele Pilipovich, PBGC Human Resource Specialist Manager Richard Lattimer, EEO Manager Lori Bledsoe, and EEO Specialist David Williams. Many of these senior officials were informed of my harassment within PBGC since early 2005 through a detailed harassment complaint filed with HRD on January 13, 2004. My January 13, 2004 complaint submitted to HRD was dismissed and HRD Director Michele Pilipovich initiated an investigation against me for sexual harassment soon thereafter.

PBGC is aware that I was called as a witness for an arbitration hearing where I provided my issues and facts before an arbitrator. The hearing arbitrator considered PBGC investigation of it self initiated complaint against me a witch hunt for evidence against me. Specifically, the hearing arbitrator stated that PBGC's investigation of me by a private law firm of my charges was one-sided and exhaustive for PBGC. He further states that the PBGC's determination after its investigation concluded with a non-giveable counseling memo place in my personnel file.

My current EEO complaint is that I believe several PBGC officials abused their Federal authority when they falsely identify the harassment against me as protected activity by PBGC employees. Bradley Belt, PBGC Executive Director was sent notifications of my harassments to include copies of flyers as well. Bradley Belt has made several comments on the processing of my complaint to include a comment that he does not consider my comment helpful for him.

06-11-0010

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

PBGC HRD and OGC officials have conducted several investigations of blatant, and repetitive forms of harassment against me. PBGC officials have issued at least two of my harrassers counseling for their inappropriate dissemination of flagrant and harassing flyers and e-mails within PBGC. PBGC decision does state that it does not condone this type activity of my harrassers. However, PBGC wants to claim that my harrassers now have protected status for the dissemination of inappropriate material regarding me.

PBGC also hired a private law firm Littler Mendelson to conduct one of its three harassment investigations into my complaints and, as with previous investigators, I have provided the investigation law firm enormous supporting evidence and current case law with decision to supports my complaint of severe and blatant harassment by PBGC employees.

My EEO formal filing is a result of harassment to me. However, I must state that my EEO complaint is similar in many respects to Dwayne Jeffers a PBGC employee that has also faced the unwelcomed wrath of Stuart Bernsen, Valda Johnson, and Rhonda Baird. Just as Dwayne Jeffers complaint of similar harassment, HRD director Michele Pilipovich has dismissed Dwayne Jeffers HRD complaint as well. HRD Director Pilipovich stated that our harrassers were shielded from discipline as a result of their non use of PBGC equipment and resources and that they committed their inappropriate acts of harassment on non PBGC time. My harassment complaint within PBGC is from November 2005 as a result of my settlement agreement with PBGC. PBGC failure to take swift and appropriate action against my harrassers lead them to commit more harassment offenses. However, Dwayne Jeffers' complaint of harassment was initiated from June 2005 and continued along with my harassment. We were assigned the same investigators throughout the harassment complaint period with identical flyers from our harrassers.

PBGC issued its employees a memo on June 16, 20005 stating that it has a zero tolerance for harassment within its workplace. PBGC during this period of time authorized me to be under home protection from my harrassers and after a week at

06-11-0011

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

home ordered me back to work within PBGC building.   However, since that date and after, PBGC has not taken appropriate actions against my harassing offender to meaningfully deter their harassing behavior.  I believe PBGC inaction has encouraged my harassers of Stuart Bernsen, Valda Johnson, and Rhonda Baird.  I have been severely harassed, physically intimidated, and even subjected with threats of workplace violence against me.

PBGC is particularly knowledgeable of Stuart Bernsen's nearly 15 years of inappropriate outrageous behavior and activities.  For the investigation of harassment, I have provided PBGC its own files which contain signed confessions and apologies of sexual harassment, bigotry, and racism of Stuart Bernsen against his fellow employees.  PBGC has agreed with many settlement agreements for Stuart Bernsen to sign confessions of his inappropriate activity along with a promise for Stuart Bernsen to seize his inappropriate behavior in the future.  I contend Stuart Bernsen has gotten bolder with his harassing behavior after each of his apologies.

Some of my harassers such as Stuart Bernsen and Rhonda Baird have admitted that they have in fact disseminating and distributed e-mails and flyers about me which I consider false and defamatory.  PBGC is aware that some of the information contained in the communications of these individuals is patently false as well.  For example, a false statement made with one flyer was that I am working for and conspiring with PBGC to cause PBGC employees harm.  I have provided copies of several false and slanderous flyers and e-mails disseminated against me.

**NOTE:**      I signed a settlement agreement with PBGC on November 3, 2005 which was executed by a Federal Magistrate on November 8, 2005. This settlement agreement included various forms of harassment against me.

I have provided PBGC officials flyers from Stuart Bernsen inciting and requesting PBGC employees and contractors to file sexual harassment complaint against me and cause me physical harm.  I have informed PBGC management that Stuart

06-11-0012

**Continuation of Formal Complaint Form**
**EEO COMPLAINT**
**FOR ROBERT T. PERRY**

Bernsen dissemination of hostile communication against me has increased to level that I do not feel safe in my work environment.  PBGC has been informed of its **"vicarious employers liability"** for its failure to take appropriate, meaningful and corrective actions to secure my workplace from threats of violence from Stuart Bernsen.

PBGC harassment investigator Ricardo Silva stated to me that PBGC officials have his findings from his harassment investigation of me and that Stuart Bernsen, Valda Johnson, and Rhonda Baird committed the harassment.  I was further informed by Ricardo Silva that a final harassment investigation report was pending a joint recommendation of punishment from OGC and HRD officials of my harassing offenders.

Littler Mendelson conducted the second investigation into my harassment complaint. My first interview with PBGC investigation law firm Littler Mendelson was conducted on January 23, 2005.  I was informed by PBGC HRD Director Pilipovich that PBGC has decided to have a law firm investigate my June 2005charges in addition to my current harassment complaints.  PBGC official notified me that Littler Mendelson had completed its investigation into my harassment on January 10, 2006.  I believe that PBGC has again hired a law firm to conduct an exhaustive investigation against me to issue a  decision against me to substantiate a decision which favors PBGC.  Littler Mendelson also provides other services for PBGC in addition to investigations.

PBGC and its private law firm Littler Mendelson have determined that the activities of harassment by specific PBGC employees are considered protected activity. PBGC investigation decision concluded that the flyers and e-mails before and after November 8, 2005, are protected since the harassing employees did not use PBGC resources and their activities was not done on company (PBGC) time. PBGC does not want to acknowledge that the harassment occurred by PBGC employee(s) using their employee's identification cards and security passes to gain access to areas operated by PBGC.  As a result of PBGC decision, I am left with the understanding that I must be subjected to this type of behavior until I leave

06-11-0013

**Continuation of Formal Complaint Form**
**EEO COMPLAINT**
**FOR ROBERT T. PERRY**

PBGC employment and or for as long as my harrassers do not use PBGC resources and PBGC time to commit harassment acts against me.

PBGC has had several independent arbitration decisions against its management officials for the improper use of their authority. Particularly PBGC's EEO system and structure were cited for having inappropriate officials conducting several incompatible duties while as an EEO official. For example, Richard Lattimer while assigned to OGC was cited for been a Labor Relations Attorney defending PBGC against grievances and EEO claims and negotiating a collective bargaining agreement for PBGC, while holding a position to provided an EEO Director legal advice. PBGC was also cited for conducting inappropriate investigation of HRD's complaints in which again Richard Lattimer position now as an HRD Program Manager was cited for lack of supervision and involvement to insure that his employees did not conduct improper investigations.

I have been informed by several PBGC officials such as  Ricardo Silva (HRD Labor Specialist), Lori Bledsoe (Current EEO Manager), Noisette Smith (Prior EEO Manager and EEO Specialist),  Richard Anderson (EEO Counselor), that other PBGC officials are out to protect the interest of the PBGC and its officials. The following are summaries of information provided to me from PBGC officials.

**Ricardo Silva (HRD Labor Relations Specialist):**

Ricardo Silva is an HRD Labor Specialist and has discussed on several occasions with me that he has filed an EEO complaint against his HRD Director Michele Pilipovich specifically for racism and failure to promote him. Ricardo Silva has shown me a copy of his EEO complaint filing to PBGC EEO office to substantiate that he too is subject to various forms of harassment by PBGC as well. Ricardo Silva has expressed to me and other PBGC employees that he understands our employment problems and that OGC often tries to take control of labor and EEO cases which often caused most of the problems for him.

06-11-0014

## Continuation of Formal Complaint Form
## EEO  COMPLAINT
## FOR  ROBERT  T.  PERRY

**Lori Bledsoe (Current EEO Manager):**

Lori Bledsoe has had several conversations with me and other employees
individually and in groups of two and threes about her opinions of PBGC
management and it EEO system and structure. Lori Bledsoe has express that
PBGC is filed with a hierarchy of white men and that she is uncomfortable in the
way that PBGC operates its EEO program.  Lori Bledsoe has commented on how
white PBGC employees are treated differently than black employees for resolving
and settling EEO complaints.  Lori Bledsoe often would send e-mails to
management officials of my issues and those of an individual I represented while
we were in her office.  This happened often during the initial stages of my HRD
complaint of harassment of e-mail and flyers against Stuart Bernsen, Valda
Johnson, and Rhonda Baird.

**David Williams (EEO Specialist)**

David Smith has stated to me and my EEO Representative that he considered
PBGC to have committed an egregious act toward me in a previous EEO
complaint regarding inappropriate SF-50's.

**Richard Anderson (EEO Counselor):**

Richard Anderson and I had a conversation in which he stated that he was aware
of Bennie Hagans, BAPD Director,  EEO complaint filed against PBGC.  Richard
Anderson  shared with me that Bennie Hagans EEO complaint was against his
bosses above him to include Joseph Grant and Bradley Belt.  Richard Anderson
also stated that one of Bennie Hagans' complaints contained an EEO complaint of
desperate treatment.  Particularly he stated that Bennie Hagans believed Kate
Blunt was treated differently than he was for her similar ethical charge of steering
a PBGC contract as determined by the General Accountability Office GAO).  I
briefly viewed Bennie Hagans' Report of Investigation (ROI) by accident in David
Williams's Office.

06-11-0015

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

2.  HRD Director Michele Pilipovich decision to Dwayne Jeffers regarding various forms of my harassment within PBGC dated February 16, 2006

3.  Department of the Air Force, 315th Airlift Wing vs. Federal Labor Relations Authority, United States Court of Appeals for the District of Columbia Circuit Argued April 25, 2002 and Decided July 12, 2002

4.  Dwayne Jeffers' complete EEO complaint filed April 18, 2006

5.  Shaw, Bransford, Veilleux & Roth Law Firm Report of Investigation of Sexual Harassment Complaint of Elizabeth Baker dated March 24, 2004 (227 pgs.)

Respectfully Submitted,

Robert T. Perry
EEO Complainant

Page 10 of 10

06-11-0016

**WEISS AFFIDAVIT
EXHIBIT 8**

# Formal Complaint of Discrimination

06-18

1. Complainant's Name: Robert T. Perry

   Home Address: 1354 Monaco Drive
   Severn, MD 21144

   Home Telephone: (410) 294-8969

   RECEIVED

   2006 JUL 25 AM 9:38

2. Department/Division: IPD/STCD/CAB    PBGC/EEO
   Office Telephone: (202) 326-4000, ext. 3495

3. Basis(es) for Complaint

   a. [ X ]    Race (Specify)
   b. [   ]    Color (Specify)
   c. [   ]    National Origin (Specify)
   d. [ X ]    Sex (Specify)
   e. [   ]    Age (Date of Birth)
   f. [   ]    Mental Disability (Specify)
   g. [   ]    Physical Disability (Specify)
   h. [   ]    Religion (Specify)
   i. [   ]    Sexual Orientation (Specify)
   j. [ X ]    Reprisal (Identify earlier event and/or opposed
               practice, give date: Retaliation for engaging in
   prior EEO claims - (PBGC EEO Case #01-01, #03-09, #04-06, #04-07, #04-11, and for representing PBGC employees EEO claims against PBGC such as Ruby Taylor and Dwayne Jeffers.

   Nature of Alleged Discriminatory Action (i.e., Promotion, Selection, Performance, etc.)   See attached document

5. Please provide the reasons why you believe discrimination has occurred.  (Continue on a separate sheet if needed.)
   See attached document

6. Representative's Name: Dwayne C. Jeffers
   Address: Pension Benefit Guaranty Corporation
   1200 K Street, NW
   Washington, DC 20005

   Telephone Number: (202)326-4000, ext. 3750

7. Have you filed a grievance under a negotiated grievance procedure or an appeal to the Merit Systems Protection Board on the same matter(s) as described in 4 above?    Yes: _____    No: XXXXXX

   Complainant's Signature:
   Date:   July 24, 2006

--------------------------------------------------------------------

**For PBGC Administrative Use Only**

Complaint Received By: James Seiber

06-18-0001

Title: CFO

PBGC Form 176 (Revised 03/20/01)

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

**PBGC Offending Officials:**
      Bradley Belt, Former Executive Director
      Steven Barber, Chief Administrative Officer
      Judith Starr, General Counsel
      Philip Hertz, Deputy General Counsel
      Vincent Snowbarger, Chief Administrative
        Officer
      Lori Bledsoe, EEO Manager
      Stephen Weiss, EEO Neutral Attorney
      Michele Pilipovich, HRD Director
      Jackie Isaac, HRD Personnel Specialist
      Ricardo Silva, HRD Labor Specialist

**NOTE:**    This EEO complaint is an individual complaint for Robert T. Perry only and not intended to join another party to this complaint filing. This complaint is not intended to violate a settlement agreement executed by me on November 3, 2005.

**4.**    **Nature of alleged Discriminatory Action (i.e., Promotion, Section, Performance, etc.)**

PBGC officials knowingly, deliberately, and recklessly committed retaliatory, reprisal and harassment acts against me which violated my protected employee rights.

**NOTE:**    I signed a settlement agreement with PBGC on November 3, 2005 which was executed by a Federal Magistrate on November 8, 2005. This settlement agreement included various forms of harassment against me. This EEO complaint is in accordance with the settlement agreement with PBGC in that it contains complaints regarding EEO activities which occurred after November 8, 2005.

**5.**    **Please provide the reasons why you believe discrimination has occurred.**

    **Complaint #1:**    Retaliation/Reprisal/Harassment/Disparate Treatment/Hostile Work place

**Dates of Last EEO Offenses:** May 14, 2006 - PBGC's Human Relations Department (HRD) personnel specialist Jackie Isaac on behalf of Michele Pilipovich, HRD Director, issued me a Standard Form 50 with language designed to hinder my future non PBGC employment. Jackie Isaac's action follows prior complaints to PBGC officials of inappropriate language placed on SF-50's provided to me.

06-18-0002

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

My conversation with PBGC EEO Counselor David Williams stated that HRD Director Pilipovich stated that she could only see one sentence which could be construed as inappropriate. I believe that the language contained in the remarks section of SF-50 provided to me dated May 14, 2006 indicate that I have special and not favorable personnel actions. I believe the language contained in the document would have the average employer seek answers to what the language on the SF-50 referred to.

I strongly believe that PBGC officials' HRD Pilipovich and Personnel Specialist Jackie Isaac took direct actions against me with the knowledge and approval of Steven Barber, (Chief Administrative Officer) and Bradley Belt Executive Directive). I consider the actions of PBGC officials as a continuation of prior EEO complaints filed against PBGC for inappropriate SF-50's.

| Complaint #2: | Retaliation/Reprisal/Harassment/Disparate Treatment /Hostile Work place |

**Dates of Last EEO Offenses:** May 9, 2006 - I believe that PBGC improperly used it Equal Employment program with the specific support of EEO Director Snowbarger and EEO Neutral Attorney Steve Weiss to falsely justify and deny me my full rights as provided for under a Federal system of employment discrimination. I believe that PBGC EEO Director Vincent Snowbarger and EEO Neutral Attorney Steve Weise improperly used their positions to withhold my right to a formal independent EEO investigation by a qualified investigator. These EEO Official I believe falsely interpreted clearly established and defined labor laws and employment laws. Each decision to deny me a full and complete EEO investigation denied my ability obtain evidence to correct my employment discrimination against PBGC officials.

The below are examples of past judgements against PBGC ability as a neutral party against it employees:

1. PBGC has been identified as an agency that has blatantly violated EEOC law and regulations. FLRA Arbitrator Gloria Johnson (former EEOC Administrative Judge) concluded in an arbitrator decision dated October 30, 2001 that PBGC officials violated EEO rights of it employees when it

2. FLRA Arbitrator Judge Robert Moore (former Department of Justice, Deputy Director of the Civil Right Division) concluded in his arbitration decision dated April 26, 2006 that PBGC officials in HRD and OGC knowingly violated the rights of PBGC employees. Arbitrator Moore's decision stated that OGC and HRD conducted flagrant violations of investigations with the help of PBGC

06-18-0003

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

officials to affect an outcome for the benefit of PBGC.

I have been informed by several PBGC officials such as Ricardo Silva (HRD Labor Specialist), Lori Bledsoe (Current EEO Manager), Noisette Smith (Prior EEO Manager and EEO Specialist), Richard Anderson (EEO Counselor), that other PBGC officials are out to protect the interest of the PBGC and its officials. I believe PBGC officials have taken a position on my EEO complaints that are designed to defend PBGC's actions to justify and support various PBGC's legal defenses against my EEO complaints. I believe that I have been retaliated by PBGC officials for my prior complaints against PBGC senior officials.

EEO Director Snowbarger has denied my EEO formal complaints for investigation with clear and definitive decisions and comments that demonstrate his bias toward my EEO complaints. Most, if not all of EEO Director Snowbarger's decision are based on decision of PBGC investigation or self serving documents. EEO Director goes further to support PBGC's defense against my EEO complaints with a disregard for providing the possibility of my complaints as valid and truthful.

EEO Director opinions to deny me formal investigations of my EEO complaints provide the first defensive positions for PBGC officials. PBGC officials understand that an independent investigation would obtain documents and statements from witnesses that would not serve PBGC's interest to find its officials liable for discrimination infractions. Several of my formal EEO complaints are against senior PBGC officials and agents to include Bradley Belt (Executive Director), Michele Pilipovich (HRD Director), Steven Barber ( Chief Administrative Officer), and others. Mr. Snowbarger in his other PBGC duty as PBGC Legislative Director has also defended PBGC actions against me to Congressman Benjamin Cardin.

EEO Director Vincent Snowbarger primarily uses one of two options to deny me an investigation to my EEO complaints - (1) failure to state a claim and (2) my EEO complaint is moot. EEOC provides requirements to dismiss an EEO complaint within MD-110 as provided below. EEO Director Snowbarger uses PBGC investigation reports and internally produced claims to make his assumption that I am unable to obtain a decision against PBGC official based on outdated and misrepresentation of the law. I do not claim to be a lawyer as EEO Director Snowbarger, however, many legal experts that I have consulted have informed me that many of EEO Director Snowbarger's legal opinion are not valid.

### Failure to State a Claim-§§ 1614.107(a)(1)

The complainant failed to state a claim under §§ 1614.103. This may include a claim that does not allege discrimination on a basis encompassed in one of the statutes applicable to federal sector employees. In determining whether a complaint states a claim, the proper

06-18-0004

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

inquiry is whether the conduct if true would constitute an unlawful employment practice under the EEO statutes. Cobb v Department of the Treasury, EEOC Request No. 05970077 (March 13, 1997) (a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the complainant cannot prove a set of facts in support of the claim which would entitle the complainant to relief; the trier of fact must consider all of the alleged harassing incidents and remarks, and considering them together in the light most favorable to the complainant, determine whether they are sufficient to state a claim). See also Burlington Industries, Inc. v. Ellerth, 118 S. Ct. 2257, 2268-69 (1998) (referencing cases in which courts of appeals considered whether various employment actions were sufficient to state a claim under the civil rights laws). Dismissal for failure to state a claim also may be appropriate where the complainant named the improper agency. See §§ 1614.106(a).

I consider this EEO complaint a continuation of my prior EEO harassment by PBGC officials in that many of the same officials have committed similar retaliatory violations against me

The following are summaries of information provided to me from PBGC officials:

**Ricardo Silva (HRD Labor Relations Specialist):**   Ricardo Silva is an HRD Labor Specialist and has discussed on several occasions with me that he has filed an EEO complaint against his HRD Director Michele Pilipovich specifically for racism and failure to promote him. Ricardo Silva has shown me a copy of his EEO complaint filing to PBGC EEO office to substantiate that he too is subject to various forms of harassment by PBGC as well. Ricardo Silva has expressed to me and other PBGC employees that he understands our employment problems and that OGC often tries to take control of labor and EEO cases which often caused most of the problems for him.

**Lori Bledsoe (Current EEO Manager):**   Lori Bledsoe has had several conversations with me and other employees individually and in groups of two and threes about her opinions of PBGC management and it EEO system and structure. Lori Bledsoe has express that PBGC is filed with a hierarchy of white men and that she is uncomfortable in the way that PBGC operates its EEO program. Lori Bledsoe has commented on how white PBGC employees are treated differently than black employees for resolving and settling EEO complaints. Lori Bledsoe often would send e-mails to management officials of my issues and those of an individual I represented while we were in her office. This happened often during the initial stages of my HRD complaint of

Page 4 of 7

06-18-0005

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

harassment of e-mail and flyers against Stuart Bernsen, Valda Johnson, and Rhonda Baird.

**David Williams (EEO Specialist):**  David Smith has stated to me and my EEO Representative that he considered PBGC to have committed an egregious act toward me in a previous EEO complaint regarding inappropriate SF-50's.

**Richard Anderson (EEO Counselor):**  Richard Anderson and I had a conversation in which he stated that he was aware of Bennie Hagans, BAPD Director, EEO complaint filed against PBGC. Richard Anderson shared with me that Bennie Hagans EEO complaint was against his bosses above him to include Joseph Grant and Bradley Belt. Richard Anderson also stated that one of Bennie Hagans' complaints contained an EEO complaint of desperate treatment. Particularly he stated that Bennie Hagans believed Kate Blunt was treated differently than he was for her similar ethical charge of steering a PBGC contract as determined by the General Accountability Office GAO). I briefly viewed Bennie Hagans' Report of Investigation (ROI) by accident in David Williams's Office.

**Noisette Smith (Prior EEO Manager and EEO Specialist):**  I had several conversations with me that PBGC is an old white boy network and that it treats white employees EEO complaint differently than black. Noisette Smith stated that PBGC does not take a case serious until you obtain an attorney for your complaint. Noisette Smith has described his discrimination by PBGC officials since his employment with PBGC to include Joseph Grant and Stanley Hecht. Noisette Smith stated that OGC has discriminated against hiring black attorneys for PBGC.

PBGC is an independent governmental agency with very little oversight of its internal operations. As a result of PBGC's lack of operational oversight and laws which governs it employment actions, PBGC is able to skirt and avert many labor laws to its benefit with the use of its OGC, HRD and EEO staff and management officials. I contend with supporting evidence that PBGC provides favorably and or disparaging treatment for management and selected employees in the areas of employment and other labor issues as compared to employees such as myself.

**Additional Supporting Evidence:   Attachments 1 though**

1.     Settlement Agreement between PBGC and Robert T. Perry executed November 8, 2005
2.     PBGC HRD SF-50s for Robert T. Perry approved May 12, 2006

Page 5 of 7

06-18-0006

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

3.  PBGC HRD SF-50s for Robert T. Perry approved January 9, 2006

4.  PBGC HRD SF-50s for Robert T. Perry approved November 23, 2005

5.  PBGC HRD SF-50s for Robert T. Perry approved November 23, 2005

6.  PBGC HRD SF-50s for Robert T. Perry approved November 14, 2005

7.  PBGC HRD Revised SF-50s for Robert T. Perry initially approved November 23, 23, and 14, 2005

8.  Arbitrator Gloria Johnson's decision against PBGC for an unfair and non-impartial processing of EEO complaints dated October 30, 2001

9.  Summary of Formal EEO complaint of discrimination submitted to PBGC EEO Director dated February 2, 2006

10. E-mails (54 pages) regarding notice to PBGC officials that SF-50's issued to Robert Perry contained inappropriate language on them

11. PBGC EEO Director's Dismissal letter to Robert Perry's Formal EEO complaint number 06-04

12. PBGC EEO Director's Dismissal letter to Dwayne Jeffers' Formal EEO complaint number 06-02

13. PBGC EEO Director's Dismissal letter to Robert Perry's Formal EEO complaint number 04-11

14. PBGC EEO Director's Dismissal letter to Robert Perry's Formal EEO complaint number 04-06

15. Robert Perry's request for PBGC FOIA staff to provide documents related to any counseling to me for release of private or confidential information dated April 25, 2006

16. PBGC FOIA information regarding documents related to any counseling of Robert Perry for release of private or confidential information dated June 5, 2006

17. NAACP letter to PBGC regarding allegations of racism & abuse of authority at PBGC dated December 15, 2002

18. NAACP Interim Report IV, National EEO Summit IV dated January 17, 2004

19. PBGC Letter from HRD Director Sharon Barbee-Fletcher to Valda Johnson regarding institutional grievance for Johnson's allegations of racism dated June 20, 2001

20. Federal Court Subpoena from Robert Perry to Dwayne Jeffers for documentation of Rhonda Baird's grievance arbitration dated November 21, 2005

21. Seyfarth Shaw, LLP attorney Abbey Hairston letter to Arbitrator Robert Moore refuting

06-18-0007

## Continuation of Formal Complaint Form
## EEO COMPLAINT
## FOR ROBERT T. PERRY

claims made by Rhonda Baird dated April 24, 2006

22. Webster, Fredrickson & Brackshaw, Seyfarth attorney Jonathan Puth letter to Arbitrator Robert Moore regarding sanction against various parties for certain disclosure regarding Rhonda Baird dated April 14, 2006

23. Arbitrator Robert Moore letter regarding Rhonda Baird's grievance dated April 5, 2006

24. PBGC letter to Arbitrator Robert Moore regarding breach of Rhonda Baird's confidential information dated February 28, 2006

25. PBGC's report from Michele Pilipovich letter to Robert Perry regarding complaint of workplace harassment dated February 16, 2006

26. NAGE, Local letter to Arbitrator Robert Moore regarding Robert Perry and Dwayne Jeffers workplace harassment within PBGC

27. Arbitrator Robert Moore's decision of liability against PBGC with a letter containing a key of unidentified personnel in his decision document regarding Rhonda Baird's grievance dated April 26, 2006

28. Arbitrator Robert Moore decisions on evidentiary issues to parties of Rhonda Baird's grievance dated August 3, 2004

29. PBGC IG declaration from Frederick T. Zigan dated September 21, 2004

30. E-mails from PBGC HRD regarding inappropriate sexual use of computers within PBGC (19 pages) by management and non-management employees

31. Investigation report to James Keightley (General Counsel) from William Beyer (Deputy General Counsel) regarding Robin Horning's (PBGC labor attorney) complaint of inappropriate behavior dated March 20, 2002

Respectfully Submitted,

Robert T. Perry
EEO Complainant

06-18-0008

# WEISS AFFIDAVIT
# EXHIBIT 9



**PBGC** **Pension Benefit Guaranty Corporation**
Protecting America's Pensions    1200 K Street, N.W., Washington, D.C. 20005-4026

### DELIVERED BY HAND

Dwayne Jeffers
Representative of Robert T. Perry
Room 8749
Pension Benefit Guaranty Corporation
1200 K Street, NW
Washington, D.C.  20005

Re:       **Robert T. Perry**
          **Consolidation and Dismissal of**
          **PBGC Formal Complaints No. 06-11 and 06-18**

Dear Mr. Jeffers:

On April 18, 2006, Mr. Perry filed a formal complaint of discrimination that has been docketed as PBGC Formal Complaint No. 06-11.  PBGC acknowledged receipt of the complaint by letter dated April 25, 2006.  Mr. Perry's initial contact with the EEO Office took place on March 15, 2006.  In the formal complaint, Mr. Perry alleges that he has been discriminated against based on race, sex, and retaliation when he was subjected to a hostile work environment by certain individuals and PBGC did not take appropriate actions to alleviate the work place harassment.

On July 24, 2006, Mr. Perry filed a formal complaint of discrimination that has been docketed as PBGC Formal Complaint No. 06-18.  PBGC acknowledged receipt of the complaint by letter dated September 20, 2006.  Mr. Perry's initial contact with the EEO Office took place on May 10, 2006.  In the formal complaint, Mr. Perry alleges that he has been discriminated against based on race, sex, and retaliation when PBGC (1) issued him a Notification of Personnel Action ("Form SF-50") with language designed to hinder his future non-PBGC employment, and (2) issued a decision in PBGC Formal Complaint No. 06-04, which dismissed his EEO complaint.[1]

Under EEOC Regulation 29 C.F.R. § 1614.606 (Joint Processing and Consolidation of Complaints), and EEOC Management Directive 110, Chapter 5, Section III.C, agencies are required to consolidate two or more complaints of discrimination filed by the same complainant. Accordingly, Mr. Perry's claims in PBGC Formal Complaint Nos. 06-11 and 06-18 will be considered on a consolidated basis.  For the reasons indicated below, I must dismiss Mr. Perry's complaints, pursuant to EEOC Regulation 29 C.F.R. §§ 1614.107(a) (1), (3) and (8).

---

[1]       During his informal counseling, Mr. Perry also claimed that a law firm hired by PBGC spread false information about him.  That claim however was not included in the formal complaint.  Accordingly, no further action is necessary with respect to that claim.

In PBGC Formal Complaint No. 06-04, Mr. Perry raised the same claim in connection with earlier Form SF-50's that had been issued. As in PBGC Formal Complaint No. 06-04, I conclude that Mr. Perry's Form SF-50 claims must be dismissed pursuant to EEOC Regulation 29 C.F.R. §§ 1614.107(a)(1) and (3). First, since the District Court retained jurisdiction over the settlement, it is that body, rather than the EEO process, that has jurisdiction over this dispute. Therefore, this claim must be dismissed, pursuant to EEOC Regulation 29 C.F.R. § 1614.107(a)(3). See Lehman v. Potter, Appeal No. 01A24866 (February 27, 2003) (agency properly dismissed complaint under 29 C.F.R. § 1614.107(a)(3) as a collateral attack on a prior District Court settlement).

Mr. Perry's claim must also be dismissed for failure to state a claim under EEOC Regulation 29 C.F.R. § 1614.107(a)(1). Mr. Perry has not demonstrated any specific harm, nor has Mr. Perry has provided any concrete evidence of his allegation that PBGC was attempting to hinder future non PBGC employment. Bejar v. Dep't of Veterans Affairs, EEOC Appeal No. 01A11321 (April 3, 2001) (agency properly dismissed complaint because allegations "merely speculative without supporting evidence in the record."). The settlement agreement was silent on whether PBGC had to provide Mr. Perry with a mutually acceptable Form SF-50, and he has not demonstrated that PBGC violated either the letter or the spirit of the settlement.

Finally, in PBGC Formal Complaint No. 06-18, Mr. Perry claims that PBGC's dismissal of his complaint in PBGC Formal Complaint No. 06-04 was retaliatory. Mr. Perry provides no concrete evidence to support his argument. Moreover, the EEOC has consistently held that "a complainant may not collaterally attack a final agency decision by filing a second complaint challenging the determination rendered in that decision. The proper way to challenge a final agency decision is to appeal it to the EEOC." Merck v. USPS, EEOC Appeal No. 01882814 (September 9, 1988); see also Daggett v. USPS, EEOC Appeal No. 01A43065 (August 11, 2004) (agency properly dismissed under EEOC Regulation 29 C.F.R. § 1614.107(a)(8) a claim that a previously filed formal complaint was improperly dismissed, since the second complaint alleged dissatisfaction with the processing of a prior complaint). Thus, Mr. Perry's claim, must be dismissed pursuant to EEOC Regulation 29 C.F.R. §§ 1614.107(a)(1) and (8).

In summary, Mr. Perry's claims in PBGC Formal Complaint Nos. 06-11 and 06-18 are dismissed pursuant to EEOC Regulation 29 C.F.R. §§ 1614.107(a)(1), (3) and (8), and therefore, he is entitled to no relief under the EEO laws.

Mr. Perry has the right to appeal this decision to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036-9848, within 30 calendar days after you receive this decision. Mr. Perry must use EEOC Form 573, a copy of which is enclosed, in connection with an appeal. He may also deliver an appeal in person or by facsimile to the Office of Federal Operations, provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with an appeal, Mr. Perry must submit proof to the EEOC that a copy of the appeal and any supporting documentation or brief also were submitted to the PBGC, to the attention of the undersigned, at the EEO Office, Tenth Floor, 1200 K Street NW, Washington, D.C. 20005. Mr. Perry is advised that if he files an appeal beyond the 30 day period set forth in EEOC regulations, he should provide an explanation

In PBGC Formal Complaint No. 06-11, Mr. Perry claims that he had been subjected to a hostile work environment. The issue of whether certain individuals subjected Mr. Perry to a hostile work environment was the subject of an internal PBGC investigation, which was conducted at Mr. Perry's request, during July and December 2005. On February 16, 2006, the Director, Human Resources Department, issued a Memorandum (the "HRD Investigation"), which concluded the actions that he complained about did violate the CBA or PBGC policies, or jeopardize his safety in the workplace. The investigation also found that PBGC's options were quite limited when an employee is engaged in "protected activity" in the labor relations context. See, e.g., Overseas Education Association, 11 FLRA 377 (1983) ) (when union requested agency to discipline non-member employee for distributing letter, which publicized union's failure to help employee and urging union president be "recalled" from position, the union violated the employee's protected activity rights).

Mr. Perry raised the same hostile work environment claim in PBGC Formal Complaint No. 06-04. On May 3, 2006, PBGC dismissed that complaint, including the hostile work environment claim, pursuant to EEOC Regulation 29 C.F.R. §§ 1614.107(a)(1) and (3). After examining the findings of the HRD Investigation, the Dismissal Letter concluded that Mr. Perry's allegations involved incidents that occurred during the course of an internal union upheaval, and in that context, he had not been subjected to impermissible workplace harassment that is actionable under the EEO laws. For that reason, consistent with EEOC precedent, the Dismissal Letter concluded that Mr. Perry's claims were properly dismissed pursuant to 29 C.F.R. § 1614.107(a)(1). Dennis v. Department of Veteran Affairs, EEOC Appeal No. 01A05224 (November 8, 2000) (complainant, a union vice president, failed to state a claim when union members spread rumors and email messages).[2]

Mr. Perry's current complaint raises the same claims that were rejected in PBGC Formal Complaint No. 06-04. Under EEOC Regulation 29 C.F.R. §§ 1614.107(a)(1), an agency must dismiss a complaint that raises the same claim that was already decided by the agency. See McGhee v. USPS, EEOC Appeal No. 01A40932 (April 14, 2004). Thus, Mr. Perry's claim, which raises the same claim as raised in PBGC Formal Complaint No. 06-04, must be dismissed pursuant to EEOC Regulation 29 C.F.R. §§ 1614.107(a)(1).

In PBGC Formal Complaint No. 06-18, Mr. Perry claims that he had been discriminated against when PBGC issued a Form SF-50 with language designed to hinder his future non-PBGC employment. The language that Mr. Perry is concerned with is the by-product of a settlement of a prior EEO action, Perry v. Chao, Civil Action Nos. 03-2495 and 04-1996 (U.S.D.C., dated November 8, 2005) (the "Settlement Agreement").

---

[2]     In his EEO complaint, Mr. Perry disputes the conclusion that his union opponents were engaged in protected activity, citing Dep't of the Air Force, 315th Airlift Wing v. FLRA, 294 F.3d 192 (D.C. Cir. 2002). In that case, the Court found that a union representative's behavior during a meeting, which included inappropriate words, as well as actual physical contact and physical intimidation, was not a protected activity under the FLRA. However, in the instant case, there was never any physical contact, nor was Mr. Perry able to demonstrate any reasonable fear of harm or violence. HRD Investigation, at 3. Thus, that case is inapposite. See Dep't of Veteran Affairs v. NAGE, 58 F.L.R.A. 44, 48 n.3 (September 10, 2002) (limiting the 315th Airlift Wing case to incidents involving physical touching).

as to why the appeal should be accepted despite its untimeliness. If he cannot explain why any untimeliness should be excused in accordance with EEOC Regulation 29 C.F.R. § 1614.604, the EEOC may dismiss the appeal as untimely.

Alternatively, if Mr. Perry is dissatisfied with PBGC's decision in this case, he may file a civil action in an appropriate United States District Court within 90 calendar days of the receipt of this decision, or within 90 days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been issued. If Mr. Perry chooses to file a civil action, that action should be captioned Robert T. Perry v. Vincent K. Snowbarger, Interim Director, Pension Benefit Guaranty Corporation. Mr. Perry may also request the court to appoint an attorney for him and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the United States District Judge. Such an application must be filed within the same time period for filing the civil action.

If you or Mr. Perry has any questions about this complaint, please contact Lori J. Bledsoe, PBGC's EEO Manager, at (202) 326-4000, extension 3345.

Sincerely,

James C. Gerber

Dated:  9/28/06

James C. Gerber
Acting EEO Director

Enclosure:    EEOC Form 573

cc:    Robert T. Perry
       Lori J. Bledsoe

-4-