# ATTACHMENT B



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROBERT T. PERRY,<br><br>Plaintiff<br><br>v.<br><br>VINCENT K. SNOWBARGER,<br>Interim Director<br>Pension Benefit Guaranty Corporation,<br><br>Defendant. | ) | Case No. 06-CV-01371-CKK |

**AFFIDAVIT OF MICHELE PILIPOVICH**

I, Michele Pilipovich, declare as follows:

1. I am over eighteen years of age, have personal knowledge of the facts stated in this Affidavit, and am competent to testify to the matters stated herein.

2. I am currently employed as the Director of the Human Resources Department ("HRD") of the Pension Benefit Guaranty Corporation ("PBGC" or "Agency"). I have held this position with the Agency since January 2004, and have been employed by the PBGC since June 2003. As Director of HRD, my responsibilities include approving personnel actions and supervising, in conjunction with the Office of General Counsel, the investigation of employee misconduct.

3. I am aware that on November 8, 2005, a Stipulation of Settlement and Dismissal ("Stipulation ") was entered in two cases before the United States District Court for the District of Columbia between Robert Perry and PBGC, Civil Action Nos. 03-2495 and 04-1996 (CKK). *See* Exhibit 1. Pursuant to the Stipulation, PBGC affected personnel actions to reflect a retroactive promotion to a GS-13, Step 3 without backpay, a promotion to a GS-13, Step 10 with an increase in his pay accordingly, a detail to PBGC's Contract and Control Review Division ("CCRD") for 6 months, and placement on Leave Without Pay ("LWOP") not to exceed November 12, 2006; paid Robert Perry's health insurance premiums while he was on LWOP; paid for training opportunities not to exceed $10,100; provided Robert Perry access to PBGC voicemail and e-mail while he was on LWOP to assist in his job search; provided Robert Perry with an appropriate letter of recommendation for use with potential employers and designated a contact person in CCRD to receive reference inquires for one year after his resignation; paid Robert Perry a

one time payment of $60,000; and paid Robert Perry's attorney, David H. Shapiro, $80,000 in attorney's fees and costs.

4. HRD was responsible for processing several personnel actions required to effectuate the terms of the Stipulation. Accordingly, on November 23, 2005, HRD issued three Standard Forms 50 ("SF-50"), Notifications of Personnel Actions, to Robert Perry pursuant paragraphs 2(a) - (c) of the Stipulation. *See* Exhibit 2.

5. The personnel actions taken pursuant to the Stipulation could not have occurred but for the settlement. For example, it is inconsistent with the Office of Personnel Management ("OPM") rules to promote a federal employee from a GS-13, Step 3 to a GS-13, Step 10 in one action; rather employees must receive step increases sequentially and within specific time parameters. Moreover, the personnel action retroactively promoting Robert Perry to a GS-13, Step 3 without back pay was also inconsistent with OPM rules governing federal employment. I am aware that these personnel actions are inconsistent with OPM rules and would raise questions by OPM, which audits PBGC approximately every three years and rigorously screens personnel actions for noncompliance with the statutes, rules, and regulations governing federal personnel actions. Therefore, to provide a legal basis and justify the personnel actions to OPM, PBGC included a reference to the Stipulation on the SF-50s. *See* Exhibit 1. Moreover, the Stipulation was silent as to what remarks or information could be included in or excluded from the SF-50s.

6. On December 13, 2005 at 1:06 PM, I was copied on an e-mail exchange between Robert Perry and Rick Lattimer, who was Supervisor of the Services Division in HRD, concerning the reference to the Stipulation in the Remarks section of the SF-50s. *See* Exhibit 3. In the e-mail, Robert Perry stated that he believed the remarks on the SF-50s were "unwarranted and contrary to the intent" of the Stipulation and asked that Rick Lattimer review the forms to determine whether the remarks were necessary. *Id.* Rick Lattimer responded via e-mail on December 14, 2005, at 11:48 AM, that an explanation of the actions was necessary in order to explain to OPM how Robert Perry was promoted. Robert Perry responded to Rick Lattimer's e-mail on December 14, 2005 at 12:35 PM, and quoted the specific language in the "Remarks" section he believed unnecessary and requested that it be removed. *Id.* PBGC attempted to get an opinion from OPM as to whether removing the remarks would pose a problem with OPM.

7. I am aware that on January 4, 2006, while PBGC's inquiry to OPM was pending, Robert Perry's attorney, David Shapiro, contacted the U.S Attorney's Office and questioned the remarks contained on the three SF-50's issued to Robert Perry by PBGC on November 23, 2005. *See* Exhibit 4. David Shapiro requested that the remarks be removed. *Id.* I am also aware that on January 5, 2006, the U.S. Attorney's Office sent a letter to David Shapiro informing him that the references were included to protect the Agency in the event that OPM questioned the personnel actions. *See* Exhibit 5. The letter further informed David Shapiro that, in an effort to address Robert Perry's concerns, PBGC was willing to issue a Cost-of-Living-Adjustment (COLA) SF-50 in January 2006 and that it would contain no reference to the Stipulation. *Id.* PBGC's payroll processing, including

COLA increases, is processed by the Department of Interior payroll center in Denver, Colorado. The payroll center shuts down in mid-January to effectuate the COLA increase and then processes the COLA SF-50s for all PBGC employees. These SF-50s are sent to PBGC in one batch several weeks later. If PBGC had not issued Robert Perry a COLA SF-50 on January 9, 2006, he likely would not have received a COLA SF-50 until approximately March 2006. The COLA SF-50 issued on January 9, 2006 did not contain any reference to the Stipulation and could have been used by Robert Perry in employment applications. *See* Exhibit 6. At that point, if Robert Perry had to submit an SF-50 during the application process with a potential employer, the COLA SF-50 would have been the one he would submit because it was the most recently issued SF-50.

8.    In February 2006, because PBGC had not received a response from OPM regarding its inquiry, PBGC reissued and backdated the SF-50s that Robert Perry complained about. The Remarks section of the reissued SF-50s did not contain any reference to the Stipulation, as Robert Perry requested. *See* Exhibit 7.

9.    As required by paragraph 2(f) of the Stipulation, on May 14, 2006, HRD placed Robert Perry on LWOP. *See* Exhibit 8. Accordingly, HRD issued a SF-50 reflecting this personnel action with the required codes and remarks as defined by the Office of Personnel Management. *Id.* Specifically, for LWOP scheduled to exceed 30 calendar days, OPM's "Guide to Processing Personnel Actions" requires the use of code 460 and the Nature of Action to read "LWOP NTE (date)." *See* Exhibit 9. Furthermore, when the Nature of the Action Code is 460, OPM's "Guide to Processing Personnel Actions" requires the use of specific remarks addressing service credit and FEGLI. *Id.* These remarks were included in Robert Perry's LWOP SF-50. *See* Exhibit 8.

10.   I am aware that, for approximately the past three years, Robert Perry and other PBGC employees, including Stuart Bernsen, Valda Johnson, and Rhonda Baird, have been involved on different sides of intra-union disputes and arbitrations. During the course of these disputes, all of these employees have traded e-mail accusations, in addition to pursuing formal proceedings, Federal Labor Relations Authority Unfair Labor Practice charges, and legal actions.

11.   I am aware that on February 2, 2005, a new Executive Board of NAGE Local R3-77 was sworn in, including Richard (Dick) Petta as President, Dwayne Jeffers as Vice-President At-Large, and Robert Perry as Acting Secretary/Treasurer. On February 16, 2005, there was a representational election held by the Federal Labor Relations Authority. The National Association of Government Employees ("NAGE") prevailed in the election over the Independent Union of Pension Employees. Following the election, certain employees involved in the intra-union disputes issued flyers accusing one another of various actions or inactions related to their union activities. For example, according to an e-mail that I received from Dwayne Jeffers on May 12, 2005, at 12:00 PM, 3 flyers were issued on or around that date. *See* Exhibit 10. The flyers were entitled "HERTZ LOSES Along With Resnick, Lattimer, Forster, and Esser," "Arbitrator Blasts Management for Retaliation," and "3 Strikes Against NAGE." Only one of the flyers, "3 Strikes Against NAGE,"

mentioned Robert Perry.

12.    On June 7, 2005, Robert Perry sent an e-mail to Bradley Belt, PBGC's Executive Director, Vince Snowbarger, PBGC's Deputy Executive Director, Rick Lattimer, Lori Bledsoe, EEO Manager, and me, initiating a complaint. In the e-mail, Robert Perry complained that certain flyers had been circulated within PBGC that he felt might incite federal employees and contractors to take "untold actions against [him]." *See* Exhibit 11. I responded on June 8, 2005 at 6:27 PM via e-mail informing him that an investigation would ensue and what he should do if he felt threatened. *Id.* Ricardo Silva, HRD Specialist, and Ray Forster, an attorney in the Office of General Counsel, met with Robert Perry to investigate his specific complaints.

13.    While PBGC investigated Robert Perry's complaint, he was allowed to work from home for a period of time. Furthermore, on June 16, 2005, at 4:33 PM, PBGC sent an e-mail to all PBGC employees and contractors reiterating PBGC's commitment to providing a workplace free from violence and harassment. *See* Exhibit 12.

14.    On October 31, 2005, at 1:07 PM, I was copied on an e-mail from Robert Perry to Ricardo Silva in which Robert Perry complained that he had received another harassing e-mail from Rhonda Baird, and requested an update on the investigation of his June 2005 complaint. *See* Exhibit 13. On November 2, 2005, I issued a memorandum to Robert Perry informing him that PBGC had retained the law firm of Littler Mendelson, P.C. to complete PBGC's investigation into his June 2005 complaint. *See* Exhibit 14. The memorandum also informed Robert Perry that PBGC would then review the evidence gathered to determine the appropriate actions. *Id.*

15.    On January 9, 2006, Littler Mendelson, P.C. submitted its report to PBGC regarding "Employee Complaints & Labor-Management Issues at the PBGC." After reviewing the report with counsel, I determined the findings were reasonable. Accordingly, I issued a memorandum to Robert Perry addressing the findings of the investigation with respect to his complaint, noting that the flyers did not violate any PBGC policies or directives, did not pose a safety threat, and that they fell within the scope of protected activity under the Federal Service Labor-Management Relations Statute. *See* Exhibit 15. My memorandum further informed Robert Perry that while this investigation was complete, if he had any future complaints concerning similar matters to please contact me.

I hereby declare under penalty of perjury under the laws of the United States of America that the above statement is true and complete to the best of my knowledge and belief.

Michele Pilipovich
Michele Pilipovich

2/16/2007
Date

Subscribed and sworn to before me this 16 day of February 2007.

Patricia Reiersen
Notary Public

My commission expires ______.

Patricia Reiersen
Notary Public, District of Columbia
My Commission Expires 5/31/2011

PILIPOVICH
EXHIBIT
1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT T. PERRY, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action Nos. 03-2495 & 04-1996 (CKK) |
| ELAINE L. CHAO, *et al.*, | ) |
| Defendants. | ) |

**STIPULATION OF SETTLEMENT AND DISMISSAL**

All Parties to this action hereby enter into the following Stipulation of Settlement and Dismissal. In order to resolve the matters in dispute in the above-styled actions and all other matters related to Plaintiff's employment without further litigation, expense or delay, Plaintiff and Defendants unconditionally agree to the following terms:

1. Release

Plaintiff and Defendants enter into this Stipulation of Settlement and Dismissal in order to make full and final settlement of any and all matters that Plaintiff raised or could have raised in the above actions, as well as all other matters related to Plaintiff's employment with [illegible]. Plaintiff, in consideration of the action Defendants agree herein to take [illegible] voluntarily agrees to accept the terms set forth herein in full satisfaction of any and all claims, demands, rights and causes of action of whatever kind and nature based upon [illegible] with the Pension Benefit Guaranty Corporation ("PBGC") up to the date [illegible] Stipulation of Settlement and Dismissal [illegible] above-styled actions.

In particular, and without limitation, this Stipulation of Settlement and Dismissal includes all possible claims for damages, backpay, front pay, loss of leave, loss of retirement and equitable relief by Plaintiff against Defendants prior to and including the date Plaintiff signs this Stipulation of Settlement and Dismissal. Further, and without limitation, this Stipulation of Settlement and Dismissal includes all possible claims for attorney's fees and costs that Plaintiff incurred or may incur in connection with this litigation and any other administrative proceeding involving the claims Plaintiff raised or could have raised in these actions.

Plaintiff withdraws, with prejudice, the above-styled complaints and all other pending, existing or putative causes of action, charges, complaints and appeals against Defendants in any forum, whether administrative or judicial. This Stipulation of Settlement and Dismissal constitutes the full, final and complete relief that Plaintiff may have for the conduct alleged in these actions.

Plaintiff agrees not to institute any other actions, charges, complaints, appeals or other proceedings against Defendants or any of Defendants' past or present employees, [illegible] or representatives concerning any matter related to his employment with PBGC and the [illegible] termination of his PBGC employment that are based in any way on action or inaction [illegible] date by Defendants or Defendants' past or present employees.

Plaintiff releases Defendants and PBGC's past and present employees, [illegible] and representatives concerning all matters related to his employment [illegible] including the date of this Stipulation of Settlement and Dismissal.

2. In consideration for the promises made herein, the Parties agree [illegible] actions:

a) Defendants shall enter a formal Personnel Action in Plaintiff's Official Personnel File indicating Plaintiff was promoted, without back pay, to a GS-13, Step 3 auditor position one year prior to the date the Stipulation of Settlement and Dismissal is executed.

b) Defendants shall promote Plaintiff to a GS-13, Step 10 Series 511 Auditor position and increase his pay accordingly, effective the first full pay period following the execution of this Stipulation, which Plaintiff shall occupy for a period no longer than twelve (12) months ("the 12-Month Period", which period shall commence on the day that Plaintiff's promotion begins and end on the one-year anniversary of that date). The appointment to GS-13, Step 10, Series 511 Auditor position shall expire upon the earlier of (1) Plaintiff obtaining employment outside PBGC, or (2) the expiration of the 12-Month Period described above.

c) During the first six (6) months of Plaintiff holding a GS-13, Step 10, Series [illegible] Auditor position, Plaintiff shall be detailed to PBGC's Contracts and Control Review Department (CCRD), during which time Plaintiff shall be granted reasonable [illegible] to attend job interviews and/or pursue training opportunities.

d) Following the execution of this Stipulation, PBGC shall pay [illegible] not to exceed $10,000.00, the arrangements for which plaintiff [illegible] date of his resignation from employment with PBGC. To effect payment [illegible] opportunities, Plaintiff shall submit the invoices or requests for payment [illegible] PBGC, and PBGC shall make payment for the training to the appropriate [illegible]

e) Plaintiff shall endeavor to find a detail to another federal agency [illegible] during the first six (6) months of the 12-Month Period described above. If Plaintiff [illegible] a detail to another federal agency, PBGC shall [illegible] and shall continue to [illegible] Plaintiff at GS-13, Step 10 salary for the 12-Month Period [illegible]

to commencing a detail to another federal agency, Plaintiff shall surrender any and all PBGC property, credentials, access cards, and/or keys to PBGC premises.

f) If Plaintiff does not secure a detail to another federal agency during the first six (6) months of the 12-Month Period described above, PBGC shall pay Plaintiff a one-time payment of $60,000.00 as soon as practicable, and PBGC shall place Plaintiff on leave without pay for the remainder of the 12-Month Period, during which time Plaintiff may continue to pursue the training opportunities referenced in paragraph 2(d) of this Stipulation. Upon the expiration of the first six (6) months of the 12-Month Period, Plaintiff shall immediately surrender any and all PBGC property, credentials, access cards, and/or keys to PBGC premises. During the time which Plaintiff is on leave without pay, PBGC shall pay Plaintiff's health insurance premiums. If Plaintiff secures employment outside PBGC anytime during the period he is on leave without pay, he shall immediately tender his resignation from employment with PBGC. Once the 12-Month Period expires, unless Plaintiff has already resigned, Plaintiff's resignation referenced in Paragraph 2(i) of this Stipulation shall be effected.

g) If Plaintiff secures employment outside PBGC anytime prior to the expiration of the first six (6) months of the 12-Month Period described above, he shall immediately tender his resignation from employment with PBGC. Defendants shall pay Plaintiff the one-time payment of $60,000.00 as soon as practicable following Plaintiff's resignation. [illegible] shall be entitled to one $60,000.00 payment under either Paragraph 2(f) or 2(g). [illegible] that payments can be expected to take a number of weeks. Plaintiff shall [illegible] any and all PBGC property, credentials, access cards, and/or keys to PBGC premises.

h) If Plaintiff secures a detail to another federal agency [illegible] the 12-Month Period described above, and during that detail [illegible]

secures employment outside PBGC, he shall immediately tender his resignation from employment with PBGC. Defendants shall pay Plaintiff a pro-rated portion of the $60,000.00, pro-rated over the 6-month period, which payment shall be made as soon as practicable following the date of his resignation.

i) Upon signing this Stipulation, Plaintiff shall submit to Defendants his irrevocable resignation from the PBGC effective at the end of the 12-Month Period, unless Plaintiff has earlier resigned.

j) If Plaintiff wishes to resign from PBGC prior to the end of the 12-Month Period, he shall submit a letter of resignation with an effective date earlier than the letter referenced in Paragraph 2(i) of this Stipulation.

k) During Plaintiff's detail to CCRD, Plaintiff may use PBGC computers, electronic mail, phones, fax, Lexis/Nexis and other equipment to facilitate his job search, [illegible] opportunities, and to perform his job duties as are assigned to him by his supervisor in CCRD. Plaintiff shall not abuse his use of these agency resources and agrees to use these [illegible] in compliance with PBGC directives and policies.

l) If Plaintiff goes on leave without pay as described in Section [illegible] of this Stipulation, Plaintiff may have access to PBGC electronic mail and voicemail [illegible]. Plaintiff shall not abuse his use of these agency resources [illegible] in compliance with PBGC directives and policies.

m) Plaintiff shall abide by any and all PBGC directives and [illegible] limited to the policy against harassment in the workplace and improper [illegible], although no [illegible] harassing [illegible]

n) PBGC shall provide Plaintiff with a mutually acceptable letter of recommendation, such as the one attached hereto as Exhibit 1, for use with potential employers, and a designated contact person (and a mutually agreeable script similar to Exhibit 1) in CCRD to receive reference inquiries for one year after his resignation.

o) If Plaintiff should require unemployment compensation at the expiration of the 12-Month Period, and if eligible, PBGC shall not oppose his request.

p) PBGC shall pay Plaintiff's reasonable attorney's fees and costs, as defined by Title VII fees provision(42 U.S.C. § 2000e-5(k)), not to exceed $80,000.00. Plaintiff's counsel shall provide Defendants with an accounting of his attorney's fees and costs.

q) Plaintiff shall not seek or attempt employment with PBGC for a period beginning on the date of signing this Stipulation and extending for five (5) years from the effective date of his resignation.

r) By signing this Stipulation, Plaintiff withdraws any and all applications for employment or promotions within PBGC, and Plaintiff shall not accept any offer of employment or promotion within PBGC for a period beginning on the date of signing this Stipulation and extending for five (5) years from the effective date of his resignation.

s) Defendants shall issue Plaintiff a FY 2005 "fully successful" [illegible] upon the execution of this Stipulation.

3. Plaintiff acknowledges his duty to [illegible] other obligations with regard to the proper payment of taxes [illegible]

4. This Stipulation of Settlement and Dismissal shall not [illegible] liability or [illegible] Defendants in PBGC [illegible]

[illegible]

Parties enter into this stipulation solely for the purpose of compromising disputed claims and avoiding the expenses and risks of litigation.

5. Plaintiff acknowledges that he has read this entire agreement and that he understands all of its terms and conditions. Plaintiff acknowledges that his attorney has reviewed and explained the provisions of this agreement to him and that Defendants have provided sufficient time for this purpose.

6. Pursuant to 29 U.S.C. § 626(f), the Plaintiff understands that by executing this Agreement, he is relinquishing any rights or claims which arose or could have arisen under 29 U.S.C. § 633a (the Age Discrimination in Employment Act) prior to the effective date of this ADEA waiver. Plaintiff does not waive rights or claims which may arise after this waiver is executed; he understands and agrees that he is waiving these rights and claims only in exchange for consideration in addition to anything of value which he is already entitled. He agrees that he is hereby being advised by the Agency in writing to consult with an attorney prior to executing this Agreement; and he agrees that he has been provided a reasonable period of time of no less than three (3) calendar days in which to consider this Agreement prior to executing it. Plaintiff represents that he has read this Agreement and that he enters into this Agreement knowingly and voluntarily, with full understanding of its terms and conditions.

7. Plaintiff acknowledges that he has entered into this Stipulation of Settlement and Dismissal knowingly and voluntarily and with the advice of counsel. Further, Plaintiff acknowledges that no one has imposed any undue hardship, duress or coercion in connection with the execution of this document.

8. The Parties [illegible] expressly [illegible] compromise settlement [illegible] except for the sums [illegible] paragraph [illegible]

respective parties shall each bear their own costs, fees, expenses, and attorneys' fees. There are no terms or conditions to this agreement except those expressly stated herein. This agreement may not be altered, modified, withdrawn, waived, rescinded or supplemented except by a written instrument executed by duly authorized representatives of both Parties.

WHEREFORE, these actions are hereby dismissed, subject only to the Court retaining jurisdiction as necessary to enforce the terms of this Stipulation of Settlement and Dismissal.

David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO, P.C.
1225 Eye Street, N.W.
Suite 1290
Washington, D.C. 20005
Tel. 202-842-0300

Attorney for Plaintiffs

Robert Tyrone Perry
1354 [illegible]
Severn, Maryland 21144
Tel. 410-294-[illegible]

Plaintiff

Respectfully submitted,

Kenneth L. Wainstein
D.C. Bar No. 451058
United States Attorney

R. Craig Lawrence
D.C. Bar No. [illegible]
Assistant United States Attorney

[illegible]
[illegible]

Co-Counsel:

PHILIP R. HERTZ
Deputy General Counsel
JAY A. RESNICK
Assistant General Counsel
ROBIN S. HORNING
MARGARET DRAKE
Attorneys
PENSION BENEFIT GUARANTY CORPORATION
1200 K Street, N.W.
Washington, D.C. 20005-4026
(202) 326-4020

It is so ORDERED by the Court this 8th day of November, 2005.

UNITED STATES DISTRICT JUDGE



**DRAFT STATEMENT OF RECOMMENDATION**

**FOR ROBERT PERRY**

**To Whom it May Concern:**

As Robert Perry's supervisor, I have been asked to recommend Mr. Perry for a leadership position within the auditing field or other positions that would require analysis of financial or program information. I understand that Mr. Perry is seeking to broaden his career experiences after working more than 10 years with PBGC, and wish him well as he pursues other professional opportunities.

Having started at PBGC in 1993, Mr. Perry has gained a significant amount of experience performing a variety of compliance audits. For example, using PBGC regulations and ERISA as criteria, he has determined whether pension plans seeking standard terminations were paying participants the amount they were due under the plan. In working for my department, he has performed contract evaluations to determine whether amounts proposed or billed by contractors performing services for PBGC were supported and in compliance with the Federal Acquisition Regulation. With a degree in accounting, Mr. Perry was initially hired as a GS-9 auditor and has progressed to the full-performance level as a GS-13 auditor. In working at PBGC, he has been recognized as an important contributor to the agency's mission and for readily sharing his knowledge and skills with both peers and more junior employees.

Mr. Perry has shown a continued interest in professional development having completed a variety of courses during his time at PBGC. Recent courses that he has identified and completed are entitled _______________ offered by Business Management Research Associates. Such development efforts have allowed Mr. Perry to improve and update his skills to meet the dynamic demands of the changing auditing and federal government procurement professions.

Based on his accounting degree, his years of audit experience, and accomplishments at PBGC, I wholeheartedly believe that Mr. Perry would add value to your organization and do not hesitate in recommending that he receive the utmost consideration for professional opportunities in the auditing field (or another position that requires the analysis of financial or program information).

PILIPOVICH
EXHIBIT
2

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ROBERT T | [redacted] | [redacted] | 10-31-04 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 702 | PROMOTION |
| **5-C. Code** | **5-D. Legal Authority** |
| ZLM | SETTLEMENT AGREEMENT DTD 11-08-05 |
| **5-E. Code** | **5-F. Legal Authority** |
| | |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |
| **6-C. Code** | **6-D. Legal Authority** |
| | |
| **6-E. Code** | **6-F. Legal Authority** |
| | |

7. FROM: Position Title and Number
8807
AUDITOR
1022133

15. TO: Position Title and Number
9101
AUDITOR
3420310

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 11 | 00 | $68225 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $59544 | $8711 | $68225 | |

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 13 | 03 | $76916 | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| $67099 | $9817 | $76916 | |

14. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF OPERATING OFFICER
INSURANCE OPERATIONS DEPT
STANDARD TERMINATION & COMPL DIV
COMPLIANCE & AUDITS BR

22. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF OPERATING OFFICER
INSURANCE PROGRAMS DEPT
STANDARD TERMINATION & COMPL DIV
COMPLIANCE & AUDIT BR

**EMPLOYEE DATA**

23. Veterans Preference: 2 (1 - None; 2 - 5-Point; 3 - 10-Point/Disability; 4 - 10-Point/Compensable; 5 - 10-Point/Other; 6 - 10-Point/Compensable/30%)

24. Tenure: 1 (0 - None; 1 - Permanent; 2 - Conditional; 3 - Indefinite)

25. Agency Use:

26. Veterans Pref for RIF: X YES NO

27. FEGLI: DO BASIC + STANDARD OPTION

28. Annuitant Indicator: 9 NOT APPLICABLE

29. Pay Rate Determinant: 0

30. Retirement Plan: K FERS & FICA

31. Service Comp. Date (Leave):

32. Work Schedule: F FULL-TIME

33. Part-Time Hours Per Biweekly Pay Period:

**POSITION DATA**

34. Position Occupied: 1 (1 - Competitive Service; 2 - Excepted Service; 3 - SES General; 4 - SES Career)

35. FLSA Category: (E - Exempt; N - Nonexempt)

36. Appropriation Code:

37. Bargaining Unit Status: 0030

38. Duty Station Code: 11-0010-001

39. Duty Station (City - County - State or Overseas Location): WASHINGTON, DISTRICT OF COLUMBI

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

PURSUANT TO A SETTLEMENT AND STIPULATION PRESENTED TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA ON NOVEMBER 8, 2005

EMPLOYEE IS NOT TO RECEIVE BACK PAY IN ACCORDANCE WITH COURT AGREEMENT.

46. Employing Department or Agency: BG - PENSION BNFT GTY CORP

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| BG00 | 4158 | 11/23/05 |

50. Signature/Authentication and Title of Approving Official
[signature]
MICHELE PILIPOVICH
DIRECTOR, HUMAN RESOURCES

5 Part

2 - OPF Copy - Long-Term Record -- DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6236

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ROBERT T | [redacted] | [redacted] | 11/13/05 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 702 | PROMOTION |
| 5-C. Code | 5-D. Legal Authority |
| HAM | REG 250.101 |
| 5-E. Code | 5-F. Legal Authority |
| | |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |
| 6-C. Code | 6-D. Legal Authority |
| | |
| 6-E. Code | 6-F. Legal Authority |
| | |

**7. FROM: Position Title and Number**
AUDITOR
3420310 9101

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 13 | 03 | $79766 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $68776 | $10990 | $79766 | |

14. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF OPERATING OFFICER
INSURANCE PROGRAMS DEPT
STANDARD TERM & COMPLIANCE DIV
COMPLIANCE & AUDIT BR

**15. TO: Position Title and Number**
AUDITOR
3420310 9101

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 13 | 10 | $97213 | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| $83819 | $13394 | $97213 | |

22. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF OPERATING OFFICER
INSURANCE PROGRAMS DEPT
STANDARD TERM & COMPLIANCE DIV
COMPLIANCE & AUDIT BR

**EMPLOYEE DATA**

23. Veterans Preference: 2 (1 - None; 2 - 5 Point; 3 - 10 Point/Disability; 4 - 10 Point/Compensable; 5 - 10 Point/Other; 6 - 10 Point/Compensable/30%)
24. Tenure: 1 (0 - None; 1 - Permanent; 2 - Conditional; 3 - Indefinite)
25. Agency Use:
26. Veterans Pref for RIF: X YES NO
27. FEGLI: DO BASIC & STANDARD OPTION
28. Annuitant Indicator: 9 NOT APPLICABLE
29. Pay Rate Determinant: 0
30. Retirement Plan: K FERS & FICA
31. Service Comp. Date (Leave): 10/06/84
32. Work Schedule: F FULL-TIME
33. Part-Time Hours Per Biweekly Pay Period:

**POSITION DATA**

34. Position Occupied: 1 (1 - Competitive Service; 2 - Excepted Service; 3 - SES General; 4 - SES Career)
35. FLSA Category: E (E - Exempt; N - Nonexempt)
36. Appropriation Code:
37. Bargaining Unit Status: 0030
38. Duty Station Code: 11-0010-001
39. Duty Station (City - County - State or Overseas Location): WASHINGTON, DISTRICT OF COLUMBIA

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

PURSUANT TO A STIPULATION AND SETTLEMENT PRESENTED TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA ON NOVEMBER 8, 2005

EMPLOYEE IS PROMOTED FROM GS-12 STEP 06 BUT BASED ON COURT AGREEMENT PROMOTION IS FROM GS-13 STEP 3. EMPLOYEE IS NOT RECEIVING BACK PAY IN ACCORDANCE WITH COURT AGREEMENT.

46. Employing Department or Agency: BG - PENSION BNFT GTY CORP
47. Agency Code: BG00
48. Personnel Office ID: 4158
49. Approval Date: 11/23/05
50. Signature/Authentication and Title of Approving Official: Jacqueline A. [signature] for MICHELE PILIPOVICH, DIRECTOR OF HUMAN RESOURCES, 051676991

5-Part 2 - OPF Copy - Long-Term Record -- DO NOT DESTROY
Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

0604-PERRY-00016

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

1. Name (Last, First, Middle): PERRY, ROBERT T
2. Social Security Number: [redacted]
3. Date of Birth: [redacted]
4. Effective Date: 11/13/05

## FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 919 | DETAIL NTE 05-13-06 |
| 5-C. Code | 5-D. Legal Authority |
| | |
| 5-E. Code | 5-F. Legal Authority |
| | |

## SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |
| 6-C. Code | 6-D. Legal Authority |
| | |
| 6-E. Code | 6-F. Legal Authority |
| | |

**7. FROM: Position Title and Number**
AUDITOR
3420310 0009101

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 13 | 10 | $ 97213 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $ 83819 | $ 13394 | $ 97213 | $ 0 |

14. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF OPERATING OFFICER
INSURANCE PROGRAMS DEPT
STANDARD TERMINATION & COMPLIANCE DIV
COMPLIANCE & AUDITS BR
WASHINGTON, DC

**15. TO: Position Title and Number**
AUDITOR
3520000 0009101

| 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 13 | 10 | | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| | | | |

22. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF FINANCIAL OFFICER
CONTRACTS & CONTROL REVIEW DEPT

WASHINGTON, DC

## EMPLOYEE DATA

23. Veterans Preference: 2 (1 - None; 2 - 5-Point; 3 - 10-Point/Disability; 4 - 10-Point Compensable; 5 - 10-Point Other; 6 - 10-Point/Compensable/30%)
24. Tenure: 1 (0 - None; 1 - Permanent; 2 - Conditional; 3 - Indefinite)
25. Agency Use:
26. Veterans Preference for RIF: X YES NO
27. FEGLI: D0 BASIC + STANDARD OPTION
28. Annuitant Indicator: 9 NOT APPLICABLE
29. Pay Rate Determinant: 0
30. Retirement Plan: K FERS & FICA
31. Service Comp. Date (Leave): 10/06/84
32. Work Schedule: F FULL-TIME
33. Part-Time Hours Per Biweekly Pay Period:

## POSITION DATA

34. Position Occupied: 1 (1 - Competitive Service; 2 - Excepted Service; 3 - SES General; 4 - SES Career Reserved)
35. FLSA Category: E (E - Exempt; N - Nonexempt)
36. Appropriation Code:
37. Bargaining Unit Status: 0030
38. Duty Station Code: 11-0010-001
39. Duty Station (City - County - State or Overseas Location): WASHINGTON, DISTRICT OF COLUMBIA

| 40. Agency Data | | 41. VET-STAT | 42. EDUC LVL | 43. SUPV STAT | 44. POSITION SENSITIVITY |
|---|---|---|---|---|---|
| CLS | 00 | P | 13 | 8 | MODERATE RISK |

45. Remarks

PURSUANT TO A STIPULATION AND SETTLEMENT PRESENTED TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA ON NOVEMBER 8, 2005

46. Employing Department or Agency: BG - PENSION BNFT GTY CORP
47. Agency Code: BG00
48. Personnel Office ID: 4158
49. Approval Date: 11/14/05
50. Signature/Authentication and Title of Approving Official: Jacqueline Isaac [signature]
MICHELE PILIPOVICH
DIRECTOR OF HUMAN RESOURCES
051677089

1 - Employee Copy - Keep for Future Reference

PILIPOVICH
EXHIBIT
3

**Perry Robert**

**From:** Perry Robert
**Sent:** Wednesday, December 14, 2005 12:35 PM
**To:** Lattimer Rick
**Cc:** Barber Stephen; Starr Judith; Pilipovich Michele; Silva Ricardo; Snowbarger Vince; Jeffers Dwayne; Perry Robert; Montgomery Delarse
**Subject:** RE: Your OPF's

**Rick, I am not questioning whether some of information on my SF forms is necessary, just the language used in addition to the "codes" place on the forms. I understand that the "codes" reveal the necessary requirements for OPM on the SF forms. Rick, I have reviewed other PBGC employees SF forms on the same issue of promotion with the same conditions and or similar conditions as my promotion. The SF forms I reviewed are without the unnecessary language place on my SF forms.**

**Therefore, I ask again, why is the written language on my SF forms used such as the text below in addition to the codes on my SF forms. I believe the language is not needed and should be removed from my SF forms as the forms in there current state will severely diminish my ability to seek employment away from PBGC. Please respond to my specific request to remove the unnecessary language from my SF forms.**

1. Document approved 11/14/05 - detail - PURSUANT TO A STIPULATION AND SETTLEMENT PRESENTED TO THE U. S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA ON NOVEMBER 8, 2005.

2. Document approved 11/23/05 - promotion GS 11 to GS GS - 13-3 PURSUANT TO A STIPULATION AND SETTLEMENT PRESENTED TO THE U. S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA ON NOVEMBER 8, 2005 EMPLOYEE IS NOT TO RECEIVE BACK PAY IN ACCORDANCE WITH COURT AGREEMENT.

3. Document approved 11/23/05 - promotion GS 11 to GS GS 13-3 - "PURSUANT TO A STIPULATION AND SETTLEMENT PRESENTED TO THE U. S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA ON NOVEMBER 8, 2005" and "EMPLOYEE IS PROMOTED FROM GS-12 STEP 06 BUT BASED ON COURT AGREEMENT PROMOTION IS FROM GS-13 STEP 3. EMPLOYEE IS NOT RECEIVING BACK PAY IN ACCORDANCE WITH COURT AGREEMENT."

Thanks, Robert

-----Original Message-----
**From:** Lattimer Rick
**Sent:** Wednesday, December 14, 2005 11:48 AM
**To:** Perry Robert
**Subject:** RE: Your OPF's

Robert – Yes, some explanation of the actions is necessary on your forms in order to explain to [illegible] any other entity officially reviewing our files how you were promoted.

-----Original Message-----
**From:** Perry Robert
**Sent:** Tuesday, December 13, 2005 1:0[illegible]
**To:** Lattimer Rick
**Cc:** Barber Stephen; Starr Judith; Pilipovich Michele; Silva Ricardo; [illegible]
**Subject:** RE: Your OPF's

**Rick, I have tried for the past weeks to view my OPF records without success. Today I was informed that my file was not available as well. Please let me know what is needed to view my OPF file.**

**Rick, I received three (3) SF 50's on November 23, 2005 as a result of a settlement agreement signed and executed by a Federal Magistrate on November 8, 2005. I believe these SF forms contain information that is unwarranted and contrary to the intent of the previously stated settlement agreement between PBGC and me. Particularly, each of the SF forms make it blatantly obvious that my promotion was the result of litigation against PBGC. This specified language is in addition to the codes on the forms used for this purpose, when and if the codes are needed. Rick, the SF forms were provided to me after I informed you that I wanted these forms to apply for employment outside of PBGC. Therefore, I respectfully request that you review these forms and let me know if the information is needed on the SF forms and within the requirement and intent of the above stated settlement agreement between PBGC and me.**

**Please contact me if you need further information.**

Robert T. Perry
Contracts and Controls Review Department, Auditor
(202) 326-4000, Ext. 3495
perry.robert@pbgc.gov
1-202-326-4161 ext. 3495
FAX: (202) 326-4197

**Pension Benefit Guaranty Corporation
1200 K Street, NW, Suite 10907
Washington, D.C. 20005-4046**

-----Original Message-----
**From:** Cannon Gina
**Sent:** Wednesday, December 07, 2005 3:54 PM
**To:** Jones Dwayne; Perry Robert
**Cc:** Beyene Almaz
**Subject:** Your OPF's

I have your OPF's for your review; please see me tomorrow. I should be [illegible]

Gina F. Cannon
Pension Benefit Guaranty Corporation
Human Resources Department, Business Center
202-326-4110, ext 3173

# PILIPOVICH EXHIBIT 4

-----Original Message-----
From: dhshapiro@swickandshapiro.com
[mailto:dhshapiro@swickandshapiro.com]
Sent: Wednesday, January 04, 2006 3:54 PM
To: Nebeker, Mark
Cc: Peterson, Benton
Subject: Perry v. Chao -- Entry under "Remarks" in SF-50s resulting from
Settlement


Mark:

I am sending you via FAX three SF-50's (Notification of Personnel
Actions) generated by PBGC regarding the changes in Robert Perry's
employment (two "promotions" and a NTE detail) resulting from our
settlement.

The problem is not with the personnel actions taken, but rather with
the notation make by PBGC HR on these forms under "Remarks".  In each
case, mention is made of the stipulation of settlement and of the
court.  Mr. Perry has advised me that agencies to whom he is applying
are asking for the SF-50s (in addition to recent performance
appraisals) as part of the application process.  Accordingly, the
notations made in the "Remarks" section is likely to become an
inhibiting factor in his finding a job -- not in anyone's interest.

The specific reference to a settlement agreement or stipulation or
the court in this type of document is unnecessary and hurtful under
the circumstances.  It will stay in his OPF as a permanent
record.  In EEO cases, though a court order is the authority for a
retroactive promotion or any other change in employment, no personnel
record documents this fact -- as to do so would be to invite retaliation.

Please see what you can do to remove the troublesome references.

Thanks.

David H. Shapiro
Swick & Shapiro, P.C.
1225 Eye Street, N.W.
Suite 1290
Washington, DC  20005
Tel. (202) 842-0300
Fax (202) 842-1418

# PILIPOVICH EXHIBIT 5



**U.S. Department of Justice**

Kenneth L. Wainstein
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

January 5, 2006

David H. Shapiro, Esq.
SWICK & SHAPIRO
1225 Eye Street, N.W.
Suite 1290
Washington, DC 20005
by fax: 842-1418

Re: Perry v. Chao

Dear Mr. Shapiro:

In response to your inquiry of yesterday, please be advised as follows: as I suspected, and we discussed in our telephone conversation yesterday, the reason the agency included reference to the settlement in Mr. Perry's SF-50s is to protect PBGC in the event that the Office of Personnel Management ("OPM") questions the paperwork because the personnel actions required by the settlement could not have occurred but for a settlement. For example, in the context of federal employment, it is not possible for a federal employee to go from a GS-13, Step 3 to a GS-13, Step 10 in one action without some special circumstance; rather employees must receive step increases sequentially. Moreover, Mr. Perry went from a GS-12, Step 6 to a GS-13, Step 3 without payment of back pay, which is also likely to raise questions by OPM. In order to ensure accurate documentation as required by OPM's Guide to Processing Personnel Actions, it was recessary to include the information regarding the settlement so that in the event of an OPM audit, the agency is protected.

That said, Mr. Perry is due to receive a cost of living adjustment ("COLA") this month, which should alleviate his concerns, because a new SF-50 will be issued showing the COLA and will not contain the reference to the settlement. PBGC receives its payroll from the processing center in Denver, which will be shutting down its systems from January 15-17 to effectuate the COLA. After that, Denver will prepare new SF-50s for all PBGC employees and will send them to PBGC in one batch a few weeks later. The agency, however, has indicated a willingness to have its Human Resources Department ("HRD") issue Mr. Perry an SF-50 sooner than the mass of SF-50s arrive from

Denver.[1] The substitute SF-50 would reflect the COLA and would not contain reference to the settlement (because the change in pay associated with the COLA does not require any explanation of the settlement). Mr. Perry may use the SF-50 issued by HRD until he receives the SF-50 issued by Denver a few weeks later.

If you have any questions or concerns, please contact me at (202) 514-7230.

Sincerely,

KENNETH L. WAINSTEIN
United States Attorney

By: W. MARK NEBEKER
Assistance United States Attorney
Civil Division

By: BENTON PETERSON
Assistance United States Attorney
Civil Division

---

[1] PBGC cannot issue the SF-50 reflecting the COLA until the COLA is effectuated, i.e., until after January 17, 2006.

PILIPOVICH
EXHIBIT
6

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

1. Name (Last, First, Middle): PERRY, ROBERT T.
2. Social Security Number: [redacted]
3. Date of Birth: [redacted]
4. Effective Date: 01/08/06

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code: 894 | 5-B. Nature of Action: PAY ADJ | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code: QWM | 5-D. Legal Authority: REG. 531.205 | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code: ZLM | 5-F. Legal Authority: EO 13393 DTD 12/22/05 | 6-E. Code | 6-F. Legal Authority |

7. FROM: Position Title and Number
AUDITOR
3520000 0009101

15. TO: Position Title and Number
AUDITOR
3520000 0009101

| | 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|---|
| FROM | GS | 0511 | 13 | 10 | $97213 | PA |

| | 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|---|
| FROM | $83819 | $13394 | $97213 | |

| | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|
| TO | GS | 0511 | 13 | 10 | $100554 | PA |

| | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|
| TO | $85578 | $14976 | $100554 | |

14. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF FINANCIAL OFFICER
CONTRACTS & CONTROL REVIEW DEPT
WASHINGTON, DC

22. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF FINANCIAL OFFICER
CONTRACTS & CONTROL REVIEW DEPT
WASHINGTON, DC

## EMPLOYEE DATA

23. Veterans Preference: 2 (1 - None; 2 - 5-Point; 3 - 10-Point/Disability; 4 - 10-Point/Compensable; 5 - 10-Point/Other; 6 - 10-Point/Compensable/30%)
24. Tenure: 1 (0 - None; 1 - Permanent; 2 - Conditional; 3 - Indefinite)
25. Agency Use:
26. Veterans Pref for RIF: X YES / NO
27. FEGLI: DO BASIC & STANDARD OPT
28. Annuitant Indicator: 9 NOT APPLICABLE
29. Pay Rate Determinant: 0
30. Retirement Plan: K FERS & FICA
31. Service Comp. Date (Leave): 10/06/84
32. Work Schedule: F FULL-TIME
33. Part-Time Hours Per Biweekly Pay Period:

## POSITION DATA

34. Position Occupied: 1 (1 - Competitive Service; 2 - Excepted Service; 3 - SES General; 4 - SES Career)
35. FLSA Category: E (E - Exempt; N - Nonexempt)
36. Appropriation Code:
37. Bargaining Unit Status: 0030
38. Duty Station Code: 11-0010-001
39. Duty Station (City - County - State or Overseas Location): WASHINGTON, DISTRICT OF COLUMBIA

40. AGENCY DATA | 41. | 42. | 43. | 44.

45. Remarks
SALARY INCLUDES A LOCALITY PAYMENT (OR OTHER GEOGRAPHIC ADJUSTMENT) APPLICABLE IN THIS AREA

46. Employing Department or Agency: BG - PENSION BNFT GTY CORP
47. Agency Code: BG00
48. Personnel Office ID: 4158
49. Approval Date: 01/09/06
50. Signature/Authentication and Title of Approving Official: [signature] MICHELE PITTROVICH, DIRECTOR OF HUMAN RESOURCES

TURN OVER FOR IMPORTANT INFORMATION
5-Part
OPF
1 - Employee Copy - Keep for Future Reference

0604 PERRY 00090

PILIPOVICH
EXHIBIT
7

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ROBERT T. | [redacted] | [redacted] | 10-31-04 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 702 | PROMOTION |
| 5-C. Code | 5-D. Legal Authority |
| ASM | SETTLEMENT AGREEMENT DTD11/08/05 |
| 5-E. Code | 5-F. Legal Authority |
| | |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |
| 6-C. Code | 6-D. Legal Authority |
| | |
| 6-E. Code | 6-F. Legal Authority |
| | |

7. FROM: Position Title and Number
AUDITOR
1022133 #8807

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 11 | 00 | $68225 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $59544 | $8711 | $68225 | |

14. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF OPERATING OFFICER
INSURANCE OPERATIONS DEPT
STANDARD TERMINATION & COMPL DIV
COMPLIANCE & AUDITS BR

15. TO: Position Title and Number
AUDITOR
3420310 #9101

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 13 | 03 | $76916 | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| $67099 | $9817 | $76916 | |

22. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF OPERATING OFFICER
INSURANCE PROGRAMS DEPT
STANDARD TERMINATION &COMPL DIV
COMPLIANCE & AUDITS BR

**EMPLOYEE DATA**

23. Veterans Preference: 2 (1 - None; 2 - 5-Point; 3 - 10-Point/Disability; 4 - 10-Point/Compensable; 5 - 10-Point/Other; 6 - 10-Point/Compensable/30%)

24. Tenure: 1 (0 - None; 1 - Permanent; 2 - Conditional; 3 - Indefinite)

25. Agency Use:

26. Veterans Pref for RIF: X YES NO

27. FEGLI: DO BASIC + STANDARD OPTION

28. Annuitant Indicator: 9 NOT APPLICABLE

29. Pay Rate Determinant: 0

30. Retirement Plan: K FERS & FICA

31. Service Comp. Date (Leave): 10/06/84

32. Work Schedule: F FULL-TIME

33. Part-Time Hours Per Biweekly Pay Period:

**POSITION DATA**

34. Position Occupied: 1 (1 - Competitive Service; 2 - Excepted Service; 3 - SES General; 4 - SES Career)

35. FLSA Category: E (E - Exempt; N - Nonexempt)

36. Appropriation Code:

37. Bargaining Unit Status: 0030

38. Duty Station Code: 11-0010-001

39. Duty Station (City - County - State or Overseas Location): WASHINGTON, DICTRICT OF COLUMBIA

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

Jacqueline A. Isaac

46. Employing Department or Agency: BG - PENSION BNFT GTY CORP

47. Agency Code: BG00

48. Personnel Office ID: 4158

49. Approval Date: 11/23/05

50. Signature/Authentication and Title of Approving Official: MICHEL PILIPOVICH, DIRECTOR, HUMAN RESOURCES

TURN OVER FOR IMPORTANT INFORMATION
5-Part
OPF
1 - Employee Copy - Keep for Future Reference
Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

0604-PERRY-00087

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ROBERT T. | [redacted] | [redacted] | 11/13/05 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 703 | PROMOTION |
| 5-C. Code | 5-D. Legal Authority |
| ASM | SETTLEMENT AGREEMENT DTD11/08/05 |
| 5-E. Code | 5-F. Legal Authority |
| | |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |
| 6-C. Code | 6-D. Legal Authority |
| | |
| 6-E. Code | 6-F. Legal Authority |
| | |

7. FROM: Position Title and Number
AUDITOR
3420310 #9101

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 13 | 03 | $79766 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $68776 | $10990 | $79766 | |

14. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF OPERATING OFFICER
INSURANCE PROGRAMS DEPT
STANDARD TERM & COMPLIANCE DIV
COMPLIANCE & AUDIT BR

15. TO: Position Title and Number
AUDITOR
3420310 #9101

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 13 | 10 | $97213 | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| $83819 | $13394 | $97213 | |

22. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF OPERATING OFFICER
INSURANCE PROGRAMS DEPT
STANDARD TERM & COMPLIANCE DIV
COMPLIANCE & AUDIT BR

**EMPLOYEE DATA**

23. Veterans Preference: 2 (1 - None; 2 - 5-Point; 3 - 10-Point/Disability; 4 - 10-Point/Compensable; 5 - 10-Point/Other; 6 - 10-Point/Compensable/30%)

24. Tenure: 1 (0 - None; 1 - Permanent; 2 - Conditional; 3 - Indefinite)

25. Agency Use:

26. Veterans Pref for RIF: X YES ☐ NO

27. FEGLI: D0 BASIC & STANDARD OPTION

28. Annuitant Indicator: 9 NOT APPLICABLE

29. Pay Rate Determinant: 0

30. Retirement Plan: K FERS & FICA

31. Service Comp. Date (Leave): 10/06/84

32. Work Schedule: F FULL-TIME

33. Part-Time Hours Per Biweekly Pay Period:

**POSITION DATA**

34. Position Occupied: 1 (1 - Competitive Service; 2 - Excepted Service; 3 - SES General; 4 - SES Career)

35. FLSA Category: E (E - Exempt; N - Nonexempt)

36. Appropriation Code:

37. Bargaining Unit Status: 0030

38. Duty Station Code: 11-0010-001

39. Duty Station (City - County - State or Overseas Location): WASHINGTON, DISTRICT OF COLUMBIA

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

Jacqueline A. Sloane

46. Employing Department or Agency: BG - PENSION BNFT GTY CORP

50. Signature/Authentication and Title of Approving Official: MICHELE PILIPOVICH, DIRECTOR, HUMAN RESOURCES

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| BG00 | 4158 | 11/23/05 |

TURN OVER FOR IMPORTANT INFORMATION
5-Part

1 - Employee Copy - Keep for Future Reference

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

0604-PERRY-00088

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| ..ERRY, ROBERT T | | | 11/13/05 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code: 919 | 5-B. Nature Of Action: DETAIL NTE 05-13-06 | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code | 5-D. Legal Authority | 6-C Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

**7. FROM: Position Title and Number**
AUDITOR
3420310 0009101

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 13 | 10 | $ 97213 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $ 83819 | $ 13394 | $ 97213 | $ 0 |

14. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF OPERATING OFFICER
INSURANCE PROGRAMS DEPT
STANDARD TERMINATION & COMPLIANCE DIV
COMPLIANCE & AUDITS BR
WASHINGTON,DC

**15. TO: Position Title and Number**
AUDITOR
3520000 0009101

| 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 13 | 10 | | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| | | | |

22. Name and Location of Position's Organization
OFFICE OF THE EXEC DIRECTOR
CHIEF FINANCIAL OFFICER
CONTRACTS & CONTROL REVIEW DEPT
WASHINGTON,DC

**EMPLOYEE DATA**

23. Veterans Preference: [ ] (1 - None; 2 - 5-Point; 3 - 10-Point/Disability; 4 - 10-Point Compensable; 5 - 10-Point Other; 6 - 10-Point/Compensable/30%)

24. Tenure: 1 (0 - None; 1 - Permanent; 2 - Conditional; 3 - Indefinite)

25. Agency Use

26. Veterans Preference for RIF: X YES NO

27. FEGLI: D0 BASIC + STANDARD OPTION

28. Annuitant Indicator: 9 NOT APPLICABLE

29. Pay Rate Determinant: 0

30. Retirement Plan: K FERS & FICA

31. Service Comp. Date (Leave): 10/06/84

32. Work Schedule: F FULL-TIME

33. Part-Time Hours Per Biweekly Pay Period

**POSITION DATA**

34. Position Occupied: 1 (1 - Competitive Service; 2 - Excepted Service; 3 - SES General; 4 - SES Career Reserved)

35. FLSA Category: E (E - Exempt; N - Nonexempt)

36. Appropriation Code

37. Bargaining Unit Status: 0030

38. Duty Station Code: 11-0010-001

39. Duty Station (City - County - State or Overseas Location): WASHINGTON,DISTRICT OF COLUMBIA

| 40. Agency Data | | 41. VET-STAT | 42. EDUC LVL | 43. SUPV STAT | 44. POSITION SENSITIVITY |
|---|---|---|---|---|---|
| CLS | 00 | P | 13 | 8 | MODERATE RISK |

45. Remarks

0604-PERRY-00089

46. Employing Department or Agency: BG - PENSION BNFT GTY CORP

47. Agency Code: BG00

48. Personnel Office ID: 4158

49. Approval Date: 11/14/05

50. Signature/Authentication and Title of Approving Official:
[signature] for
MICHELLE PILIPOVICH
DIRECTOR OF HUMAN RESOURCES
051677089

1 - Employee Copy - Keep for Future Reference

PILIPOVICH
EXHIBIT
8

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ROBERT T. | [redacted] | [redacted] | 05-14-06 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 460 | LWOP NTE 11-12-06 |
| **5-C. Code** | **5-D. Legal Authority** |
| DAM | REG. 630.101 |
| **5-E. Code** | **5-F. Legal Authority** |
| | |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |
| **6-C. Code** | **6-D. Legal Authority** |
| | |
| **6-E. Code** | **6-F. Legal Authority** |
| | |

7. FROM: Position Title and Number

AUDITOR
3420310 0009101

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| GS | 0511 | 13 | 10 | $100554 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $ 85578 | $ 14976 | $100554 | |

14. Name and Location of Position's Organization

OFFICE OF THE EXEC DIRECTOR
CHIEF OPERATING OFFICER
INSURANCE PROGRAMS DEPT
STANDARD TERMINATION & COMPLIANCE
COMPLIANCE & AUDITS BR

15. TO: Position Title and Number

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| | | | |

22. Name and Location of Position's Organization

**EMPLOYEE DATA**

23. Veterans Preference: 2 (1 - None; 2 - 5-Point; 3 - 10-Point/Disability; 4 - 10-Point/Compensable; 5 - 10-Point/Other; 6 - 10-Point/Compensable/30%)

24. Tenure: 1 (0 - None; 1 - Permanent; 2 - Conditional; 3 - Indefinite)

25. Agency Use:

26. Veterans Pref for RIF: X YES NO

27. FEGLI: DQ BASIC + STANDARD OPTION

28. Annuitant Indicator: 9 NOT APPLICABLE

29. Pay Rate Determinant: 0

30. Retirement Plan: K FERS & FICA

31. Service Comp. Date (Leave): 10/06/84

32. Work Schedule: F FULL-TIME

33. Part-Time Hours Per Biweekly Pay Period:

**POSITION DATA**

34. Position Occupied: 1 (1 - Competitive Service; 2 - Excepted Service; 3 - SES General; 4 - SES Career)

35. FLSA Category: E (E - Exempt; N - Nonexempt)

36. Appropriation Code:

37. Bargaining Unit Status: 0030

38. Duty Station Code: 11-0010-001

39. Duty Station (City - County - State or Overseas Location): WASHINGTON, DISTRICT OF COLUMBIA

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| 13 | 1985 | 220101 | 00 | |

45. Remarks

FEGLI COVERAGE CONTINUES UNTIL YOUR TIME IN NONPAY STATUS TOTALS 12 MONTHS. CONTRACT YOUR SERVICING HUMAN RESOURCES OFFICE OR SEE THE FEGLI HANDBOOK AT HTTP://WWW.OPM.GOV/INSURE FOR DETAILED INFORMATION.
SERVICE CREDIT FOR RETIREMENT, REDUCTION-IN-FORCE, AND LEAVE ACCRUAL PURPOSES CONTINUES FOR UP TO A MAXIMUM OF 6 MONTHS IN NONPAY STATUS PER CALENDAR YEAR.
FORWARDING ADDRESS: 1354 MONACO DRIVE SEVERN MD 21144

46. Employing Department or Agency: BG - PENSION BNFT GTY CORP

50. Signature/Authentication and Title of Approving Official: Jacqueline A. Isaac for MICHELE PILIPOVICH, DIRECTOR, HUMAN RESOURCES DEPT

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| BG00 | 4158 | 05/12/06 |

TURN OVER FOR IMPORTANT INFORMATION
5-Part

1 - ~~Employee~~ OPF Copy - Keep for Future Reference

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6236

PILIPOVICH
EXHIBIT
9

**Table 15-A. Documenting Placements in Nonpay/Nonduty Status, continued**

| RULE | *If Action is* | *And* | *Then NOAC is* | *Nature of Action is* | *Authority Code is* | *Authority is* | *Required Remark Code is* | *And Remark is* |
|---|---|---|---|---|---|---|---|---|
| 28 | Leave without pay (LWOP) | LWOP, scheduled for more than 30 calendar days, was requested by employee in lieu of annual leave during advance notice period of a separation for failure to accept new assignment or to relocate with position | 460 | LWOP NTE (date) | DAK | Reg. 630.101-Decl | M76 | Requested, in lieu of annual leave, after declining offer of (position title, series, grade, and location) |
| 29 | | LWOP, that is not covered by Rules 25-28, is scheduled to exceed 30 calendar days | | | DAM | Reg. 630.101 | | |
| 30 | Extension of Leave without Pay | Employee is on an assignment with a State or local government or an institution of higher learning | 773 | Ext of LWOP NTE (date) | N1M | Reg. 334.104 | | |
| 31 | | | | | (enter same code as for the LWOP NTE) | (enter the same authority as for the LWOP NTE) | | |

**Table 15-B. Additional Remarks Required for Some Placements in Nonpay/Nonduty Status**

| *RULE* | *If* | *And Employee* | *And* | *Then Required code is* | *And Remark is* |
|---|---|---|---|---|---|
| 1 | Agency may need to write to the employee while employee is in nonpay status | | | M67 | Forwarding address: |
| 2 | Nature of action code is 430, 450, 452, 460, 471, or 472 | Is on a full-time or part-time work schedule | | G33 | Service credit for retirement, reduction in force, and leave accrual continues for up to a maximum of 6 calendar months of nonpay time per calendar year. (see Note 1 of this table) |
| 3 | Nature of action code is 430, 450, 452, 460, 471, 472, or 473 | Has Federal Employees Group Life Insurance coverage | | B72 | FEGLI coverage continues until your time in nonpay status totals 12 months. Contact your servicing Human Resources Office or see the FEGLI Handbook at **http://www.opm.gov/insure** for detailed information. |
| 4 | Nature of action code is 430, 450, 452, 460, 471, or 472 | Has Federal Employees Health Benefits Program coverage | Is a Schedule B work-study employee who is expected to be in pay status at least one-third of the total time between appointment and completion of the work-study program (see 5 CFR 890.303(e)(2)) | B41 | Health benefits will continue as long as you participate in the work-study program if you pay the employee's share of costs. Contact your servicing Human Resources Office or see the FEHB Handbook at **http://www.opm.gov/insure** for detailed information. |

PILIPOVICH
EXHIBIT
10

**Pilipovich Michele**

**From:** Jeffers Dwayne
**Sent:** Thursday, May 12, 2005 12:00 PM
**To:** Baird Rhonda; Pilipovich Michele; Bledsoe Lori
**Cc:** Petta Richard; Perry Robert; Greene Cynthia; Jeffers Dwayne
**Subject:** Response to Purported "Complaint" by Rhonda Baird

**Importance:** High
**Sensitivity:** Confidential

**Attachments:** The Stone Cold Truth; The Stone Cold Truth Part II; The Stone Cold Truth Part III; RE: The Stone Cold Truth Part III; RE: The Stone Cold Truth Part III; Powerful Illustration of Why we Can't Afford to Ignore Ongoing Union Corruption; Powerful Illustration of Why we Can't Afford to Ignore Ongoing Union Corruption; Powerful Illustration of Why we Can't Afford to Ignore Ongoing Union Corruption; RE: Powerful Illustration of Why we Can't Afford to Ignore Ongoing Union Corruption; Powerful Illustration of Why we Can't Afford to Ignore Outrageous Union Corruption; Powerful Illustration of Why we Can't Afford to Ignore Outrageous Corruption in the Local's Board; RE: Powerful Illustration of Why we Can't Afford to Ignore Outrageous Corruption in the Local's Board; RE: Powerful Illustration of Why we Can't Afford to Ignore Outrageous Corruption in the Local's Board; FW: The Stone Cold Truth Part III; RE: FW: The Stone Cold Truth Part III; RE: FW: The Stone Cold Truth Part III; RE: FW: The Stone Cold Truth Part III; RE: FW: The Stone Cold Truth Part III; RE: FW: The Stone Cold Truth Part III; RE: FW: The Stone Cold Truth Part III; RE: FW: The Stone Cold Truth Part III; My Grievance; RE: My Grievance; Request for a meeting to Discuss My Possible Intervention in the District Court Action

Ms. Pilipovich,

I along with Robert Perry have been the **victim of a slew of politically motivated lies, propaganda, innuendoes, knowingly false and nefarious allegations on the part of "IUPE"**. I believe that "IUPE" really stands for the **International Union of PSYCHOTIC Employees**.

The Stone Cold Truth

The Stone Cold Truth Part II

The Stone Cold Truth Part III

RE: The Stone Cold Truth Part ...

RE: The Stone Cold Truth Part ...

I filed a January 25, 2005 affidavit of approximately 750 pages with 48 exhibits in the **politically motivated** EEO complaint of Stuart Bernsen that contained knowingly false and nefarious claims against me.
I filed a March 10, 2005 affidavit of approximately 1,000 pages with 76 exhibits in the **politically motivated** EEO complaint of Valda Johnson that contained knowingly false and nefarious claims against me.
You can contact the EEO Manager about this situation.

Ms. Baird is the one using the PBGC e-mail improperly to persist with politically motivated lies, propaganda, innuendoes, knowingly false and nefarious allegations on the part of "IUPE".



Obviously, Ms. Baird is using the Bcc to do a mass distribution of e-mails.

I have documentation of Ms. Baird's "**terrorist style threats**" that are meant to intimidate me.

My response to this purported "complaint" by Ms. Baird below is that it is nothing more than **pathological lies** and **political blackmail**.

I am sending you and Lori Bledsoe 3 recent flyers by inter-office mail. The headlines read "HERTZ LOSES Along With Resnick, Lattimer, Forster and Esser", "Arbitrator Blasts Management for Retaliation", and "3 Strikes Against NAGE". I have submitted to the EEO Office 2 affidavits which contain public District Court filing where **Stuart Bernsen, Valda Johnson, and Elizabeth Baker** admitted to distributing this type of "**foolishness**" at PBGC. The flyers are filled with **false politically motivated pathological lies**. The sections with my name are **totally false**.

Thank you,
Dwayne Jeffers
Federal Employee (Acting in a Non-Union Official Capacity)

PILIPOVICH
EXHIBIT
11

**Perry Robert**

**From:** Pilipovich Michele
**Sent:** Wednesday, June 08, 2005 6:27 PM
**To:** Perry Robert
**Cc:** Belt Bradley; Davis Patricia; Silva Ricardo; Forster Raymond; Nappier Juanita; Seal John
**Subject:** RE: Possible Physical Harm from False and Misleading Content of Flyers

Mr. Perry,

This is in response to the e-mail you sent to Mr. Belt yesterday in reference to a flyer that you recently received. The Corporation is committed to promoting a safe environment for its employees and contractors. Violence, threats, harassment and other disruptive behavior in our workplace will not be tolerated.

Rick Silva of HRD and Ray Forster of OGC will contact and meet with you tomorrow to learn the details and your specific concerns. In the meantime, in accordance with the Corporation's Workplace Violence Policy, if you believe you are being threatened and/or harassed by any employee or contractor of the Corporation I ask that you immediately report this behavior to your supervisor, as well as directly to Mr. Silva, HRD on ext 3567.

If you believe that you have been threatened with *immediate bodily harm* please call the police directly by dialing 9-911 and then take the steps outlined above by notifying your supervisor and the representative of HRD accordingly.

Again, we are committed to maintaining a work environment free from violence and threats. Reports of these types of incidents will be taken seriously and dealt with appropriately.

-----Original Message-----
**From:** Perry Robert
**Sent:** Tuesday, June 07, 2005 5:39 PM
**To:** Belt Bradley; Snowbarger Vince; Pilipovich Michele; Lattimer Rick; Bledsoe Lori
**Cc:** Petta Richard; Greene Cynthia; Jeffers Dwayne; Perry Robert
**Subject:** Possible Physical Harm from False and Misleading Content of Flyers

Mr. Belt, I write to you to inform you of flyers circulating within the PBGC building that may inflame contract and Federal employees to take untold actions against me. I am informing you of this possible threat in the event that I may be required to defend myself from possible physical harm. The flyer that I received today contains cut and past excerpts from an e-mail that I sent to you April 27, 2004 as a result of an EEO complaint filed with my EEO Counselor. Regardless of who is behind the dissemination of the inflammatory flyers, I filed my EEO complaint as a result of violations of my civil rights.

The flyer contains language that I "fingered employees and turned them in to the Executive Director, Inspector General and other top management officials." The flyers contain false information that I believe will incite some current and past employees to want to approach me in a threatening manner and cause bodily harm. I will use reasonable restraint to not act unprofessionally, however, I will take appropriate actions to defend myself from such bodily harm as necessary.

I personally believe that Stuart Bernsen wrote and disseminated the flyers within PBGC. I will deliver a copy of the flyers to HRD and your office.

Robert T. Perry
Auditor
IPD/STCD/CAB
(202) 326-4000, Ext. 3495

PILIPOVICH
EXHIBIT
12

**Perry Robert**

**From:** Lattimer Rick
**Sent:** Thursday, June 16, 2005 4:33 PM
**To:** ALL PBGC
**Subject:** INAPPROPRIATE USE OF PBGC RESOURCES

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

John Seal has asked me to send the following e-mail concerning the recent distribution of flyers throughout the Corporation.

**MEMORANDUM**

DATE: June 16, 2005

TO: All PBGC Employees and Contractors

FROM: John Seal
Chief Management Officer

SUBJECT: Inappropriate Use of PBGC Resources

There has recently been some highly inappropriate e-mail activity and literature distribution at the PBGC. Some of this e-mail activity and literature distribution has also included implied threats of violence towards others. HRD and OGC are currently investigating this matter in order that appropriate action is taken to stop this type of activity.

Effective immediately, employees are not to use PBGC resources to prosecute or defend claims or disputes between or among employees concerning union matters of any kind involving the adequacy of representation or the quality or character of a particular labor organization, its officials or former officials. "PBGC resources" includes telephones, the e-mail system (including sending e-mails from outside PBGC to PBGC employees' official e-mail addresses), computers, photocopiers, facsimile machines, bulletin boards, and your time while on duty time as PBGC employees. Continued use of PBGC resources for these purposes may result in discipline, up to and including removal.

I would also like to remind all employees and contractors that it is the policy of the PBGC to promote and maintain a safe work environment for its employees and contractors. The Corporation is committed to working with its employees to maintain a work environment free from violence, threats of violence, harassment, intimidation or other disruptive behavior by individuals who work in or visit our office sites.

Employees and contractors are expected to be courteous and professional in their daily work activities at all times. Any type of violence, threats, harassment, intimidation, or other disruptive behavior in the workplace will not be tolerated. All reports of incidents, or potential incidents, will be taken seriously and will be dealt with in a timely and appropriate manner. In addition to actual physical aggression, inappropriate behavior can include oral or written statements, gestures, or expressions that communicate a threat of physical harm. Threats of harm can be communicated in person, in writing, in telephone calls, by electronic mail (e-mail) or by other means. Individuals who engage in such conduct may be subject to disciplinary action, up to and including

removal, and/or they may be removed from the premises and subject to criminal penalties.

We need your cooperation to implement this policy effectively and to maintain a safe working environment. Do not ignore any behavior that you perceive to be violent, threatening, harassing, intimidating, or otherwise disruptive. If such behavior occurs, report these incidents as follows:

- If you believe that you or another individual is threatened with *immediate bodily harm*, call the police directly by dialing 9 – 911. Then report the incident to your supervisor, who will contact the Human Resources Department or PBGC's Security Officer for further action.

- If there is no threat of *immediate bodily harm*, report the incident to your supervisor. Supervisors should then contact Rick Silva, in the Labor and Employee Relations Section of the Human Resources Department, on ext. 3567 or Laura Stitt, PBGC's Security Officer on ext. 6346. Mr. Silva or Ms. Stitt will provide advice on the next course of action.

If you have any questions about this policy, please contact Laura Stitt or Rick Silva.

PILIPOVICH
EXHIBIT
13

**Pilipovich Michele**

**From:** Perry Robert
**Sent:** Monday, October 31, 2005 1:07 PM
**To:** Silva Ricardo
**Cc:** Forster Raymond; Belt Bradley; Barber Stephen; Starr Judith; Jeffers Dwayne; Pilipovich Michele; Lattimer Rick
**Subject:** FW: Minutes

**Mr. Silva, I must inform you again as the investigator of Mr. Jeffers' and my previous harassment complaints against Ms. Baird. Please read Ms. Baird's October 31, 2005 e-mail at 12:51 pm and you will see that her harassment is beyond Union activity. I believe Ms. Baird has clearly violated the requirement to not make disparaging remarks against others as she has done. As you will read further, you will find that she is inviting Mr. Bernsen to participate in her harassing activities.**

**Mr. Silva, please provide me and hopefully Mr. Jeffers the status of your investigations since Mr. Jeffers' and my initial complaint with you on June 7, 2005. To date, I have no understanding of what is happing with your investigations.**

**Thanks, Robert.**

Robert T. Perry
EEO Complainant / Federal Employee
IPD/STCD/CAB
(202) 326-4000, Ext. 3495

-----Original Message-----
**From:** Baird Rhonda
**Sent:** Monday, October 31, 2005 12:51 PM
**To:** Perry Robert
**Cc:** Greenhill Barry; Montgomery Delarse; Petta Richard; Jeffers Dwayne; Bernsen Stuart
**Subject:** RE: Minutes

**Thank you for the invite to join the Board, Mr. Perry but as I have stated before, it is against my principles to work directly with highly unethical and immoral persons-- especially in a voluntary capacity. Unfortunately, with your corrupt regime in office attempting to sabotage my case at every opportunity, I have to worry about my individual issues first. After all, I wouldn't want to be tossed out on my ear when I get to District Court like many of your claims and Mr. Jeffers' claims were.**

**Monty, before you say it, you are getting these messages because I'm simply doing a reply all.**

**Stuart, check out the e-mail string below and please address the veracity of the representations made by Mr. Perry and Mr. Jeffers, if you have time in your busy schedule. Frankly, only do this if you have nothing else to do during a break period-- communication with NAGE Local R3-77, as with NAGE itself, is not worth much more effort than a few minutes, unless you have a pending matter they are trying to help management jettison. Thanks.**

-----Original Message-----
**From:** Perry Robert
**Sent:** Monday, October 31, 2005 12:40 PM
**To:** Baird Rhonda
**Cc:** Greenhill Barry; Montgomery Delarse; Petta Richard; Jeffers Dwayne
**Subject:** RE: Minutes

**Ms. Baird, as Secretary of NAGE I do not have minutes of meetings since my term as Secretary. In fact, minutes are not required since the Union has not had a "Quorum" to hold official meetings. For what ever reason, members do not come to Union meeting in mass. You have attended some of the meetings in which we have had between 7 to 10 members. I do not think anyone would call this a "Quorum". As for upcoming meetings, we will inform you of them as we will other members of the Union.**

**In addition, I share the Vice President at Large views as he had previously stated them to you. We will not permit agreements of any kind that are not in the best interest of the Union membership. In addition, I will not vote to permit anyone other than Steward or Executive members to attend board members. If you want to attend a board meeting, there is an election coming up in which you are invited to run for a position.**

**As always, Solidarity is the way to go. Have a NAGE day.**

Robert T. Perry
NAGE, Secretary
(202) 326-4000, Ext. 3495

-----Original Message-----
**From:** Baird Rhonda
**Sent:** Monday, October 31, 2005 12:07 PM
**To:** Jeffers Dwayne
**Cc:** Greenhill Barry; Montgomery Delarse; Petta Richard; Perry Robert
**Subject:** RE: Minutes

**Forget the "In Solidarity" meaningless drivel; I *ain't* in solidarity with folks who play clandestine games with people's lives and livelihood. How could you forget!**

**You are fully on the Local's Board. Aren't you? Isn't that what the Vice President at Large designation means? You can't be a board member just to collect information for your case. Maybe I'm mistaken and you're operating under a revised Bylaw I missed. From where I sit, despite your attempts in writing (and I'm sure orally) to negate your responsibility for this obvious fiasco for BU employees, you are entirely responsible for this Board's actions!**

**Thank you for attempting to provide an answer below. It is an improvement for you; kudos on your self-improvement. Now, let's focus specifically on my request. Actual MINUTES. Can I have a copy of the actual minutes taken contemporaneously with the meeting? Additionally, I would like to get copies of all minutes since the inception of the current board. Might as well find out what other mischief you have been up to. Furthermore, per the Local's Bylaws, I would like to be informed of upcoming board meetings and request permission to attend. If I am denied the right to attend, please explain in detail why permission is denied.**

**Thank you.**

**Rhonda Baird**
**BU Employee not Willing to be Sold Out by the Local Board**

-----Original Message-----
**From:** Jeffers Dwayne
**Sent:** Monday, October 31, 2005 11:42 AM
**To:** Baird Rhonda; Petta Richard; Perry Robert
**Cc:** Greenhill Barry; Montgomery Delarse
**Subject:** RE: Minutes

Ms. Baird,

I am sorry that I am not in possession of the documents that you request.
The September 2005 union membership meeting was cancelled.
Robert Perry was not in attendance at the October 2005 annual membership meeting.

A quick summary of the main issues of the October 2005 meeting:

- PBGC is attempting to institute a MOU that requires federal employees to have a FICO score of 660 or more to obtain a full privilege business travel card or business purchase card. Employees with a FICO score below 500 will be ineligible for a purchase card. I voted against this MOU because of the disparate impact it will have on lower graded program assistants who need the purchase card as tool to complete PBGC's mission.

- PBGC and NAGE Local Student Loan committee have agreed upon a Student Loan MOU that gives management **full discretion** on who may get student loan payments and how much management pays to individual employees, **without any grievance rights**. The appeal process is through HRD, where Rick Lattimer and/or Michelle Pilipovich will be the deciding officials **without any grievance rights to appeal the decision**. This MOU has not been officially placed before the Executive Committee for vote, but I have made it known at the

membership meeting that I will be voting against this MOU when and if it is tabled to the executive committee.

- The CBA was somewhat discussed but I did not pay much attention because I have not been presented with a final CBA document to approve to put before the union membership.

In Solidarity,
Dwayne Jeffers
Vice President at Large, NAGE Local R3-77

-----Original Message-----
**From:**   Baird Rhonda
**Sent:**    Friday, October 28, 2005 10:38 AM
**To:**      Petta Richard; Jeffers Dwayne; Perry Robert
**Subject:** Minutes
**Importance:**    High

**I missed the last two membership meetings due to unavoidable schedule conflicts. Therefore, I would like to have a copy of the minutes ASAP. Since you are probably all busy, I am willing to pick up the document, copy it and return it to you.   Let me know where I can pick it up.  Thank you.**

PILIPOVICH
EXHIBIT
14



Pension Benefit Guaranty Corporation
1200 K Street, N.W., Washington, D.C. 20005-4026

NOV - 2 2005

PBGC
2005 NOV -3 PM 4:17
[illegible]

**MEMORANDUM**

TO: Robert Perry

FROM: Michele Pilipovich *M. Pilipovich*

SUBJECT: Your Complaint of June 6, 2005

I write to notify you that PBGC has retained the law firm of Littler Mendelson to take over and complete PBGC's investigation of your June 6, 2005 complaint to PBGC's Human Resources Department (HRD). I am providing them information obtained thus far. The firm is also retained to investigate certain related incidents and complaints. PBGC will then review the evidence and decide what action is appropriate.

Littler Mendelson attorneys Peter Susser, Nancy Delogu and Gary Shapiro will conduct interviews of PBGC employees and staff, and obtain all relevant information. Steve Williams in PBGC's Office of the General Counsel is liaison with the firm on this matter. This investigation concerns complaints made to HRD, not complaints which are or may be in the informal or formal EEO process.

Accordingly:

1. The Littler Mendelson attorneys will be contacting you in the very near future to review information with you and obtain additional responses. This is your chance to provide all information relevant to your complaint. It is also part of an official investigation and you are required to meet with them and provide information.

2. You are directed to communicate with Mr. Williams or myself concerning this investigation. It is not appropriate for you to use PBGC systems to copy senior agency officials or other employees now that you have this official channel.

If you have any questions concerning your complaints, this investigation or your responsibilities, please do not hesitate to contact Steve Williams at extension 3514. Other parties to the complaints are being similarly notified.

cc: Steve Williams
Steve Weiss

# PILIPOVICH
# EXHIBIT
# 15

PBGC
Protecting America's Pensions
Pension Benefit Guaranty Corporation
1200 K Street, N.W., Washington, D.C. 20005-4026

# MEMORANDUM

TO: Robert Perry — February 16, 2006

FROM: Michele Pilipovich *M Pilipovich 2/16*
Director of Human Resources Department

SUBJECT: Complaints of Harassment and Workplace Safety Issues

This responds to the series of e-mail messages you sent to PBGC's Human Resources Department (HRD), among others. In them, you complained that a series of flyers distributed at PBGC beginning June 2005, and a series of e-mail communications which were negative toward you and Dwayne Jeffers, violated your rights under PBGC policies and the Collective Bargaining Agreement ("CBA"), and placed your workplace safety in jeopardy. You allege that the flyers and e-mails were initiated by your co-workers Stuart Bernsen and Rhonda Baird.

PBGC investigated your complaints together with those of Mr. Jeffers and a related complaint by another employee. Both PBGC staff and attorneys in a private law firm retained by PBGC's Office of the General Counsel met with you on several occasions, reviewed numerous flyers and e-mails you had submitted, and interviewed other involved persons. The facts and complaints, as well as the standards of conduct established in the attached CBA Article,[1] PBGC's Professional Courtesy Directive,[2] Electronic Communications Policy (as restated June 21, 2005 and November 14, 2005),[3] PBGC's Workplace Harassment Policy,[4] and the Workplace Violence Policy were considered.[5] Based upon the facts and above policies, the following is

---

[1] Article 61 of the CBA in effect at the time of your complaint provides that "the Parties recognize that a productive labor-management relationship is substantially dependent on an atmosphere of professional dealings and mutual respect, and agree that they shall be obligated to act accordingly. Attachment A.

[2] PBGC Notice No. 86-6, "Professional Courtesy." Attachment B.

[3] "PBGC Electronic Communications Policy," Attachment C; revised by "PBGC Policy on the Use of Information Technology Resources," effective November 14, 2005, Attachment D.

[4] "Preventing Workplace Harassment," October 2, 2003, Attachment E.

[5] "Workplace Violence," Attachment F.

determined.[6]

**Complaint of June 7, 2005.** This complaint, captioned "Possible Physical Harm from False and Misleading Content of Flyers," concerned flyers found in PBGC's workplace. You believed that these flyers had been created and distributed by Stuart Bernsen and Rhonda Baird.[7] This investigation shows that Stuart Bernsen did prepare and distribute the flyers. Mr. Bernsen stated that he did not use PBGC time, equipment or supplies to prepare them, and he did not distribute the flyers during PBGC work hours. The investigation did not establish otherwise. Evidence did not support a conclusion that Rhonda Baird was involved in writing, copying or distributing the flyers.

**PBGC time and facilities.** The evidence did not indicate that the flyers were prepared using PBGC time, equipment or resources, or that they were distributed during Mr. Bernsen's paid work time.[8] PBGC's then-practice of allowing distribution of flyers in work areas during non-work time afforded Mr. Bernsen a right of access. Accordingly, the creation or distribution of the flyers do not violate PBGC policies or requirements.

**The flyers themselves.** PBGC does not approve of, or support, the content of the flyers. However, their content or distribution do not violate the CBA or any PBGC policy or directive, as interpreted or in effect at that time. As you know, over the past two years, you, Mr. Jeffers, Mr. Bernsen, Ms. Baird, Ms. Johnson and others have been involved in different sides of intra-union disputes and arbitrations. On numerous occasions, those disputes have carried over into the workplace. You all have traded numerous e-mail accusations (sent to many individuals), in addition to pursuing formal proceedings, FLRA Unfair Labor Practice charges, and legal action. The union context of those disputes, according to FLRA caselaw, affords additional protection for potentially disruptive, discourteous and harassing behavior that would not otherwise be

---

6 On November 3, 2005, you entered into an agreement with PBGC which provided for "full satisfaction of any and all claims, demands, rights and causes of action of whatever kind and nature based upon [your] employment with [PBGC] up to the date the Plaintiff signed this Stipulation of Settlement and Dismissal, including but not limited to the claims asserted in" *Perry v. Chao*, Nos. 03-2495 & 04-1996 (U.S.D.C.). Most of the flyers of which you complain were issued prior to your signing of the Settlement Agreement.

7 The flyers, together with similar flyers distributed later, are attached at Attachment G.

8 In his June 16, 2005 memorandum entitled, "Inappropriate Use of PBGC Resources, Chief Management Officer, John Seal, reiterated the policy that PBGC resources should not be used to prosecute or defend claims or disputes concerning union matter. *See* Attachment H. Nor should employees engage in such behavior while on duty. However, nothing in the memorandum forbids the preparation and distribution of leaflets or other materials prepared and paid for using non-PBGC resources and distributed during non-duty time.

condoned by PBGC. While the flyers may be directed at you personally, be intended to deter your union activities, and may otherwise seem harassing and violative of PBGC's policies, in this context, PBGC's options are quite limited. *See e.g., Overseas Education Association*, 11 FLRA 377 (1983)(union efforts to get agency to discipline non-member employee for distributing letter publicizing union's failure to help employee and urging union president be "recalled" from position violated the employee's activity rights). These protections have been applied to your communications, also.

Therefore, measured against the applicable standards, the flyers did not violate PBGC's Professional Courtesy directive. In the context of this labor dispute, the flyers do not constitute impermissible workplace harassment. Nor are the flyers demonstrably "false," they express what are obviously your opponents' opinions/innuendos – *see* FLRA Regional Director's decision in *PBGC & IPEU & NAGE*, WA-RP-05-0002 (FLRA, filed Sept. 27, 2005) at 36-44. In addition, contrary to your assertions, the flyers did not pose a safety threat. You presented no evidence of any person approaching you, or situation confronting you, which would have created a reasonable fear of harm. The language in the flyers cannot reasonably be construed as threatening violence against you or any other person at PBGC.

**Later complaints.** During the investigation, you also submitted e-mail communications from Ms. Baird. You believed that she was involved in preparing the flyers, and you alleged that the flyers and e-mail messages violated PBGC policies. Attachment G. Most of Ms. Baird's e-mail messages were sent to multiple recipients and contained long chains of internal union or inter-faction correspondence. Your e-mails sent in response to Ms. Baird were also disseminated among union and bargaining unit members. The e-mails Ms. Baird sent and which you sent in response to Ms. Baird, and any other documents forming the chain of correspondence were reviewed.

When interviewed, and in other communications to PBGC, Ms. Baird claimed that she was using PBGC's e-mail system for communication concerning the internal union [illegible] and trusteeship issues), or inter-union (NAGE/IUPE) matters as discussed above. She [illegible] restricted distribution to union or ex-union persons involved in the disputes. Just as you [illegible] felt you were merely responding to protect yourself against attacks by [illegible] other parties claim they were motivated to respond to your accusations [illegible] responses to the other parties involved. As noted above, federal law provides [illegible] for such union-related correspondence. These are not matters the agency can [illegible] "flagrant misconduct."

Although the words or tone used is not appropriate, PBGC cannot take action [illegible] regarding the actions you described – encouraging employees to file [illegible] another, supporting one group of candidates over another, [illegible] expulsion of union members for misconduct. While none of these [illegible] of PBGC, PBGC's longstanding policy has [illegible] system [illegible]

Accordingly, the actions you complained of did not violate the CBA or PBGC policies, and did not violate PBGC's Professional Courtesy Directive, Electronic Communications Policy, Workplace Harassment Policy or Workplace Violence Policy, or jeopardize your safety in the workplace.

The investigation of your complaints is completed. If you have any future complaints concerning similar matters, please submit them in writing, not via e-mail, to me. You should not send copies or e-mails on these subjects to the Executive Director, Deputy Executive Director, the General Counsel, other senior managers, or multiple individuals. Also, do not send e-mails or materials to Littler Mendelson or their attorneys because their involvement (and their contract with PBGC) has ended.

If you have any questions, or want to discuss this further, please make an appointment to see me.

Attachments

0604-PERRY-00030