UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ROBERT T. PERRY,                    )
                                    )
PLAINTIFF,                          )
                                    )       Case No.: **1:06CV01371**
                                    )       Judge: **Colleen Kollar-Kotelly**
            vs.                     )
                                    )
VINCENT SNOWBARGER,                 )
                                    )
        DEFENDANT.                  )
_____)

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Plaintiff, Robert T. Perry, by and through his attorneys, moves to deny the

Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, moves to

dismiss the Motion for Summary Judgment, pursuant to Rule 56. Plaintiff states the

following in support of this motion:

1.    The Complaint alleges all necessary facts and causes of action to properly

      place the Defendant on notice of the charges, evidence and remedies;

2.    The Plaintiff did exhaust all administrative remedies;

3.    The Complaint sufficiently alleges that the Plaintiff was discriminated

      against  based on reprisal, race, was placed in a hostile work

      environment, and sufficiently alleges breach of settlement agreement;

4.    There has not been a sufficient discovery period and there exists genuine

      disputes as to material facts of consequence in this case, making

      summary judgment as a matter of law premature;

5.      Incorporated herein is the Plaintiff's affidavit and a Rule 56 affidavit; and

6.      Additional grounds to deny the motion to dismiss, or in the alternative,

motion for summary judgment are set forth in the accompanying

Memorandum of law, which is incorporated herein.


WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant's Motion to

Dismiss, or in the alternative, dismiss the Motion for Summary Judgment.


Respectfully Submitted,
___/s_____
Ari Taragin, Esq. (MD: Bar No. 27409)
Snider & Associates, LLC
Attorneys for Plaintiff
104 Church Lane, Suite 201
Baltimore, Maryland 21208
Phone: 410-653-9060
Fax: 410-653-906

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ROBERT T. PERRY,                     )
                                     )
PLAINTIFF,                           )
                                     )      Case No.: **1:06CV01371**
                                     )      Judge: **Colleen Kollar-Kotelly**
            vs.                      )
                                     )
VINCENT SNOWBARGER,                  )
                                     )
      DEFENDANT.                     )
_____ )

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

INTRODUCTION

STANDARD OF REVIEW

STATEMENT OF FACTS

I.    A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM CANNOT
      SUCCEED IF THE COMPLAINT ON ITS FACE ALLEGES FACTS THAT
      IF PROVEN JUSTIFIES JUDICIAL RELIEF.

II.   A MOTION FOR SUMMARY JUDGMENT MUST BE DISMISSED IF
      THERE ARE GENUINE ISSUES OF MATERIAL FACTS OF CONSEQUENCE
      IN DISPUTE.

ARGUMENT

I.    THE MOTION TO DISMISS SHOULD BE DISMISSED BECAUSE THE
      COMPLAINT SUFFICIENTLY ALLEGES FACTS TO PROVE A PRIMA FACIE
      CASE OF THE HOSTILE WORK ENVIRONMENT, RETALIATION, AND
      BREACH OF SETTLEMENT CLAIMS.

II.   THE MOTION FOR SUMMARY JUDGMENT SHOULD BE DISMISSED

3

BECAUSE THEIR ARE MATERIAL DISPUTES AS TO FACTS OF CONSEQUENCE.

A.    THE CHARGE OF HOSTILE WORK ENVIRONMENT BASED ON RETALIATION SHOULD NOT BE DISMISSED BECAUSE THE PLAINTIFF WILL DEMONSTRATE A PRIMA FACIE CASE, AFTER A PROPER DISCOVERY PERIOD.

B.    THE HOSTILE WORK ENVIRONMENT CLAIM BASED ON RACE SHOULD NOT BE DISMISSED BECAUSE THE PLAINTIFF WILL DEMONSTRATE A PRIMA FACIE CASE AFTER A PROPER DISCOVERY PERIOD.

C.    THE RETALIATION CLAIM SHOULD NOT BE DISMISSED BECAUSE THE PLAINTIFF WILL DEMONSTRATE A PRIMA FACIE CASE, AFTER A PROPER DISCOVERY PERIOD.

D.    THE PLAINTIFF CAN DEMONSTRATE THAT THE AGENCY BREACHED THE SETTLEMENT AGREEMENT AND THE CLAIM SHOULD NOT BE DISMISSED PRIOR TO FULL DISCOVERY.

III.    THE AGENCY'S REASONS FOR ITS ACTIONS WERE NOT LEGITIMATE AND THE PLAINTIFF WILL DEMONSTRATE THAT PRETEXT FOR DISCRIMINATION, HOSTILE WORK ENVIRONMENT AND RETALIAITON EXIST IN THIS CASE.

CONCLUSION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ROBERT T. PERRY,                    )
                                    )
PLAINTIFF,                          )
                                    )
                                    )    Case No.: **1:06CV01371**
                                    )    Judge: **Colleen Kollar-Kotelly**
         vs.                        )
                                    )
VINCENT SNOWBARGER,                 )
                                    )
     DEFENDANT.                     )
_____)

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Plaintiff, Robert T. Perry, by and through his attorneys, moves to deny the

Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, moves to

dismiss the Motion for Summary Judgment, pursuant to Rule 56.


INTRODUCTION

Plaintiff, Robert Perry, filed the amended complaint in this civil action on or about

November 29, 2006.  The complaint alleged hostile work environment, retaliation and

discrimination.  In November 2005, Plaintiff entered into a settlement agreement with

the Agency for a previous case.  As part of the settlement, the Agency agreed to a

number of stipulations including promotion, a monetary sum, training opportunities, and

a period of time during which Plaintiff would remain an employee at the Agency while

searching for another federal job.

Despite this settlement, when issuing Plaintiff a new SF-50, the Agency wrote that Plaintiff had received a promotion due to a stipulation.  The Agency had not included this language on other settlement agreements and SF-50's.  Furthermore, as part of the settlement, the Agency agreed to stop the harassment by several individuals that had lead to the original complaint.  Despite this agreement, the harassment continued.  Instead of ensuring a safe work environment for the Plaintiff, the Agency decided to investigate several "allegations" of sexual harassment against Plaintiff which an arbitrator found to be wholly improper, lacked all merit and which had been knowingly inappropriate by the Agency before the investigation.

After a proper discovery period, the Plaintiff will demonstrate a prima facie case of discrimination based on retaliation, hostile work environment, as well as breach of the settlement agreement.

STANDARD OF REVIEW

I.      A MOTION TO DISMISS UNDER RULE 12(b)(6)  CANNOT
        SUCCEED IF THE COMPLAINT ON ITS FACE ALLEGES FACTS THAT   IF
        PROVEN JUSTIFIES JUDICIAL RELIEF.

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged.  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Barr v. Clinton,* 370 F.3d 1196, 1199 (D.C.Cir.2004) (citing *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276

(D.C.Cir.1994)).  However, the Court need not accept asserted inferences or conclusory allegations that are unsupported by the facts set forth in the complaint.  *Kowal,* 16 F.3d at 1276.  In deciding whether to dismiss a claim under Rule 12(b)(6), the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference into the complaint, and matters about which the Court may take judicial notice.  *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624-25 (D.C.Cir.1997). The Court will dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley,* 355 U.S. at 45-46.

While a plaintiff has the burden of establishing a prima facie case of discrimination at trial, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), the prima facie case requirement is "an evidentiary standard, not a pleading requirement" to be adhered to in the complaint. *Swierkiewicz v. Sorema,* 534 U.S. 506, 510, 512 (2002) (stating that "[g]iven that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases").  In *Sparrow v. United Air Lines,* 216 F.3d 1111 (D.C.Cir.2000), the D.C. Circuit held that to survive a Rule 12(b)(6) motion, a plaintiff alleging employment discrimination need not plead a prima facie case of discrimination. " 'Because racial discrimination in employment is 'a claim upon which relief can be granted,' ... 'I was turned down for a job because of my race' is all a complaint has to say.' " *Id.* at 1115 (quoting *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998)). Under Rule 8, a plaintiff's complaint alleging employment discrimination must contain "only a short and

plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz,* 534 U.S. at 512 (quoting Fed.R.Civ.P. 8(a)(2)).

In the case at bar, Plaintiff has made a well plead allegation, and the complaint should not be dismissed, pursuant to 12(b)(6), for failure to state a claim. Looking at the complaint in the light most favorable to Plaintiff, he has properly plead hostile work environment, retaliation, discrimination, and breach of settlement.

II.   A MOTION FOR SUMMARY JUDGMENT, SEPECIFICALLY WHEN IT IS  PRE-
      DISOCVERY, MUST BE DENIED IF THERE ARE GENUINE ISSUES OF
      MATERIAL FACTS OF CONSEQUENCE IN DISPUTE.

Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). All evidence must be viewed "in the light most favorable" to the nonmoving party.  *Info. Handling Servs., Inc., v. Def. Automated Printing Servs.,* 338 F.3d 1024, 1032 (D.C.Cir.2003) (citing *Waterhouse v. District of Columbia,* 298 F.3d 989, 991 (D.C.Cir.2002)).  However, summary judgment should ordinarily be entered only after the plaintiff has been given "adequate time for discovery." *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Info. Handling Servs ., Inc.,* 338 F.3d at 1032.  And district courts are afforded substantial discretion to manage discovery as they see fit.  *Stella v. Mineta,* 284 F.3d 135, 147 (D.C.Cir.2002).

"The court must give a party opposing summary judgment an adequate opportunity to obtain discovery." *Radich v. Goode,* 886 F.2d 1391, 1391 (3d Cir.1989)

(citing *Dowling v. Philadelphia,* 855 F.2d 136, 139 (3d Cir.1988)).  Courts have noted

that pre-discovery summary judgment motions are premature and should only be used

for exceptional circumstances.  *Patton v. Gen. Signal Corp.,* 984 F.Supp. 666, 669

(W.D.N.Y 1997).

      In order to show that there are genuine issues of fact for trial, the nonmoving

party must "go beyond the pleadings," marshaling evidence culled from its own

affidavits, or by the depositions, answers to interrogatories, and admissions on file.

*Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

475 U.S. 574, 586 (1986) (holding that the adverse party must do more than simply

"show that there is some metaphysical doubt as to the material facts").  Rule 56(f) states

that if it "appears from the affidavits of a party opposing the motion that the party cannot

for reasons stated present by affidavit facts essential to justify the party's opposition, the

court may refuse the application for judgment or may order a continuance to permit

affidavits to be obtained or depositions to be taken or discovery to be had...."

Fed.R.Civ.P. 56(f).  Rule 56(f) motions should be granted "almost as a matter of course

unless the nonmoving party has not diligently pursued discovery of the evidence."

*Berkeley v. Home Ins. Co.,* 68 F.3d 1409, 1414 (D.C.Cir.1995) (citing *Wichita Falls*

*Office Assoc. v. Banc One Corp.,* 978 F.2d 915, 919 n. 4 (5th Cir.1992).  "The purpose

of 56(f) is to provide non-movants with a much needed tool to keep open the doors of

discovery in order to adequately combat a summary judgment motion."  *Wichita Falls*

*Office Assoc.,* 978 F.2d at 919.

Under the *McDonnell Douglas* paradigm, plaintiff has the initial burden of proving by a preponderance of the evidence a "*prima facie*" case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). If plaintiff succeeds in establishing a *prima facie* case, the burden shifts to defendant to articulate some legitimate, non-discriminatory reason for the adverse action against plaintiff, and to produce credible evidence supporting its claim. *McDonnell Douglas,* 411 U.S. at 802. Once a defendant has articulated a legitimate, nondiscriminatory reason for the employment action, "the McDonnell Douglas framework-with its presumptions and burdens-disappear[s], and the sole remaining issue [is] '[retaliation] *vel non." ' Reeves v. Sanders Plumbing Prods., Inc.,* 530 U.S. 133, 142-43 (2000).

This inquiry is necessarily fact intensive and granting a motion for summary judgment on this issue prior to providing the parties with any opportunity for discovery is clearly contrary to this Circuit's precedent. *See Paquin v. Fed. Nat'l Mortgage Ass'n,* 119 F.3d 23, 28-29 (D.C.Cir.1997) (reversing district court's denial of the plaintiff's Rule 56(f) motion because the plaintiff should have been provided the opportunity to conduct discovery to garner facts to refute the defendant's legitimate non-discriminatory reason for the alleged adverse employment action); *Velikonja v. Muller,* 315 F.Supp.2d 66, 78-80 (D.D.C.2004) (finding that Rule 56(b) motion should be granted "[b]ecause it [was] unclear based on the undeveloped record whether plaintiff [would] be able to proffer evidence" to refute the defendant's articulated legitimate, non-discriminatory reason for his actions).

In the case at bar, there has been no opportunity to engage in discovery.  As there are disputed material facts, the Agency's motion for Summary Judgment is at the very least, premature and should therefore not be granted.

<u>DISPUTED AND UNDSIPUTED MATERIAL FACTS</u>

In the Defendant's motion for summary judgment there is a list of facts.  For the sake of brevity and comprehension, Plaintiff summarizes which facts are undisputed and which are materially in dispute using the same numbering system. <u>See</u> Defendant's statement of material facts not in dispute.

1. Plaintiff agrees with Defendant's assertion of fact.

2. Plaintiff agrees with Defendant's assertion of fact.

3. Plaintiff agrees with Defendant's assertion of fact.

4. Plaintiff disagrees with Defendant's assertion of fact.  Under the terms of the settlement agreement Plaintiff released the Defendant from liability concerning matters related to his employment with Defendant prior and including the date Plaintiff signed the Settlement agreement which was November 5, 2005, and not November 8, the day the settlement agreement was executed. <u>See</u> Attachment A (settlement agreement) p.1 ¶1 p.2 ¶1.

5. Plaintiff disagrees with Defendant's assertion of fact. The settlement agreement requires the Defendant to issue only one SF-50 form to effectuate the formal Personnel Action of promoting Plaintiff, without back pay, to a GS-13, Step 3 auditor position one year prior to the date of the settlement agreement. <u>See</u> Attachment A p.3 ¶ 1. On November 2005, Plaintiff notified Defendant that it

had not provided him with an SF-50 regarding the one documented personnel action required of the November 8, 2005 settlement agreement.  After Plaintiff's notification, Defendant issued four SF-5O forms through the period of November 2005 and May 2006.  Some of these forms replaced former SF-50 forms that were issued not in accordance with the settlement agreement. Three of Plaintiff's SF-50's included inappropriate and personal language in the "remarks" section.  <u>See</u> Attachment B (Mr. Perry's affidavit) ¶ 5 and corresponding Exhibit 1.

6.  Plaintiff disagrees with Defendant's assertion of fact. The settlement agreement was not silent as to what remarks or information could be included in the SF-50 forms.  The settlement agreement states that "Defendants shall enter a formal Personnel Action in Plaintiff's Official Personnel File indicating that Plaintiff was promoted, without back pay, to a GS-13, Step 3 auditor position one year prior to the date the Stipulation of Settlement and Dismissal is executed." <u>See</u> Attachment A p.3 ¶ 1.  This language was included to delineate exactly what would be included in the SF-50 form, and makes no mention of a clause stating that this promotion was due to a stipulation.  By placing this additional language in the forms, Defendant violated the settlement agreement.  Further, the intent of the settlement agreement is clear.  The purpose of the promotion, training and letter of recommendation was to increase Plaintiff's marketability and mentioning promotion was due to stipulation completely frustrates that obvious purpose. Attachment B ¶ 6 &7.

7.  Plaintiff agrees with Defendant's assertion of fact.

8.  Plaintiff agrees with Defendant's assertion of fact.

9.  Plaintiff agrees with Defendant's assertion of fact.

10. Plaintiff agrees with Defendant's assertion of fact.

11. Plaintiff agrees with Defendant's assertion of fact.

12. Plaintiff agrees with Defendant's assertion of fact.

13. Plaintiff disagrees with Defendant's assertion of fact. The purpose of the references in the "remarks" section was to retaliate against and harm Plaintiff. Its purpose was clearly not to explain to the Office of Personnel Management (OPM) "the manner in which Plaintiff was promoted", See Defendant's Motion for Summary Judgment, p.4¶ 13, because if this was the case, this information should have appropriately been additionally been included in an SF-52 form.  In addition, if this was the purpose, similar language should have been included in the SF-50s of Dwayne Jeffers and Delarse Montgomery.  The fact that it was not included in these SF-50s clearly shows that this is merely a pretext for retaliation. See Attachment B ¶ 8 and Attachment C (Jeffers affidavit) ¶ 10.

14. Plaintiff agrees with Defendant's assertion of fact.

15. Plaintiff disagrees with Defendant's assertion of fact.  The purpose of the references in the "remarks" section was to retaliate against and harm Plaintiff. Its purpose was clearly not "to protect PBGC in the event that OPM questioned the personnel actions", See Defendant's Motion for Summary Judgment, p.4¶ 15, because if this was the case, this information should have appropriately

been included in an SF-52 form.  In addition, if this was the purpose, similar language should have been included in the SF-50s of Dwayne Jeffers and Delarse Montgomery.  The fact that it was not included in these SF-50s clearly shows that this is merely a pretext for retaliation.  See Attachment B ¶ 10 and Attachment C (Jeffers affidavit) ¶ 10. In addition, the SF-50 form that Defendant issued for Plaintiff's Cost-of-Living Adjustment (COLA) with no offending statements on or about January 09, 2006 was short lived because the Defendant issued another SF-50 form on November 23, 2006 with harmful language.  See Attachment B ¶ 11 and corresponding Exhibit 2.

16. Plaintiff disagrees with Defendant's assertion of fact.  In accordance with the settlement agreement in February 2006 Defendant reissued and backdated the three November 2005 SF-50's that Plaintiff found objectionable.  These SF-50's forms no longer contained a reference to the stipulation agreement.  However, as a result of these comments  on Plaintiff SF-50's He was unable to seek out employment for any other government position because of the statement's chilling effect on Plaintiff's prospective employment.  See Attachment B ¶ 12.

17. Plaintiff disagrees with Defendant's assertion of fact.  The Defendant is misleading when it states that OPM required the written language be placed on the SF-50. EEOC manual MD-110 Chapter 32, Section 6(b) of OPM's Guide to Processing Personnel Action procedure for documenting personnel actions taken as the result of a settlement agreement, court order, EEOC or MSPB decision states that the Agency should not refer to irrelevant settlement

information on employee's SF-50.  The purpose of this procedure is to protect the privacy of an employee.  Therefore, it seems that referring to the settlement agreement and stipulation on Plaintiff's SF-50 was not right.  <u>See</u>  Attachment B ¶ 13.  Defendant reissued SF-50's after Plaintiff informed Defendant of the inappropriate and personal language contained on the forms.  PBGC in essence admits that it had the authority to initially issue SF-50's without the inappropriate and personal language on Defendant's SF-50's.  See Attachment B ¶ 15 & 16 and corresponding Exhibits 3 & 4.

18. Plaintiff disagrees with Defendant's assertion of fact.  On June 7, 2005, Plaintiff sent an e-mail to various members of Defendant upper management.  Plaintiff's e-mail complained that certain flyers had been circulated within Defendant that Plaintiff felt might incite others to take "untold actions against him".  Plaintiff also mentioned in this email that "the flyers contain false information that he believed will incite some current and past employees to want to approach him in a threatening manner and cause bodily harm".  <u>See</u> Attachment B ¶ 18 & 21 and corresponding Exhibit 5.

19. Plaintiff disagrees with Defendant's assertion fact.  The flyers followed a representational election, wherein the National Association of Governmental Employees prevailed over the independent Union of Pension Employee.  However, these flyers contained racial remarks as well.  <u>See</u> Attachment B ¶ 21 and corresponding Exhibit 5.

20. Plaintiff agrees with Defendant assertion of fact.

21. Plaintiff disagrees with Defendant's assertion of fact.  The flyers that were disseminated following the union elections were more than critical.  They incited harm and encouraged PBGC's employees to take action against Plaintiff and Jeffers under the guise of Unionism.  See Attachment B ¶ 21 and corresponding Exhibit 5; See Attachment C¶ 13  and corresponding Exhibits 10, 11, 12, 13, 14, 15, 16, 17 &18.

22.  Plaintiff agrees with Defendant's assertion fact.

23. Plaintiff agrees with Defendant's assertion of fact.

24. Plaintiff agrees with Defendant's assertion of fact.

25. Plaintiff agrees with Defendant's assertion of fact.

26. Plaintiff agrees with Defendant's assertion of fact.

27. Plaintiff disagrees with Defendant's assertion of fact. Even though Defendant retained a law firm, Littler Mendelson, P.C., to complete PBGC's investigation into Plaintiff's June 2005 complaint, there was no real investigation.  They did not take any affidavits and still determined that these were union related problems and these actions were protected.  See Attachment B ¶ 23 and corresponding Exhibit 8; See Attachment C ¶ 7.

28. Plaintiff disagrees with Defendant's assertion of fact.  Plaintiff signed the settlement agreement on November 5, 2005.  In order to meet the requirements of the settlement agreement Plaintiff send an e-mail to his EEO counselor, Rixene Hicks, informing her that he was withdrawing the EEO complaint he

initiated on September 28, 2005. <u>See</u> Attachment B ¶ 24 and corresponding Exhibit 9.

29.  Plaintiff agrees with Defendant's assertion of fact.

30. Plaintiff disagrees with Defendant's assertion of fact.  Even though Plaintiff did not have an EEO complaint during the time Defendant offered to resolve Jeffers's EEO complaint, Plaintiff had HRD complaint based on the same issues as Jeffers's EEO complaint.  <u>See</u> Attachment B ¶ 25 and corresponding Exhibit 10.  Only Mr. Jeffers was offered the option of these two remedies.  <u>See</u> Attachment C ¶ 8 and corresponding Exhibits 4 & 5.

31. Plaintiff agrees with Defendant's assertion of fact.

32. Plaintiff agrees with Defendant's assertion of fact.

33. Plaintiff agrees with Defendant's assertion of fact.

34. Plaintiff disagrees with Defendant's assertion of fact. Various flyers plaintiff submitted in support of his EEO complaint 06-04 indeed do not mention Plaintiff directly by name; however they refer to him indirectly by the terms "rat", "fink" and "overthrower" that were used in other emails together when referencing Plaintiff's name.  <u>See</u> Attachment B ¶ 26 and corresponding Exhibit 5.

35. Plaintiff agrees with Defendant's assertion of fact.

36. Plaintiff agrees with Defendant's assertion of fact.

37. Plaintiff agrees with Defendant's assertion of fact.

38. Plaintiff disagrees with Defendant's assertion of fact. Plaintiff indeed submitted eleven email massages in support of his EEO Complaint 06-04 from Rhonda

Baird. These emails were sent to multiple recipients and they referenced union related matters, however, they also used humiliating language against Plaintiff. The humiliating language is not union related matters. It's personal and designed to cause harm for Plaintiff. In addition, Defendant placed a forwarding block on Ms. Baird emails to prevent her form sending emails to Plaintiff and others that she harassed. See Attachment B ¶ 20 & 27 and corresponding Exhibits 7& 11.

39. Plaintiff disagrees with Defendant's assertion of fact. Plaintiff did not submit emails post-dating November 8, 2005 from Valda Johnson or Stuart Bernsen because these emails were send to other individuals than Plaintiff within the Agency. See Attachment B ¶ 28.

40. Plaintiff disagrees with Defendant's assertion of facts as to the term "correctly explained."

41. Plaintiff agrees with Defendant's assertion of facts.

42. Plaintiff agrees with Defendant's assertion of facts.

43. Defendant retaliated against Plaintiff by pursing and deciding a false sexual harassment charge against him and improperly misused the EEO process. See Attachment B ¶ 29 & 30 and corresponding Exhibit 12.

44. The decision for the sexual harassment investigation was not made until after the settlement had been signed. Id. at 30.

45. The sexual harassment investigation was held in arbitration through the grievance process and Arbitrator Moore determined that Defendant purposely

sought to find any and all dirt on Plaintiff during a faulty investigation initiated by
Defendant's OGC outside investigators. <u>See</u> Attachment B ¶ 30 and
corresponding Exhibit 13.

46. Arbitrator Johnson held an arbitration hearing regarding Defendant's EEO
program.  He determined that Defendant's OGC and HRD improperly imputed
themselves into Defendant's the EEO process and chilled the will of many
Defendants' employees. <u>See</u> Attachment B ¶ 31 and corresponding Exhibit 14.

47. Vincent Snowbarger, HRD Director misused his position and authority as an
EEO Director actively participated in retaliation when he falsely interpreted
Federal laws and EEO regulations to dismiss Plaintiff's complaints against
PBGC officials for the continuation to investigate a false sexual harassment
investigation against Plaintiff.  <u>See</u> Attachment B ¶ 29 and corresponding
Exhibit 12.

48. In Plaintiff's EEO informal stage of counseling, Robin Horning and Margaret
Drake were present during the interview of Michele Pilipovich, Defendant's
HRD Director, even though they were not permitted to do so according to
EEOC MD-110.  Arbitrator Johnson specified that Defendants' counsel is not
permitted to interject itself into EEO interviews of witnesses to prevent witness
intimidation. <u>See</u> Attachment B ¶ 34.

49. Defendant's general counsel issued a letter to defendant's chief operating
officer regarding legal staffing of Equal Employment Opportunity matters.  This
letter was issued shortly after NAGE, Local R-3-77, and challenged the

structure of Defendant's EEO program in arbitration. The arbitrator found that Defendant had to restructure the manner in which it provides legal representation and advice in EEO cases. <u>See</u> Attachment B ¶ 33 and corresponding Exhibit 15.

The mere fact that Defendant's list of material facts not in dispute is in genuine dispute supports Plaintiff's position that Summary Judgment is inappropriate. In the present case, the facts as developed are sufficient to support a finding that Defendant discriminated against Plaintiff. Because there is a genuine dispute as to material facts at issue and the facts are viewed in the light most favorable to the plaintiff, he has clearly established with the evidentiary record that a prima facie case exits for his claims. Furthermore, he has also shown the need for discovery in order to determine material facts of the case.

<u>ARGUMENT</u>

There are three major actions that give rise to the instant action: (1) the language referencing a stipulation that was written on Plaintiff's SF-50; 2) the continued hostile work environment both before and after the settlement agreement had been signed; and (3) the improper investigations regarding the harassment against Plaintiff and sexual harassment allegations against him. Complaint, at 12-22. There are material issues of dispute as to facts of consequence. There is sufficient evidence to prove a prima facie case of hostile work environment, retaliation, and breach of the settlement.

I.    THE MOTION TO DISMISS SHOULD BE DISMISSED BECAUSE THE
      COMPLAINT SUFFICIENTLY ALLEGES FACTS TO PROVE A PRIMA FACIE
      CASE OF ALL CLAIMS.

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court can only

consider the facts alleged in the complaint, documents attached as exhibits or

incorporated by reference into the complaint, and matters about which the Court may

take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624-25

(D.C.Cir.1997). The Court will dismiss a claim pursuant to Rule 12(b)(6) only if the

defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46.

In *Sparrow v. United Air Lines,* 216 F.3d 1111 (D.C.Cir.2000), the D.C. Circuit

held that to survive a Rule 12(b)(6) motion, a plaintiff alleging employment

discrimination need not plead a prima facie case of discrimination. " 'Because racial

discrimination in employment is 'a claim upon which relief can be granted,' ... 'I was

turned down for a job because of my race' is all a complaint has to say.' " *Id.* at 1115

(quoting *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998)).

In the case at bar, Plaintiff made the following claims:

a) Hostile work environment based on race;
b) Hostile work environment based on retaliation;
c) Retaliation; and
d) Breach of settlement

<u>See</u> Amended Complaint dated November 29, 2006.

a.      Hostile Work Environment based on Retaliation and Retaliation

Plaintiff can establish a prima facie case of hostile work environment based on

retaliation by showing (1) he engaged in protected activity; (2) he was subjected to an

adverse employment action; and (3) there was a causal link between the protected

activity and the adverse action. *see McDonnell Douglas,* 411 U.S. at 802.

Plaintiff alleged each of these in his complaint when he alleged that he engaged

in protected activity, filing an EEO complaint, when he a) was subject to continued

harassment without proper intervention from the Agency; b) when his SF-50 stated that

he received a promotion based on his stipulation which lead to him not being able to

apply for a new job; and c) when the Agency knowingly and improperly investigated

Plaintiff for sexual harassment.  The Plaintiff also alleged a causal connection between

the protected activity and adverse action.   Therefore, Plaintiff has made a well plead

allegation, and the complaint should not be dismissed, pursuant to 12(b)(6), for failure to

state a claim.

b.      Standard for Hostile Work Environment

To establish a prima facie case of hostile work environment, plaintiff must

demonstrate that: (1) he is a member of a protected class; (2) he was subject to

unwelcome harassment; (3) the harassment occurred because of his race, gender, age,

or disability; (4) the harassment affected a term, condition or privilege of employment;

and (5) the employer knew or should have known of the harassment, but failed to take

any action to prevent it. *See Jones v. Billington,* 12 F.Supp.2d 1, 11 (D.D.C.1997), *aff'd* 1998 WL 389101 (D.C.Cir. June 30, 1998).  The workplace environment becomes "hostile" for purposes of Title VII only when the offensive conduct "permeates [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

Plaintiff alleged each of these in his complaint when he alleged a hostile work environment due to retaliatory motive and discrimination.  Plaintiff alleged that the Agency did not properly stop the activities of other individuals in sending improper, defamatory, and threatening emails, and that the Agency sought to find any and all dirt on Plaintiff during a faulty investigation initiated by Defendant's OGC outside investigators.  Plaintiff also alleged that these incidents were severe and pervasive and were not done to others outside of his protected class.  Therefore, Plaintiff has made a well plead allegation, and the complaint should not be dismissed, pursuant to 12(b)(6), for failure to state a claim.

c.    Breach of Contract and Subject Matter Jurisdiction

Plaintiff made a well plead allegation of breach of contract and this court has subject matter jurisdiction over Plaintiff's breach of contract claim.  Plaintiff agrees that the Tucker Acts grants to the court of Federal Claims jurisdiction over claims founded upon "any express or implied contract with the United States." 28 U.S.C. § 1491 (a)(1).

However, the fact that the Court of Federal Claims has jurisdiction does not necessarily mean that its jurisdiction is exclusive. See *Shaffer v. Department of Agriculture*, 355 U.S. App. D.C. 470, 470-471; 325 F.3d 370, 370-371 (D.C. Cir. 2003).

Notwithstanding the Tucker Act, this court has subject matter jurisdiction over Plaintiff case because the settlement claims arising under Title VII. See *id.* at 372-373 ; *Board of Trustees of Hotel and Restaurant Employees Local 25 v. Madison Hotel*, 321 U.S. App. D.C. 145, 97 F. 3d 1479, 1484-1486) (D.C. Cir. 1999).  In these cases the court recognizes that when a settlement agreement incorporates substantive provisions of federal law such that enforcement of the agreement requires the interpretation and application of federal law, that enforcement action arises under federal law and belongs in the district court.  In *Board of Trustees of Hotel and Restaurant Employees Local 25*, the court stated that "The district court had subject matter jurisdiction over a settlement agreement that resolved claims arising under the ERISA statute because "enforcement of the settlement agreement ... will almost inevitably require construction and application of specific ERISA provisions which define the scope of the employer's contribution obligations and the Funds' legal entitlements on default." *Id.* at 1485

Similarly, in the case at bar, the settlement agreement incorporates substantive provision of federal law such that enforcement of the settlement agreement requires the interpretation and application of federal law.  The settlement agreement required the Defendant to provide plaintiff with a safe working environment and acknowledged that unsafe working conditions were created or maintained by Stuart Benson, Valda Johnson and Rhonald Baird.  The Defendant breached the settlement agreement by

permitting and continuing a hostile work environment.  Therefore, in order to enforce the terms of the settlement agreement there is a need to interpret and apply Title VII.

Moreover, in the case at bar the settlement agreement itself provided that this court retain jurisdiction over the settlement agreement. <u>Agreement</u>, p.8 ¶1.  Plaintiff seeks to enforce the terms of the settlement agreement through an award of damages.

In the alternative, if this court won't accept the above argument that it has subject matter jurisdiction, this court may exercise ancillary jurisdiction over the Plaintiff's claim of breach of contract. The Supreme Court in *Kokkonen* recognized two purposes for which a court may assert ancillary jurisdiction: 1. "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent", *Kokkonen v. Guardian Life Insurance Company of America* 511 U.S. at 379, and 2. "to enable a court to function successfully, that is, to manage its authority, and effectuate its decrees." *Id.* at 380.

The first purpose as stated in *Kokkonen* applies here since the facts to be determined with regard to the alleged breach of contract are interdependent to the facts to be determined in the principle suit, which is based on Title VII.  The settlement agreement required the Defendant to provide plaintiff with a safe working environment and acknowledged that unsafe working conditions were created or maintained by Stuart Benson, Valda Johnson and Ronald Baird.  The allegation in the Complaint is that the Agency failed to provide a safe environment when the very same individuals continued their activities and when the Plaintiff was unreasonably investigated for alleged sexual harassment.  This court should be the authority to determine whether Defendant

breached the settlement agreement by permitting, promoting and continuing a hostile work environment.

Plaintiff also stated a claim for relief under the settlement agreement. Plaintiff showed the existence of a valid contract, a duty arising from that contract, a breach of that duty, and that the breach caused him damages. On or about November 8, 2005, Plaintiff and Defendant reached a settlement agreement that was approved by this court. The settlement agreement required the Defendant to provide plaintiff with a safe working environment and acknowledged that unsafe working conditions were created or maintained by Stuart Benson, Valda Johnson and Rhonald Baird. Defendant also agreed to give Plaintiff SF-50 without harmful language. The settlement agreement states that "Defendants shall enter a formal Personnel Action in Plaintiff's Official Personnel File indicating the Plaintiff was promoted, without back pay, to a GS-13, Step 3 auditor position one year prior to the date the Stipulation of Settlement and Dismissal is executed." Agreement, p.3 ¶1. This language was included to delineate exactly what would be included in the SF-50 forms, and makes no mention of a clause stating that this promotion was due to a stipulation. By placing this additional language in the forms, Defendants violated this Agreement. See Attachment A p.3 ¶ 1.

Furthermore, the intent of the Agreement is clear that the purpose of the promotion, detailing, training, and letter of recommendation was to increase Plaintiff's marketability and this clause completely frustrates that obvious purpose. See Attachment B ¶ 6 &7. If the Plaintiff would be given the opportunity to conduct discovery, these very questions regarding intent, rationale, and purpose for the

language would be asked to the Agency by Plaintiff's counsel.  See Counsel Affidavit attached as Exhibit D at ¶14(e).

Defendant breached the settlement agreement shortly after it came into effect by permitting, promoting and continuing a hostile work environment that was injurious for plaintiff.  Defendant also breached the settlement agreement by giving defendant SF-50'S that contained harmful language, which barred plaintiff form obtaining gainful employment.  As this court has jurisdiction over this breach and Plaintiff has made a well plead allegation, the complaint should not be dismissed, pursuant to 12(b)(6), for failure to state a claim.

II.     THE MOTION FOR SUMMARY JUDGMENT SHOULD BE DISMISSED
        BECAUSE THEIR ARE MATERIAL DISPUTES AS TO FACTS OF
        CONSEQUENCE.

    A.      THE CHARGE OF HOSTILE WORK ENVIRONMENT BASED ON
            RETALIATION SHOULD NOT BE DISMISSED BECAUSE THE
            PLAINTIFF WILL DEMONSTRATE A PRIMA FACIE CASE, AFTER A
            PROPER DISCOVERY PERIOD.

In this court, a hostile work environment can amount to retaliation under Title VII. *See Singletary v. District of Columbia,* 351 F.3d 519, 526 (D.C.Cir.2003). To prevail on such a claim, Plaintiff must show that the Agency subjected him to discriminatory intimidation, ridicule, and insult" of such "sever[ity] or pervasive[ness] [as] to alter the conditions of [his] employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

In the case at bar, there are materially disputed facts and a reasonable jury could find the Agency liable for creating a hostile work environment based on retaliation.  First of all, after the settlement agreement was reached, the Agency did not meet their burden to prevent the very same behavior of Agency employees that lead to the original complaint.  After signing the agreement, further actions were taken that caused Plaintiff to fear for his physical safety. See Attachment B ¶ 26 and corresponding Exhibit 5; See also Attachment B ¶ 20 & 27 and corresponding Exhibits 7& 11; See also Attachment C¶ 13  and corresponding Exhibits 10, 11, 12, 13, 14, 15, 16, 17 &18.  If given the opportunity to engage in discovery, Counsel would ask the Defendant what they did to stop the actions of its employees, why the actions continued, and who made the decisions as to what actions to take or not to take. See Exhibit D, ¶14(f).

This fear of his physical safety and the Agency's lack of effort to remedy the situation could be found to be a hostile work environment by a reasonable jury. See *Kriesch v. Johanns*, 468 F.Supp.2d 183, 188,  D.D.C.,2007.  In *Kriesch*, the plaintiff was fearful that she would be assaulted and the court found that "looking at the totality of the circumstances and reading the Complaint in the light most favorable to Plaintiff, the Court cannot say, as a matter of law, that these allegations are insufficient to state a claim under Title VII." *Id,* at 188.

Furthermore, just three days before the settlement was signed, the Agency initiated another harassment investigation against Plaintiff.  See Attachment at ¶30. This investigation continued well after the settlement was signed and the decision on the sexual harassment was not made until after the settlement was signed.  *Id.*

Eventually, the matter went to arbitration and the federal arbitrator found that the Defendant purposely sought to find any and all dirt on Plaintiff during a faulty investigation initiated by Defendant's OGC outside investigators. See Attachment B ¶ 30 and corresponding Exhibit 13.

If given the opportunity, counsel for Plaintiff would ask the Agency, who decided to open the investigation, why the decision was made, when it was made, what evidence was present that lead to the investigation, how the investigation was conducted, and if the Agency would disagree with the arbitrators determination. See Attachment A at ¶14, h, I, j, k, and l. Therefore, the Motion for Summary Judgment should be dismissed and formal discovery should be allowed.

B.    THE HOSTILE WORK ENVIRONMENT CLAIM BASED ON RACE
      SHOULD NOT BE DISMISSED  BECAUSE THE PLAINTIFF WILL
      DEMONSTRATE A PRIMA FACIE CASE AFTER A PROPER
      DISCOVERY PERIOD.

To establish a claim of a hostile work environment, a plaintiff must demonstrate: (1) he is a member of a protected class; (2)he was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question but nonetheless failed to either take steps to prevent it or afford the plaintiff prompt remedial action. *See Baloch v. Norton,* 355 F.Supp.2d 246, 259 (D.D.C.2005) (citing cases); *Gustave-Schmidt v. Chao,* 360 F.Supp.2d 105, 120 (D.D.C.2004) (citing cases). In determining whether a hostile work environment exists, the Supreme Court has directed the courts

to look at the totality of the circumstances, including " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998) (quoting *Harris,* 510 U.S. at 23).  While the plaintiff is not required to plead a *prima facie* case of hostile work environment in the complaint, the alleged facts must be able to support such a claim.

In the case at bar, because no discovery was done by either party, there is simply no way to ascertain if other employees outside of Plaintiff's protected class were treated differently by the Agency. Plaintiff did allege that the flyers contained racist remarks as well. See Attachment B ¶ 18 & 21 and corresponding Exhibit 5.  If given the opportunity to engage in discovery, counsel would ask to see the settlement agreements of other employees to see what language was used.  See Attachment D at ¶10 and 16.

C.    THE RETALIATION CLAIM SHOULD NOT BE DISMISSED BECAUSE THE PLAINTIFF WILL DEMONSTRATE A PRIMA FACIE CASE, AFTER A PROPER DISCOVERY PERIOD.

The plaintiff carries an initial burden of establishing a prima facie case of retaliation by showing (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *See McDonnell Douglas,* 411 U.S. at 802. If the plaintiff succeeds, the burden of production shifts to the defendant, who must articulate some legitimate, non-retaliatory reason for the adverse action, *see McDonnell Douglas,* 411

U.S. at 802, but the ultimate burden of persuasion remains always with the plaintiff, *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Once the defendant proffers the requisite explanation, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation]." *Id.* (internal quotation marks omitted); *see also McDonnell Douglas,* 411 U.S. at 805 (describing the proffer as "presumptively valid").

As far as protected activity, there is no dispute that Plaintiff filed several complaints of discrimination against the Agency. Plaintiff was also subject adverse actions when 1) the language in the settlement agreement referenced the stipulation in his SF-50; 2) when the Agency did not stop the harassment and instead started an investigation; and 3) when the Agency did allow Plaintiff to work from home or another office.

1.    Settlement Language

After bringing EEO complaints and entering into a settlement agreement with specific terms, the Agency unilaterally added language into the SF-50 that reflected the settlement agreement.  The Agency did not include this language in other settlement agreements and the language had a chilling affect on Plaintiff's ability to seek employment with the government.

Under the terms of the settlement agreement, the terms required the Agency to issue only one SF-50 form to effectuate the formal Personnel Action of promoting Plaintiff, without back pay, to a GS-13, Step 3 auditor position one year prior to the date

of the settlement agreement. <u>See</u> Attachment A p.3 ¶ 1. On November 2005, Plaintiff

notified Defendant that it had not provided him with an SF-50 regarding the one

documented personnel action required of the November 8, 2005 settlement agreement.

After Plaintiff's notification, Defendant issued four SF-5O forms through the period of

November 2005 and May 2006.  Some of these forms replaced former SF-50 forms that

were issued not in accordance with the settlement agreement.  Three of Plaintiff's SF-

50's included inappropriate and personal language in the "remarks" section <u>See</u>

Attachment B (Mr. Perry's affidavit) ¶ 5 and corresponding Exhibit 1.

　　　　The settlement agreement was not silent as to what remarks or information could

be included in the SF-50 forms.  The settlement agreement states that "Defendants

shall enter a formal Personnel Action in Plaintiff's Official Personnel File indicating that

Plaintiff was promoted, without back pay, to a GS-13, Step 3 auditor position one year

prior to the date the Stipulation of Settlement and Dismissal is executed." <u>See</u>

Attachment A p.3 ¶ 1.  This language was included to delineate exactly what would be

included in the SF-50 form, and makes no mention of a clause stating that this

promotion was due to a stipulation.  By placing this additional language in the forms,

Defendant violated the settlement agreement.

　　　　Further, the intent of the settlement agreement is clear.  The purpose of the

promotion, training and letter of recommendation was to increase Plaintiff's marketability

and mentioning promotion was due to stipulation completely frustrates that obvious

purpose. Attachment B ¶ 6 &7.  As a result of these comments on Plaintiff SF-50's, he

was unable to seek out employment for any other government position because of the statement's chilling effect on Plaintiff's prospective employment.  See Attachment B ¶ 1. The ability to find new employment was the exact term and condition of Plaintiff's employment that was referenced in the settlement agreement.  This creates a causal connection between the protected activity and adverse action. Therefore, this violation, constituted retaliation by the Agency against the Plaintiff.

If given the opportunity to engage in discovery, counsel would inquire as to why the language was used, why it was not used in other settlements, and the circumstances surrounding the agreement. See Exhibit D at ¶10, 13 and 14.


2.    Harassment and Investigation

After the protected activity, the Agency initiated an investigation that was improper and also pursued a sexual harassment complaint that was clearly unsubstantiated.  Defendant retained a law firm, Littler Mendelson, P.C., to complete PBGC's investigation into Plaintiff's June 2005 complaint; however, there was no real investigation.  They did not take any affidavits and still determined that these were union related problems and these actions were protected.  See Attachment B ¶ 23 and corresponding Exhibit 8; See Attachment C ¶ 7.  Furthermore, the decision for the sexual harassment investigation was not made until after the settlement had been signed.  Id. at 30.  After arbitration, Arbitrator Moore determined that Defendant purposely sought to find any and all dirt on Plaintiff during a faulty investigation initiated by Defendant's OGC outside investigators. See Attachment B ¶ 30 and corresponding

Exhibit 13.  Opening an investigation designed to "find dirt" on an employee is certainly

an issue that should go to a jury as to whether it was retaliatory or not.  This aspect of

retaliation would also be examined by counsel if discovery were to be granted. See

Attachment D at ¶14 (h), (i), (j), (k), and (l).

Furthermore, the Agency's contentions that Ms. Pilipovich sent Plaintiff a

memorandum on February 16, 2006, stating that the flyers or email sent by Agency

employees was protected activity and did not violate any policies or directives (See

Agency Motion at page 15, ¶40) is completely self serving and is not based on any law.

Discovery is necessary in order to determine what the basis of this memorandum was

and to evaluate if it was in fact legally sufficient. See Attachment D, Deposition

Questions for Pilipovich at ¶k.  Therefore, the Motion for Summary Judgment should be

denied.

3.    New Work Location

Lastly, despite Plaintiff's complaints about his work environment, he was not

permitted to work at a different location.  Plaintiff complained about his physical safety

yet the Agency did not move him.  At the same time, the Agency did offer to move

another employee who had similar complaints. See Attachment C ¶ 8 and

corresponding Exhibits 4 & 5.  Plaintiff had complained and was concerned about his

physical safety, yet was not moved.  This certainly meets the retaliation standard under

*Burlington Northern & Santa Fe Railway v. White*, 126 S.Ct. 2405, 2413-2416 (2006),

and a reasonable jury could find that these actions would have a chilling affect on filing

further EEO complaints.

    D.    THE PLAINTIFF CAN DEMONSTRATE THAT THE AGENCY
          BREACHED THE SETTLEMENT AGREEMENT AND THE CLAIM
          SHOULD NOT BE DISMISSED PRIOR TO FULL DISCOVERY.

A claim that a party has breached a settlement agreement is a contract claim.[1]

*See Shaffer v. Veneman,* 325 F.3d 370, 372 (D.C.Cir.2003).  In the case at bar, it is

clear that both parties entered into a full settlement agreement in November 2005.  Part

of the agreement stated:

> "Defendants shall enter a formal Personnel Action in Plaintiff's Official
> Personnel File indicating that Plaintiff was promoted, without back pay, to
> a GS-13, Step 3 auditor position one year prior to the date the Stipulation
> of Settlement and Dismissal is executed." See Attachment A p.3 ¶ 1.

This language was included to delineate exactly what would be included in the

SF-50 form, and makes no mention of a clause stating that this promotion was due to a

stipulation.  The purpose of the promotion, training and letter of recommendation was to

increase Plaintiff's marketability and mentioning promotion was due to stipulation

completely frustrates that obvious purpose. Attachment B ¶ 6 &7.

After bringing EEO complaints and entering into a settlement agreement with

specific terms, the Agency unilaterally added language into the SF-50 that reflected the

settlement agreement.  The Agency did not include this language in other settlement

---

[1] The issue of jurisdiction was already discussed supra.

agreements and the language had a chilling affect on Plaintiff's ability to seek employment with the government.

Under the terms of the settlement agreement, the terms required the Agency to issue only one SF-50 form to effectuate the formal Personnel Action of promoting Plaintiff, without back pay, to a GS-13, Step 3 auditor position one year prior to the date of the settlement agreement. See Attachment A p.3 ¶ 1.  On November 2005, Plaintiff notified Defendant that it had not provided him with an SF-50 regarding the one documented personnel action required of the November 8, 2005 settlement agreement. After Plaintiff's notification, Defendant issued four SF-5O forms through the period of November 2005 and May 2006. Some of these forms replaced former SF-50 forms that were issued not in accordance with the settlement agreement. Three of Plaintiff's SF-50's included inappropriate and personal language in the "remarks" section See Attachment B (Mr. Perry's affidavit) ¶ 5 and corresponding Exhibit 1.

The settlement agreement was not silent as to what remarks or information could be included in the SF-50 forms.  The settlement agreement states that "Defendants shall enter a formal Personnel Action in Plaintiff's Official Personnel File indicating that Plaintiff was promoted, without back pay, to a GS-13, Step 3 auditor position one year prior to the date the Stipulation of Settlement and Dismissal is executed." See Attachment A p.3 ¶ 1. This language was included to delineate exactly what would be included in the SF-50 form, and makes no mention of a clause stating that this promotion was due to a stipulation.  By placing this additional language in the forms, Defendant violated the settlement agreement.

Further, the intent of the settlement agreement is clear. The purpose of the promotion, training and letter of recommendation was to increase Plaintiff's marketability and mentioning promotion was due to stipulation completely frustrates that obvious purpose. Attachment B ¶ 6 &7. As a result of these comments on Plaintiff SF-50's, he was unable to seek out employment for any other government position because of the statement's chilling effect on Plaintiff's prospective employment. See Attachment B ¶ 1. The ability to find new employment was the exact term and condition of Plaintiff's employment that was referenced in the settlement agreement. Therefore, this violation, constituted retaliation by the Agency against the Plaintiff.

If given the opportunity to engage in discovery, counsel would inquire as to why the language was used, why it was not used in other settlements, and the circumstances surrounding the agreement. See Exhibit D at ¶10, 13 and 14. Therefore, this claim should not be dismissed and the Agency's Motion for Summary Judgment should be denied.

III.    THE AGENCY'S REASONS FOR ITS ACTIONS WERE NOT LEGITIMATE AND THE PLAINTIFF WILL DEMONSTRATE THAT PRETEXT FOR DISCRIMINATION, HOSTILE WORK ENVIRONMENT AND RETALIAITON EXIST IN THIS CASE.

The Agency describes several reasons for their actions; however they are pretextual in nature.

1.    SF-50 language was necessary for the Office of Personnel Management.

The Agency argues that the purpose of the language was to explain to the Office of Personnel Management (OPM) "the manner in which Plaintiff was promoted", See

Defendant's Motion for Summary Judgment, p.4¶ 13.  However this is simply pretext for several reasons.  For example, if this were the case, this information should have appropriately been additionally been included in an SF-52 form.  In addition, if this was the purpose, similar language should have been included in the SF-50s of Dwayne Jeffers and Delarse Montgomery.  Therefore, fact that it was not included in these SF-50s clearly shows that this is merely a pretext for retaliation. See Attachment B ¶ 8 and Attachment C (Jeffers affidavit) ¶ 10.

Similarly, the Defendant is misleading when it states that OPM required the written language be placed on the SF-50.  EEOC manual MD-110 Chapter 32, Section 6(b) of OPM's Guide to Processing Personnel Action procedure for documenting personnel actions taken as the result of a settlement agreement, court order, EEOC or MSPB decision states that the Agency should not refer to irrelevant settlement information on employee's SF-50.  The purpose of this procedure is to protect the privacy of an employee.  Therefore, referring to the settlement agreement and stipulation on Plaintiff's SF-50 was not right.  See Attachment B ¶ 13.

Lastly, Defendant reissued SF-50's after Plaintiff informed Defendant of the inappropriate and personal language contained on the forms.  PBGC in essence admits that it had the authority to initially issue SF-50's without the inappropriate and personal language on Defendant's SF-50's.  See Attachment B ¶ 15 & 16 and corresponding Exhibits 3 & 4.

2.    Cost of Living (COLA)

The Agency attempts to explain that the January 9, 2006 SF-50 did not contain a reference to the stipulation in the remarks.  However, this was short lived because the Defendant issued another SF-50 form on November 23, 2006 with harmful language. See Attachment B ¶ 11 and corresponding Exhibit 2.

3.    Reliance on Investigation by outside counsel

The Agency's reliance on the outside investigation by Littler Mendelson is also misplaced.  In Plaintiff's EEO informal stage of counseling, Robin Horning and Margaret Drake were present during the interview of Michele Pilipovich, Defendant's HRD Director, even though they were not permitted to do so according to EEOC MD-110. Arbitrator Johnson specified that Defendants' counsel is not permitted to interject itself into EEO interviews of witnesses to prevent witness intimidation.  See Attachment B ¶

Furthermore, Defendant's general counsel issued a letter to defendant's chief operating officer regarding legal staffing of Equal Employment Opportunity matters. This letter was issued shortly after NAGE, Local R-3-77, and challenged the structure of Defendant's EEO program in arbitration.  The arbitrator found that Defendant had to restructure the manner in which it provides legal representation and advice in EEO cases.  See Attachment B ¶ 33 and corresponding Exhibit 15.

If given the opportunity for discovery, counsel would ask the Agency about the outside firm doing the investigation and would ask details as to the specific areas the arbitrator found to be improper.  See Attachment D.

<u>CONCLUSION</u>

In conclusion, the motion to dismiss should be denied. A motion to dismiss can only be granted if the complaint, on its face, fails to allege a cause of action. The Complaint alleges all necessary facts and charges to state a claim that can be remedied by this court. The complaint alleges discrimination based on race, hostile work environment, retaliation for engaging in protected EEO activity, and breach of settlement. In the alternative, the motion for summary judgment as a matter of law should be dismissed as premature. The discovery period has not even started and the evidence already suggests material issues of facts of consequence.

For the foregoing reasons, the Defendant's motion to dismiss should be denied pursuant to Federal Rules of Procedure 12(b)(6), or in the alternative, the motion for summary judgment, pursuant to Rule 56, should be dismissed.

Respectfully Submitted,
    /s
Ari Taragin, Esq. (MD: Bar No. 27409)
Snider & Associates, LLC
Attorneys for Plaintiff
104 Church Lane, Suite 201
Baltimore, Maryland 21208
Phone: 410-653-9060
Fax: 410-653-906

<u>Certificate of Service</u>

I hereby certify that on that I caused the foregoing document with all

exhibits to be served on Defendant's counsel of record by electronic means on April 16,

2007.


  /s/_____
Ari Taragin