UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ROBERT T. PERRY,                              )
                                              )
PLAINTIFF,                                    )
                                              )        Case No.: **1:06CV01371**
                                              )        Judge: **Colleen Kollar-Kotelly**
           vs.                                )
                                              )
VINCENT SNOWBARGER,                           )
                                              )
        DEFENDANT.                            )
_____ )

PLAINTIFF'S DISPUTED AND UNDSIPUTED MATERIAL FACTS

In the Defendant's motion for summary judgment there is a list of facts. For the

sake of brevity and comprehension, Plaintiff summarizes which facts are undisputed

and which are materially in dispute using the same numbering system. See Defendant's

statement of material facts not in dispute.

1.  Plaintiff agrees with Defendant's assertion of fact.

2.  Plaintiff agrees with Defendant's assertion of fact.

3.  Plaintiff agrees with Defendant's assertion of fact.

4.  Plaintiff disagrees with Defendant's assertion of fact.  Under the terms of the

    settlement agreement Plaintiff released the Defendant from liability concerning

    matters related to his employment with Defendant prior and including the date

    Plaintiff signed the Settlement agreement which was November 5, 2005, and

    not November 8, the day the settlement agreement was executed. See

    Attachment A (settlement agreement) p.1 ¶1 p.2 ¶1.

5.  Plaintiff disagrees with Defendant's assertion of fact. The settlement agreement

    requires to issue only one SF-50 form to effectuate the formal Personnel Action

of promoting Plaintiff, without back pay, to a GS-13, Step 3 auditor position one year prior to the date of the settlement agreement. See Attachment A p.3 ¶ 1. On November 2005, Plaintiff notified Defendant that it had not provided him with an SF-50 regarding the one documented personnel action required of the November 8, 2005 settlement agreement. After Plaintiff's notification, Defendant issued four SF-5O forms through the period of November 2005 and May 2006. Some of these forms replaced former SF-50 forms that were issued not in accordance with the settlement agreement. Three of Plaintiff's SF-50's included inappropriate and personal language in the "remarks" section See Attachment B (Mr. Perry's affidavit) ¶ 5 and corresponding Exhibit 1.

6. Plaintiff disagrees with Defendant's assertion of fact. The settlement agreement was not silent as to what remarks or information could be included in the SF-50 forms. The settlement agreement states that "Defendants shall enter a formal Personnel Action in Plaintiff's Official Personnel File indicating that Plaintiff was promoted, without back pay, to a GS-13, Step 3 auditor position one year prior to the date the Stipulation of Settlement and Dismissal is executed." See Attachment A p.3 ¶ 1. This language was included to delineate exactly what would be included in the SF-50 form, and makes no mention of a clause stating that this promotion was due to a stipulation. By placing this additional language in the forms, Defendant violated the settlement agreement. Further, the intent of the settlement agreement is clear. The purpose of the promotion, training and letter of recommendation was to increase Plaintiff's marketability and

mentioning promotion was due to stipulation completely frustrates that obvious

purpose. Attachment B ¶ 6 &7.

7.  Plaintiff agrees with Defendant's assertion of fact.

8.  Plaintiff agrees with Defendant's assertion of fact.

9.  Plaintiff agrees with Defendant's assertion of fact.

10. Plaintiff agrees with Defendant's assertion of fact.

11. Plaintiff agrees with Defendant's assertion of fact.

12. Plaintiff agrees with Defendant's assertion of fact.

13. Plaintiff disagrees with Defendant's assertion of fact. The purpose of the

references in the "remarks" section was to retaliate against and harm Plaintiff.

Its purpose was clearly not to explain to the Office of Personnel Management

(OPM) "the manner in which Plaintiff was promoted", See Defendant's Motion

for Summary Judgment, p.4¶ 13, because if this was the case, this information

should have appropriately been additionally been included in an SF-52 form. In

addition, if this was the purpose, similar language should have been included in

the SF-50s of Dwayne Jeffers and Delarse Montgomery. The fact that it was

not included in these SF-50s clearly shows that this is merely a pretext for

retaliation. See Attachment B ¶ 8 and Attachment C (Jeffers affidavit) ¶ 10.

14. Plaintiff agrees with Defendant's assertion of fact.

15. Plaintiff disagrees with Defendant's assertion of fact. The purpose of the

references in the "remarks" section was to retaliate against and harm Plaintiff.

Its purpose was clearly not "to protect PBGC in the event that OPM questioned

the personnel actions", See Defendant's Motion for Summary Judgment, p.4¶

15, because if this was the case, this information should have appropriately been included in an SF-52 form. In addition, if this was the purpose, similar language should have been included in the SF-50s of Dwayne Jeffers and Delarse Montgomery. The fact that it was not included in these SF-50s clearly shows that this is merely a pretext for retaliation. See Attachment B ¶ 10 and Attachment C (Jeffers affidavit) ¶ 10. In addition, the SF-50 form that Defendant issued for Plaintiff's Cost-of-Living Adjustment (COLA) with no offending statements on or about January 09, 2006 was short lived because the Defendant issued another SF-50 form on November 23, 2006 with harmful language. See Attachment B ¶ 11 and corresponding Exhibit 2.

16.  Plaintiff disagrees with Defendant's assertion of fact. In accordance with the settlement agreement in February 2006 Defendant reissued and backdated the three November 2005 SF-50's that Plaintiff found objectionable. These SF-50's forms no longer contained a reference to the stipulation agreement. However, as a result of these comments  on Plaintiff SF-50's He was unable to seek out employment for any other government position because of the statement's chilling effect on Plaintiff's prospective employment.  See Attachment B ¶ 12.

17. Plaintiff disagrees with Defendant's assertion of fact.  The Defendant is misleading when it states that OPM required the written language be placed on the SF-50. EEOC manual MD-110 Chapter 32, Section 6(b) of OPM's Guide to Processing Personnel Action procedure for documenting personnel actions taken as the result of a settlement agreement, court order, EEOC or MSPB decision states that the Agency should not refer to irrelevant settlement

information on employee's SF-50. The purpose of this procedure is to protect the privacy of an employee. Therefore, it seems that referring to the settlement agreement and stipulation on Plaintiff's SF-50 was not right.  <u>See</u>  Attachment B ¶ 13.  Defendant reissued SF-50's after Plaintiff informed Defendant of the inappropriate and personal language contained on the forms.  PBGC in essence admits that it had the authority to initially issue SF-50's without the inappropriate and personal language on Defendant's SF-50's. See Attachment B ¶ 15 & 16 and corresponding Exhibits 3 & 4.

18. Plaintiff disagrees with Defendant's assertion of fact. On June 7, 2005, Plaintiff sent an e-mail to various members of Defendant upper management. Plaintiff's e-mail complained that certain flyers had been circulated within Defendant that Plaintiff felt might incite others to take "untold actions against him". Plaintiff also mentioned in this email that "the flyers contain false information that he believe will incite some current and past employees to want to approach him in a threatening manner and cause bodily harm". <u>See</u> Attachment B ¶ 18 & 21 and corresponding Exhibit 5.

19.  Plaintiff disagrees with Defendant's assertion fact.  The flyers followed a representational election, wherein the National Association of Governmental Employees prevailed over the independent Union of Pension Employee. However, these flyers contained racial remarks as well. <u>See</u> Attachment B ¶ 21 and corresponding Exhibit 5.

20. Plaintiff agrees with Defendant assertion of fact.

21. Plaintiff disagrees with Defendant's assertion of fact. The flyers that were disseminated following the union elections were more than critical. They incited harm and encouraged PBGC's employees to take action against Plaintiff and Jeffers under the guise of Unionism. See Attachment B ¶ 21 and corresponding Exhibit 5; See Attachment C¶ 13  and corresponding Exhibits 10, 11, 12, 13, 14, 15, 16, 17 &18.

22.  Plaintiff agrees with Defendant's assertion fact.

23. Plaintiff agrees with Defendant's assertion of fact.

24. Plaintiff agrees with Defendant's assertion of fact.

25. Plaintiff agrees with Defendant's assertion of fact.

26. Plaintiff agrees with Defendant's assertion of fact.

27. Plaintiff disagrees with Defendant's assertion of fact. Even though Defendant retained a law firm, Littler Mendelson, P.C., to complete PBGC's investigation into Plaintiff's June 2005 complaint, there was no real investigation. They did not take any affidavits and still determined that these were union related problems and these actions were protected. See Attachment B ¶ 23 and corresponding Exhibit 8; See Attachment C ¶ 7.

28. Plaintiff disagrees with Defendant's assertion of fact. Plaintiff signed the settlement agreement on November 5, 2005. In order to meet the requirements of the settlement agreement Plaintiff send an e-mail to his EEO counselor, Rixene Hicks, informing her that he was withdrawing the EEO complaint he initiated on September 28, 2005. See Attachment B ¶ 24 and corresponding Exhibit 9.

29.  Plaintiff agrees with Defendant's assertion of fact.

30. Plaintiff disagrees with Defendant's assertion of fact. Even though Plaintiff did not have an EEO complaint during the time Defendant offered to resolve Jeffers's EEO complaint, Plaintiff had HRD complaint based on the same issues as Jeffers's EEO complaint. See Attachment B ¶ 25 and corresponding Exhibit 10.  Only Mr. Jeffers was offered the option of these two remedies.  See Attachment C ¶ 8 and corresponding Exhibits 4 & 5.

31. Plaintiff agrees with Defendant's assertion of fact.

32. Plaintiff agrees with Defendant's assertion of fact.

33. Plaintiff agrees with Defendant's assertion of fact.

34. Plaintiff disagrees with Defendant's assertion of fact. Various flyers plaintiff submitted in support of his EEO complaint 06-04 indeed do not mention Plaintiff directly by name; however they refer to him indirectly by the terms "rat", "fink" and "overthrower" that were used in other emails together when referencing Plaintiff's name. See Attachment B ¶ 26 and corresponding Exhibit 5.

35. Plaintiff agrees with Defendant's assertion of fact.

36. Plaintiff agrees with Defendant's assertion of fact.

37. Plaintiff agrees with Defendant's assertion of fact.

38. Plaintiff disagrees with Defendant's assertion of fact. Plaintiff indeed submitted eleven email massages in support of his EEO Complaint 06-04 from Rhonda Baird. These emails were sent to multiple recipients and they referenced union related matters, however, they also used humiliating language against Plaintiff. The humiliating language is not union related matters. It's personal and

designed to cause harm for Plaintiff.  In addition, Defendant placed a

forwarding block on Ms. Baird emails to prevent her form sending emails to

Plaintiff and others that she harassed. <u>See</u> Attachment B ¶ 20 & 27 and

corresponding Exhibits 7& 11.

39. Plaintiff disagrees with Defendant's assertion of fact. Plaintiff did not submit

emails post-dating November 8, 2005 from Valda Johnson or Stuart Bernsen

because these emails were send to other individuals than Plaintiff within the

Agency. <u>See</u> Attachment B ¶ 28.

40. Plaintiff disagrees with Defendant's assertion of facts as to the term "correctly

explained."

41. Plaintiff agrees with Defendant's assertion of facts.

42. Plaintiff agrees with Defendant's assertion of facts.

43. Defendant retaliated against Plaintiff by pursing and deciding a false sexual

harassment charge against him and improperly misused the EEO process.

<u>See</u> Attachment B ¶ 29 & 30 and corresponding Exhibit 12.

44. The decision for the sexual harassment investigation was not made until after

the settlement had been signed.  <u>Id</u>. at 30.

45. The sexual harassment investigation was arbitration through the grievance

process and Arbitrator Moore determined that Defendant purposely sought to

find any and all dirt on Plaintiff during a faulty investigation initiated by

Defendant's OGC outside investigators. <u>See</u> Attachment B ¶ 30 and

corresponding Exhibit 13.

46. Arbitrator Johnson held an arbitration hearing regarding Defendant's EEO program. He determined that Defendant's OGC and HRD improperly imputed themselves into Defendant's the EEO process and chilled the will of many Defendants' employees. See Attachment B ¶ 31 and corresponding Exhibit 14.

47. Vincent Snowbarger, HRD Director misused his position and authority as an EEO Director actively participated in retaliation when he falsely interpreted Federal laws and EEO regulations to dismiss Plaintiff's complaints against PBGC officials for the continuation to investigate a false sexual harassment investigation against Plaintiff. See Attachment B ¶ 29 and corresponding Exhibit 12.

48. In Plaintiff's EEO informal stage of counseling, Robin Horning and Margaret Drake were present during the interview of Michele Pilipovich, Defendant's HRD Director, even though they were not permitted to do so according to EEOC MD-110. Arbitrator Johnson specified that Defendants' counsel is not permitted to interject itself into EEO interviews of witnesses to prevent witness intimidation. See Attachment B ¶ 34.

49. Defendant's general counsel issued a letter to defendant's chief operating officer regarding legal staffing of Equal Employment Opportunity matters. This letter was issued shortly after NAGE, Local R-3-77, and challenged the structure of Defendant's EEO program in arbitration. The arbitrator found that Defendant had to restructure the manner in which it provides legal representation and advice in EEO cases. See Attachment B ¶ 33 and corresponding Exhibit 15.

Respectfully Submitted,

   /s                   
Ari Taragin, Esq. (MD: Bar No. 27409)
Snider & Associates, LLC
Attorneys for Plaintiff
104 Church Lane, Suite 201
Baltimore, Maryland 21208
Phone: 410-653-9060
Fax: 410-653-906