UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT T. PERRY,<br>1248 Newton Street, N. E.<br>~~Washington, D.C. 20017~~<br><br>PLAINTIFF,<br><br>vs.<br><br>Vincent Snowbarger,<br>Executive Director<br>Pension Benefit Guaranty Corporation<br>1200 K Street, N.W.<br>Washington, DC 20005-4026<br><br>DEFENDANT. | Case No.: **1:06CV01371**<br>Judge: **Colleen Kollar-Kotelly** |

I, Robert Perry, declare as follows:

1. I am over eighteen years of age, have personal knowledge of the facts stated in this affidavit, and am competent to testify to the matters stated herein.

2. At the time of the events giving rise to my civil action I was employed by Defendant, PBGC, as an Auditor, GS-511-13. I had been employed by PBGC for thirteen years.

3. On November 8, 2005 a stipulation of settlement and dismissal (Settlement agreement) was entered in two cases before the U.S. District Court for the District of Columbia between me and PBGC, civil action Nos. 03-2495 and 04-1996.

4. The settlement agreement stated twice that it only included claims prior and including the date I signed the settlement agreement, which was November 5, 2005, and not November 8, the day the Agreement was executed. See Attachment A, p.1 ¶1, p.2 ¶1.

5. The settlement agreement requires Defendant to issue me only one SF-50 form to effectuate the formal Personnel Action of promoting Plaintiff, without back pay, to a GS-13, Step 3 auditor position one year prior to the date of the settlement agreement. See Attachment A p.3 ¶ 1. Defendant issued me four SF-50 forms through the period of November 2005 and May 2006. Some of these forms replaced former SF-50 forms that were issued not in accordance with the settlement agreement. See Exhibit 1.

6. The settlement agreement was not silent as to what would be included in the SF-50s. The Agreement states that "Defendants shall enter a formal Personnel Action in Plaintiff's Official Personnel File indicating the Plaintiff was promoted, without back pay, to a GS-13, Step 3 auditor position one year prior to the date the Stipulation of Settlement and Dismissal is executed." See Attachment A, p.3 ¶1. This language was included to delineate exactly what would be included in the SF-50 forms, and makes no mention of a clause stating that this promotion was due to a stipulation. By placing this additional language in the forms, Defendants violated this settlement agreement.

7. The intent of the settlement agreement is clear. The purpose of the

promotion, detailing, training, and letter of recommendation provided to me was to increase my marketability and the clause, due to stipulation completely frustrates that obvious purpose of the settlement agreement.

8. The purpose of the references in the "remarks" section in the SF-50 forms was to retaliate against and harm me. Its purpose was clearly not to explain to the office of Personnel Management (OPM) "the manner in which Plaintiff was promoted", <u>Defendant's Motion for Summary Judgment</u>, p.4 ¶ 13, because if this was the case, this information should have appropriately been included in an SF-52 form. In addition, if this was the purpose similar language should have been included in the SF-50's of Dwayne Jeffers and Delarse Montgomery. The fact that it was not included in their SF-50s clearly demonstrates that this is merely a pretext for retaliation. See Attachment C ¶ 9.

9. As a result of Defendant's reference to the Settlement Agreement in my SF-50's, I was unable to seek out employment for any other government position because of the statement's chilling effect on my prospective employment.

10. The purpose of the statement, due to stipulation, was clearly not to "protect PBGC in the event that OPM questioned the personnel actions", <u>Defendant's Motion for Summary Judgment</u>, p.4 ¶15, because if this was the case, this information should have appropriately been included in an SF-52 form. Further, if the purpose of the references in the "remarks"

section was to protect PBGC as Defendant alleged, similar language should have been included in the SF-50s of Dwayne Jeffers and Delarse Montgomery. The fact that it was not included in their SF-50s clearly demonstrates that this is merely a pretext for retaliation. See Attachment C ¶ 9.

11. On January 09, 2006 I received a SF-50 form from Defendant for my Cost –of-Living Adjustment with no harmful language. However, this SF-50 was short lived because Defendant issued me another SF-50 form on November 23, 2006 with harmful language. See Exhibit 2.

12. After I and my former attorney objected to the language Defendant put on the SF-50 forms, mentioning the stipulation, Defendant reissued and backdated the three November 2005 SF-50's. As a result of these comments on my SF-50's I was unable to seek out employment for any other government position because of the statement's chilling effect on my prospective employment.

13. The Defendant is misleading when it states that OPM required the written language of due to stipulation to be placed on the SF-50 see Defendant's Motion for Summary Judgment, p.4 ¶15. EEOC manual MD-110 and Chapter 32, Section 6(b) of OPM's Guide to Processing Personnel Action procedure for documenting personnel actions taken as the result of a settlement agreement, court order, EEOC or MSPB decision states that the Agency should not refer to irrelevant settlement information on

employee's SF-50. The purpose of this procedure is to protect the privacy of an employee. It seems that mentioning due to settlement agreement and stipulation was irrelevant settlement information on employee's SF-50.

14. On November 2005, I notified Defendant that it had not provided me with an SF-50 regarding the one documented personnel action required of the November 8, 2005 settlement agreement. After my notification, Defendant gave me three SF-50's including inappropriate and personal language in the "remarks" section. See Exhibit 1.

15. I notified by email PBGC's Executive Director Steven Kadarian, Chief Administrative Officer Stephen Barber, HRD Director Michelle Pilipovich, and Personnel Manager Richard Lattimer of inappropriate language, due to stipulation, in the "remarks" section of my SF-50's and that such language was not required nor permitted by law. See Exhibit 3.

16. Defendant reissued SF-50's after I informed it of the inappropriate and personal language contained on the forms. In essence, PBGC admits that it had the authority to initially issue SF-50's without the inappropriate and personal language on my SF-50's. See Exhibit 4.

17. The settlement Agreement also required Defendant to provide me with a safe working environment and acknowledge that unsafe working conditions were created or maintained by Stuart Bernson, Valda Johnson and Rhonda Baird.

18. I provided emails and flyer dated pre and post November 8, 2005 to support my HRD complaint based on hostile work environment. These emails and flyers demonstrate that my harassers Stuart Bernsen (PBGC Attorney), Rhonda Baird (PBGC Attorney), and Valda Johnson (PBGC Actuary) were harassing me. See Exhibit 5.

19. Stuart Bernsen is known by the Defendant to harass me before and after my settlement agreement by the Defendant. I have filed several complaints against Stuart Bernsen for his severe and pervasive inappropriate behavior and actions against me while a Defendant employee. See Exhibit 6.

20. Rhonda Baird is known by the Defendant to harass me before and after my settlement agreement with Defendant. I have raised several issues and filed an EEO complaint against Rhonda Baird's for her inappropriate use of the Defendant's email system to harass and intimidate me. Defendant placed a forwarding block on Rhonda Baird emails to prevent her from sending emails to me and other that she harassed. See Exhibit 7.

21. I sent an email to various members of Defendant senior management. I complained that certain flyers had been circulated within its workplace. I felt that these flyers might incite others to take untold actions against me based on their content expressing hate filed thoughts. One such flyer contained false information that I believe designed to incite some current

and past employees to cause me and Mr. Jeffers bodily harm. These flyers contain union activity content as well as racial remarks. See Exhibit 5.

22. Defendant was aware of these hostile activities carried out by its employees and did not act in a prompt or appropriate manner to end the hostile work environment that was created and perpetuated against me.

23. The investigator that Defendant hired, a law firm Littler Mendelson, P.C, to investigate into my EEO complaint of June 2005 did not do its job. There was no real investigation. Littler Mendelson, P.C did not take any affidavits and still determined that the inappropriate language, actions, and overall matter was a union related problem and therefore was protected. See Exhibit 8.

24. I signed the settlement agreement on November 5, 2005, in order to meet the requirements of the settlement agreement. I sent an email to my EEO counselor, Rixene Hicks, informing her that I was withdrawing the EEO complaint I initiated on September 28, 2005. See Exhibit 9.

25. I did not have an EEO complaint during the time Defendant offered to resolve Mr. Jeffers EEO complaint. However, I had an HRD complaint which included the same issues as Mr. Jeffers' EEO complaint. See Exhibit 10.

26. Various flyers that I submitted in support of my EEO complaint 06-04 indeed do not mention my name directly, however, they refer to me

indirectly by the terms "rat", "fink" and "overthrower" that were used in other emails mentioning my name. See Exhibit 5.

27. I submitted eleven email massages in support of my EEO complaint 06-04 against Rhonda Baird. These emails were sent to multiple recipients and used humiliating language against me. The humiliating language is not union related matters; it's personal and designed to cause me harm. See Exhibit 11.

28. I did not submit emails post-dating November 8, 2005 from Valda Johnson or Stuart Bernsen because these emails were sent to other individuals than me.

29. Michele Pilipovich, HRD Director, prior to my settlement agreement with Defendant knowingly dismissed (with no reasons) my complaint to seek Defendant investigation for a knowingly pursuing false sexual harassment complaint against me. See Exhibit 12.

30. Defendant initiated another harassment investigation against me on November 2, 2005. This investigation was done with the help of Philip Hertz, Deputy General Counsel and an OGC staff attorney Dianne Wood. Arbitrator, Robert Moore, looked into this investigation and determined that Defendant purposely sought to find any and all dirt on me during a faulty investigation. See Exhibit 13.

31. Specifically, Arbitrator Johnson cited Richard Lattimer for representing Defendant in labor disputes, EEO litigation for Defendant, and providing

EEO Neutral counsel for Defendant's EEO Director. An arbitrator determined this was a severe conflict of interest and cited how other Defendant managers had conflicts of interest to support her decision. See Exhibit 14.

32. This affected me when PBGC obtained and used information from neutral or other PBGC officials representing themselves as fact finders to institute actions based on the evidence. However, what PBGC did was to obtain information from its EEO and HRD officials and provided the information to its legal defense staff. Mr. Moore's arbitration decision found that PBGC knowingly participated in this practice in his arbitration decision. Moore did acknowledge in his decision that PBGC did not investigate a complaint that I filed against my harassers even after I provided relevant fact to support my investigation request. Moore's decision acknowledged that PBGC spared no expense to hire an investigation against me. Moore's arbitration decision stated that the PBGC was on a witch hunt to find dirt on me at all cost. No credible evidence was found and PBGC issued me a counseling for sexual harassment.

33. Defendant's general counsel issued a letter to Defendant's chief operating officer regarding legal staffing of Equal Employment Opportunity matters. This letter was issued shortly after NAGE, Local R-3-77 challenged the structure of PBGC's EEO program in arbitration. The arbitrator found that PBGC had to restructure the manner in which it

provides legal representation and advice in EEO cases. See Exhibit 15.

34. In my EEO informal stage of counseling Robin Horning and Margaret Drake who are PBGC labor attorneys were present during the interview of Michele Pilipovich, Defendant's HRD Director even though they were not permitted to do so. EEOC MD-110 and Arbitrator Johnson specified that Defendants' counsel is not permitted to interject itself into EEO interviews of witnesses to prevent witness intimidation. In addition, these labor attorneys are Defendant's attorney for this Federal Court complaint.

I hereby declare under penalty of perjury under the above statement is true and complete to the best of my knowledge and believe.

Robert Perry

April 12, 2007
Date