

**PBGC** Pension Benefit Guaranty Corporation
Protecting America's Pensions   1200 K Street, N.W., Washington, D.C. 20005-4026

NOV - 2 2005

**MEMORANDUM**

TO:        Robert Perry

FROM:    Michele Pilipovich   *M. Pilipovich*

SUBJECT:    Your Complaint of June 6, 2005

I write to notify you that PBGC has retained the law firm of Littler Mendelson to take over and complete PBGC's investigation of your June 6, 2005 complaint to PBGC's Human Resources Department (HRD).   I am providing them information obtained thus far.  The firm is also retained to investigate certain related incidents and complaints.  PBGC will then review the evidence and decide what action is appropriate.

Littler Mendelson attorneys Peter Susser, Nancy Delogu and Gary Shapiro will conduct interviews of PBGC employees and staff, and obtain all relevant information.  Steve Williams in PBGC's Office of the General Counsel is liaison with the firm on this matter.  This investigation concerns complaints made to HRD, _not_ complaints which are or may be in the informal or formal EEO process.

Accordingly:

1.  The Littler Mendelson attorneys will be contacting you in the very near future to review information with you and obtain additional responses.  This is your chance to provide all information relevant to your complaint.   It is also part of an official investigation and you are required to meet with them and provide information.

2.  You are directed to communicate with Mr. Williams or myself concerning this investigation. It is not appropriate for you to use PBGC systems to copy senior agency officials or other employees now that you have this official channel.

If you have any questions concerning your complaints, this investigation or your responsibilities, please do not hesitate to contact Steve Williams at extension 3514.  Other parties to the complaints are being similarly notified.

cc:    Steve Williams
       Steve Weiss

**CONFIDENTIAL**
Subject to Attorney - Client Privilege
&
Attorney Work-Product Doctrine

# REPORT & RECOMMENDATIONS:

## EMPLOYEE COMPLAINTS &

## LABOR-MANAGEMENT ISSUES

## AT THE PBGC

Peter A. Susser
Nancy N. Delogu
Michelle I. Pretlow
Gary D. Shapiro

LITTLER MENDELSON, P.C.
1150 17th Street, N.W. - Suite 900
Washington, D.C. 20036
Phone: (202) 842-3400
Fax: (202) 842-0011
www.littler.com

January 9, 2006

CONFIDENTIAL
Subject to Attorney – Client Privilege &
Attorney Work Product Doctrine

interviews and the documentation that was received.[2]

## III.    FACTUAL BACKGROUND OF COMPLAINTS

### A.    Relevant Union History of PBGC

#### 1.    National Treasury Employees Union ("NTEU")

NTEU began representing bargaining unit employees of PBGC following a vote in 1979, in which that union was selected to replace the American Federation of Government Employees.  A collective bargaining agreement ("CBA") was entered into on October 12, 1995 between NTEU and PBGC

#### 2.    National Association of Government Employees ("NAGE")

NAGE was elected as the representative of the bargaining unit employees in 1999, replacing NTEU, under the leadership of Stuart Bernsen ("Mr. Bernsen") and Valda Johnson ("Ms. Johnson").  In mid-2003, the officers of NAGE included Ms. Johnson as president, Mr. Bernsen as vice president, Elizabeth Baker ("Ms. Baker") as secretary, Barry Greenhill ("Mr. Greenhill") as Treasurer, and Robert Perry ("Mr. Perry") as Executive Member-at-Large.

By late 2003, some NAGE members were considerably upset about the manner in which Local R3-77, the PBGC local affiliate of NAGE, was operating.  In September 2003, 13 members of the Local filed a petition with NAGE National regarding their concerns with Local R3-77.  NAGE National began an investigation of Local R3-77 based on the petition.  On November 25, 2003, all PBGC employees were notified that Local R3-77 was placed into trusteeship.  Stephanie Zaiser ("Ms. Zaiser"), a NAGE National employee, was named the trustee for the Local.

On August 23, 2004, David Holway, the National President of NAGE, announced

---

[2] The Appendix accompanying this report includes copies of the most relevant e-mail communications and other documents referenced in this discussion.

CONFIDENTIAL
Subject to Attorney – Client Privilege &
Attorney Work Product Doctrine

that he was bringing charges against Mr. Bernsen and Ms. Johnson for violating Article XII of the NAGE National Constitution and By-Laws. Following an investigation and a hearing, the Union determined that both Mr. Bernsen and Ms. Johnson had violated Article XII. Ms. Johnson was suspended from NAGE for 5 years beginning on November 30, 2004, and Mr. Bernsen was permanently expelled from NAGE. Both Mr. Bernsen and Ms. Johnson appealed the decisions, and their claims against the National are pending in court.

Local R3-77 was released from trusteeship on February 3, 2005. Less than two weeks later, a representation election was conducted by the Federal Labor Relations Authority ("FLRA"). Challenging NAGE was a new union, formed by Mr. Bernsen and Ms. Johnson and their supporters, called the Independent Union of Pension Employees ("IUPE"). NAGE won the election, which was immediately challenged on several grounds, including the suggestion that the Corporation failed to accord the IUPE fair access to bargaining unit employees. The FLRA hearing officer ordered a new vote because PBGC failed to accord equal status to IUPE timely by denying access to the Corporation's e-mail system and by permitting the presence of NAGE fliers near polling places. The order to conduct a new election is now on appeal.

Following the February 16, 2005 evote, a new Executive Board of Local R3-77 was elected and includes Richard Petta ("Petta") as President, Dwayne Jeffers as Vice President, Robert Perry as Acting Secretary/Treasurer and Cynthia Greene ("Ms. Greene") as Acting Executive Member at Large.

**B.     Background Information on Complaints**

**1.     Robert Perry**

Mr. Perry began working at PBGC in February 1993. He currently works as an auditor in the Contract Control Review Department. Mr. Perry served as Executive Member-at-Large of NAGE Local R3-77 from 1999 until he resigned in July 2003. He currently holds the position of Acting Secretary/Treasurer following the February 2005

CONFIDENTIAL
Subject to Attorney – Client Privilege &
  Attorney Work Product Doctrine

election.

In July 2003, Mr. Perry filed a complaint with NAGE National against Mr. Bernsen and Ms. Johnson claiming that union information was not being shared with board members, that the Local leadership was confronting union members who did not agree with their views, that membership meetings were not being held and that fund accounts were not being properly reviewed. See Exhibit D-2 *(July 14, 2003 E-mail from Perry to Suzanne of NAGE National)*. Mr. Perry later resigned as Executive Member-at-Large for Local R3-77. See Exhibit D-1 *(July 14, 2003 E-mail from Perry to NAGE Local R3-77 Members)*. In late 2003, Ms. Baker, a NAGE local official, filed a sexual harassment claim against Mr. Perry.

In January 2004, Mr. Perry filed a complaint with Michele Pilipovich ("Ms. Pilipovich"), the Corporation's Director of Human Resources, regarding Ms. Johnson and Mr. Bernsen for disseminating false claims against him and for trying to extort information from him by having Ms. Baker charge him with sexual harassment. See Exhibit D-3 *(January 13, 2004 E-mail from Mr. Perry to Ms. Pilipovich)*. In February 2004, the investigation of Ms. Baker's complaint was completed. Following the investigation, it was determined that Mr. Perry would benefit from harassment prevention training. To date, however, Mr. Perry has not received the training. Mr. Jeffers served as Mr. Perry's Union representative in this case.

On February 20, 2004, Mr. Perry filed complaints with various investigative entities, including the General Accounting Office and the Office of the Inspector General Hotline at the U.S. Department of Justice. The complaints filed against the PBGC's Human Resources Department, Office of General Counsel attorneys and several management and EEO officials, alleged that the named parties violated the rights of PBGC employees by fraud and deception, egregious and harmful violations of EEOC MD-110 and also committed financial waste and abuse. Mr. Perry invoked his federal "whistleblower" protections, and protections under Article 2, Section 2.4, of the collective bargaining agreement between PBGC and the NTEU. See Exhibit D-4

CONFIDENTIAL
Subject to Attorney – Client Privilege &
    Attorney Work Product Doctrine

(*February 20, 2004 E-mail from Perry to GAO, OIG, et. al*). Mr. Jeffers sent an e-mail in support of Perry stating that Ms. Johnson, Mr. Bernsen and Ms. Baker made up the sexual harassment claim in order to cover up their own wrongdoings. See Exhibit D-6 (*April 16, 2004 E-mail from Mr. Jeffers to Phil Hertz, Joseph Grant, Rick Silva and Michele Pilipovich*). Apparently in reaction to the accusations against him, in April 2004, Mr. Perry sent an e-mail to Brad Belt, the Executive Director of PBGC, pointing to inappropriate behavior of others at the Corporation. He informed Mr. Belt of supposedly inappropriate sexual activity among Corporation employees, and sexually explicit e-mails circulating around PBGC. See Exhibit D-7 (*April 27, 2004 E-mail from Perry to Brad Belt*). Mr. Perry attached copies of some of the e-mails that he received from other PBGC employees that he thought were inappropriate.

In July 2004, Ms. Pilipovich sent an e-mail to Mr. Perry confirming HRD's decision on Ms. Baker's harassment complaint. It was determined that Mr. Perry did engage in inappropriate behavior toward Ms. Baker and, that as a consequence, Mr. Perry should be counseled. See Exhibit D-8 (*July 27, 2004 E-mail from Ms. Pilipovich to Mr. Perry*).

Some time in 2004, an investigation of computer-related misconduct by contractors and Corporation employees was conducted by the Office of Inspector General. The Corporation terminated 10 contract employees and roughly 20 PBGC employees were investigated, with consideration given to discipline or reprimand for sending inappropriate e-mails using the PBGC e-mail system. Although the Inspector General denied initiating the investigation because of Mr. Perry's e-mail, many critics and political adversaries of Mr. Perry believed at the time, and still believe, that Mr. Perry's e-mail led to the investigation (or at least contributed to it). They also cite it as showing his willingness to put his own interests before those of the bargaining unit members he represents. (As noted below, those views formed the basis of written and other communications by those opponents critical of Mr. Perry.) The Inspector General subsequently prepared a statement asserting that the investigation of inappropriate use of the Corporation's computer resources was not linked to Mr. Perry's notice to the

CONFIDENTIAL
Subject to Attorney – Client Privilege &
    Attorney Work Product Doctrine

Corporation's leadership. Those critics of Mr. Perry and the Corporation see the issuance of this statement as evidence that the PBGC has supported him, Mr. Jeffers and like-minded forces in their union contests with their adversaries, and has sought to denigrate and displace those opposing parties.

In June 2005, Mr. Perry sent another e-mail to Brad Belt. Mr. Perry claimed that fliers circulating around PBGC were critical of his acts as a union representative and were designed to inflame and incite contractors and other Corporation employees to cause him physical harm. The fliers accused Mr. Perry of revealing the names of fellow employees to management, leading to investigations and adverse actions relating to inappropriate e-mails. Mr. Perry accused Mr. Bernsen of writing the fliers. See Exhibit D-10 (*June 7, 2005 E-mail from Perry to Brad Belt*). He has since indicated that he believes Mr. Bernsen, Ms. Johnson, and Ms. Baird have all worked together to create a hostile work environment through dissemination of the fliers and e-mail relating similar complaints about his actions. Ms. Baird sent an e-mail to Mr. Perry and Mr. Jeffers stating that she did not have anything to do with the fliers. See Exhibit D-12 (*June 7, 2005 E-mail from Ms. Baird to Mr. Perry and Mr. Jeffers*). Mr. Perry is aware that Mr. Bernsen has been the subject of other complaints regarding inappropriate and threatening behavior, and claims that Mr. Bernsen regularly makes snide and threatening comments to and about him whenever they pass each other in the PBGC's offices. The Human Resources Department responded to Mr. Perry regarding his concerns and indicated that Rick Silva and Ray Forster would investigate. See Exhibit D-11 (*June 8, 2005 E-mail from Michele Pilipovich to Mr. Perry*).

The next week, Perry requested flexiplace for himself and Mr. Jeffers, on the ground that the fliers contained threats of workplace violence. See Exhibit D-13 (*June 14, 2005 E-mail from Perry to Brad Belt*). Mr. Perry claimed that he and Mr. Jeffers needed to be out on flexiplace while PBGC investigated their complaints regarding the e-mailed threats and until their workplace was free from intimidation and violence. Mr. Perry and Mr. Jeffers were permitted to work on flexiplace while the investigation went forward. They have since described their time out of the office as a Corporation decision

8

**CONFIDENTIAL**
Subject to Attorney – Client Privilege &
Attorney Work Product Doctrine

to place them into "protective custody," but this is inaccurate not only because they were permitted to work from home following their request, but also because the Corporation ultimately concluded that the fliers did not contain threats of violence, and that other facts likewise did not establish a threat of physical violence, or an atmosphere threatening violence.

Two days later, Mr. Perry sent another e-mail to Brad Belt regarding a flier titled, "So do I admit having adult conversations at work? Sure." See Exhibit D-14 (*June 16, 2005 E-mail from Perry to Brad Belt*). Mr. Perry claims that this flier also was written to incite physical harm against himself and Mr. Jeffers, and to discredit them. Mr. Silva and Mr. Forster met with Mr. Perry to investigate his concerns.

As a follow-up to Mr. Perry's request for flexiplace, Mr. Lattimer (an attorney working in the Human Resources Department) sent an e-mail to Mr. Belt, Mr. Seal, Ms. Pilipovich and others providing a list of action items to respond to Mr. Perry's request. Those included: (1) sending out an e-mail to all of PBGC reiterating the workplace violence policy, (2) meeting with the union members to remind them not to misuse PBGC resources, (3) investigating who was generating the fliers and (4) continuing to address specific concerns of Mr. Perry and Mr. Jeffers for their safety. See Exhibit D-14 (*June 14, 2005 E-mail from Mr. Lattimer to Mr. Belt*). Mr. Bernsen was directed to participate in an investigation regarding whether he was generating the fliers. *June 7, 2005 E-mail to Mr. Bernsen re investigation of complaints.* Mr. Bernsen admitted to disseminating the fliers, but denied that he had done so on Corporation time or using Corporation resources. He refused to cooperate with Mr. Forster's efforts to document the event and has since filed an unfair labor practice charge against the Corporation (as well as an EEO claim) essentially alleging that the Corporation is working with NAGE to oust him from his employment.

(b)(5) - GOV'T PREDECISIONAL AND (b)(6) - PERSONAL PRIVACY (3 LINES REMOVED)

Mr. Perry was not satisfied with the outcome of the investigation into the fliers

CONFIDENTIAL
Subject to Attorney – Client Privilege &
   Attorney Work Product Doctrine

and related activities. In October 2005, Mr. Perry filed a complaint with Rixene Hicks against Ms. Pilipovich, Mr. Lattimer, Mr. Belt, Vince Snowbarger, Mr. Silva, Mr. Grant, Mr. Seal, B. Hagens, J. Nappier and B. Palli for permitting employees to commit retaliatory acts against him without taking any steps to stop the workplace harassment and threats of violence. See Exhibit D-15 (October 21, 2005 E-mail from Mr. Perry to Ms. Hicks). On October 31, 2005, Mr. Perry sent an e-mail to Mr. Silva attaching an e-mail from Ms. Baird that Mr. Perry claimed showed her continuing to make disparaging remarks about him. See Exhibit D-16 (October 31, 2005 E-mail from Mr. Perry to Mr. Silva). On November 1, 2005, Mr. Perry sent an e-mail to Mr. Silva, Ms. Pilipovich and Mr. Lattimer requesting that they investigate the incident of workplace harassment that he reported to Mr. Silva on October 31, 2005. The next day, Mr. Perry notified Mr. Belt that he thought that several HRD and EEO officials were not protecting his rights and asked that Mr. Belt follow up on his October 31, 2005 complaint against Ms. Baird. In November 2005, Mr. Jeffers sent an e-mail to Mr. Lattimer filing a new claim of harassment, intimidation and workplace threats of violence through the use of fliers. Mr. Perry filed a statement agreeing with Mr. Jeffers' e-mail and claiming that he had a new complaint and requested PBGC officials to do something to prevent the workplace harassment. See Exhibit D-18 (November 14, 2005 E-mail from Perry to Mr. Belt, Ms. Pilipovich and Mr. Lattimer).

On November 3, 2005, Mr. Perry signed a settlement agreement dismissing two claims that he brought in the United States District Court for the District of Columbia (Civil Action Nos. 03-2495 & 04-1996). In each case, Mr. Perry alleged discrimination based on his race, age and/or retaliation for his involvement in protected civil rights activity; he claimed that he was passed over for promotions for which he was qualified. The settlement agreement provided for "full satisfaction of any and all claims, demands, rights and causes of action of whatever kind and nature based upon [Mr. Perry's] employment with the Pension Benefit Guaranty Corporation ("PBGC") up to the date the Plaintiff signs this Stipulation of Settlement and Dismissal, including but not limited to the claims asserted in the above-styled actions." See Exhibit C (November 8, 2005 Stipulation of Settlement and Dismissal). All of Mr. Perry's complaints outlined below

10

**CONFIDENTIAL**
Subject to Attorney – Client Privilege &
Attorney Work Product Doctrine

predate the date of the settlement agreement except for the complaint filed with Mr. Belt on November 14th.

> (b)(5) - GOV'T PREDECISIONAL (8 LINES REMOVED)

******

### Current Complaints

- *January 2004* – Complaint filed with HRD re: Mr. Bernsen and Ms. Johnson disseminating false information about him and for trying to extort information from him using Ms. Baker's sexual harassment complaint. See Exhibit D-# (*January 13, 2004 E-mail from Perry to Michele Pilipovich*).

- *February 2004*- Complaint filed with various investigative entities, including GAO and the OIG Hotline at the U.S. Department of Justice against HRD, OGC Labor attorneys and several management and EEO officials for flagrantly and knowingly violating the rights of PBGC employees by fraud and deception, egregious and harmful violations of EEOC MD-110 and financial waste and abuse. See Exhibit D-4 (*February 20, 2004 E-mail from Mr. Perry to GAO, OIG, et. al*).

- *January 2005* – Complaint filed with HRD regarding Mr. Bernsen, Ms. Johnson, and Ms. Baker harassing him by serving a subpoena on him. See Exhibit D-9 (*January 7, 2005 E-mail from Mr. Perry to Ms. Pilipovich*).

11

CONFIDENTIAL
Subject to Attorney – Client Privilege &
Attorney Work Product Doctrine

- *January 2005* – Complaint filed with Local R3-77 (Ms. Zaiser) regarding harassment by Local Board including Mr. Bernsen and Ms. Johnson following a June 12, 2003 meeting. *January 21, 2005 E-mail from Mr. Perry to Ms. Zaiser.*

- *June 2005* – Complaint filed with Brad Belt that Mr. Bernsen, Ms. Johnson and Ms. Baird were distributing fliers around PBGC critical of his actions in alerting management to sexually inappropriate e-mail. Mr. Perry felt that the fliers were designed to inflame other employees to cause him harm. The fliers are contained in the Appendix materials. See Exhibits D-10 and D-13 (*June 7, 2005 E-mail from Mr. Perry to Brad Belt. /June 16, 2005 E-mail from Perry to Brad Belt*).

- *October 2005* – Complaint filed with Rixene Hicks claiming that Mr. Belt, Vince Snowbarger, Ms. Pilipovich, Mr. Lattimer, Mr. Silva, Mr. Grant, Mr. Seal, B. Hagens, J. Nappier and B. Palli permitted PBGC employees to commit retaliatory acts against him without taking steps to stop the workplace harassment and threats of workplace violence. See Exhibit D-15 (*October 21, 2005 E-mail from Mr. Perry to Ms. Hicks*).

- *October 2005* – Complaint filed with Mr. Silva, Ms. Pilipovich and Mr. Lattimer claiming that Ms. Baird was continuing to make disparaging remarks about him in e-mails. See Exhibit D-16 (*October 21, 2005 E-mail from Mr. Perry to Mr. Silva*).

- *November 2005* – Complaint filed with Mr. Belt against Mr. Bernsen and Ms. Johnson claiming new fliers constituted continued harassment, intimidation and workplace threats of violence. See Exhibit D-18 (*November 14, 2005 E-mail from Mr. Perry to Mr. Belt, Ms. Pilipovich and Mr. Lattimer*).

(b)(6) - PERSONAL PRIVACY (3 LINES REMOVED)

12