UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT T. PERRY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VINCENT K. SNOWBERGER, )<br>Interim Director, Pension Benefit )<br>Guaranty Corporation )<br>Defendant. ) | Civil Action No.: 1:06CV01371 |

RULE 56 AFFIDAVIT

Declaration of Ari Taragin, Esq.

I hereby declare under penalty of perjury as follows:

1. I am an adult citizen of the United States and competent to give this declaration.

2. I have been a member in good standing of the bar of the United States District Court for the District of Maryland since 2004 and I have been a member of the District Court for the District of Columbia since 2004.

3. I have been representing employees in employment discrimination cases since 2004.

4. I have reviewed Defendant's motion to dismiss and for summary judgment and the Exhibits thereto. I have also reviewed all documents available from my client.

5. Based upon my review of the above documents and my investigation of Plaintiff's claims, further discovery is necessary to properly oppose the Defendant's Motion for Summary Judgment.

6. Defendant makes many claims that are subject to interpretation, without providing all back up information that is necessary for a full evaluation.

7. This court is being asked to actually determine whether Plaintiff's should be forever denied judicial relief, and thus, his counsel must be given the opportunity to discover more facts and evidence about the defenses to ensure fairness and objectivity in the outcome of this process.

8. For instance, Plaintiff's counsel would want to know why defendant included reference to the settlement agreement and stipulation in Plaintiff's SF-50 forms and what is the policy regarding the inclusion of references to settlement agreements in the SF-50 forms of those employees who have entered into settlement agreements with Defendant?

9. Plaintiff's counsel would also want to know how Defendant implemented the settlement agreement with Plaintiff.

10. Further, Plaintiff counsel would like to know what steps Defendant took to address Plaintiff's concerns that he felt threatened and believed that he could subject to bodily harm because of the activities and threats of Stuart Bernson, Valda Johnson and Ronda Baird as well as what substantive information concerning ongoing, pattern or practice, discrimination and hostile work environment, if any, did Defendant ever provide to Plaintiff's representative, Dwayne Jeffers?

11. In addition, Plaintiff's counsel would like to know why Defendant perused to investigate a false sexual harassment against Plaintiff and why did Mr. Snowberger refuse to investigate Plaintiff EEO complaint regarding this matter.

12. Counsel would also seek discovery relating to the investigation of sexual harassment filed against Plaintiff in light of an arbitrator's decision finding that the investigation was clearly unnecessary, inappropriate, and an unfair attempt to harm Plaintiff.

13. Plaintiff's counsel also would request documents from Defendant related to including reference to the settlement agreement in employees SF-50 forms in the past six years as well as a copy of Defendant's policy, regulation and law regarding including reference to a settlement agreement and stipulation in SF-50 forms.

14. In order to properly evaluate Defendant's position that its reasons are legitimate and there is no pretext, we would ask the following discovery:

    a. How many employees were put due to settlement agreement and stipulation in their SF-50 forms?
    b. Why did Defendant remove due to settlement agreement and stipulation from Plaintiff's SF-50 forms after he had complained about it?
    c. What was Defendant's policy regarding the inclusion of references to settlement agreements in the SF-50 forms of those employees who have entered settlement agreements with Defendant.
    d. How did Defendant implement the settlement agreement between Defendant and Plaintiff?
    e. What was the purpose of putting in the language re: stipulation, into the settlement agreement? Did the Agency believe that this language would be harmful to Plaintiff's ability to search for another job?
    f. What did Defendant do to address Plaintiff's concerns that he felt threatened and believed that he could subject to bodily harm

          because of the activities and threats of Stuart Bernson, Valda Johnson and Ronda Baird?
g. Why did Defendant offer Mr. Jeffers an option of working of Defendant's Kingstown office or maximizing of his flexiplace because of the activities and threat of Stuart Bernson, Valda Johnson and Ronda Baird and did not offer these remedies to Plaintiff who had HR complaint based on this matter?
h. Why did Defendant perused to investigate a false sexual harassment against Plaintiff?
i. Who decided to investigate Plaintiff?
j. What was the outcome?
k. When did the investigation start and finish?
l. Please describe in detail how the investigation was conducted.
m. Why Mr. Snowbarger refuse to investigate Plaintiff's EEO complaint based on retaliation after Defendant continue to investigate a false sexual harassment against Plaintiff?
n. Why did Robin Horning and Margaret Drake present during the interview of Michele Pilipovich, Defendant's HRD Director, in regarding to Plaintiff's EEO informal stage?

15. This information is not available to Plaintiffs from the record or by means other than discovery pursuant to the Federal Rules of Civil Procedure.

16. All of this new discovery is needed to rebut the arguments made in Defendant's motion to dismiss and for summary judgment and to demonstrate that there are genuine issues of material fact in dispute to prove the prima facie claims and/or pretext to discrimination.

17. Should this Court deny Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment, counsel would seek discovery in the following ways:

### Interrogatories

1. Identify all individuals who had the authority and, or, responsibility to issue the SF-50 forms that has been identified as being in controversy in Plaintiff's Complaint. Explain the reason for including references to the

4

Settlement Agreement of November 8, 2005 in the SF-50 forms. Include in your response all criteria used by the individuals who issued these SF-50 forms that resulted in the decision to reference the Settlement Agreement in Plaintiff's SF-50 forms.

2. State and describe in detail the Defendant's policy regarding the inclusion of references to settlement agreements in the SF-50 forms of those employees who have entered into settlement agreements with Defendant.

3. State and describe in detail how many of the total settlement agreements Defendant has entered into in the past six-years have referenced the entering into of a settlement agreement by the complaining party in their SF-50 forms. (you may provide a statistical response to this interrogatory).

4. Identify all individuals who would have had supervisory authority over Stuart Bernson, Valda Johnson and Rhonda Baird and when, if ever, these supervisory individuals became aware of any of the conduct complained of by Plaintiff in Paragraph 12 of his Complaint.

5. If you contend that the activities of Stuart Bernson, Valda Johnson and Rhonda Baird were permissible work-place activities identify all individuals who made this determination and state in detail all rules, regulations and policies relied upon by Defendant to determine that these employees' activities were permissible in the work-place.

6. Identify what if any steps you took to address Plaintiff's concerns that he felt threatened and believed that he could be subjected to bodily harm

because of the activities and threats of Stuart Bernson, Valda Johnson and Rhonda Baird.

7. If you contend that the activities of Stuart Bernson, Valda Johnson and Rhonda Baird complained of by Plaintiff in his Complaint constitute protected union activity please set-forth in detail the points and authorities, rationale and analysis resulting in your contention.

8. Explain in detail what policy, regulation or law the Agency relied on relating to OPM and the necessity of providing settlement information on an SF-50.

## Document Requests

1. Please provide all documents, including e-mails and office memorandum, pertaining to Plaintiff's concerns that he felt threatened and believed that he could be subjected to bodily harm because of the activities and threats of Stuart Bernson, Valda Johnson and Rhonda Baird.

2. Provide a copy of all documents relied upon in answering the above Interrogatories. Provide a copy of all e-mails, communications and documents between Mr. Snowbarger, Mr. Pilipovich and/or any other appropriate representative pertaining to the EEO investigation, complaint and current proceedings.

3. Please provide a copy of Defendant's policy regarding the inclusion of references to settlement agreements in the SF-50 forms of those employees who have entered into settlement agreements with Defendant.

4. Please provide a copy of all rules, regulations and policies relied upon by Defendant to determine that its employees, Stuart Bernson, Valda Johnson and Rhonda Baird activities were permissible in the work-place.

5. Provide all settlements (redacted if there are Privacy concerns) from the Agency within the past 5 years.

### Depositions

At the very least, the following people would be deposed and asked:

1. Mr. Michele Pilipovich, Human Resources Department

    a. What has been Defendant policy regarding the inclusion of references to settlement agreements in the SF-50 forms of those employees who have entered into settlement agreements with Defendant?

    b. Why did you put in the remark section of Plaintiff's SF-50 forms due to settlement agreement and stipulation?

    c. Why did you remove the remark due to settlement agreement and stipulation from Plaintiff's SF-50 forms after he complained about putting harmful remark in his SF-50 forms?

    d. Why did Robin Horning and Margaret Drake present during your interview pertaining to Plaintiff's EEO informal stage?

    e. Did Plaintiff have an HR complaint in or around December 2005?

    f. What did you do to end the activities Stuart Bernson, Valda Johnson and Rhonda Baird against Plaintiff both before and after the settlement agreement?

    g. Were you aware that having comments about a lawsuit on an SF-50 could hamper someone from getting another job in the federal government (or elsewhere)?

    h. Why did OPM need to know why Plaintiff was promoted?

    i. Why didn't the Agency just put on the code number in the SF-50 and why did the SF-52 not contain the same information?

    j. Why backdate 3 SF-50's if there was no problem with them? Does the Agency routinely change SF-50's at the request of Plaintiff's counsel?

    k. What did you base your conclusions on the February 16, 2006 memo on?

2. Littler Mendelson, P.C.

    a. What services did you provide to Defendant and when?

    b. What steps did you take when conducting the investigation of Plaintiff's EEO complaint of June 2005?

    c. Who did you interview? Who did you request to interview?

    d. What information and/or documents did you rely on in making your finding?

    e. Why did you determine that Stuart Bernson, Valda Johnson and Rhonda Baird activities were union related problems and therefore were protected?

3. Mr. Steven A. Weiss, Senior Counsel regarding EEO matters

    a. What steps did you take when conducting the investigation?

    b. Who did you interview? Who did you request to interview?

    c. What information and/or documents did you rely on in making your

finding?

4. Mr. Vincent Snowbarger, Executive Director

   a. Why did you investigate false sexual harassment charge against Plaintiff?

   b. In light of the arbitration decision, do you believe that the investigation was fair and reasonable?

   c. If not, why?

   d. Who spearheaded the effort to accuse and investigate Plaintiff for sexual harassment?

   e. What policies and regulations were followed when implementing the investigation and why were similar investigations not started for other (if not worse) offenses?

   f. Why did you decide to dismiss Plaintiff's EEO complaints against Defendant officials after pursing a false investigation against him?

   g. What did you do to stop Stuart Bernson, Valda Johnson and Rhonda Baird activities against Plaintiff.

   h. What complaints did you receive from Plaintiff about Stuart, Bernson, and Valda.

I hereby declare under penalty of perjury that the foregoing is based upon my personal knowledge and is true and correct.

_____          4.16.07
Ari Taragin, Esq.                  Date