UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT T. PERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-1371 CKK |
| | ) |
| VINCENT K. SNOWBARGER, | ) |
| Interim Director, Pension  Benefit Guaranty Corp., | ) |
| | ) |
| Defendant. | ) |
| | ) |

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S REQUEST FOR DISCOVERY

I.  INTRODUCTION

On February 20, 2007, the Defendant filed a Motion for Summary Judgment, which Plaintiff

opposed on April 16, 2007 ("Plaintiff's Opposition").  Plaintiff's Opposition attempts to distract the

Court  from the fact that he has presented virtually nothing post-dating the Stipulation Of Settlement

And Dismissal dated November 8, 2005 ("Stipulation" or "Settlement ") to support his claims.

Moreover,  those few matters that do post-date the Settlement do not constitute a breach of contract,

retaliation, or a hostile work environment.  Defendant submits that Plaintiff has offered no basis to

proceed further and that summary judgment in favor of Defendant is appropriate.

II.  ARGUMENT

> To survive summary judgment, the nonmoving party must offer more than mere
> allegations, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), by going
> "beyond the pleadings and by its own affidavits, or by the 'depositions, answers to
> interrogatories, and admissions on file,' designate 'specific facts showing that there
> is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
>                                       * * *
> [L]egal conclusions "cloaked" as facts are not sufficient to create a genuine issue
> of material fact.

United States v. BCCI Holdings, 977 F. Supp. 1, 6 (D.D.C. 1997), aff'd mem., 159 F.3d 637 (D.C.

Cir. 1998); accord Scott v. Harris, ___ U.S. ___, 2007 WL 1237851 at *4-*5 (Apr. 30, 1007) (directing grant of summary judgment in light of undisputed contents of a videotape, notwithstanding plaintiff's contrary characterizations). Plaintiff has conceded most of the facts proffered by Defendant. In fact, Plaintiff's purported challenges are mere arguments he attempts to disguise as disputed facts. Where Plaintiff has actually challenged the proffered facts, he has either not properly supported his challenge, or the matter is not material to the outcome of the motion.

A.    Plaintiff Concedes He Has No Claims Under 42 U.S.C. §§ 1981, 1983, 1985, or 1986

Plaintiff's opposition does not address Defendant's assertions that Plaintiff's claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1986 are barred because Title VII is the exclusive remedy for employment discrimination claims against the federal government. Groce v. Powell, No. 06-5031, 2006 WL 3018058, *1 (D.C. Cir. June 27, 2006). Therefore, Plaintiff concedes that he has failed to state any claim under 42 U.S.C. §§ 1981, 1983, 1985, and 1986.

B.    Plaintiff's Breach of Contract Claim

Plaintiff claims that Defendant breached the Settlement. This Court, however, lacks jurisdiction over Plaintiff's breach of contract claim. Moreover, throughout his Affidavit and Opposition, Plaintiff repeatedly attempts to testify, without foundation, about the content of the Settlement, which testimony under the Best Evidence Rule is inadmissible. Consequently, if this Court retains jurisdiction of Plaintiff's breach of contract claims, the Settlement, not Plaintiff's testimony, would form the basis of any determination regarding whether Defendant breached the Settlement.

1.    This Court Lacks Jurisdiction Over Plaintiff's Breach of Contract Claims

The Settlement provides that this Court retains limited jurisdiction to enforce the terms of

the Settlement. Plaintiff, however, does not ask the Court to enforce any of the Settlement provisions; rather, he seeks $300,000 in damages for an alleged breach.

Plaintiff argues that under Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994), this Court may exercise ancillary jurisdiction since the underlying facts for both Plaintiff's Title VII and breach of contract claims are generally the same. This jurisdiction, however, is limited by 28 U.S.C. § 1346(a)(2) (the "Little Tucker Act"), which provides that the Court of Federal Claims has exclusive jurisdiction over claims against the United States exceeding $10,000 that arise from an express or implied contract between the United States and Plaintiff. Here, Plaintiff's request for $300,000 in damages far exceeds the $10,000 limit imposed by the Little Tucker Act.

Plaintiff contends, however, that this jurisdiction is not exclusive because the Court will be required to interpret and apply Title VII to determine whether Defendant breached the Settlement. First, as the Court of Federal Claims has noted there is a distinct difference between "actual discrimination claims for which Title VII provides the exclusive remedy and breach of settlement claims that 'fall[] outside the comprehensive scheme' of Title VII," which are "straightforward contract claims" falling squarely within the Court of Federal Claims jurisdiction. Greenhill v. Spellings, No. 06-5030, 2007 WL 1029050, *8 (D.C. Cir. Apr. 6, 2007)(citing Westover v. United States, 71 Fed. Cl. 635, 639 (2006)). Here, contrary to Plaintiff's assertion, the terms of the Settlement do not incorporate substantive provisions of Title VII requiring interpretation or application to determine whether Defendant breached the Settlement. Specifically, under the terms of the Settlement, Defendant was required to: promote Plaintiff; pay his health insurance premiums while on Leave Without Pay ("LWOP"); pay for training opportunities not to exceed $10,100; provide Plaintiff access to PBGC voicemail and email while he was on LWOP to assist in his job

search; provide Plaintiff with a letter of recommendation and designate a contact person in CCRD to receive reference inquires for one year after his resignation; pay Plaintiff $60,000; and pay Plaintiff's attorney's fees and costs.[1]  Defendant's Att. B, ¶ 3 and Exh. 1.  No interpretation or application of Title VII is necessary to determine whether PBGC met these obligations, which it did.[2]

Even if it is necessary to interpret or apply Title VII to determine whether Defendant breached the Settlement, the Federal Circuit has made it clear that simply because a court may need to interpret an underlying statute to adjudicate a contract dispute, it does not make it a suit to enforce the underlying statute itself.  Id. at 9.  In Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1367 (Fed. Cir. 1998), the Federal Circuit clearly enunciated this proposition:

> It is often necessary to interpret or apply statutory or common law principles in order to resolve contract claims, but the fact that the resolution of a contract claim may turn on the interpretation of a statute does not deprive the Court of Federal Claims of jurisdiction over that claim.
>
> The Tucker Act gives the Court of Federal Claims 'jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States.  28 U.S.C. § 1491(a)(1).  That broad jurisdictional grant does not exempt contract claims that turn on the construction of statutes.

Consequently, this Court lacks jurisdiction over Plaintiff's breach of contract claim and it should be dismissed accordingly.

If, however, the Court determines that it has ancillary jurisdiction over this claim, Defendant

---

[1]  Plaintiff claims that the Settlement also requires Defendant to provide him with a safe working environment and "acknowledges" that Stuart Bernsen, Valda Johnson, and Rhonda Baird created a hostile work environment.  A close reading of the Settlement, however, shows that no such provision exists, making it impossible for Defendant to have breached the Settlement in that respect.

[2]  Plaintiff, in fact, concedes that Defendant met these obligations.  See Plaintiff's Response to Defendant's SOF Nos. 7-12. Plaintiff's complaints appear to be regarding the method by which Defendant implemented the Settlement.

maintains that it has abided by all the terms of the Settlement, as discussed more fully herein. Plaintiff, on the other hand, in filing this suit, relies primarily on matters that pre-date the Settlement, thus violating the provision in paragraph 1 that states "**Plaintiff agrees not to institute any other actions, charges, complaints, appeals or other proceedings against Defendant ... concerning any matter related to his employment with PBGC and the termination of his PBGC employment that are based in any way on action or inaction as of this date by Defendants or Defendants' past or present employees.** " Defendant's Reply Att. B, ¶ 1 (emphasis added).

2. <u>Plaintiff's Testimony Characterizing the Content of Documents Is Not Admissible</u>

As an initial matter, Plaintiff attempts to challenge in his declaration the content of the Settlement in direct contravention of Rule 56(e) of the Federal Rule of Civil Procedure and the Federal Rules of Evidence.[3]  Rule 56(e) of the Federal Rules of Civil Procedure mandates that supporting affidavits "set forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e).  Rule 1002 of the Federal Rules of Evidence, otherwise known as the Best Evidence Rule, provides that "[t]o prove the content of a writing ... the original writing .. is required, except as otherwise provided in these rules or by Act of Congress." Fed. R. Evid. 1002.  While Rule 1004 of the Federal Rules of Evidence provides circumstances in which evidence other than the original writing may be admissible to prove the contents of a writing, none of these exceptions apply here.[4] Additionally, under the parol evidence rule, extrinsic evidence is inadmissable to vary the terms of

---

[3]  Indeed, Plaintiff's Affidavit is replete with his characterizations about the content of documents he submits to this Court.  Such testimony should be disregarded for the same reasons cited herein.

[4]   This Court is in possession of the original Settlement filed under Civil Action 04-1996 (CKK) and the content of the writing is central to Plaintiff's claims.

an integrated agreement.  See Bowden v. United States, 176 F.3d 552, 554 (D.C. Cir. 1999).  Yet, Plaintiff repeatedly attempts to testify in his declaration and Opposition about the content of the Settlement.  Here, where each and every word of the Settlement has a significant legal meaning, Plaintiff's testimony regarding the alleged content of the Settlement is not admissible pursuant to Rule 56(e) and Fed. R. Evid. 1002, and the parol evidence rule.  The content of the Settlement, not Plaintiff's characterization of the document, must inform the assessment of any breach.

C.     PBGC Did Not Breach the Settlement or Retaliate Against Plaintiff When It Processed the Personnel Actions Required by the Settlement

Although Plaintiff does not challenge that Defendant effectuated the four personnel actions as required by the Settlement, he nevertheless asserts that Defendant breached the Settlement and retaliated against Plaintiff when Defendant issued four SF-50's and when it included language referencing the Settlement on the SF-50's.  To survive summary judgment, Plaintiff must provide more than mere allegations to show that there is a genuine issue for trial, yet Plaintiff offers nothing to support his conclusory allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Settlement required Defendant to process personnel actions effectuating a retroactive promotion, a prospective promotion, a detail not to exceed six months, and placing Plaintiff on LWOP, which was not to exceed six months.  Defendant's Reply Att. B, ¶¶ 2(a),(b), (c), and (f). Plaintiff does not dispute that Defendant effectuated all four personnel actions; thus, Plaintiff concedes that Defendant did not breach the Settlement by failing to effectuate the personnel actions.

1.     Defendant Did Not Breach the Settlement or Retaliate Against Plaintiff by Issuing Four SF-50's to Implement the Terms of the Settlement

While Plaintiff does not challenge the fact that Defendant implemented all the personnel actions required under the Settlement, he appears to attack Defendant's issuance of more than one

SF-50 to effectuate four separate personnel actions.  Plaintiff states, "The settlement agreement requires Defendant to issue me only one SF-50 form to effectuate the formal Personnel Action of promoting Plaintiff, without back pay, to a GS-13, Step 3 auditor position one year prior to the date of the settlement agreement."  Plaintiff's Att. B, ¶ 5.  Plaintiff goes on to state that Defendant issued him four SF-50's from November 2005 to May 2006.

It is unclear whether Plaintiff is complaining that Defendant should have only issued one SF-50 form for the retroactive promotion and that no SF-50's should have been issued for the remaining personnel actions, or whether Defendant should have issued only one SF-50 form effectuating all four personnel actions.  Regardless, Plaintiff offers no support for either premise; in fact, Plaintiff's allegation is undermined by the Settlement, which contains absolutely no language limiting the number of SF-50 forms to use.  Defendant's Att. B, ¶ 4 and   Exh. 2.; Defendant's Reply Att. B.

Moreover, the Office of Personnel Management's ("OPM") "Guide to Processing Personnel Actions" states that unless a type of action is specifically excluded, or the agency receives an exemption from OPM in advance, all long-term personnel actions are to be documented using the SF-50 form. Defendant's Reply Att. A, ¶ 5 and Exh. 4.  Furthermore, each personnel action requires its own SF-50 form.  Id.  Therefore, while only paragraph 2(a) of the Settlement specifically mentions entering "a formal Personnel Action," none of the personnel actions required by the Settlement could have been properly effectuated without the issuance of a separate SF-50 for each action.  Consequently, the issuance of four SF-50s to effectuate each of the four personnel actions required by the Settlement does not constitute a breach.

Additionally, the issuance of a SF-50 to effect each personnel action that Plaintiff bargained for would not dissuade a reasonable worker from making or supporting a charge of discrimination,

nor did they cause any change in the terms of Plaintiff's employment, other than the change agreed upon in the Settlement. See Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006); Brown v. Brody, 199 F.3d 446, 457-58 (D.C. Cir. 1999). The anti-retaliation provisions protect individuals only "'from retaliation that produces an injury or harm.'" Valles-Hall v. Ctr. for Non-Profit Advancement, No. 06-806, 2007 WL 779385 *30 (D.D.C. March 12, 2007) (quoting Burlington Northern and Santa Fe Ry. Co, 126 S. Ct. at 2414-15). Here, Plaintiff fails to explain what harm he suffered by receiving four SF-50's effectuating the terms of the Settlement or how it chilled him from making or supporting a claim of discrimination. In fact, following Plaintiff's reasoning that only one SF-50 should have been issued for the retroactive promotion without back pay, Plaintiff would not have received the prospective promotion to a GS-13, Step 10 with the accompanying pay raise, a detail to Defendant's Contracts and Control Review Department, or been placed on Leave Without Pay, which triggered the $60,000 lump sum payment to Plaintiff. Plaintiff bargained for all of these benefits and currently enjoys all of the benefits, notably without complaint.

2.    Defendant Did Not Breach the Settlement or Retaliate Against Plaintiff by Including a Reference to the Settlement on Plaintiff's SF-50's

Next, Plaintiff claims that Defendant breached the Settlement and retaliated against Plaintiff when Defendant included language reflecting in the Remarks section of the SF-50's that the actions were taken pursuant to the Settlement. Plaintiff's Att. B, ¶¶ 6, 8. In support of his position, Plaintiff asserts that paragraph 2(a) of the Settlement "delineate[d] exactly what would be included in the SF-50 form, and makes no mention of a clause stating that this promotion was due to a stipulation." Id. at ¶ 6. Paragraph 2(a) of the Settlement, however, provides that "Defendants shall enter a formal

Personnel Action in Plaintiff's Official Personnel File **indicating Plaintiff was promoted, without back pay, to a GS-13, Step 3 auditor position one year prior to the date of the Stipulation of Settlement and Dismissal is executed."**  Defendant's Reply Att. B, ¶ 2(a)(emphasis added). Although it is not entirely clear that the Settlement purports to specify the exact language to be included on the SF-50s,[5] this theory would also require the remarks to reflect the "Stipulation Of Settlement and Dismissal." See Stipulation, ¶ 2(a).

Moreover, when Plaintiff complained about the language, Defendant quickly addressed Plaintiff's concerns by: (1) issuing a COLA SF-50 on January 9, 2006, which did not contain any references to the Settlement, and (2) reissuing the November 2005 SF-50s retroactively, even though the COLA SF-50 would still have been Plaintiff's most current SF-50 for use with prospective employers.  Defendant's Att. B, ¶¶ 7-8 and Exhs. 6 -7; Defendant's Reply Att. A, ¶ 6.

Plaintiff admits that Defendant issued the COLA SF-50 quickly after Plaintiff raised his concerns.  Nevertheless, Plaintiff continues to find fault by raising more issues.  First, Plaintiff alleges, with no foundation, that "As a result of Defendant's reference to the Settlement in my SF-50's, I was unable to seek out employment for any other government position because of the statement's chilling effect on my prospective employment."  Plaintiff's Att. B, ¶ 9.  Plaintiff, however, offers no evidence that he had identified or applied for a position requiring his current SF-50 in the time before the issuance of his COLA SF-50, which contained no reference to the Settlement.

As discussed in Defendant's Motion, the delay in Plaintiff receiving SF-50's to his liking,

---

[5] In contrast, Plaintiff and Defendant, however, did agree on specific language to be used in a letter of recommendation for Plaintiff.

combined with his failure to support his contention that the delay chilled his ability to seek prospective employment before Defendant issued the COLA SF-50, would not be "materially adverse" or likely dissuade a reasonable worker from making or supporting a charge of discrimination.[6] For a challenged action to be considered "materially adverse" to the reasonable employee, the action must have a discernable, not speculative, effect. See e.g., Edwards v. E.P.A., 456 F. Supp.2d 72 (D.D.C. 2006). Here, Plaintiff fails to identify a position requiring a SF-50 as part of the job application and for which he could not apply, making the harm he alleges purely speculative. While not all federal job announcements require a SF-50 with a job application, those that do are verifying the applicant's employment status and pay grade. Defendant's Reply Att. A, ¶ 6. A prospective employee can submit any SF-50 reflecting this information. Id. Therefore, Plaintiff could have used any SF-50, including his COLA SF-50, to apply for a federal position that required a SF-50. Id. Moreover, the delay in receiving the SF-50s did not cause a change in the terms of his employment, other than the change agreed upon in the Settlement. See Burlington Northern & Santa Fe Ry. Co. v. White, 126 S. Ct. at 2415; Brown v. Brody, 199 F.3d at 457-58; Defendant's Mem. at 24-28. Therefore, the Court should find that the Defendant did not retaliate against Plaintiff when it effectuated the personnel actions required by the Settlement.

Plaintiff also complains that the COLA SF-50 "was short lived because the Defendant issued another SF-50 form on November 23, 2006 with harmful language." Plaintiff's Att. B, ¶ 11. First, Plaintiff's statement that the SF-50 contained "harmful language" is an unsupported legal

---

[6] As discussed in Defendant's Mem. on pages 24-28, because these issues were resolved as requested by Plaintiff in the informal EEO process and before Plaintiff initiated this action, he has failed to state a claim upon which relief may be granted. See Taylor v. Small, 350 F.3d 1286, 1294 (D.C. Cir. 2003) (Permitting employers the opportunity to correct workplace wrongs prior to litigation is the objective of the EEO process.).

conclusion. Moreover, Defendant has no record of issuing Plaintiff a SF-50 dated November 23, 2006. Defendant's Reply Att. A, ¶ 6. In fact, Plaintiff's own documents that he references to support his claim do not contain a SF-50 issued on November 23, 2006.[7] Id.; Plaintiff's Att. B and Exh. 2. Under the Best Evidence Rule, the documents themselves are the best evidence of their content, not Plaintiff's testimony, and a review of the SF-50s submitted by Plaintiff reveals that none of them were issued on November 23, 2006. Fed. R. Evid. 1002. Because Plaintiff has failed to support his conclusory assertion with any competent evidence establishing the truth of the assertion, the Court should disregard this statement in Plaintiff's declaration and Opposition.

However, assuming that Plaintiff is referring to the SF-50 placing Plaintiff on LWOP effective May 14, 2006,[8] the LWOP SF-50 never contained a reference to the Settlement. Defendant's Att. B, ¶ 9, Defendant's Reply Att. A, ¶ 6. Plaintiff fails to indicate what language he considers "harmful." As Defendant discusses more fully in the memorandum supporting dismissal or summary judgment ("Defendant's Mem.") at 27, the LWOP SF-50 contained only standard language addressing the length of time Plaintiff was to remain on LWOP, Plaintiff's service credit,

---

[7] Even if Defendant had issued Plaintiff a SF-50 on November 23, 2006, Plaintiff has not exhausted his administrative remedies with respect to that claim. Because this claim was not timely raised in the administrative EEO process, it cannot form the basis for relief in this Court. See, 29 C.F.R. § 1614.105(a)(1); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity); Battle v. Rubin, 121 F. Supp. 2d 4, 7 (D.D.C. 2000); Williams v. Munoz, 106 F. Supp. 2d 40, 42 (D.D.C. 2000). As the Supreme Court reiterated in Morgan, "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" 536 U.S. at 108 (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)).

[8] Defendant is assuming that Plaintiff is discussing the LWOP SF-50 since he complains about that SF-50 in his Amended Complaint, and it was the next SF-50 issued to Plaintiff following the COLA SF-50; none of the reissued, backdated November 2005 SF-50s, contained any reference to the Settlement. See Plaintiff's Response to Defendant's SOF No. 16.

and FEGLI. Defendant's Att. B, ¶ 9. Under the Best Evidence Rule, the LWOP SF-50 itself, not Plaintiff's characterization, is determinative. Fed. R. Evid. 1002.

In any event, as described herein, the language in the LWOP SF-50 would not dissuade a reasonable worker from making or supporting a charge of discrimination nor did the SF-50 cause any change in the terms of his employment other than the change agreed upon in the Settlement. See Burlington Northern and Santa Fe Ry. Co. v. White, 126 S. Ct. at 2415; Brown v. Brody, 199 F.3d at 457-58. The anti-retaliation provisions protect individuals only "'from retaliation that produces an injury or harm.'" Valles-Hall v. Ctr. for Non-Profit Advancement, __ F.Supp.2d __, 2007 WL 779385 *30 (D.D.C. March 12, 2007) (quoting Burlington Northern and Santa Fe Ry. Co, 126 S.Ct. at 2414-15). Plaintiff fails to identify what harm he suffered from the language contained in the LWOP SF-50, which contains no reference to the Settlement. Therefore, the Court should find that the Defendant did not retaliate against Plaintiff when it effectuated the personnel actions required by terms of the Settlement.

> 3.    Defendant's Legitimate, Non-Discriminatory Reasons for Processing the SF-50's

Assuming Plaintiff can prove a prima facie case of retaliation, which he cannot, Defendant has articulated legitimate non-discriminatory reasons for issuing four SF-50s and including the reference to the Settlement. Defendant's Att. B, ¶¶ 5 and 6 and Exh. 3; Defendant's Reply Att. A, ¶4. Plaintiff argues, without foundation, that the real reason that the language was included on the SF-50s was to retaliate against and harm him. Plaintiff's Att. B, ¶¶ 8 and 9. Plaintiff also asserts that the need to justify the unusual personnel actions to OPM is mere pretext and that by reissuing the SF-50s without the language in essence is an admission that Defendant could have issued them originally without the language. Plaintiff's Att. B, ¶¶ 10 and 16.

First, Plaintiff's assertion that the intent of the language was to cause him harm is an unsupported legal conclusion, which is inadmissible, since Plaintiff cannot testify to another's intent. Fed R. Civ. P. 56(e); Fed. R. Evid. 602, 701; United States v. Eiland, No. 04-379, 2006 WL 2844921 at *3 (D.D.C. Oct. 6, 2006)( noting that while a lay witness may testify as to his opinion, it must be based on personal knowledge). Plaintiff offers no evidence demonstrating his personal knowledge that the actions taken were designed to cause him harm.

Furthermore, as Defendant has explained, Rick Lattimer was concerned about justifying Defendant's actions to OPM and, as a result, he believed the Remarks were necessary to explain the unusual personnel actions required by the Settlement. Defendant's Att. B, ¶¶ 5-6, Exh. 3; Defendant's Reply Att. A, ¶ 4. Plaintiff also argues that, if that were the real reason Defendant included the Remarks, the language would have "**additionally** been included in an SF-52 form" and that similar remarks should have been included on promotions received by Dwayne Jeffers and Delarse Montgomery pursuant to settlement agreements. Plaintiff's Opp. at 38; Plaintiff's Att. B, ¶ 8. (emphasis added). Plaintiff offers nothing to support his conclusory allegation regarding the addition of the language in an SF-52, but, in fact, Defendant did include the remarks in an SF-52 form. Defendant's Reply Att. A, ¶ 4 and Exh. 2.

While the SF-50s reflecting the promotions of Mr. Jeffers and Mr. Montgomery do not contain references to a settlement agreement, the personnel processing the actions in the Human Resources Department ("HRD") in 1995 and 2002 were different than those processing Plaintiff's actions in 2005. Id., ¶ 3. At the time Mr. Jeffers' and Mr. Montgomery's promotions were processed, the current Director of HRD, Michele Pilipovich, was not employed by PBGC and Rick Lattimer was not supervising the processing of personnel actions. Id. As discussed in Defendant's

Mem., PBGC believed that the remarks were necessary to explain the unusual personnel actions to OPM when they audit the agency's records. Id. at ¶ 4; Defendant's Att. B, ¶¶ 5-6 and Exh. 3. Finally, while Defendant was not required to reissue the SF-50s under the terms of the Settlement, it did so once it was satisfied that the information contained in the reissued SF-50's would serve as justification for the personnel actions. Id. Indeed, if PBGC does not comply with OPM's rules and regulations in the processing of personnel actions, OPM may withdraw PBGC's personnel authority. Defendant's Reply Att. A; ¶ 4.

To show pretext, "'the issue is not the correctness or the desirability of [the] reasons offered [but] whether the employer honestly believes in the reasons it offers.'" Fischbach v. Dist. of Columbia Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 373 (7th Cir. 1992)). Plaintiff has offered no proof that Defendant did not honestly believe the reasons it has consistently given for including the language on the SF-50s. The fact that Defendant quickly issued the COLA SF-50 and reissued the November 2005 SF-50s belies Plaintiff's assertions that PBGC included the language to retaliate against Plaintiff. Indeed, the fact that Defendant has abided by all the terms of the Settlement, undermines Plaintiff's assertion that Defendant's actions were taken with the intent to retaliate against him.

D.   Defendant's Decision Not to Discipline Employees for Protected Union Activities Did Not Breach The Settlement, Retaliate Against Plaintiff, or Create a Hostile Work Environment

Plaintiff asserts that Defendant breached the Settlement by "permitting, promoting and continuing a hostile work environment that was injurious to Plaintiff." Plaintiff's Opp. at 27. In support of his argument, Plaintiff falsely represents that the Settlement "required Defendant to provide [him] with a safe working environment and acknowledge that unsafe working conditions

were created or maintained by Stuart Bernsen, Valda Johnson and Rhonda Baird." Plaintiff's Att. B, ¶ 17. Plaintiff offers no proof, beyond this conclusory assertion that any such provision exists in the Settlement. In fact, a thorough review of the Settlement reveals that there is no such requirement. Under the Best Evidence Rule, the Settlement, not Plaintiff's testimony, is determinative. Fed. R. Evid. 1002. Thus, the statement in Plaintiff's Affidavit is not admissible as required by Fed. R. Civ. P. 56(e) and Fed. R. Evid. 1002, or the parol evidence rule and cannot form the basis of a claim.

Plaintiff also claims that Defendant retaliated against him by creating, perpetuating and failing to abate a hostile work environment when Defendant did not stop the circulation of certain flyers and emails. Plaintiff, however, has not demonstrated that the flyers/emails that (1) mention Plaintiff, (2) post-date the Settlement, and (3) are timely would dissuade a reasonable worker from making or supporting a charge of discrimination, See Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. at 2415; Brown v. Brody, 199 F.3d at 457-58, or that they are severe or pervasive enough to create "an environment that a reasonable person would find hostile or abusive." Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993).

First, Plaintiff's Opposition concedes that "of the flyers Plaintiff submitted in support of his EEO Complaint 06-04, **all but two of the flyers naming Plaintiff were disseminated in May or June 2005."** Plaintiff's Disputed and Undisputed Material Facts ("Plaintiff's SOF"), ¶ 35. Thus, they were settled by the Stipulation, as discussed more fully in Defendant's Mem. pages 12 and 29-30. Plaintiff further concedes that the two flyers not disseminated in May/June 2005 were circulated on November 8 and November 9, 2005. Id. Finally, Plaintiff does not challenge Defendant's assertion that Plaintiff failed to seek counseling regarding the November 8th and 9th flyers until January 5, 2006, well outside the 45 day time limit for counseling. 29 C.F.R. § 1614.105(a)(1);

National R.R. Passenger Corp. v. Morgan, 536 U.S. at 108 (quoting Mohasco Corp. v. Silver, 447 U.S. at 826); Bowden v. United States, 106 F.3d at 437; Battle v. Rubin, 121 F. Supp.2d at 7; Williams v. Munoz, 106 F.Supp.2d at 42.  Plaintiff, therefore, concedes that all but two of the flyers he submitted in support of EEO Complaint 06-04 that mention Plaintiff were disseminated in May/June of 2005 and that Plaintiff was untimely in seeking counseling for the flyers disseminated on November 8-9, 2005.  Consequently, these flyers may not form the basis of any of Plaintiff's claims.

Of the flyers submitted with Plaintiff's Opposition, only three post-date the Settlement, mention Plaintiff, and are timely[9].  Of the remaining flyers in the Plaintiff's Opposition, four pre-date the Settlement[10] and five do not mention Plaintiff.[11]  Plaintiff's Att. B, ¶ 18 and Exh. 5; Defendant's Att. E, ¶ 10; Defendant's Reply Att. A, ¶ 8.

Plaintiff concedes that he submitted only eleven emails from Rhonda Baird post-dating the Settlement.  Further, he admits that those emails referenced union matters. Plaintiff's Att. B, ¶ 27.  Moreover, Plaintiff agrees that he did not submit any emails from Stuart Bernsen or Valda Johnson

---

[9]  Plaintiff timely pursued counseling on these three flyers that mention Plaintiff and post-date the Settlement: "Your New CBA," "New Years Resolutions That You Will Never Hear From Dick Petta," and "Sam Batsell: For a Union With Management."  Plaintiff's Att. B and Exh. 5 at 5, 7-8; Defendant's Reply Att. A, ¶ 10 and Exh. 8.

[10]  The following flyers were submitted with Plaintiff's Opposition and pre-date the Settlement: "Robert Perry and Dwayne Jeffers Divulged E-Mails to Executive Director," "Robert Perry and Dwayne Jeffers Roles in Discipline Over E-mails Bring Angry Reactions," "The Robert Perry - Dwayne Jeffers Scandal," and "John Seal Fears the Truth." Defendant's Att. E, ¶ 11 and Exhs. 4-5; Plaintiff's Att. B and Exh. 5 at 1-4.

[11]  The following flyers do not mention Plaintiff: "Court Orders Trial Against NAGE Over Retaliation," "Petta Loses It," "Dick Petta Pays the Price," "Union Allows Management to Discipline Employee," and "Dick Petta Shocks Union Members With Financial Impropriety." Plaintiff's Att. B and Exh. 5 at 6, 9-12.

post-dating the Settlement. Id. at ¶ 28.  Consequently, the only documents at issue in Plaintiff's claim are three flyers and the eleven emails from Rhonda Baird.

Plaintiff claims, without foundation, that the flyers contain racial remarks and that he "felt that these flyers might incite others to take untold actions against [him] based on their content expressing hate filed [sic] thoughts."  Plaintiff's Exh. B, ¶ 21 and  Exh. 5.  Plaintiff fails, however, to identify the specific language he finds threatening or racially charged.  In fact, a thorough review of all the flyers Plaintiff submitted in support of his Affidavit establishes that there are no racial remarks.  Moreover, they contain no language that a reasonable person could construe as threatening violence.

Plaintiff also alleges that the emails, which reference union matters, are "humiliating" and were "designed to cause harm" to Plaintiff.  Id. at ¶ 27.  Plaintiff's claims are once again without foundation.  In fact, the exhibit Plaintiff attached to his declaration does not contain emails.[12]  Moreover, Plaintiff never identifies the "humiliating" language he feels is harmful.  Under the Best Evidence Rule, the content of the flyers/emails, not Plaintiff's unsupported, contrary testimony, is determinative.  Fed. R. Evid. 1002.  Plaintiff's unsupported characterizations and legal conclusions concerning the language in the flyers/emails are not admissible pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, Rule 1002 of the Federal Rules of Evidence, and the parol evidence rule.

In any event, as discussed in Defendant's Mem. at 29-30, the communications that Plaintiff says offended him after November 8, 2005 cannot form a viable claim under Title VII, because they would not dissuade a reasonable employee in his situation from engaging in protected activity.  Burlington Northern and Santa Fe Ry. Co. v. White, 126 S. Ct. at 2415.  The anti-retaliation

---

[12]  Rather, Plaintiff's Exh. 11 contains the same flyers produced in Exh. 5.

provisions protect individuals only "'from retaliation that produces an injury or harm.'" <u>Valles-Hall</u> <u>v. Ctr. for Non-Profit Advancement</u>, – F.Supp.2d –, 2007 WL 779385 *30 (D.D.C. March 12, 2007) (quoting <u>Burlington Northern and Santa Fe Ry. Co</u>, 126 S.Ct. at 2414-15).    Furthermore, for a challenged action to be considered "materially adverse" to the reasonable employee, the action must have discernable, not speculative effect.  <u>See</u> <u>e.g.</u>, <u>Edwards v. E.P.A.</u>, 456 F. Supp.2d 72 (D.D.C. 2006).  Here, Plaintiff fails to provide any evidence that he suffered any discernable harm from the flyers/emails.  Therefore, the Court should find that Defendant did not retaliate against Plaintiff when it did not discipline Bernsen, Johnson, or Baird for engaging in protected union activities.

Furthermore, the flyers/emails in dispute also cannot support a claim of hostile work environment.  <u>Faragher v. City of Boca Raton</u>, 524 U.S. at 787-88.  While the flyers/emails may be critical of Plaintiff and other union officials, they do not rise to the level of severity necessary to support a hostile work environment claim.  Additionally, given the limited numbers of emails and flyers and their content, they do not rise to the level of pervasiveness necessary to sustain a claim of hostile work environment.  Finally,  Plaintiff  fails to demonstrate that the flyers/emails inordinately interfered with his work performance, again failing to meet the standard of a hostile work environment.  <u>Id.</u> (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993)).

Moreover, the agency's decision not to step in and attempt to quell communications regarding protected union activity was made for the legitimate and proper reason that, following the investigation by Littler Mendelson of Plaintiff's complaints, Defendant determined that: (1) the  communications did not violate any PBGC policies or directives, (2) did not pose a safety threat, and (3) fell within the scope of protected activity under the Federal Service Labor-Management Relations Act (the "Act"),  governing labor relations in the federal sector.  Defendant's

Att. B, ¶ 15 and Exh. 15.  Plaintiff makes the bald assertion that Littler Mendelson did not conduct

a "real" investigation[13] and that the reasons are self-serving and "not based on any law."  Plaintiff's

Att. B, ¶ 23; Plaintiff's Opposition p. 34.  On the contrary, section 7102 of the Federal Service

Labor-Management Relations Act (the "Act") provides in part:

> Each employee shall have the right to form, join, or assist any labor organization
> or to refrain from any such activity, freely and without fear of penalty or reprisal,
> and each employee shall be protected in the exercise of such right.

5 U.S.C. § 7102.  Section 7102 also allows employees to distribute literature during non-work times

and protects the right of an employee to oppose a union, Gen. Serv. Admin., 9 F.L.R.A. 213, 1982

WL 23231 (June 24, 1982), including the right to distribute letters and publications urging fellow

employees not to join or support a union. Overseas Educ. Ass'n, 11 F.L.R.A. 377, 387, 1983 WL

24509 (Feb. 18, 1983).  An action taken by employers or unions to restrict these activities is a

violation of the Act unless the employee loses the "protected activity" status through "flagrant

misconduct."[14]  Id. (Union's request that agency discipline non-member employee for distributing

---

[13] Plaintiff's allegation that the investigation was improper is a legal conclusion.  Since
Plaintiff offers no facts to support this conclusory allegation, the statement is inadmissible.
Plaintiff also incorrectly links the presence of PBGC attorneys Robin Horning and
Margaret Drake at Michele Pilipovich's interview with an EEO counselor to the Littler
Mendelson investigation.  Plaintiff's Att. B, ¶ 34; Plaintiff's Opposition, p. 39.  Once again,
Plaintiff fails to disclose when the interview occurred much less its context.  In fact, Robin
Horning and Margaret Drake were present for Michele Pilipovich's interview on February 26,
2007 with an EEO counselor regarding a **new** informal EEO complaint raised by Plaintiff.
Defendant's Reply Att. A, ¶ 9.  Plaintiff filed his Amended Complaint in this case on January 19,
2007.  Consequently, Plaintiff has failed to exhaust his administrative remedies, and Plaintiff's
statements regarding this issue should be disregarded.  29 C.F.R. § 1614.105(a)(1); National R.R.
Passenger Corp. v. Morgan, 536 U.S. at 108 (quoting Mohasco Corp. v. Silver, 447 U.S. at 826).

[14] The Federal Labor Relations Authority has held that remarks or actions that are of such
an "outrageous and insubordinate nature" may constitute "flagrant misconduct."  Dep't of Navy,
Naval Facilities Eng'g Command, 45 F.L.R.A. 138, 148-49, 1992 WL 137663 (June 11, 1992).

letter critical of union violated employee's rights under the Act.)

Following the investigation by an outside law firm, Littler Mendelson, P.C., into the flyers/emails that Plaintiff has submitted, PBGC determined that the flyers/emails stemmed from an intra-union dispute between the International Union of Pension Employees and the National Association of Government Employees, of which Plaintiff was an officer. Defendant's Att. B, ¶ 11, 12, and 15 and Exh. 15. Defendant determined that the flyers/emails constituted "protected activity" under the Act and that nothing in the content of the flyers/emails caused them to lose protection under the Act. Id. Defendant explained to Plaintiff that if it had taken any action against those individuals distributing the flyers and/or emails, that it would have violated the Act and been subject to an unfair labor practice complaint. Id.

Given Plaintiff's lack of evidence, or even any reasoned argument, to support his conclusory allegation that the investigation was somehow improper and that Defendant's reasons are "self-serving" and "not based on any law," the Court should disregard his challenge of Defendant's legitimate, non-discriminatory reason for not restricting the protected union activities of Baird, Johnson, Bernsen, and indeed, Plaintiff.

E.    Defendant Did Not Investigate Plaintiff for Sexual Harassment in 2005 or 2006

Plaintiff falsely represents that Defendant breached the Settlement, created a hostile work environment, and retaliated against Plaintiff when it initiated a sexual harassment investigation against him on November 2, 2005. Plaintiff's Att. B, ¶¶ 29-30. He further states that a grievance

---

The D.C. Circuit held in Dept' of the Air Force, 315 Airlift Wing v. FLRA, that when a male union representative confronted a female supervisor in a "belly-to-belly" posture and placed "her in reasonable fear of an unpredictable blow while ranting and raving at her," he lost protection under the Act. 294 F.3d 192, 197 (D.C. Cir. 2002). Here, the flyers/emails Plaintiff references rise nowhere near the level of conduct that exceeds the outer limits of the Act's protection.

regarding the investigation was filed and heard in arbitration by Arbitrator Robert T. Moore.  Id.

Regarding Plaintiff's allegation of breach, Plaintiff fails to identify the provision of the Settlement

that he alleges was breached.  Plaintiff's Opposition at 25; Defendant's Reply Att. B.  In fact, the

Settlement contains no provision that addresses a sexual harassment investigation.  Under the Best

Evidence Rule, the Settlement, not Plaintiff's unsupported testimony regarding its content, controls.

Fed. R. Evid. 1002.  Consequently, statements in Plaintiff's declaration and Opposition alleging a

sexual harassment investigation in breach of the Settlement are not admissible pursuant to Fed. R.

Civ. P. 56(e) and Fed. R. Evid. 1002, or the parol evidence rule and cannot form the basis of a claim.

Plaintiff also claims that the alleged initiation of a sexual harassment investigation against

him in November 2005 created a hostile work environment and constituted retaliation.  However,

the only sexual harassment investigation Defendant initiated against Plaintiff occurred in early 2004

and concluded in April 2004, more than a full year before Plaintiff and Defendant entered into the

Settlement.  Defendant's Reply Att. A, ¶ 7.  In fact, Plaintiff raised the 2004 sexual harassment

investigation as one of his claims in Civil Action No. 04-1996, which was settled.  Defendant's

Reply Att. C.  Hence, pursuant to paragraph 1 of the Settlement any claims that arose from the 2004

sexual harassment investigation were settled and cannot be used to institute any other complaints.[15]

---

[15]  Indeed, Plaintiff's effort to re-litigate the 2004 sexual harassment investigation, despite
the fact it was covered by the Settlement, in which Plaintiff agreed to release Defendant "from all
matters related to his employment with Defendants up to and including the date of this
Stipulation and Settlement," arguably constitutes a breach of the Settlement by Plaintiff.
Defendant's Reply Att. B, ¶ 1.    Even if the Court were to determine that any claims arising
from the 2004 sexual harassment investigation had not been settled, which they were, the
initiation of an investigation that does not have an effect of Plaintiff's terms of employment does
not constitute retaliation.  Ginger v. Dist. of Columbia, 477 F. Supp.2d. 41 (D.D.C. 2007).
Plaintiff was not disciplined as a result of the 2004 sexual harassment investigation. Defendant's
Reply Att. A, ¶ 7.

Defendant's Reply Att. B, ¶ 1.

Moreover, the documents Plaintiff attaches to his Affidavit in support of this assertion that a sexual harassment investigation was initiated against Plaintiff in November 2005 directly contradict his statements regarding the timing of the investigation. Plaintiff attaches a memorandum from Michele Pilipovich, the Director of HRD, dated April 19, 2004, addressing Plaintiff's complaint that other employees harassed Plaintiff when they accused him of sexually harassing another employee. Plaintiff's Att. B , Exh. 12. Plaintiff also references as support for his claim an arbitration decision, but Plaintiff fails to disclose that the decision was dated April 26, 2005.[16] Id. at ¶ 30 and Exh. 13.

In fact, the only notification Plaintiff received from Defendant on November 2, 2005 regarding an investigation involving Plaintiff was a memorandum from the Director of HRD explaining that an outside law firm, Littler Mendelson, had been hired "to take over and complete PBGC's investigation of **[Plaintiff's]** June 6, 2005 complaint to PBGC's Human Resources Department (HRD)." Defendant's Att. B, ¶ 14; Plaintiff's Att. B, Exh. 8 (emphasis added). Plaintiff has offered nothing more than thinly veiled misrepresentations in an effort to create an issue for trial. Moreover, the documents he offers in support of his conclusory allegations, in fact, directly contradict his assertions.

F.    Defendant Did Not Retaliate Against Plaintiff When It Did Not Offer Him The Opportunity to Work From an Alternate Work Site

Plaintiff alleges that Defendant retaliated against Plaintiff when it did not offer him the

---

[16]    Plaintiff also states that the arbitration decision he has attached to his Affidavit dealt with his grievance about the sexual harassment investigation. Plaintiff's  Att. B, ¶ 30; Plaintiff's Opp. at 18.  In fact, as reflected on its face, Arbitrator Moore's decision concerned a grievance against PBGC initiated by Rhonda Baird.  Plaintiff was only a witness.  Id. at Exh. 13.

opportunity to work from an alternate location after he complained about the flyers/emails discussed supra. Plaintiff argues that another employee, Dwayne Jeffers, who had a pending EEO complaint raising issues similar in nature to the ones raised by Plaintiff, was offered the opportunity to work from PBGC's remote location at Kingstowne, VA to resolve Mr. Jeffers' EEO complaint. Plaintiff's Att. B, ¶ 25 and Exh. 10. Plaintiff concedes that he withdrew his EEO complaint about the flyers/emails on November 4, 2005. Id. at ¶ 24 and Exh. 9. Plaintiff argues, however, that Defendant should have made the same offer to him because, although he did not have a pending EEO complaint, he did have a pending complaint with HRD. In support of this allegation, Plaintiff attaches his memorandum to Michele Pilipovich, Director of HRD, **dated January 13, 2004**, which, again, pre-dates the Settlement by twenty-three months. Id. at ¶ 25 and Exh. 10. Pursuant to paragraph 1 of the Settlement, Plaintiff agreed not to institute any new actions against Defendant concerning any matter related to his employment that is based upon any action or inaction taken by the Defendant up to and including the date of the Settlement. Defendant's Reply Att. B, ¶ 1. Consequently, Plaintiff settled any claims arising from complaints raised with HRD prior to the Settlement and he fails to show that there is a genuine issue for trial.

G.    Plaintiff Offers Only Conclusory Assertions to Support His Request for Discovery

_____Rule 56(f) of the Federal Rules of Civil Procedure provides that if a non-moving party is unable to provide the essential facts needed to oppose a motion for summary judgment by affidavit, the Court may deny the motion for summary judgment or permit discovery to proceed. Plaintiff has failed to demonstrate that he is unable to produce the facts necessary to oppose a Motion for Summary Judgment. Consequently, Plaintiff's motion to defer summary judgment should be denied.

The denial of discovery in advance of ruling on the dispositive motion is reviewed only for

an abuse of discretion.  See White v. Fraternal Order of Police, 909 F.2d 512, 517 (D.C. Cir. 1990)

(The decision of whether to permit further discovery before ruling on a motion for summary

judgment is committed to the discretion of the district court).  To succeed in delaying consideration

of a motion for summary judgment to permit discovery pursuant to Rule 56(f), a party must, inter

alia, "articulate a plausible basis for the belief that discoverable materials exist which would raise

a trialworthy issue."  Price v. General Motors Corp., 931 F.2d 162, 164 (1st Cir. 1991); accord Byrd

v. United States Environmental Protection Agency, 174 F.3d at 248 n.8; Carpenter v. Fed. Nat'l

Mortgage Ass'n, 174 F.3d at 237-38.  To satisfy Rule 56(f), a non-movant must describe a need for

"facts essential to justify the party's opposition" to a motion for summary judgment. Fed. R. Civ. P.

56(f).  See also Exxon Corp. v. FTC, 663 F.2d 120, 128 (D.C. Cir. 1980).

      In this case, Plaintiff, who makes conclusory allegations throughout his declaration and

Opposition and offers documents that directly contradict his "facts," now seeks to embark on a

fishing expedition in an effort to raise a trialworthy issue.  For instance, Plaintiff's counsel indicates

in his Rule 56 Affidavit that he would like to seek discovery on a sexual harassment investigation

that he alleges was initiated on November 2, 2005 and that the information is not available to

Plaintiff by any other means.  Plaintiff's Att. D, ¶¶ 11, 12, 14(h), (I), (j), (k), and (l), and 15.  Yet,

if counsel had reviewed the documents attached to his Opposition concerning this allegation, as he

attests that he has, counsel would know that those documents reference an investigation that pre-

dates the Settlement by more than one year.  Plaintiff's Att. B, ¶ 30 and Exhs. 12-13.  Defendant's

Att. B, ¶ 1.  Furthermore, discovery relating to the claim has already been conducted by Plaintiff in

Civil Action No. 04-1996.  Regardless, as noted earlier, Plaintiff agreed that he would not institute

any further actions based upon actions or inactions taken by Defendant up to and including the date

of the Settlement, which clearly encompasses the 2004 sexual harassment investigation.

On the remaining issues on which Plaintiff wishes to seek discovery, Plaintiff fails to establish that there is a reasonable basis to suggest that discovery would unearth additional facts to create a triable issue. In fact, he has already conceded most of the facts Defendant asserts. Furthermore, the documents he submits to challenge Defendant's facts and support his own belie his arguments. Since Plaintiff has failed to present anything other than purely speculative issues of fact to support his request for discovery under Rule 56(f), the Court should deny Plaintiff's motion to defer summary judgment.

## III.   CONCLUSION

For these reasons and those previously set forth by Defendant, the Court should dismiss this action or, alternatively, grant summary judgment in favor of Defendant on all claims herein.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

-25-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT T. PERRY, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
|   v. | ) Civil Action No. 06-1371 CKK |
| | ) |
| VINCENT K. SNOWBARGER, | ) |
| Interim Director, Pension  Benefit Guaranty Corp., | ) |
| | ) |
|         Defendant. | ) |
|  | ) |

DEFENDANT'S REPLY TO PLAINTIFF'S
RESPONSES TO STATEMENT OF UNDISPUTED MATERIAL FACTS

_____As evidenced by Plaintiff's Disputed and Undisputed Material Facts, Plaintiff and Defendant

agree indisputably that material fact numbers 1-3, 7-11, 13-14, 20, 22-26, 29, 31-33, 35-37, 41 and

42 are accurate.  As discussed below, however, Plaintiff's responses to Defendant's remaining

material facts[1] reveal that Plaintiff actually concedes most, if not all, of the material facts, and

Plaintiff's denials are nothing more than improper attempts to create issues of fact where there are

none.  Equally troubling, Plaintiff's added facts numbered 43 through 49 reveal thinly veiled efforts

to resurrect claims that were settled or that Plaintiff has not exhausted.

      A.     Plaintiff's Responses to Defendant's Material Facts Belie Plaintiff's "Disputed"
               Characterization

      Plaintiff purports to dispute several of Defendant's material facts, when in fact, he admits the

substance of the facts.  Indeed, in many instances his "denials" are nothing more than attempts to

create issues of fact through mischaracterization or misguided legal analysis.

      The following discusses each purportedly contested material fact using the same number

---

[1] Plaintiff asserts, without proper foundation, that the following material facts remain in
dispute: 4-6, 13, 15-19, 21, 27, 28, 30, 34, and 38-40.

designations used in Defendant's Motion for Summary Judgment and Plaintiff's Opposition:

4.  Plaintiff attempts to create an issue of material fact where there is none by disputing the effective date of the Stipulation Of Settlement And Dismissal ("Stipulation").  Otherwise, Plaintiff does not dispute the remainder of the material fact.  Plaintiff states that he signed the document on November 5, 2005, and therefore, that date should prevail over November 8, 2005, the date the document was entered by this Court.  Assuming, arguendo, that Plaintiff did sign the document on November 5, 2005, which Defendant does not concede because Plaintiff did not date the document, the Court still may give effect to all provisions of the Stipulation.  For example, Plaintiff's release covers everything that occurred before November 5, 2005, and the document also establishes that Plaintiff settled everything that occurred before November 8, 2005.  Defendant's Reply Att. B at 1-2; Complaint, ¶ 10.  Moreover, the Stipulation is the best evidence of its content, and Plaintiff may not controvert the language of the agreement through his own testimony.  See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002-1005.[2]

5.  Although Plaintiff purports to deny this material fact, he does not dispute that:

"In November 2005 and May 2006, Defendant issued four SF-50 forms to effectuate the formal Personnel Actions that were required under ¶¶ 2(a)-(c) and (f) of the Stipulation.  Att. A at 3, ¶¶ 2a, 2b, 2c, 2f; Complaint,  ¶¶ 11-12; Att. B (Pilipovich Affidavit), ¶ 4 and Exh. 2.  Specifically, Defendant retroactively promoted Plaintiff to a GS-13, Step 3 auditor position without back pay, and prospectively promoted Plaintiff to a GS-13, Step 10 Auditor position for a period of one year.  Att. B, ¶ 3.  Plaintiff was paid the GS-13, Step 10 salary until he was placed in leave without pay status on May 14, 2006, consistent with the terms of the Stipulation.  Id."

---

[2]  Although the Court could take judicial notice of the contents of the settlement agreement filed in Civil Action Nos. 03-2495 and 04-1996, see Fed. R. Evid. 201 and 1005, Plaintiff has already admitted that a true and correct copy of the agreement was provided as Attachment A to Defendant's Statement Of Material Facts Not In Dispute ("Defendant's SOF").  See Plaintiff's Response to Defendant's SOF No. 3.

In fact, Plaintiff's "denial" appears to be an attack on the agency's issuance of more than one SF-50 to effectuate the four distinct personnel actions identified in the Stipulation: (1) retroactive promotion to GS-13, Step 3 (Stipulation, ¶ 2(a)), (2) prospective promotion to GS-13, Step 10 (Stipulation, ¶ 2(b)), (3) detail to PBGC's Contracts and Control Review Department (Stipulation, ¶ 2(c)), and (4) leave without pay in May 2006 (Stipulation, ¶ 2(f)).  Defendant's Reply Att. B.  The Stipulation Of Settlement And Dismissal is the best evidence of what was required of Defendant under its terms, and Plaintiff may not controvert the language of the Stipulation through his own testimony.  See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002.

Plaintiff goes on to state that "on November 2005, Plaintiff notified Defendant that it had not provided him with an SF-50."  Although it is unclear what date Plaintiff notified Defendant that he had not received his SF-50, Defendant does not dispute that Plaintiff requested his SF-50.

Plaintiff then states that "after Plaintiff's notification, Defendant issued four SF-50 forms through the period of November 2005 and May 2006."  Although it is unclear what date Plaintiff notified Defendant that he had not received his SF-50, as stated in Defendant's Material Fact 5, Defendant does not dispute that in November 2005 and May 2006 it issued four SF-50 forms to effectuate the four formal personnel actions required under ¶¶ 2(a)-(c) and (f) of the Stipulation.

Plaintiff then states "some of these forms replaced former SF-50 forms that were issued not in accordance with the settlement agreement.  Three of Plaintiff's SF-50's included inappropriate and personal language in the 'remarks' section."  Although Plaintiff's allegations are not entirely clear, Defendant does not deny that after Plaintiff complained about references to the Stipulation in the "remarks" section of the SF-50's and in response to Plaintiff's complaints, Defendant reissued the SF-50's without reference to the Stipulation about which Plaintiff complained.  See Defendant's

Material Facts 5,13-16.

Plaintiff does not explain what he means in his conclusory allegation that the SF-50's "were issued not in accordance with the settlement agreement." However, if Plaintiff is again alleging that Defendant should not have issued more than one SF-50 to effectuate the terms of the Stipulation, it is a legal conclusion; the Stipulation is the best evidence of what was required of Defendant under its terms; and Plaintiff may not controvert the language of the Stipulation through his own testimony. See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002; see also Stipulation; Plaintiff's Response to Defendant's SOF No. 3 (admitting the contents of the Stipulation).

Finally, regarding Plaintiff's conclusory allegation that the SF-50's included "inappropriate and personal language in the 'remarks' section," it appears that Plaintiff is asserting that the language was "inappropriate" because of some perceived conflict with the Stipulation, when there is none. See Defendant's SOF Material Fact Nos. 3; see also id., Nos. 15 and 16 (describing Defendant's efforts to respond to and remedy Plaintiff's complaints). Plaintiff does not deny Defendant's actions in response to Plaintiff's complaints. See Defendant's SOF Nos. 15 and 16.

6. Plaintiff attempts to create an issue of material fact by challenging Defendant's assertion that the Stipulation was silent as to what remarks or information could be included in, or excluded from, any of the paperwork necessary to effect the personnel actions required by the Stipulation. See Defendant's Att. A, ¶ 2(a). Although the Stipulation is the best evidence of what its terms required, even assuming that the Stipulation "delineate[d] exactly what would be included in the SF-50 form," as Plaintiff contends, see Plaintiff's Response to Defendant's SOF No. 6, Plaintiff directly undermines his own argument, because Plaintiff himself asserts that the SF-50 would reference the "Stipulation of Settlement And Dismissal". See Plaintiff's Response to Defendant's SOF No. 6

("Defendants shall enter a formal Personnel Action in Plaintiff's Official Personnel file <u>indicating Plaintiff was promoted</u>, without back pay, to a GS-13, Step 3 auditor position <u>one year prior to the date the Stipulation of Settlement and Dismissal is executed.</u>") (emphasis added).

     13.  Although Plaintiff purports to deny something in Defendant's SOF No. 13, he does not dispute that:

> "On December 13, 2005, Robert Perry complained via email to Rick Lattimer in the Human Resources Division ("HRD") about language in the "Remarks" section of the SF-50's that were issued in November 2005.  Complaint, ¶ 11; Att. B, ¶ 6 and Exh. 3.  Mr. Lattimer responded to Plaintiff in a subsequent email that the SF-50's were prepared so as to explain to the Office of Personnel Management ("OPM") the manner in which Plaintiff was promoted.  Att. B, ¶ 6 and Exh. 3."

In fact, Plaintiff's "denial" is an attack not on the facts asserted by Defendant, rather Plaintiff challenges the merits of Richard Lattimer's explanation to Plaintiff about OPM's potential challenge to the personnel actions.  Plaintiff's allegation that the "purpose of the references in the 'remarks' section was to retaliate against and harm Plaintiff" is strictly a legal conclusion and is contrary to Fed. R. Civ. P. 56(e), which requires Plaintiff to produce admissible evidence rather than mere allegations or denials.

     Plaintiff goes on to argue that "the information should have appropriately been additionally been included (sic) in an SF-52 form."  In fact, the information was included in a SF-52 form.  Defendant's Reply Att. A (Pilipovich Supp. Aff.), ¶ 4 and Exh. 2.

     Plaintiff then contends that if Mr. Lattimer's explanation was true, "similar language should have been included in the SF-50's of Dwayne Jeffers and Delarse Montgomery."  Indeed, language referencing settlement was not included in the SF-50's issued for the promotions of Mr. Jeffers in 2002 and Mr. Montgomery in 1998.  However, as those SF-50's reflect, they were issued and

prepared by different personnel, who were no longer employed by PBGC at the time of Mr. Perry's

promotion in 2005.  Defendant's Reply Att. A (Pilipovich Supp. Aff.), ¶ 3 and  Exh. 1.

Finally, Plaintiff's allegation that this "clearly shows...pretext" is, again, a legal conclusion

and is contrary to Fed. R. Civ. P. 56(e), which requires Plaintiff to produce admissible evidence

rather than mere allegations or denials.  To be admissible, Plaintiff must demonstrate some basis of

knowledge for his statements.  See Fed. R. Evid. 602 (generally requiring personal knowledge before

a witness may testify on a matter).  Moreover, Plaintiff does not deny the actions Defendant took in

response to Plaintiff's objections to the language, as described in Plaintiff's Response to Defendant's

SOF Nos. 15 and 16.

15.  Although Plaintiff purports to deny something in Defendant's SOF No. 15,  he does not

dispute that:

> "Plaintiff's then counsel contacted the U.S. Attorney's Office on January 4, 2006 and
> questioned the "Entry under 'Remarks' in SF-50s resulting from Settlement." Att.
> B, ¶ 7 and corresponding Exh. 4.  On January 5, 2006, the U.S. Attorney's Office sent
> a letter to Plaintiff's counsel informing him that the references in the Remarks section
> were included to protect PBGC in the event that OPM questioned the personnel
> actions. Att. B, ¶ 7 and corresponding Exh. 5.  The letter further informed Plaintiff's
> counsel that in an effort to address Plaintiff's concerns, PBGC would issue Plaintiff
> an SF-50 for his Cost-of-Living Adjustment ("COLA") increase as soon as the
> COLA went into effect, rather than Plaintiff having to wait a couple of months to
> receive the SF-50 from Department of the Interior, which processes PBGC's payroll.
> Id.  The COLA SF-50 issued on January 9, 2006, did not contain a reference to the
> Stipulation in the Remarks section.  Att. B, ¶ 7 and corresponding Exh. 6.  At that
> point, if Robert Perry had to submit an SF-50 during the application process with a
> potential employer, the COLA SF-50 would have been the one he would submit
> because it was the most recently issued SF-50.  Id."

Defendant's SOF No. 15.  In fact, Plaintiff's "denial" is a reiteration of the same attack on Richard

Lattimer's explanation to Plaintiff described in response to Defendant's SOF No. 13; thus, Defendant

incorporates by reference the response to that paragraph as well.  Plaintiff's allegation that the

"purpose of the references in the 'remarks' section was to retaliate against and harm Plaintiff" is a legal conclusion and is contrary to Fed. R. Civ. P. 56(e), which requires admissible evidence rather than mere allegations or denials.

Plaintiff goes on to argue that "the information should have appropriately been additionally been (sic) included in an SF-52 form," which it was. Defendant's Reply Att. A (Pilipovich Supp. Aff.), ¶ 4 and Exh. 2 . Plaintiff's legal conclusion that this "clearly shows...pretext" is contradicted by Defendant's actions in response to Plaintiff's objections to the language, as described herein and in Defendant's Material Fact 16, which Plaintiff does not challenge in substance.

Finally, Plaintiff asserts that the COLA SF-50 was "short lived because the Defendant issued another SF-50 on November 23, 2006 with harmful language." Plaintiff's Response to Defendant's SOF No. 15. Plaintiff does not specify which document he believes was issued on November 23, 2006, nor does he identify what language he finds "harmful." Rather, Plaintiff references the eight SF-50's in Exhibit 2 attached to his affidavit, which consist of (1) the COLA SF-50 issued on January 9, 2006, (2) the LWOP SF-50 issued on May 12, 2006, (3) the three SF-50's referencing the Stipulation issued in November 2005, and (4) the three backdated SF-50's reissued in response to Plaintiff's complaint each bearing effective dates and approval dates in November 2005. Plaintiff's Att. B and Exh. 2.

As evidenced by Plaintiff's own documents in his exhibit, none of the SF-50's Plaintiff references was dated November 23, 2006. Plaintiff's Att. B and Exh. 2. As Plaintiff's documentation reflects, the COLA SF-50 was identified by date as the most current SF-50 in Plaintiff's official personnel file until the LWOP SF-50 was issued on May 14, 2006. Plaintiff's Att. B and Exhibit 2. As the LWOP SF-50 in Plaintiff's Exhibit 2 indicates, the document includes no

reference to the Stipulation.  <u>Compare</u> Plaintiff's Att. B, Exhibit 2 at 2 to Plaintiff's Att. B, Exhibit

2 at 3-5. The three SF-50's that were reissued in response to Plaintiff's complaint about the reference

to the Stipulation were backdated.  Plaintiff's Att. B and  Exh. 2 at 6-8.  Thus, Plaintiff provides no

admissible evidence for his allegation that an SF-50 issued after the January 2006 COLA SF-50

contained "harmful language."  Plaintiff may not controvert the language of an undisputed exhibit

through his own testimony.  <u>See</u> Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002; <u>Scott v. Harris</u>, ___ U.S.

___, 2007 WL 1237851 at *4-*5 (Apr. 30, 1007) (directing grant of summary judgment in light of

undisputed contents of a videotape, notwithstanding plaintiff's contrary characterizations).

    16.  Although Plaintiff purports to deny something in Defendant's SOF No. 16,  he does not

dispute that:

> "In February 2006, . . .  PBGC reissued and backdated the three November 2005
> SF-50's that Plaintiff and his counsel found objectionable.  Att. A; Att. B, ¶ 8 and
> corresponding Exh. 7.  The[se] SF-50's no longer contained a reference to the
> Stipulation, as requested by Plaintiff and his counsel.  <u>Id</u>."

Plaintiff's Response to Defendant's SOF No. 16.  All that remains of Defendant's SOF No. 16, then,

is an assessment of whether the language in the Stipulation required the agency to reissue the SF-50s.

This conclusion requires only a resort to the language of the Stipulation itself, and Plaintiff's

characterization of the document's contents rather than resort to the document itself would violate

the best evidence rule and would not constitute admissible evidence, which is required by Fed. R.

Civ. P. 56(e).  <u>See</u> ; Fed. R. Evid. 1002-1005.

    The remainder of Plaintiff's "denial" of this paragraph consists of nothing more than a legal

conclusion that Plaintiff was "chilled."  Plaintiff attempts to support this legal conclusion with his

allegation that he was "unable to seek employment for any other government position" for

approximately two and a half weeks when the SF-50's about which Plaintiff complained were the most current SF-50's in his personnel file.  Yet, Plaintiff identifies no job openings for which he attempted to apply during that two and a half week period, much less a job announcement that indicated a requirement that applicants supply their most recent SF-50 within that 2-week period.  Plaintiff's addition of his own unsupported characterizations, allegations, and legal conclusions is not a proper method for disputing material facts or for defeating a Motion for Summary Judgment.  See Fed. R. Civ. P. 56(e).

17. Although Plaintiff purports to deny something in Defendant's SOF No. 17,  he does not dispute the facts contained in paragraph No. 17:

> "As required by paragraph 2f of the Stipulation, on May 14, 2006, Plaintiff was placed in Leave Without Pay ("LWOP") status for a period not to exceed six months. Att. A; Complaint, ¶ 12; Att. B, ¶ 9.  To effectuate this personnel action, PBGC issued Plaintiff an SF-50 with the codes and remarks required by the Office of Personnel Management's "Guide to Processing Personnel Actions," which requires the use of code 460 and the Nature of Action to read "LWOP NTE (date)" whenever LWOP is scheduled to exceed 30 calendar days. Att. B, ¶ 9 and corresponding Exh. 8.  When the Nature of  Action Code is 460, OPM's "Guide to Processing Personnel Actions" requires the use of specific remarks addressing service credit and FEGLI, which language was included on Plaintiff's LWOP SF-50.  Id."

Plaintiff implies that an SF-50, such as the one  placing him in LWOP status, should not reference his settlement agreement.  See Plaintiff's Response to Defendant's SOF No. 17 ("it seems that referring to the settlement agreement and stipulation on Plaintiff's SF-50 was not right").  But Plaintiff has, himself, provided a copy of the SF-50 that became effective on May 14, 2006, and it makes no reference to any settlement agreement.  See Plaintiff's Att. B and  Exhibit 2 at 2.  This document is the best evidence of its content, and Plaintiff may not controvert the language of the document through his own testimony.  See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002.

18. Although Plaintiff purports to deny something in Defendant's SOF No. 18, he does not dispute the facts contained in paragraph No. 18:

> "On June 7, 2005, Plaintiff sent an email to various members of PBGC upper management, including the Executive Director, EEO Manager, and Human Resources Director. Att. B, ¶ 12 and corresponding Exh. 11. Plaintiff's email complained that certain flyers had been circulated within PBGC that Plaintiff felt might incite others to take "untold actions against [him]." Id."

In fact, Plaintiff's "denial" is nothing more than his addition of other language included in the same email from Plaintiff alleging "the flyers contain false information that he believe (sic) will incite some current and past employees to want to approach him in a threatening manner and cause bodily harm." As evidenced by Defendant's Att. B and Exhibit 11, although Defendant does not concede the truth of Plaintiff's contentions and characterizations in his email, Plaintiff's email includes this language and is the best evidence of its content. See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002.

19. Although Plaintiff purports to deny something in Defendant's SOF No. 19, he does not dispute the facts contained in paragraph No. 19. For instance, he does not dispute that "the flyers followed a representational election...wherein the National Association of Government Employees ("NAGE") prevailed over the Independent Union of Pension Employees." Rather, Plaintiff restates the material fact inexplicably omitting the language, "held by the Federal Labor Relations Authority in February 2005," yet offers no basis to challenge the phrase. In short, Plaintiff concedes that the flyers followed a representational election and that NAGE prevailed over the Independent Union of Pension Employees.

Then, Plaintiff alleges that the flyers included racial remarks, and as support he cites to Paragraph 21 of his declaration and Exhibit 5, which includes the flyers. These documents are the best evidence of their content, and, contrary to Plaintiff's characterization, a review of the documents

reveals that they do **not** include any "racial remarks," but do "contain union activity content" Plaintiff's Att. B, ¶ 21 and Exh. 5. Plaintiff may not controvert the language of the documents through his own characterization. See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002.

21. Although Plaintiff purports to deny this material fact, he does not dispute that "flyers were disseminated following the union elections;" nor does he offer facts to contract the facts in this paragraph. Instead, Plaintiff's "denial" is nothing more than his challenge of Defendant's use of the word "critical" to describe the flyers' content when Plaintiff would choose to add further descriptive language. Plaintiff contends that the flyers "incited harm and encouraged PBGC's employees to take action against Plaintiff and Jeffers under the guise of unionism." As support for his contention, Plaintiff cites to flyers attached to the affidavit of Dwayne Jeffers as Exhibits 10-18. Plaintiff's Att. C and Exhs. 10-18. These documents are the best evidence of their content, and a review of the documents reveals that they do not encourage people to harm or take physical action against Plaintiff or Mr. Jeffers. Plaintiff may not controvert through his own characterization the language of the documents. See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002.

27. Although Plaintiff purports to deny this material fact, he does not dispute that:

> "On October 31, 2005, Plaintiff sent an email to various PBGC management officials complaining that he had received what he alleged to be another harassing email. Att. B, ¶ 14 and corresponding Ex. 13. On November 2, 2005, HRD Director Pilipovich issued a memorandum to Plaintiff informing him that PBGC had retained a law firm, Littler Mendelson, P.C., to complete PBGC's investigation into Plaintiff's June 2005 complaint. Id. Ms. Pilipovich's memorandum informed Plaintiff that the investigation concerned 'complaints made to HRD, not complaints which are or may be in the informal or formal EEO process.' Id."

In fact, Plaintiff's does not deny the substance of this material fact, but rather, he inserts his own characterizations, opinions, and legal conclusions attacking the quality and conclusions of the Littler

Mendelson, P.C. investigation referenced in Ms. Pilipovich's memorandum to Plaintiff.  Plaintiff admits that "Defendant retained a law firm, Littler Mendelson, P.C., to complete PBGC's investigation into Plaintiff's June 2005 complaint."

Plaintiff then alleges that "there was no real investigation," which is a conclusory allegation unsupported by Plaintiff's own documentation.  Plaintiff cites to his affidavit and Exhibit 8, which consists of a memorandum dated November 2, 2005 from Michele Pilipovich to Plaintiff and sanitized portions of a January 9, 2006 Report and Recommendations written by Littler Mendelson. Plaintiff's Att. B and corresponding Exhibit 8.  The Report and Recommendations indicate Littler Mendelson investigated numerous complaints by Plaintiff alleging harassment.  Id.; see also Defendant's Att. B, ¶15 and Exh. 15.  That said, Ms. Pilipovich's memoranda and the Report and Recommendations are the best evidence of their content, and Plaintiff may not controvert the language of the documents through his own characterizations.  See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002.

Plaintiff then contends that Littler Mendelson "did not take any affidavits... ."  Defendant does not dispute that Littler Mendelson did not take affidavits of the people they interviewed, but the issue is not material.  Finally, Plaintiff states that "they still determined that these were union related problems and these actions were protected."  As indicated in Defendant's Att. B, ¶15 and Exh. 15, Michele Pilipovich informed Plaintiff of the findings of the investigation, including PBGC's determination that the flyers, about which Plaintiff complained, were protected union activity.  Defendant's Att. B, ¶15 and Exh. 15 at 3.

28.  Although Plaintiff purports to deny this material fact, he does not dispute that "on November 4, 2005, Plaintiff sent an email to his EEO counselor, Rixene Hicks, informing her that

he was withdrawing his EEO complaint of September 28, 2005." Plaintiff's Att. B and Ex. 9.

Moreover, Plaintiff submits no factual basis to contradict the statement that Plaintiff discussed his

September 28, 2005 EEO Complaint "in his October 21, 2005 email message to Ms. Hicks."

Defendant's Att. C, ¶ 8 and Exh. 6.  Thus, Plaintiff concedes the facts reflected in Defendant's SOF

No. 28.

Plaintiff adds that he "signed the settlement agreement on November 5, 2005." Defendant

does not concede this allegation inasmuch as Plaintiff did not date the document.  However, as

discussed above in paragraph No. 4, Plaintiff's signature date is of no consequence.

30.  Although Plaintiff purports to deny this material fact, but then admits the same facts.

See Plaintiff's Response to Defendant's SOF No. 30; Plaintiff's Att. B, ¶ 25.  Thus, Plaintiff does

not dispute that:

> "The same December 22, 2005 offer to resolve Dwayne Jeffers' September 28, 2005
> informal EEO complaint was not extended to Plaintiff.  Att. C, ¶ 10 and
> corresponding Exh. 6; Complaint, ¶ 18.  Indeed, Plaintiff did not have an EEO
> complaint pending on December 22, 2005.  Att. A; Att. C, ¶ 10; Att. E (Steven Weiss
> Affidavit), ¶ 4."

In fact, Plaintiff's "denial" is an argument about whether he had a complaint before HRD that should

have been treated the same as an EEO complaint by Dwayne Jeffers for resolution purposes.

Plaintiff's proffered legal argument is not a proper method for disputing material facts or a Motion

for Summary Judgment.  See Fed. R. Civ. P. 56(e).

In any event, the only "new" fact Plaintiff raises is his assertion that he "had HRD (sic)

complaint based on the same issues as Jeffers's EEO complaint."  Plaintiff's own documentation,

his memorandum to HRD dated January 13, 2004, establishes that his complaint was raised well

before Plaintiff entered into the Stipulation with Defendant.  Compare Plaintiff's Att. B, ¶ 25 and

-13-

corresponding Exh. 10 (January 13, 2004 memorandum) to Defendant's Reply Att. B.  It is, thus, undisputed that the Stipulation resolved the claim.  See Stipulation, ¶ 1.

34.   Although Plaintiff purports to deny this material fact, he does not dispute that:

"Various of the flyers Plaintiff submitted in support of his EEO Complaint 06-04 do not mention Plaintiff.  Att. E, ¶ 8."

In fact, Plaintiff's "denial" is his representation that the flyers *indirectly* refer to him as a "rat," "fink," and "overthrower."  As support, Plaintiff cites his affidavit and  Exhibit 5, which includes flyers, some of which refer to Plaintiff by name.  Plaintiff's Att. B and  Exh. 5.  All of the flyers are the best evidence of their content, and a review of them reveals that, in fact, none of the flyers refers to Plaintiff, directly or indirectly, as a "rat", "fink," or "overthrower."  Plaintiff may not controvert the language of the documents through his own testimony or characterization.  See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002.

38.   Although Plaintiff purports to deny this material fact, he does not dispute that:

"In support of his EEO Complaint 06-04,  Plaintiff submitted eleven email messages from Rhonda Baird that were sent to Plaintiff after November 8, 2005.  Att. E, ¶ 12 and corresponding Exh. 6.  Most of the emails were sent to multiple recipients, and most of them referenced union related matters.  Id."

In fact, Plaintiff's "denial" consists of nothing more than his conclusory allegation that the emails included "humiliating language" "designed to cause harm for Plaintiff."  As support, Plaintiff cites to his affidavit and  Exhs. 7 and 11.  Plaintiff's Att. B and  Exhs. 7 and 11.  However, these exhibits do not include any emails, much less "humiliating" or "harmful" emails from Rhonda Baird. Moreover, the emails that Plaintiff submitted in his EEO complaint are the best evidence of their content, and Plaintiff may not controvert the language of the documents through his own testimony. See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002.

-14-

Defendant does not dispute that in January 2006, Defendant briefly blocked Ms. Baird's emails to Plaintiff. Defendant's Att. E, ¶12 and Exh. 6, p.00527. However, when the union complained about the block, it was quickly removed. Id.

39. Although Plaintiff purports to deny this material fact, he does not dispute that:

"In support of his EEO Complaint 06-04, Plaintiff submitted no emails post-dating November 8, 2005 from Valda Johnson or Stuart Bernsen to Plaintiff. Att. E, ¶ 13."

In fact, Plaintiff's "denial" consists of nothing more than his excuse for why he did not submit any emails from Valda Johnson or Stuart Bernsen. Regardless, Plaintiff did not submit them, as stated in the material fact, nor did Plaintiff submit them in support of his opposition, and therefore, Plaintiff concedes the same.

40. Although Plaintiff purports to deny this material fact, he does not offer any citation to the record to dispute the facts set forth by Defendant. See Plaintiff's Response to Defendant's SOF No. 40. In fact, Plaintiff's "denial" consists of nothing more than his objection to Defendant's use of the words "correctly explained." Thus, in substance, Plaintiff does not properly dispute this material fact. See United States v. BCCI Holdings, 977 F. Supp. 1, 6 (D.D.C. 1997), aff'd mem., 159 F.3d 637 (D.C. Cir. 1998); Local Civ. R. 7(h) and 56.1.

B.    Plaintiff's Additional "Material Fact" Numbers 43 through 49 Merely Attempt to Relitigate Settled Claims and Raise New Claims that Have Not Been Exhausted

Plaintiff's Response adds seven "material facts" in an attempt to avoid summary judgment, and tries to manufacture new claims out of settled ones. More importantly, however, a close look at these facts reveals that Plaintiff misrepresents (by omission) **when** the events upon which Plaintiff bases his allegations occurred. In fact, all but one of the seven additional "material facts" occurred

several years **prior** to the Stipulation, and the sole remaining "material fact" allegation has not been exhausted. Indeed, Plaintiff's own documentation reveals Plaintiff's misrepresentations. Moreover, in some cases, Plaintiff provides no support whatsoever for his contentions.

**Plaintiff's "Material Facts" 43 and 44.**

Plaintiff's "material facts" 43 and 44 allege that "Defendant retaliated against Plaintiff by pursuing and deciding a false sexual harassment charge/investigation against him," "improperly misused the EEO process," and that a decision on the alleged sexual harassment investigation was issued after the settlement. In support of his legal conclusions and allegations, Plaintiff references his affidavit, which claims the "sexual harassment investigation" commenced on "November 2, 2005." Plaintiff's Att. B, ¶ 30. This representation is factually incorrect, however, as evidenced by Plaintiff's own Exhibit 12 to his affidavit, which is a memorandum dated April 19, <u>2004</u> from Michele Pilipovich, HRD Director, to Plaintiff discussing the investigation of Plaintiff for sexual harassment. Plaintiff's Att. B and Exh. 12. (emphasis added). Plaintiff's unsupported, indeed contradicted, allegations are not a proper method for disputing material facts or a Motion for Summary Judgment. <u>See</u> Fed. R. Civ. P. 56(e); <u>Scott v. Harris</u>, <u>supra</u>, 2007 WL 1237851 at *4-*5.

In fact, PBGC retained an investigator, Anthony Vergnetti of Shaw, Bransford, Veilleux and Roth law firm, to conduct an investigation of sexual harassment allegations against Plaintiff. Plaintiff's Att. B and Exh. 12. That investigation, which was conducted in early 2004, was the basis for one of Plaintiff's discrimination claims in his Civil Action No. 04-1996 CKK, filed in this Court on November 15, 2004. Complaint in Civil Action No. 04-1996 CKK, ¶¶ 13-15. Defendant's Reply Att. C; <u>See also</u>, Defendant's Reply Att. A (Pilipovich Supp. Aff.), ¶ 7. That Complaint was settled by the Stipulation. Defendant's Reply Att. B at 1-2.

Other than the 2004 investigation that became part of Plaintiff's claims in Civil Action No. 04-1996 CKK, Defendant has not conducted any other sexual harassment investigations of Plaintiff. That said, PBGC hired a different law firm, Littler Mendelson, P.C., to conduct an investigation concerning Plaintiff's complaint to HRD alleging workplace harassment.  Defendant's SOF No. 40; Defendant's Att. B, ¶ 15 and  Exh. 15.  Defendant notified Plaintiff of the investigation of his complaint in a November 2, 2005 memorandum from Michele Pilipovich to Plaintiff.  Plaintiff's Att. B and  Exh. 8.

**Plaintiff's "Material Fact" 45.**

Plaintiff's "material fact" number 45 discusses the same sexual harassment investigation referenced in Plaintiff's "material facts" 43 and 44.  Plaintiff represents that the "sexual harassment investigation was arbitration (sic) through the grievance process and Arbitrator Moore determined that Defendant purposely sought to find any and all dirt on Plaintiff during a faulty investigation initiated by Defendant's OGC outside investigators."  In support of this "material fact", Plaintiff references ¶ 30 of his affidavit, and  Exh. 13.  Plaintiff's Att. B and  Exh. 13.  Once again, however, Plaintiff's own exhibit contradicts his testimony that the sexual harassment investigation was arbitrated through the grievance process.  Specifically, the exhibit is an April 26, 2005 arbitration decision by Arbitrator Robert T. Moore in which Rhonda Baird, not Plaintiff, was the grievant. Plaintiff's Att. B and  Exh. 13.  Plaintiff's unsupported, indeed contradicted, conclusory allegations are not a proper method for disputing material facts or a Motion for Summary Judgment.  See Fed. R. Civ. P. 56(e). Plaintiff's attempts to characterize Arbitrator Moore's decision are improper because the arbitrator's decision is the best evidence of its content, and Plaintiff may not controvert the language of the decision through his own testimony.  See Fed. R. Civ. P. 56(e); Fed. R. Evid.

1002.

**Plaintiff's "Material Fact" 46.**

In "material fact" number 46, Plaintiff makes legal conclusions and representations regarding the content of a June 1, 2001 arbitration decision by Gloria Johnson which followed a hearing in which the National Association of Government Employees ("NAGE") challenged the structure of PBGC's EEO program. Plaintiff's Att. B and Exh. 14. Specifically, Plaintiff represents that Arbitrator Johnson's decision "determined that Defendant's OGC and HRD improperly imputed themselves into Defendant's the (sic) EEO process and chilled the will of many Defendant's employees." The arbitrator's decision is the best evidence of its content, and Plaintiff may not controvert the language of the decision through his own testimony. See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002. In any event, whatever type of claim Plaintiff may seek to pursue based upon this 2001 decision was settled in the Stipulation. See Stipulation, ¶ 1.

**Plaintiff's "Material Fact" 47.**

Plaintiff's "material fact" number 47 is difficult to decipher. First, Plaintiff identifies Vincent Snowbarger as PBGC's HRD Director, which is contradicted by Plaintiff's affidavit. See Plaintiff's Att. B, ¶ 29, wherein Plaintiff correctly identifies Michele Pilipovich as PBGC's HRD Director. See also Defendant's Attachment B to Motion, Affidavit of Michele Pilipovich, ¶ 2. Assuming Plaintiff meant to reference Michele Pilipovich in this "material fact", although it is difficult to decipher rest of the paragraph, what can be gleaned from it is that Plaintiff asserts legal conclusions that Michele Pilipovich "misuse[d]" her position and authority, "retaliat[ed]" and "false[ly]" interpreted the law. Plaintiff's unsupported allegations are not a proper method for disputing material facts or a Motion for Summary Judgment. See Fed. R. Civ. P. 56(e).

Plaintiff then references dismissal of "Plaintiff's complaints against PBGC officials for the continuation to investigate [sic] a false sexual harassment investigation against Plaintiff." Plaintiff's Response to Defendant's SOF No. 47. Although it is unclear what Plaintiff is alleging, it appears that Plaintiff is referencing the same 2004 sexual harassment investigation described in Plaintiff's "material fact" numbers 43 and 44, for which Plaintiff's cites, inter alia, Plaintiff's Att. B, ¶ 30 and Exh. 12 (an April 19, 2004 memorandum). Thus, Plaintiff's allegation is not supported by the April 19, 2004 memorandum from Michele Pilipovich, HRD Director, to Plaintiff regarding Plaintiff's complaint of the sexual harassment investigation that Plaintiff settled in Civil Action No. 04-1996 CKK. See Complaint in Civil Action No. 04-1996 CKK, ¶¶ 13-15; Stipulation, ¶ 1. Defendant's Reply Att. C; Defendant's Reply Att. A (Pilipovich Supp. Aff.), ¶ 7; Plaintiff's Att. B, ¶ 29 and Exhibit B-12. Assuming that is the focus of this "material fact," contrary to the requirements of Fed. R. Civ. P. 56(e), Plaintiff provides only his legal conclusion that the sexual harassment investigation was "false", which is not a proper method for disputing material facts or a Motion for Summary Judgment. See Fed. R. Civ. P. 56(e). Moreover, as discussed under Defendant's SOF Nos. 43 and 44, any claim Plaintiff may seek to pursue based upon the 2004 sexual harassment investigation was settled in the Stipulation. See Stipulation, ¶1.

**Plaintiff's "Material Fact" 48.**

In Plaintiff's "material fact" number 48, Plaintiff alleges that "Robin Horning and Margaret Drake were present during the interview of Michele Pilipovich, Defendant's HRD Director even though they were not permitted to do so according the EEOC MD-110." What Plaintiff fails to disclose is that (1) the interview concerned a new informal EEO complaint by Plaintiff for which HR Director Pilipovich requested legal representation, and (2) that the interview took place on February

-19-

26, 2007, nearly three months after Plaintiff filed his Amended Complaint in this action on December 1, 2006. Defendant's Reply Att. A (Pilipovich Supp. Aff.), ¶ 9.

Also troubling is Plaintiff's representation, without citation, that the Equal Employment Opportunity Commission's Management Directive 110 (EEOC MD 110) does not permit agency counsel to be present for interviews of agency management officials that are conducted during the informal complaint stage. This representation is a legal conclusion and is patently false inasmuch as there is no such prohibition in MD 110. The full text of EEOC's MD 110 is available at http://www.eeoc.gov/federal/md110.html and is the best evidence of its content.[3] Plaintiff may not controvert the language of MD 110 through his own characterization of its contents. See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002; Scott v. Harris, supra, 2007 WL 1237851 at *4-*5.

Plaintiff's misrepresentations concerning the findings of the Arbitrator Johnson in her June 1, 2001 decision are equally troubling. Indeed, Plaintiff's representation that the agency somehow violated the Arbitrator's decision by having agency counsel at an interview of a management official

---

[3] The Court may take judicial notice of the document. See Fed. R. Evid. 201; Swierkiewicz v. Sorema, 534 U.S. 506 (2002); Grimes v. Navigant Consulting, Inc., 185 F. Supp. 2d 906, 913 (N.D. Ill.), vacated and remanded on other grounds, 536 U.S. 920 (2002) (taking judicial notice of historical stock prices from Yahoo!Finance) (citing Austin v. American Ass'n of Neurological Surgeons, 253 F.3d 967, 971 (7th Cir. 2001)); Cali v. East Coast Aviation Servs., Ltd., 178 F. Supp. 2d 276, 287 (E.D.N.Y. 2001) (taking judicial notice of Web-based corporate documents and documents from Pennsylvania state agencies and FAA); McLaughlin v. Volkswagen of Am., Inc., No. 00-3295, 2000 U.S. Dist. LEXIS 17505 at *10 n.3 (E.D. Pa. Dec. 6, 2000) (taking judicial notice of NHTSA website description of automobile recall); Cairns v. Franklin Mint Co., 107 F. Supp. 2d 1212, 1216 (C.D. Cal. 2000) (taking judicial notice of content on Warhol Museum's Web pages), aff'd, 292 F.3d 1139 (9th Cir. 2002); In re AgriBiotech Secs. Lit., No. CV-S-990144, 2000 U.S. Dist. LEXIS 5643 (D. Nev. Mar. 6, 2000) (taking judicial notice of public SEC filings from SEC Website); Modesto Irrigation Dist. v. Pacific Gas & Elec. Co., 61 F. Supp. 2d 1058, 1066 (N.D. Cal. 1999) (taking judicial notice of FERC documents available on Internet); Myers Investigative & Sec. Servs., 47 Fed. Cl. 288, 297 (Fed. Cl. 2000) (taking judicial notice of documents from Social Security Administration Website).

who requested legal representation, constitutes a legal conclusion and is also incorrect.  Page 33 of

Arbitrator Johnson's decision recognizes the right of agency employees to invite legal representation

during their interviews.  Plaintiff's Att. B and  Exh. 14 at 33.  Arbitrator Johnson's decision is the

best evidence of its content, which Plaintiff may not controvert through his own testimony.  <u>See</u> Fed.

R. Civ. P. 56(e); Fed. R. Evid. 1002.  Moreover, as discussed under Defendant's SOF No. 46, any

claim Plaintiff may seek to pursue based upon the 2001 Johnson arbitration decision was settled in

the Stipulation.  <u>See</u> Stipulation, ¶1.

**Plaintiff's "Material Fact" 49.**

Finally, with regard to Plaintiff's "material fact" number 49, Plaintiff again makes

representations about the content of the referenced document.  This document is a memorandum

from PBGC's General Counsel to the Chief Operating Officer concerning PBGC's restructuring of

its EEO program to comply with the decision by Arbitrator Johnson, which is referenced in

Plaintiff's "material fact" number 46.  Plaintiff's Att. B and Exh. 15.  As discussed above, Arbitrator

Johnson's decision was issued on June 1, 2001, as evidenced by Plaintiff's own Exhibit 14.  These

two documents are the best evidence of their contents, which Plaintiff may not controvert through

his own testimony.  See Fed. R. Civ. P. 56(e); Fed. R. Evid. 1002. And again, the allegations cannot

be material to any claim postdating the Stipulation, because these claims were settled.  Stipulation,

¶ 1.

<div style="margin-left:40%">

Respectfully submitted,

_____

JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____

W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, DC  20530
(202) 514-7230

</div>

Agency Counsel:

JUDITH STARR
General Counsel
PHILIP R. HERTZ
Deputy General Counsel
JAY A. RESNICK
Assistant General Counsel
ROBIN S. HORNING
Attorney
MARGARET E. DRAKE
Attorney
PENSION BENEFIT GUARANTY CORPORATION
1200 K. Street, N.W.
Washington, D.C.  20005-4026
(202) 326-4000

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Reply To Plaintiff's Opposition To Defendant's Motion For Summary Judgment And Opposition To Plaintiff's Request For Discovery and Defendant's Reply To Plaintiff's Responses To Statement Of Undisputed Material Facts Has Been made through the Court's electronic transmission facilities on the 11th day of May, 2007.

_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, DC  20530
(202) 514-7230