# ATTACHMENT
# A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT T. PERRY,            )
                                   )
         Plaintiff          )
                                   )
         v.              )     Case No. 06-CV-01371-CKK
                                   )
VINCENT K.  SNOWBARGER,   )
Interim Director             )
Pension Benefit Guaranty Corporation,   )
                                   )
         Defendant.       )
                                   )

## SUPPLEMENTAL AFFIDAVIT OF MICHELE PILIPOVICH

I, Michele Pilipovich, declare as follows:

1.    I am over eighteen years of age, have personal knowledge of the facts stated in this Affidavit, and am competent to testify to the matters stated herein.

2.    I am currently employed as the Director of the Human Resources Department ("HRD") of the Pension Benefit Guaranty Corporation ("PBGC" or "Agency"). I have held this position with the Agency since January 2004, and have been employed by the PBGC since June 2003. As Director of HRD, my responsibilities include approving personnel actions and supervising, in conjunction with the Office of General Counsel, the investigation of employee misconduct.

3.    I am aware that in 1998, Delarse Montgomery received a series of promotions pursuant to a settlement of an Equal Employment Opportunity ("EEO") complaint and that in 2002, Dwayne Jeffers was promoted pursuant to a settlement of an EEO complaint. *See* Exhibit 1. Between the time that the personnel actions effectuating the promotions of Delarse Montgomery and Dwayne Jeffers were processed and the time that Robert Perry's personnel actions were processed in November 2005, HRD experienced a significant turnover in personnel. At the time Mr. Jeffers' and Mr. Montgomery's promotions were processed, I was not employed by PBGC and Rick Lattimer was not supervising the processing of personnel actions.

4.    When HRD processed the personnel actions required under the Stipulation of Settlement and Dismissal dated November 8, 2005 ("Settlement"), notes referencing the fact that the

actions were taken pursuant to the Settlement were entered on Plaintiff's SF-52, Form for Requesting Personnel Action. *See* Exhibit2. As explained fully in paragraphs 5 - 8 in my Affidavit dated February 16, 2007, we believed that the remarks were necessary to provide a legal basis and justify the unusual personnel actions to OPM when they audit PBGC and to other federal entities. If PBGC does not comply with OPM's rules and regulations in the processing of personnel actions, OPM may withdraw PBGC's personnel authority. After Robert Perry complained and we were satisfied that the information contained in the reissued SF-50's would serve as justification for the personnel actions, we reissued and backdated the SF-50s. *See* Exhibit 3.

5.    Pursuant to OPM rules and regulations, as reflected in its "Guide to Processing Personnel Actions," unless a type of action is specifically excluded, or the agency receives an exemption from OPM in advance, all long-term personnel actions are to be documented using the SF-50 form. *See* Exhibit 4. Furthermore, each personnel action requires its own SF-50 form, which is why PBGC issued four SF-50s to effectuate the four personnel actions required by the Settlement. Consequently, without the issuance of an SF-50, a personnel action such as those required in paragraphs 2(a) - (c), and (f) of the Settlement, could not have occurred.

6.    On January 9, 2006, HRD issued Robert Perry a SF-50 reflecting a Cost of Living Adjustment ("COLA"). Since the reissued SF-50s were backdated, the COLA SF-50 was Robert Perry's current SF-50. While not all federal job announcements require a SF-50 with a job application, those that do are verifying the applicant's employment status and pay grade. A prospective employee can submit any SF-50 reflecting this information. Therefore, Robert Perry could have used any SF-50, including his COLA SF-50, to apply for a federal position that required a SF-50. Finally, HRD has no record of issuing Robert Perry a SF-50 on November 23, 2006.

7.    In early 2004, an investigation was conducted into an allegation of sexual harassment made by Elizabeth Baker against Robert Perry. An outside law firm, Shaw Bransford, Veilleux & Roth, PC, was hired to conduct the investigation. *See* Exhibit 5. In a memorandum received by HRD on January 13, 2004, Robert Perry asserted that several other officers of the National Association of Government Employees, Local R3-77 had engaged in "inappropriate conduct of harassment, slander, liable, extortion, and racketeering ("RICO")" when they accused him of sexual harassment of Elizabeth Baker. *See* Exhibit 6. On April 19, 2004, I sent Robert Perry a memorandum informing him that during the course of the sexual harassment investigation conducted by Shaw, Bransford, Veilleux & Roth, his accusations were also investigated, but PBGC was unable to find a basis for his allegations. *See* Exhibit 7. Robert Perry was not disciplined as a result of the 2004 sexual harassment investigation. HRD has not initiated any other sexual harassment investigations against Robert Perry since the one in early 2004.

8.    Two flyers submitted with Robert Perry's Memorandum in Opposition to Motion to Dismiss or, in the Alternative, Motion For Summary Judgment, naming Robert Perry ,can be linked to a specific date based on an email I received from Dwayne Jeffers on January 20, 2006 at 1:16PM.  In that email, Dwayne Jeffers states that the flyer entitled  "New Years Resolutions That You Will Never Hear From DICK PETTA" was disseminated on January 11, 2006 and that the flyer entitled "SAM BATSELL For a Union With management" was distributed on January 12, 2006.  Based on events referenced in the flyer entitled "Your New CBA," I can determine that it was probably disseminated shortly after February 19, 2006, which is the date the new Collective Bargaining Agreement was signed with NAGE. *See* Exhibit 8.

9.    I requested the presence of PBGC attorneys Robin Horning and Margaret Drake on February 26, 2007, for an interview with an EEO counselor regarding a new informal EEO complaint raised by Robert Perry.  Robin Horning and Margaret Drake have not attended any other interviews with me involving Robert Perry in the EEO informal complaint stage.

I hereby declare under penalty of perjury under the laws of the United States of America that the above statement is true and complete to the best of my knowledge and belief.

_M. Pilipovich_
Michele Pilipovich

_5/10/2007_
Date

Subscribed and sworn to before me this _10_ day of _May_, 2007.

_Patricia Reiersen_
Notary Public

My commission expires ____Patricia Reiersen_____.
Notary Public, District of Columbia
My Commission Expires 5/31/2011

PILIPOVICH
SUPP. AFF.
EXHIBIT
1

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| MONTGOMERY JR, DELARSE | | | 08-02-98 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code 702 | 5-B. Nature of Action PROMOTION | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code HAM | 5-D. Legal Authority REG 250.101 | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number FINANCIAL SPECIALIST | 15. TO: Position Title and Number FINANCIAL SPECIALIST |
|---|---|

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1032033 -843501 | | | | | 1032033 -894001 | | | | |
| 8. Pay Plan GS | 9. Occ. Code 0501 | 10. Grade/Level 11 | 11. Step/Rate 05 | 12. Total Salary $44505 | 13. Pay Basis PA | 16. Plan GS | 17. Occ. Code 0501 | 18. Grade/Level 12 | 19. Step/Rate 06 | 20. Total Salary/Award $54913 | 21. Pay Basis PA |
| 12A. Basic Pay $41489 | 12B. Locality Adj. $3016 | 12C. Adj. Basic Pay $44505 | 12D. Other Pay $0 | | | 20A. Basic Pay $51191 | 20B. Locality Adj. $3722 | 20C. Adj. Basic Pay $54913 | 20D. Other Pay $0 | | |

| 14. Name and Location of Position's Organization OFFICE OF THE EXEC DIRECTOR DEP EXEC DIR & CH FIN OFFICER FINANCIAL OPERATIONS DEPT CONTROLLER OPERATIONS DIVISION INVESTMENT ACCOUNTING BRANCH DC (WASHINGTON, DC ) | 22. Name and Location of Position's Organization OFFICE OF THE EXEC DIRECTOR DEP EXEC DIR & CH FIN OFFICER FINANCIAL OPERATIONS DEPT CONTROLLER OPERATIONS DIVISION INVESTMENT ACCOUNTING BRANCH DC (WASHINGTON, DC ) |
|---|---|

### EMPLOYEE DATA

| 23. Veterans Preference 4 | 24. Tenure 1 | 25. Agency Use M SEX | 26. Veterans Pref. for RIF X YES NO |
|---|---|---|---|

1 - None   3 - 10-Point/Disability   5 - 10-Point/Other
2 - 5-Point   4 - 10-Point/Compensable   6 - 10-Point/Compensable/30%

24. Tenure: 0 - None   2 - Conditional   1 - Permanent   3 - Indefinite

| 27. FEGLI 9    BASIC + ADDL OPTION WITH 3 X PAY | 28. Annuitant Indicator 3    R E T M | 29. Pay Rate Determinant 0 |
|---|---|---|

| 30. Retirement Plan K    FERS AND FICA | 31. Service Comp. Date 02-12-86 | 32. Work Schedule F    FULL - TIME | 33. Part Time Hours Per Biweekly Pay Period |
|---|---|---|---|

### POSITION DATA

| 34. Position Occupied 1 | 35. FLSA Category E | 36. Appropriation Code | 37. Bargaining Unit Status 0030 |
|---|---|---|---|

1 - Competitive Service   3 - SES General
2 - Excepted Service   4 - SES Career Reserved

35. FLSA Category: E - Exempt   N - Nonexempt

| 38. Duty Station Code 11-0010-001 | 39. Duty Station (City -County - State or Overseas Location) WASHINGTON, DISTRICT OF COLUMBIA, DISTRI |
|---|---|

| 40. Agency Data FUNC. CLS. 00 | 41. VET-STAT. V | 42. EDUC. LVL. 10 | 43. SUPV. IND. 8 | 44. POSITION-SENSITIVITY NON SENSITIVE |
|---|---|---|---|---|

| 45. Remarks | CK-DIG: 5 |
|---|---|

MERIT STAFFING EXCEPTION/BARGAINING UNIT POSITION - NTEU CHAPTER 211.
POSITION IS AT THE FULL PERFORMANCE LEVEL
RETROACTIVE ADJUSTMENT TO BE MADE.
CODE "K" IN BLOCK 30 INDICATES COVERAGE BY FERS AND FICA

| 46. Employing Department or Agency PENSION BENFT GTY CORP | 50. Signature/Authorization and Title of Approval Official | A254158WO11107Q |
|---|---|---|
| 47. Agency Code BG00 | 48. Personnel Office ID 4158 | 49. Approval Date 09-14-98 | SHARON BARBEE FLETCHER DIRECTOR OF PERSONNEL | |

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

5-Part   50-316

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| JEFFERS, DWAYNE C | | | 05/05/02 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 6-A. Code | 6-B. Nature Of Action | 6-A. Code | 6-B. Nature of Action |
| 702 | PROMOTION | | |
| 5-C. Code | 5-D. Legal Authority | 6-C Code | 6-D. Legal Authority |
| HAM | REG 250.101 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| ACTUARY | ACTUARY |
| 1022070    0848528 | 1022070    0008486 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 1510 | 12 | 05 | $ 63119 | PA | GS | 1510 | 13 | 03 | $ 70644 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $ 61614 | $ 1505 | $ 63119 | $ 0 | $ 65349 | $ 5295 | $ 70644 | $ 0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| OFFICE OF THE EXEC DIRECTOR<br>DEP EXEC DIR & CH OPERATING OF<br>INSURANCE OPERATIONS DEPT<br>TRUSTEESHIP PROCESSING DIV-6<br><br>WASHINGTON,DC | OFFICE OF THE EXEC DIRECTOR<br>DEP EXEC DIR & CH OPERATING OF<br>INSURANCE OPERATIONS DEPT<br>TRUSTEESHIP PROCESSING DIV-6<br><br>WASHINGTON,DC |

### EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1    1 - None   3 - 10-Point/Disability   5 - 10-Point Other<br>2 - 5-Point   4 - 10-Point Compensable   6 - 10-Point/Compensable/30% | 1    0 - None    2 - Conditional<br>1 - Permanent   3 - Indefinite | M   SEX | YES   X NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| C0    BASIC ONLY | 9    NOT APPLICABLE | 6 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K    FERS & FICA | 08/20/95 | F    FULL-TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1    1 - Competitive Service   3 - SES General<br>2 - Excepted Service   4 - SES Career Reserved | E    E - Exempt<br>N - Nonexempt | | 0030 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON, DISTRICT OF COLUMBIA |

| 40. Agency Data NC | 41. VET-STAT | 42. EDUC LVL | 43. SUPV LVL | 44. POSITION SENSITIVITY |
|---|---|---|---|---|
| CLS    31 | X | 17 | 8 | NONSENSITIVE/LOW RI |

45. Remarks

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| BG - PENSION BNFT GTY CORP | SHARON ... DIRECTOR OF PERSONNEL<br>020565327 |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| BG00 | 4158 | 05/09/02 | |

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

PILIPOVICH
SUPP. AFF.
EXHIBIT
2

Standard Form 52
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 3

# REQUEST FOR PERSONNEL ACTION

## PART A - Requesting Office (Also complete Part B, Items 1, 7-22, 32, 33, 36 and 39.)

| 1. Actions Requested | 2. Request Number |
|---|---|
| PROMOTION | 051676991 |
| 3. For Additional Information Call (Name and Telephone Number) | 4. Proposed Effective Date |
| JACQUELINE A. ISAAC          (000) 000-6299 | 11/14/05 |
| 5. Action Requested By (Typed Name, Title, Signature, and Request Date) | 6. Action Authorized By (Typed Name, Title, Signature, and Concurrence Date) |
| | JACQUELINE A. ISAAC 11/14/05 |

## PART B - For Preparation of SF 50 (Use only codes in FPM Supplement 292-1. Show all dates in month-date-year order.)

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ROBERT T | | | 11/13/05 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature Of Action | 6-A. Code | 6-B. Nature Of Action |
| 702 | PROMOTION | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| HAM | REG 250.101 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | | | | | 15. TO: Position Title and Number | | | | |
|---|---|---|---|---|---|---|---|---|---|
| AUDITOR | | | | | AUDITOR | | | | |
| 3420310      0009523 | | | | | 3420310      0009101 | | | | |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 0511 | 12 | 06 | $ 73364 | PA | GS | 0511 | 13 | 10 | $ 97213 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $ 63256 | $ 10108 | $ 73364 | $      0 | $ 83819 | $ 13394 | $ 97213 | $      0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| OFFICE OF THE EXEC DIRECTOR<br>CHIEF OPERATING OFFICER<br>INSURANCE PROGRAMS DEPT<br>STANDARD TERMINATION & COMPLIANCE DIV<br>COMPLIANCE & AUDITS BR | OFFICE OF THE EXEC DIRECTOR<br>CHIEF OPERATING OFFICER<br>INSURANCE PROGRAMS DEPT<br>STANDARD TERMINATION & COMPLIANCE DIV<br>COMPLIANCE & AUDITS BR<br>WASHINGTON, DC |

## EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF | |
|---|---|---|---|---|---|---|
| 2 | 1 - None       3 - 10-Point/Disability    5 - 10-Point Other<br>2 - 5-Point    4 - 10-Point Compensable  6 - 10-Point/Compensable/30% | 1 | 0 - None       2 - Conditional<br>1 - Permanent   3 - Indefinite | | X | YES | NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| D0    BASIC + STANDARD OPTION | 9    NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K    FERS & FICA | 10/06/84 | F    FULL-TIME | |

## POSITION DATA

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|
| 1 | 1 - Competitive Service   3 - SES General<br>2 - Excepted Service      4 - SES Career Reserved | E - Exempt<br>N - Nonexempt | | 0030 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON, DISTRICT OF COLUMBIA |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|

| 45. Educational Level | 46. Year Degree Attained | 47. Academic Discipline | 48. Functional Class | 49. Citizenship | 50. Veterans Status | 51. Supervisory Status |
|---|---|---|---|---|---|---|
| 13 | 1985 | 220101 | 00 | 1 - USA  8 - Other  P | | 8 |

## PART C - Reviews and Approvals (Not to be used by requesting office.)

| 1. Office/Function | Initials/Signature | Date | | Office/Function | Initials/Signature | Date |
|---|---|---|---|---|---|---|
| A. SPECIALIST | JACQUELINE A. ISAA | 11/14/05 | D. | | | |
| B. SPECIALIST | JACQUELINE A. ISAA | 11/14/05 | E. | | | |
| C. | | | F. | | | |

Approval: I certify that the information entered on this form is accurate and that the proposed action is in compliance with statutory and regulatory requirements.

Signature: JACQUELINE A. ISAAC
HUMAN RESOURCES SPECIALIST

Approval Date: 11/14/05

:58:35 Wed May 09 2007

```
05/09/07           ** FEDERAL PERSONNEL/PAYROLL SYSTEM **        PR012M1
07:58:16                        * NOTES *                        PB311P1
COMMAND: _____    <=======================================================<<<<<<<<
PERRY, ROBERT T                     11/13/05  702          20051676991
*************************************************************************
ISAAC, JACQUELINE A.      HUMAN RESOURCES SPECIALIST         11/14/05
PURSUANT TO A STIPULATION AND SETTLEMENT PRESENTED TO THE U.S. DISTRICT___
COURT FOR THE DISTRICT OF COLUMBIA ON NOVEMBER 8, 2005_____




END
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
NEXT  HELP        ESC   MAIN                                          EXIT
```

PILIPOVICH
SUPP. AFF.
EXHIBIT
3

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ROBERT T. | | | 10-31-04 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 6-A. Code 6-B. Nature of Action | | 6-A. Code 6-B. Nature of Action | |
| 702 | PROMOTION | | |
| 6-C. Code 6-D. Legal Authority | | 6-C. Code 6-D. Legal Authority | |
| ASM | SETTLEMENT AGREEMENT DTD11/08/05 | | |
| 5-E. Code 5-F. Legal Authority | | 6-E. Code 6-F. Legal Authority | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| AUDITOR | AUDITOR |
| 1022133    #8807 | 3420310    #9101 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 0511 | 11 | 00 | $68225 | PA | GS | 0511 | 13 | 03 | $76916 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $59544 | $8711 | $68225 | | $67099 | $9817 | $76916 | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| OFFICE OF THE EXEC DIRECTOR<br>CHIEF OPERATING OFFICER<br>INSURANCE OPERATIONS DEPT<br>STANDARD TERMINATION & COMPL DIV<br>COMPLIANCE & AUDITS DIV | OFFICE OF THE EXEC DIRECTOR<br>CHIEF OPERATING OFFICER<br>INSURANCE PROGRAMS DEPT<br>STANDARD TERMINATION &COMPL DIV<br>COMPLIANCE & AUDITS DIV |

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 2 | 1 | 1 | YES   NO |
| 1 - None    3 - 10-Point/Disability    5 - 10-Point/Other | 0 - None   2 - Conditional | | |
| 2 - 5-Point    4 - 10-Point/Compensable   6 - 10-Point/Compensable/30% | 1 - Permanent   3 - Indefinite | | |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| D0   BASIC + STANDARD OPTION | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| X   FERS & FICA | 10/06/84 | F   FULL-TIME | |

| POSITION DATA | | | |
|---|---|---|---|
| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
| 1 | E | | 0150 |
| 1 - Competitive Service   3 - SES General | E - Exempt | | |
| 2 - Excepted Service   4 - SES Career | N - Nonexempt | | |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON, DICTRICT OF COLUMBIA |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

| 46. Employing Department or Agency | |
|---|---|
| BG - PENSION BNFT GTY CORP | *Jacquline Osborne* |
| | CHIEF, PERSONNEL OPERATIONS<br>HUMAN RESOURCES DEPARTMENT |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| BG00 | 6158 | 11/23/05 | |

TURN OVER FOR IMPORTANT INFORMATION

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY  ROBERT T | | | 11/13/05 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 703 | PROMOTION | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| ASM | SETTLEMENT AGREEMENT DTD11/08/05 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | | 8. TO: Position Title and Number | |
|---|---|---|---|
| AUDITOR | | AUDITOR | |
| 3420310 | #9101 | 3420310 | #9101 |

| 9. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 0511 | 13 | 03 | $79766 | PA | GS | 051 | 13 | 10 | $97213 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $68776 | $10990 | $79766 | | $83819 | $13394 | $97213 | |

| 14. Name and Location of Position's Organization | 15. Name and Location of Position's Organization |
|---|---|
| OFFICE OF THE EXEC DIRECTOR<br>CHIEF OPERATING OFFICER<br>INSURANCE PROGRAMS DEPT<br>STANDARD TERM & COMPLIANCE DIV<br>COMPLIANCE & AUDIT BR | OFFICE OF THE EXEC DIRECTOR<br>CHIEF OPERATING OFFICER<br>INSURANCE PROGRAMS DEPT<br>STANDARD TERM & COMPLIANCE DIV<br>COMPLIANCE & AUDIT BR |

EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 22. 1 - None   3 - 10-Point/Disability   5 - 10-Point/Other<br>2 - 5-Point   4 - 10-Point/Compensable   6 - 10-Point/Compensable/30% | 1<br>0 - None   2 - Conditional<br>1 - Permanent   3 - Indefinite | | YES   NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| DO   BASIC & STANDARD OPTION | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K   FERS & FICA | 10/06/84 | F   FULL-TIME | |

POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1 - Competitive Service   3 - SES General<br>2 - Excepted Service   4 - SES Career | E   E - Exempt<br>N - Nonexempt | | 0030 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON, DISTRICT OF COLUMBIA |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|

45. Remarks

| 46. Employing Department or Agency | |
|---|---|
| BG - PENSION BNFT GTY CORP | |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
| BG00 | 4158 | 11/23/05 |

TURN OVER FOR IMPORTANT INFORMATION
5-Part

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1e (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| ~RRY, ROBERT T | | | 11/13/05 |

**FIRST ACTION**

**SECOND ACTION**

| 5-A. Code | 5-B. Nature Of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 919 | DETAIL NTE 05-13-06 | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| | | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| AUDITOR | AUDITOR |
| 3420310    0009101 | 3520000    0009101 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 0511 | 13 | 10 | $ 97213 | PA | GS | 0511 | 13 | 10 | | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $ 83819 | $ 13394 | $ 97213 | $ 0 | | | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| OFFICE OF THE EXEC DIRECTOR<br>CHIEF OPERATING OFFICER<br>INSURANCE PROGRAMS DEPT<br>STANDARD TERMINATION & COMPLIANCE DIV<br>COMPLIANCE & AUDITS BR<br>WASHINGTON,DC | OFFICE OF THE EXEC DIRECTOR<br>CHIEF FINANCIAL OFFICER<br>CONTRACTS & CONTROL REVIEW DEPT<br><br>WASHINGTON,DC |

**EMPLOYEE DATA**

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 - None    3 - 10-Point/Disability    5 - 10-Point Other<br>2 - 5-Point    4 - 10-Point/Compensable    6 - 10-Point/Compensable/30 % | 1 | 0 - None    2 - Conditional<br>1 - Permanent    3 - Indefinite | | X  YES    NO |

| 27. FEGLI | BASIC + STANDARD OPTION | | 29. Pay Rate Determinant |
|---|---|---|---|
| D0 | | | 0 |

| 28. Annuitant Indicator | 9 NOT APPLICABLE |
|---|---|

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K  FERS & FICA | 10/06/84 | F  FULL-TIME | |

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1  1 - Competitive Service    3 - SES General<br>2 - Excepted Service    4 - SES Career Reserved | E  E - Exempt<br>N - Nonexempt | | 0030 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON, DISTRICT OF COLUMBIA |

| 40. Agency Data | 41. VET STAT | 42. EDUC LVL | 43. SUPV STAT | 44. POSITION SENSITIVITY |
|---|---|---|---|---|
| CLS    00 | P | 13 | 8 | MODERATE RISK |

45. Remarks

06-04-PERRY-00869

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| BG - PENSION BNFT GTY CORP | MICHEAL PIETROWSKI<br>DIRECTOR OF HUMAN RESOURCES |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | 05167-2003 |
|---|---|---|---|
| BG00 | 4158 | 11/14/05 | |

1 - Employee Copy - Keep for Future Reference

PILIPOVICH
SUPP. AFF.
EXHIBIT
4

## Chapter 4.  Requesting and Documenting Personnel Actions

## Contents

|  |  | **Page** |
|---|---|---|
| 1. | Coverage | 4-3 |
| 2. | Standard Form 52, Request for Personnel Action | 4-3 |
| 3. | Standard Form 50, Notification of Personnel Action | 4-3 |
| 4. | Completing the Standard Form 50 | 4-4 |
| 5. | Exceptions to the Standard Form 50 and Standard Form 52 | 4-7 |
| 6. | List Form of Notice | 4-7 |
| 7. | Notifying Employees of Personnel Actions | 4-8 |
| 8. | Data Collected on Race and National Origin and Identification of Handicap | 4-9 |

## Job Aids

Standard Form 52, Request for Personnel Action ........................................ 4-11

Standard Form 50, Notification of Personnel Action ................................... 4-13

Comptroller General (CG) Decisions Concerning Effective Dates ............. 4-15

Instructions for Completing the Standard Form 50 and for Completing Part B (blocks 1-39), and Parts C, E, and F of the Standard Form 52 ........................................................................... 4-17

Instructions for Completing Parts A, B (blocks 45-51), and D of the Standard Form 52 ............................................................................... 4-41

Instructions for Preparing a List Form of Notice ....................................... 4-45

Sample List Form of Notice ........................................................................ 4-49

## Chapter 4.  Requesting and Documenting Personnel Actions

### 1.  Coverage.

This chapter explains how to complete the Standard Form 52, Request for Personnel Action, and the Standard Form 50, Notification of Personnel Action.

### 2.  Standard Form 52, Request for Personnel Action.

The Standard Form 52 is a single sheet version of the form that is used when the request will be hand-written or typed. The Standard Form 52-B is a continuous pin feed version on which data can be computer-printed and is used when the request is prepared directly from the agency's personnel data system. As used in this **Guide,** "Standard Form 52" means both the Standard Form 52 and the Standard Form 52-B. A sample of the Standard Form 52 is reproduced on page 4-11 of this Chapter.

#### a. How the form is used.
(1) Supervisors and managers use the form to request
— position actions, such as the establishment of a new position or the reclassification of an existing position;
— employee actions, such as the appointment of an employee or the promotion of an employee; and
— actions involving both a position and an employee, such as the establishment and filling of a position, or the reclassification of a position and reassignment of an employee to the reclassified position.

(2) Employees use the form to notify the agency of their resignation or retirement, to request Leave Without Pay (LWOP) and to request a name change.

(3) The personnel office uses the form to record staffing, classification, and other personnel determinations, and then uses the information on the form to prepare the Notification of Personnel Action.

#### b. How to complete the Standard Form 52.
Follow the instructions in job aid **Instructions for Completing the Standard form 50 and For Completing Part B (blocks 1-44) and Parts C, E, and F of the Standard Form 52,** when completing the Standard Form 52. Also use job aid, **Instructions for Completing Parts A, B (blocks 45-51), and D of the Standard Form 52,** for completing those parts of the Standard Form 52 which contain data that is not recorded on the Standard Form 50.

### 3.  Standard Form 50, Notification of Personnel Action.

The Standard Form 50 is used to document employment events.  It is available in several versions.  As used in this **Guide,** "Standard Form 50" means any version of the form.  The Standard Form 50 is a 5-part form designed to be completed by typewriter.  The Standard Form 50-B is a continuous pinfeed form that comes in both 5-part and 3-part versions.  The copies in the 5-part Standard Form 50 and

Standard Form 50-B are marked as Employee, Official Personnel Folder, Payroll, Chronological Journal File, and Utility copies. The copies in the 3-part Standard Form 50-B are marked as Employee, Official Personnel Folder, and Chronological Journal File copies. Agencies may use whichever version of the form suits their needs. The Office of Personnel Management does not require agencies retain a Chronological Journal File of personnel actions. Agencies may do so at their option. Unused copies of the Standard Form 50 should be destroyed in a way that protects employees' privacy. A sample of the Standard Form 50 is reproduced on page 4-13 of this chapter.

**a. Use of the Standard Form 50.** A Standard Form 50 is generally used as the long-term Official Personnel Folder documentation of personnel actions. Documentation of the following actions is *not* authorized for long-term Official Personnel Folder retention:

>    Exception to Reduction in Force Release;
>    Realignment;
>    Recruitment >Incentive;<
>    Relocation >Incentive;<
>    Referral Bonus;
>    Individual or Group Time Off Award;
>    Foreign Language Award;
>    Individual or Group
>    Suggestion/Invention Award;
>    Travel Savings Incentive Award;
>    Individual or Group Cash Award; and
>    Senior Executive Service Performance
>    Award.

All other actions in this **Guide** are to be documented for long-term retention in the Official Personnel Folder. The Official Personnel Folder documentation should be either:

>    (1) A Standard Form 50;
>    (2) An exception to the Standard Form 50, approved by the Office of Personnel Management (see section 5),
>    (3) a list form of notice (see section 6), or
>    (4) one of the alternative forms of notice described for pay adjustments in Chapter 17.

**b. Additional copies of Notifications of Personnel Action.** Duplicate or additional copies of personnel action notices increase the possibility for unwarranted invasion of employee privacy and unauthorized use of personal employee data on the form. Therefore, agencies may *not* reproduce additional copies of personnel action notifications unless the extra copy is authorized by the Office of Personnel Management, for example, as a "pick-up Standard Form 50" to notify an agency that you have hired one of its employees or to comply with the requirements in Figure 3-4. Both the Standard Form 50 and Standard Form 50-B are available in a version with a "utility" copy that may be used to meet any special needs your agency may have.

**4. Completing the Standard Form 50.**

**a. Employee Name. (1)** The general rule on use of a name on an employee's records is consistency: show the employee's name in the same way on all Government records. The name to record on official personnel records for an appointee is the name commonly used in the community where the appointee resides, for example, the name entered on application papers and used for social security records, driver's license, income tax purposes, and

PILIPOVICH
SUPP. AFF.
EXHIBIT
5

Jeffers Dwayne

**From:**    Perry Robert
**Sent:**    Tuesday, April 27, 2004 6:27 PM
**To:**      Apergis Steve; Belt Bradley; Snowbarger Vince; Grant Joseph; Seal John; Pilipovich Michele;
             Keightley James; Hagans Bennie; Emmons Robert; Smith Noisette;
             'avergnet@shawbrandsford.com'; 'SBVR@SHAWBRANSFORD.COM';
             'wbransford@shawbransford.com'; 'droth@shawbransford.com'; 'jwheat@shawbransford.com'
**Cc:**      Jeffers Dwayne; Perry Robert; 'dhshapiro@swickandshapiro.com';
             'kaeichenholz@swickandshapiro.com'
**Subject:** EEO Summary for EEO Counselor


To:      Bradley Belt, Steve Apergis
From:    Robert T. Perry

Subject:    Inappropriate Investigation on Robert T. Perry Harassment Complaint


Mr. Belt, welcome to the PBGC. I believe you have inherited a number of your senior and lower level management staff who are willing to commit unethical, deceptive, and lying behavior and activities. The information that I will provide you is backed by many of your employees if you should choose to inquire of them just a little. I think that you should first ask the PBGC IG and your OGC for all open and past investigation and complaints on the PBGC. I think that you will be more than surprise of your findings.

Many of your managers are the same individuals who are willing to mustard punishment on other employees for the same inappropriate acts that they have committed. I have been informed of your management officials committing time reporting fraud, unethical contract violations worth millions of dollars by a department head, and lying under an oath. I intend to provide you more than enough information for you to understand that your leaders, I believe, are out of control and abusing their Federal authority.

   

d01715t.pdf (124      Sarc29,RT
KB)


I cannot cover every violation and infraction of your new leadership staff so I will provide you with the latest unfounded and bogus decision from your HRD director (Michele Pilipovich). I filed a complaint to your HRD Director requesting that she address my workplace harassment. The attached e-mails covers the charges I made and provides some of the evidence to support my claim. I initiated a complaint of workplace harassment with enough evidence that "Stevie Wonder" could see that some form of harassment was inflicted on me.

      

HARASSMENTVB.w    RE: Harassment      RE: Your Complaint
pd (18 KB)        Investigation        dated Janu...

1

I believe the Pilipovich decision is a sham for solving my workplace harassment. The Pilipovich decision is equivalent to a victim of a burglary case being dismissed by the courts because the victim did not know why the known burglar robed the house. The real issue for any valid investigation is do we know who the robber is and not the reason for the robbery.

I also was interviewed by a PBGC hired investigator/attorney named Anthony Vergnetti of Shaw, Bransford, Veilleux & Roth, P.C.. Vergnetti was provided enormous information on my complaint by me to include a witness list of individuals to contact for support of my claims. None of the key individuals on my witness list were interviewed to my knowledge. One of my witnesses is Sharon Barbee-Fletcher. Barbee-Fletcher was PBGC previous HRD Director and filed an institutional grievance against V. Johnson on June 20, 2001, for lying and libel. Johnson, Bernsen, Elizabeth Baker are my harassers. I think it is safe to say that the PBGC is aware of V. Johnson, S. Bernsen, and E. Baker willingness to lie. My complaint to Pilopovich was closed by her with the below lame excuse:

> "As a result of Mr. Vergnetti's investigation, the agency was unable to find a basis for the allegations in your memorandum. Indeed, you acknowledged during your interview that you had nothing other than your "belief" to support your allegations. Consequently, the agency has concluded that there is no basis to conduct any further investigation into your allegations. Therefore, this matter is closed."



PBGC Policy
Concerning Sexual ..

I made many other statements in my testimony to Vergnetti that provided evidence of the harassment against me. In addition, my interview with Vergnetti was specifically for Elizabeth Bakers' complaint and not my complaint. If my case had been investigated, I could have provided more and specific evidence of my complaint to further support my workplace harassment. Even with the testimony that I did provide to PBGC's (E. Baker's) complaint against me, there was sufficient evidence to warrant a decision on my behalf. Your HRD should have a copy of my testimony for your review.

I think you need to read the investigation report for your own understanding of my case and the premise for an incredible decision by Pilipovich. As an attorney, I expect that you understand evidence and a "snow" job. I also understand that Vergnetti has published a book on investigations titled 2004 IG and OSC Investigations Handbook. I hope that his investigation is a thorough analysis for his conclusions on his investigation of E. Baker's complaint. If his investigation is similar to Pilipovich's decision then Vergnetti an attorney of Shaw, Bransford, Veilleux & Roth, P.C. should be concerned.

The question I think that a neutral party would ask at this point is why would PBGC management want to dismiss my complaint for false and deceptive reasons? I believe the answer is simple. I believe PBGC's management is trying to cover-up and maintain a culture and history of fraud, waste, and abuse of federal funds and abuse of authority within the PBGC. Again the reason is not important. The fact that the harassment occurred is the real issue. PBGC is an autonomous agency with very little accountability of direct federal control. Another question is how many management officials' are willing to cover up the misdeeds of many PBGC officials activities. That is an open question. However, I believe Pilipovich is the newest member of the group.

2

I have learned that Lattimer and Pilipovich competed for the HRD top spot. Many believe the decision to place Lattimer as the HRD head was derailed after talks of Lattimer getting the position. Why is this important? I believe that Pilipovich is an HRD figure head at this point. The new structure in HRD places Lattimer in complete charge of key employees within HRD. These key employees report to Lattimer and then he in turn reports to Pilipovich. PBGC has a mentor program in which Seal was Lattimer's mentor. This is the same PBGC official over Pilipovich and the individual found guilty of instituting an improper EEO structure by an independent arbitrator. It is time to read another e-mail. This e-mail discusses the improper interaction of Lattimer and the PBGC's EEO system.



EEO Structure
Electronic Docum...

Lattimer was a senior attorney with the OGC Labor Management staff and later became the Acting Manager for the HRD Management Labor staff. Lattimer is an attorney now over HRD employees where he is now in charge of the previous Operations and Programs sections. These sections are consolidated under Lattimer's complete control. Lattimer is now in control of critical knowledge and implementation of issues of employees' careers.

I have been informed that PBGC initiated an investigation on its own against me for a false and bogus complaint made against me by E. Baker. I am informed that some PBGC official gathered E. Baker's complaint from Court filings. The e-mail attached makes its clear that the alleged (E. Baker) victim did not file a complaint against me to the PBGC. The investigator Vergnetti made it known as well that the PBGC has a right to initiate investigations on complaints that it learns about and believes are necessary to maintain good order within the agency. It sounds good to me that the PBGC is willing to go looking for these complaints and is willing to investigate them. The PBGC initiated complaint is still ongoing for PBGC (E. Baker) against me and my complaint is now closed without an investigation that I am aware of.

   

FW: Harassment       RE: Harassment
  Investigation         Investigation

I have talked to some of the witnesses Vergnetti questioned for PBGC's (E. Baker) complaint. Many of the witnesses for PBGC (E. Baker) made it known to me that they wanted nothing to do with the PBGC's investigation on me. Some of the witnesses such as Pamela Baker made it known that she believes that her testimony was used inappropriately. Some of the witnesses stated that they were personally informed by senior management officials to provide testimony for E. Baker's complaint. Vergnetti brought P. Baker's name up as a witness along with S. Williams. As I stated to Vergnetti, he needs to find better witnesses if he wants to make a sexual harassment case against me. The attached e-mail is Vulgar and should be viewed with CAUTION. I have more of these e-mails to support my case if needed. I received these e-mails and never participated in the dissemination of this smut. I believe that many PBGC employees engaged in these types of e-mails to include management officials. PBGC spends lots of money on computers and should have the technology to find these individuals if it really finds this behavior offensive.

3


FW: Grandma's
Doggy Style.mpe


FW: Why Condoms
Come In Boxes ...

I feel that I should continue to help PBGC do its job of weeding out inappropriate activity within the PBGC to maintain its good order. Since the false complaint of harassment against me was old, I will not place a time frame on the information that I will provide to you. I hope that the PBGC will use the same due diligence that it used to initiate a complaint against me and apply the same due diligence of its investigation against me to the below individuals' cases.

## Complaints of Improper Behaviors and Actions:

1)  Bennie Hagans: Michael Jones I believed filed a complaint against Hagans in which he believes Hagans promoted females employees as compared to employees' ability. The GAO report published September 21, 2000, I believe, provides sufficient information that the final investigation reports of inappropriate behavior on Hagans. I was once told that Hagans should have a file cabinet of sexual harassment complaints against him in the EEO office.

1)  Robert Stokes - I was told that an employee filed a complaint to Hagans on Stokes for inappropriate relationship with (2) of Stokes female employees. It is believed by many employees that Stokes fathered a child with one of these employees. Stokes is a Division Manager of PBGC.

1)  Romaine Nelson - An EEO complaint I believe is now underway regarding Nelson providing a promotion to a male employee above him. Nelson I am told is or was under another investigation for time sheet fraud as well. I am told that she is out of the building so long that by the time she comes back to work that most employees are leaving work. I am also told that she and Hagans once were involved. Nelson is an Associate Division Manager.

1)  George Williams - (1) during an EEO hearing held on January 30, 2003 answered the following questions under an oath.

13    Q.   There has never been any discriminatory
14  actions based on sex?
15    A.   No.
16    Q.   Do you recall Miss Diana Lavik
17  requesting that you put up a flyer for a cat that
18  she had become custodian of?
19    A.   Yes.
20    Q.   Do you recall what the poster said that
21  you ended up creating for that?
22    A.   Not exactly.
23    Q.   Was it something to the effect of
24  contact Diana Lavik for free pussy?
25    A.   No.
1022
1    Q.   It wasn't?

4

2  A.  No.
3  Q.  Do you recall what it did say?
   A.  I believe it said, and this was in
5  conjunction with her giving away her cat, for no
6  charge, free pussy, see Diana Lavik.
7  Q.  And does that, you think that's
8  appropriate language?
9  A.  No, it certainly is not.
10  Q.  And that's probably offensive to
11  females?
12  A.  Yes.

(2) Williams also sent an e-mail to selected PBGC employees. Williams was a supervisor during the time of the e-mail then became a Branch Manager and later an Associated Division Manager.

1)  Robert Bacon - This manager was under investigation for sexual harassment initiated to the HRD and later dismissed by OGC/HRD. This complaint is now pending in court actions.

## Is flirting a crime?

I was told that the PBGC had a culture of sexual deviance by many employees. I was told of wife swapping and behind doors activity within the PBGC at alarming number. I believe that this culture has not completely changed and the rewards benefited many. I think it safe to say there was a lot of flirting going on and possibly still is within the PBGC.

1)  Bella Palli - having inappropriate relationship with a PBGC employee. The employee I am told made it known of his conquest with this married woman. I often wondered why I saw them coming back from lunch late. Some people should not park their cars in front of the building.

1)  Marjorie Bernadi and Steve Finucane - known by many that they were caught in the stairwell of a PBGC building making-out. These two have since married each other so I guess it ok for them now.

1)  James Keightley - I was told that Keightley is fond of an attorney in the agency and the rumor is that she may have a chance of rising to Deputy General Counsel like Jeffery Cohen did when he was reportedly involved with a General Counsel. Cohen relationship with a General Counsel I understand was somewhat of an issue at that time.

1)  Richard Lattimer - He dated a few employees and later married an auditor within IOD.

Note:  I understand that many of these individuals are divorced. A thorough investigator may want to review complete and full divorce filings to see if there are any relevant facts from these documents.

Vergnetti accused me of being a flirt. I guess if this is true then I am in good company of managers who are more successful than I could ever imagine to aspire to become. Many of these managers are from the old regime and appear that they cannot let good times go away. I believe these individuals have abused their authority and powers and are willing to use all means to their disposal to fabricate

events or issues to meet their need to have me and others discredited and ultimately harmed through their actions.

I believe that my management officials have canceled my complaint of workplace harassment against me to pursue their PBGC initiated complaint against me of sexual harassment. The conclusion to terminate my complaint I believe is with the concurrence of senior management officials such as Vincent Snowbarger (Acting Executive Director), John Seal (PBGC CMO), and Joseph Grant (PBGC COO). These senior officials, I believe are fully aware of the harassment and retaliatory actions taken against me and have aided subordinate managers and supervisors to violate my workplace and civil rights. Many of theses senior officials on my case are attorneys who are well versed in evidence and have permitted their lower level officials to publish decisions based on evidence not permitted in a "kangaroo court."



Articles: The
dangers of turnin...

I am a Federal employee within PBGC. I am obligated under Federal laws to report what I believe are violations to my superiors. My statement is for that purpose. I also was requested to provide a written statement to my EEO Counselor for my EEO complaint. This statement serves that purpose as well. I will provide my EEO Counselor other names and events for my complaint.

Respectfully Submitted,

Robert T. Perry
EEO Complainant

6

PILIPOVICH
SUPP. AFF.
EXHIBIT
6

Apr 16 07 12:00p    PERRY    2025260069    p.3

To:    Mrs. Michele Pilipovich, HRD Director    JAN 1 3 2004

From:    Robert T. Perry, PBGC Employee    Received

Subject:    Inappropriate Conduct of Harassment, Slander, Liable,
Extortion, and Racketeering (RICO)

Mrs. Pilipovich, I write to you to complain of flagrant, malicious, and unlawful
behavior and actions on the part of Mrs. Valda Johnson and Mr. Stuart Bernsen.
Mrs. Johnson and Mr. Bernsen have over a period of approximately six months
disseminated false claims against me and have tried to extort me for information in
return for my dignity if they would not file a sexual harassment charge on me. I
bring forward my complaint to you in that I am a federal employee of the Pension
Benefit Guaranty Corporation and invoke my right to be free of inappropriate
behavior and illegal activities in the workplace in accordance with appropriate
United States laws, PBGC Directives, Policies, and NTEU CBA and amendments.

Mrs. Johnson and Mr. Bernsen have violated my basic employee rights for a
workplace free of hostile actions. As you are aware, I along with Mrs. Johnson
and Mr. Bernsen are PBGC bargaining members. However, Mrs. Johnson and Mr.
Bernsen in their capacity as PBGC employees or as Union official of NAGE Local
R3-77 have falsely accused me of inappropriate behaviors and actions and have
distributed e-mails to PBGC employees of their accusations. I have attached for
your review a series of e-mails from Mrs. Johnson whereas she has falsely told
PBGC employees that I have sexually harassed two PBGC employees and that I am
under investigation for this activity. Mrs. Johnson has also made a statement in an
e-mail to me that she will go public with her accusation of sexual harassment
against me if I do not provide her some information she wanted. I consider this an
extortion by Mrs. Johnson which was supported and condoned by Mr. Bernsen.

I was further harassed by Mrs. Johnson and Mr. Bernsen, in their union capacity,
when they formally charged me with sexual harassment on November 14, 2003.
The formal charge was made approximately four months after Mrs. Johnson's e-
mailed PBGC employees that I was under investigation for sexual harassment and
approximately six months after the false accusation of harassment. The formal
charge of harassment document was provided to me after my Union representative,
Dwayne Jeffers, informed Mrs. Johnson that there was no formal charge against
me. The initial informal charge on me by Mrs. Johnson stated that I had harassed a
couple of members of the Local executive board. However, the formal charge
against me stated that I harassed only Ms. Elizabeth Baker, a PBGC employee and

NAGE Local executive member. I adamantly deny the charges set forth by the
NAGE Local Executive board against me.

Mr. Bernsen has supported Mrs. Johnson retaliatory action against me when he
disseminated e-mails to PBGC employees distorting my reputation using similar
language as Mrs. Johnson. Mr. Bernsen is a PBGC attorney and is aware that he is
held accountable for knowingly making false allegations with the intent to cause
harm. Mr. Bernsen has made comments to other PBGC employees that I must pay
for actions against both him and Mrs. Johnson. His actions and behavior are
clearly retaliatory and have caused me harm.

The Local Union's board minus Ms. Baker later served as a trial committee on a
sexual harassment allegation against me on November 24, 2003. I informed the
executive board which later became the trial committee that I was scheduled not to
work that day and that my representative was on leave for that week. The executive
board/trial committee was also made aware that I consider both Mrs. Johnson and
Mr. Bernsen as inappropriate trial members on the harassment charge against me.
As you can read from an e-mails provided, Mr. Bernsen was the investigator of the
sexual harassment charge against me and Mrs. Johnson if not initially, later stated
that I had harassed her.

I believe Mrs. Johnson and Mr. Bernsen used their position as Union officials to
harass me, intimidate me from speaking out, and reduce my ability to work
effectively as a PBGC employee and Union member. The actions of the executive
board to be the trial committee based on the facts of my case is contrary to National
and Local Bylaws and I believe removes them from invoking Union protection
under this basis.

Mrs. Johnson and Mr. Bernsen are Union employees, however, their behaviors and
action against me have crossed the boundary of Union activity in that their actions
were personal and not in the good order of the PBGC nor Union business. The
information above and the documents attached make it clear that the actions of Mrs.
Johnson and Mr. Bernsen were flagrant and with the intent to discredit my name,
reduce my ability to have a workplace free of harassment and cause me mental
distress. The PBGC is therefore requested to take appropriate actions to protect my
rights as an employee and to provide me with a safe environment to perform my
duties.

For further information on this issue, please contact me.

Respectfully Submitted

Robert T. Perry

PILIPOVICH
SUPP. AFF.
EXHIBIT
7



**Pension Benefit Guaranty Corporation**
1200 K Street, N.W., Washington, D.C. 20005-4026

April 19, 2004

**TO:**      Robert Perry
             Auditor, Compliance and Audits Branch, IOD

**FROM:**    Michele Pilipovich *in original*
             Director, Human Resources Division

**SUBJECT:** Your Memorandum Alleging Inappropriate Conduct

　　　This is in response to your undated memorandum to me, alleging that other agency employees, Valda Johnson and Stuart Bernsen, engaged in "inappropriate conduct of harassment, slander, liable, extortion, and racketeering (RICO)" when they accused you of sexual harassment against Elizabeth Baker.

　　　As you are aware, the agency recently retained an investigator, Anthony Vergnetti of Shaw, Bransford, Veilleux, and Roth law firm, to conduct an investigation of Ms. Baker's allegations under the agency's Workplace Harassment Prevention Policy. As part of that investigation, Mr. Vergnetti interviewed you, Ms. Johnson, Mr. Bernsen, and Ms. Baker.

　　　As a result of Mr. Vergnetti's investigation, the agency was unable to find a basis for the allegations in your memorandum. Indeed, you acknowledged during your interview that you had nothing other than your "belief" to support your allegations. Consequently, the agency has concluded that there is no basis to conduct any further investigation into your allegations. Therefore, this matter is closed.

bcc: Robin Horning

PILIPOVICH
SUPP. AFF.
EXHIBIT
8

# New Years Resolutions

### That You Will Never Hear From

# DICK PETTA

— I promise to try to tell employees and union members the truth once in a while.

— I promise to have the new Collective Bargaining Agreement (CBA) implemented some day.

— I will apologize to more than 125 employees who have been denied **flexiplace** because of my failure to finish up the new CBA

— I will apologize to all the employees who got appraisal ratings of Excellent but did not get a full 2% of salary as a performance award because I did not finish up the new CBA.

— I will apologize to the employees who missed getting Outstandings based on 18 points instead 19 because of my failure to finish the new CBA

— I will apologize to all employees who missed getting Excellent appraisals based on 13 points instead of 15 points because of my failure to finish the new CBA

— I will denounce **Robert Perry** and **Dwayne Jeffers** for ratting on employees and helping management fire contractors and discipline employees for use of the email system

— I will publicly admit that I was the one who first called for a trusteeship of the local union and to impose a dictatorship

— I will reveal the names of those in management whose orders I followed to get rid of the former elected union leaders

— I will apologize for working to undermine and sabotage the arbitration cases of several employees, including a GS–4 disabled employee

— **I will tell the truth about how I am working for Brad Belt to help him implement a pay for performance system that will eliminate step increases and annual salary increases**

— I will resign from union office, quit the union in February when anyone can, and will retire from PBGC

— I will confess to my sins against PBGC employees

**Perry Robert**

| | |
|---|---|
| **From:** | Jeffers Dwayne |
| | Friday, January 20, 2006 1:16 PM |
| nt: | Belt Bradley |
| | Barber Stephen; Starr Judith; Snowbarger Vince; Pilipovich Michele; Silva Ricardo; Forster |
| **Cc:** | Raymond; Perry Robert; Jeffers Dwayne |
| **Subject:** | Workplace Harassment Complaint of Dwayne Jeffers / Department of the Air Force vs. FLRA (US Court of Appeals Decision) on "Protected Activity" |
| **Sensitivity:** | Confidential |

Dear Mr. Belt,

I would like to bring to your attention the actions of your agent, Littler Mendelson law firm, and other PBGC management officials.

During the course of my January 4, 2006 meeting with your agent, Littler Mendelson law firm, the law firm kept on harping that the activities of Stuart Bernsen, Rhonda Baird, and Valda Johnson could be "protected activity" under FLRA statutes such 5 U.S.C. 7102. I gather that this was a possible scheme to escape PBGC's responsibility to take swift and corrective action against the perpetrators of the workplace harassment and threats of violence that Robert Perry and myself have been subjected to.

# § 7102. Employees' rights

Each employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of such right. Except as otherwise provided under this chapter, such right includes the right—

(1) to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities, and

(2) to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under this chapter.

The Littler Mendelson law firm even told me that the enclosed June 16, 2005 memorandum from John Seal could possibly be unlawful under labor statutes.



INAPPROPRIATE
3E OF PBGC RESC

The Littler Mendelson law firm told me that my complaints for violation of the enclosed June 16, 2005 memorandum from John Seal could possibly moot if the memorandum violated statutes.

Well I have done some research on the matter.

Department of the Air Force vs. FLRA (US Court of Appeals Decision)
http://www.ll.georgetown.edu/federal/judicial/dc/opinions/01opinions/01-1275a.html

Here are some excerpts from the decision :

'e Air Force argues that the
_onduct of the union official is unprotected under the applica-
ble federal labor laws, 5 U.S.C. s 7102, and that the FLRA

1

has both misapplied its own precedent regarding "flagrant
misconduct" and improperly interpreted 5 U.S.C. s 7102.
Because we agree with the Air Force that the conduct of the
union official is **unprotected under any reasonable standard,**
we grant the petition for review and reverse the FLRA.

The FLRA's
decision that the tortious if not criminal conduct committed
by Egal in this case is protected by 5 U.S.C. s 7102 cannot
survive even the forgiving standards of arbitrary-and-
capricious and Chevron review.

Granted, the language of s 7102(1) is ambiguous. Poten-
tially there could be many possible interpretations of what it
means "to act for a labor organization ... [and] to present
the views of the labor organization." But it is not reasonable
to suppose that Congress considered it permissible and im-
mune from consequence for an employee to commit an assault
and battery against a co-worker while ranting, raving and out
of control. No employee, including a union official acting in a
representational capacity, has the right to put another in fear
of being struck or to commit a battery in order to "present
the views of the labor organization" and "engage in collective
bargaining." 5 U.S.C. s 7102. If the FLRA's "flagrant
misconduct" standard permits such conduct, as the FLRA
held it did here, then that standard is an unreasonable
interpretation of the limits of s 7102.

It is at least equally
**preposterous for the FLRA to conclude that Congress could
reasonably have contemplated that federal employees are
incapable of exercising their rights under s 7102 without**
ranting, raving, **assaulting, battering and harassing their co-
workers.**

As we stated in a related context,
we "understand that labor negotiations produce occasional
intemperate outbursts and, in a specific context, such lan-
guage may be protected," however, it "defies explanation that
a law enacted to facilitate collective bargaining and protect
employees' right to organize prohibits employers from seek-
ing to maintain civility in the workplace." Adtranz, 253 F.3d
at 27-28 (emphasis added). Here, we face not just intemper-
ate language, but assaultive, tortious, possibly criminal behav-
ior.

Flagrant misconduct is a
sufficient, but not necessary, condition for a loss of privilege
under s 7102. Even without reference to the "efficiency of
the service" standard of 5 U.S.C. ss 7503(a), 7513(a), relied

2

upon by the Air Force, it is not a reasonable interpretation of
s 7102 to hold that it protects all union activity except
"flagrant misconduct," particularly if flagrant misconduct
'oes not include assault and battery in the workplace. How-
.⁄er, we do not read the Authority's earlier cases as holding
that only "flagrant misconduct" crosses the line into unpro-
tected activity. The FLRA has held, as noted in Chairman
Cabaniss's dissent, that "[c]onsistent with section 7102 ... an
agency has the right to discipline an employee who is en-
gaged in otherwise protected activity for remarks or actions
that 'exceed the boundaries of protected activity such as
flagrant misconduct.' " Grissom, 51 F.L.R.A. at 11 (quoting
U.S. Air Force Logistics Command, Tinker Air Force Base,
34 F.L.R.A. 385, 389 (1990)) (emphasis added). It is Grissom
that the FLRA relied on here for its "flagrant misconduct"
standard and Grissom identifies "flagrant misconduct" as
only illustrative of **exceeding the boundaries of protected
activities.**

I maintain my consistent position that Stuart Bernsen, Valda Johnson, and Rhonda Baird are not **recognized union**
officials with a **legitimate and meaningful purpose to engage in collective bargaining** or **representational duties of**
bargaining unit employees with respect to PBGC under FLRA statutes. NAGE Local R3-77 is the exclusive bargaining unit
representative of PBGC employees. Stuart Bernsen, Valda Johnson, and Rhonda Baird are not NAGE Local R3-77
officials. Even if you assume arguendo that Stuart Bernsen, Valda Johnson, and Rhonda Baird were in fact union officials
with protection under FLRA statutes such 5 U.S.C. 7102, I believe that their activities clearly exceed the boundaries of
protected activity as stated in the enclosed Department of the Air Force vs. FLRA (US Court of Appeals Decision) on
"Protected Activity".

.ontinue to be harassed by these individuals.



FW: OIG's
:mlannual Report to

I am making a formal complaint to PBGC about this January 13, 2006 e-mail and 3 related flyers which from January 10,
2006 through January 12, 2006.
January 10, 2006 flyer titled **"Court Orders Trial Against NAGE Over Retaliation"**;
January 11, 2006 flyer titled **"New Years Resolutions That You Will Never Hear From DICK PETTA"**; and
January 12, 2006 flyer titled **"SAM BATSELL For a Union With Management"**.

Here are some e-mails that I have previously complained about which were initiated to me by Rhonda Baird and Stuart
Bernsen stating that I have been engaged in **CRIMINAL ACTIVITIES.**

      

Misuse of Union    RE: Misuse of    RE: Misuse of    RE: Misuse of    RE: Misuse of    RE: Misuse of    RE: Misuse of
Records From t...  Union Records Fr... Union Records Fr... Union Records Fr... Union Records Fr... Union Records Fr... Union Records Fr...

 

RE: Misuse of    Re: Misuse of Union
Union Records Fr... Records Fr...

I have been investigated by your agent, Littler Mendelson law firm, on January 4, 2006 about the allegations of **CRIMINAL**
**ACTIVITIES.** I believe that your agent, Littler Mendelson law firm, violated my **Garrity Rights, Kalkine Rights, Miranda**
**Rights,** and other rights by forcing and coercing me under threat of discipline to make statements about allegations of
³RIMINAL ACTIVITIES on my part without allowing me to have an attorney present and affording me my rights. I believe
mat this is referred to as **"fruit of the poisonous tree"** in the legal field.

Thank you,
Dwayne Jeffers
Federal Employee

--Original Message-----
.rm:          Belt Bradley
**Sent:**     Friday, January 20, 2006 9:53 AM
**To:**       Perry Robert
**Cc:**       Barber Stephen; Starr Judith; Snowbarger Vince; Pilipovich Michele; Silva Ricardo; Jeffers Dwayne
**Subject:**  RE: Workplace Harasment Complaint
**Sensitivity:** Confidential

Robert-

In addition to the ongoing investigation of your complaints, it is my understanding that a meeting with HRD officials has been or is being scheduled as you requested to discuss "new flyer and e-mail incidents." I assume you have provided HRD with copies of these flyers and emails?

Brad


-----Original Message-----
**From:**     Perry Robert
**Sent:**     Friday, January 20, 2006 9:04 AM
**To:**       Belt Bradley
**Cc:**       Barber Stephen; Starr Judith; Snowbarger Vince; Pilipovich Michele; Silva Ricardo; Jeffers Dwayne; Perry Robert
**Subject:**  Workplace Harasment Complaint
**Sensitivity:** Confidential

Mr. Belt, I have requested to meet with anyone under your leadership to discuss recent workplace harassment and threats of workplace violence targeted towards Mr. Jeffers and workplace harassment. Your staff of management and HRD officials have not responded to my request as the below e-mails support. At this point, Mr. Jeffers and I can only conclude that PBGC does not take our concerns of workplace harassment serious and/or that PBGC believes that we are filing false reports. Regardless of PBGC's position, Mr. Jeffers and I have provided documented evidence of our harassment to date. Mr. Jeffers and I have been harassed in far more ways and times than we have reported to your staff. However we have decided not file harassment claims of hearsay. For example, I left a meeting in PBGC where Mr. Bernsen had a conflict with a District of Columbia police officer in "full police uniform" outside of a conference room in PBGC. The officer maintained his professional decorum although Mr. Bernsen was within a couple of inches from his face. The officer made it known that he would arrest Mr. Bernsen if he persisted his unlawful actions and behavior. Mr. Belt, Mr. Jeffers and I are receiving slow and or non responsive actions from PBGC even with the documented evidence that we are providing, .

Mr. Belt, the current environment of PBGC is not healthy for Mr. Jeffers and me. I am sure that eventually one of our harassers will take additional and more dramatic steps to vent their frustrations against Mr. Jeffers and I. Mr. Stuart Bernsen is a classic example of a person with increased anger and hostility towards fellow PBGC employees throughout his career with PBGC. Your staff is aware that I have received documents of Mr. Bernsen self confessions of his various forms harassment over his PBGC career. Your staff is also aware of PBGC employees obtaining Federal protective orders against Mr. Bernsen. Mr. Bernsen is not alone in his desire to cause Mr. Jeffers and I harm. Ms. Rhonda Baird and Ms. Valda Johnson have 'her assisted or conducted their own campaign of harassment against Mr. Jeffers and me.

The question at this point is what will PBGC do to protect Mr. Jeffers and me from unwanted

4

workplace harassment within PBGC. Mr. Jeffers and I have been "so-called" monitored by your staff, sent home by PBGC for our own protection, had two investigations completed of our harassment complaints since June 2005. Mr. Jeffers and I have provided more than ufficient evidence of our various harassment against us. We now here from your officials, .tler and Mendelson, and our harassers the issue of "protective rights". I thought that I would provide you more understanding that "protective rights does not permit intimidation, threats of violence, or activity which clearly meets the definition of flagrant and inappropriate behavior such as harassment. I am not an attorney, however you staff of labor attorneys and paid law firm should be fully knowledgeable that the harassment that Mr. Jeffers and I are receiving does not protect PBGC employees in any way.

Mr. Jeffers and I have researched the issue of protected activity since it appears that our harassers and PBGC favor this ruling to possibly diminish and or exclude the conduct of workplace harassment.

<< Message: Department of the Air Force vs. FLRA (US Court of Appeals Decision) >>     << Message: Protected activity >>

Mr. Belt, Mr. Jeffers and I would like to meet with you or a PBGC official to discuss our recent harassment flyers and e-mails. Please let us know of your response.

Thank you.

ʼobert T. Perry
  deral Employee

——Original Message——
| | |
|---|---|
| From: | Jeffers Dwayne |
| Sent: | Thursday, January 19, 2006 10:59 AM |
| To: | Perry Robert; Silva Ricardo; Belt Bradley; Barber Stephen; Starr Judith; Snowbarger Vince |
| Cc: | Pilipovich Michele; Lattimer Rick; Bledsoe Lori; Jeffers Dwayne |
| Subject: | RE: New Flyer of Harassment Received |
| Sensitivity: | Confidential |

Mr. Silva,

I agree with Robert Perry.
I would like to meet as soon as possible to discuss the new flyer and e-mail incidents.
Please let me know when we can meet.

Thank you,
Dwayne Jeffers
Federal Employee

——Original Message——
| | |
|---|---|
| From: | Perry Robert |
| Sent: | Thursday, January 19, 2006 10:16 AM |
| To: | Silva Ricardo; Belt Bradley; Barber Stephen; Starr Judith; Snowbarger Vince |
| Cc: | Pilipovich Michele; Lattimer Rick; Bledsoe Lori; Jeffers Dwayne; Perry Robert |
| Subject: | FW: New Flyer of Harassment Received |

ʼ. Silva, I and Mr. Jeffers resubmit our request to meet with you or any PBGC designated official to resolve our harassment complaint. Please confirm a date and time when we can meet or provide us PBGC's proposal to address our continued workplace harassment

complaint.

**Thanks, Robert.**

**Robert T. Perry**
Federal Employee

-----Original Message-----

| | |
|---|---|
| **From:** | Perry Robert |
| **Sent:** | Wednesday, January 18, 2006 12:04 PM |
| **To:** | Silva Ricardo |
| **Cc:** | Belt Bradley; Barber Stephen; Starr Judith; Snowbarger Vince; Pilipovich Michele; Lattimer Rick; Bledsoe Lori; Jeffers Dwayne; Perry Robert |
| **Subject:** | FW: New Flyer Received - 01/12/06 |

Mr. Silva, this is to confirm that our meeting today regarding Mr. Jeffers and my harassment complaint against PBGC employees is postponed until you are able to reschedule another date and time with us. It is Mr. Jeffers and my hope that you will reschedule a meeting with us soon to eliminate further unwanted harassment against us.

**Robert T. Perry**
Federal Employee

-----Original Message-----

| | |
|---|---|
| **From:** | Perry Robert |
| **·nt:** | Friday, January 13, 2006 2:31 PM |
| | Belt Bradley; Barber Stephen; Starr Judith; Snowbarger Vince; Silva Ricardo |
| **Cc:** | Pilipovich Michele; Lattimer Rick; Bledsoe Lori; Jeffers Dwayne; Perry Robert |
| **Subject:** | FW: New Flyer Received - 01/12/06 |

PBGC Officials: I have received additional harassment from Rhonda Baird, Valda Johnson and Stuart Bernsen by flyers and an e-mails since our last harassing flyer on January 11, 2006. Our harassment is becoming more frequent since it was identified that Littler and Mendelson had completed its investigation for PBGC. Mr. Jeffers has informed me that he is still having computer problems. Therefore, I am relaying to you that Mr. Jeffers is receiving the same flyers and e-mails and we want to meet with PBGC official(s) to discuss and hopefully resolve our latest harassment complaints.

**Robert T. Perry**

-----Original Message-----

| | |
|---|---|
| **From:** | Perry Robert |
| **Sent:** | Friday, January 13, 2006 8:15 AM |
| **To:** | Jeffers Dwayne |
| **Cc:** | Perry Robert |
| **Subject:** | New Flyer Received - 01/12/06 |

Dwayne, I received a flyer yesterday again that is false and intended to keep alive the hostility toward us in the workplace. I will hold on to this flyer and present it to the PBGC investigator when a meeting is confirmed. I hope that they will hold a meeting as requested in my e-mail to PBGC officials. Stuart, Rhonda, and Valda will not stop distributing flyers until PBGC take meaningful action to make it clear that this behavior of harassment is unacceptable within PBGC.

**Robert T. Perry**

# YOUR NEW CBA

## (Collective Bargaining Agreement)

On February 19, PBGC bargaining unit employees will start to enjoy the many new benefits and protections of a new CBA. The hard work and persistence of the original local union leaders will provide PBGC employees with one of the best contracts for federal employees anywhere. As described below, the new CBA will make for a more employee friendly, family friendly workplace that is good for everyone, including management.

### How the CBA Was Won

Employees need to keep in mind that your new rights and benefits are not free gifts. They were won by a collective effort of PBGC employees who worked together, and who paid $11,000 to have an arbitrator rule against management on important articles of AWARDS and FLEXIPLACE. Your new CBA also came about as a result of the skills and dedication of the former leaders of the union local. These key facts are important to remember, because PBGC management is not happy about the tremendous success this new CBA represents.

### Management's Opposition

While management should see this as a win-win for everyone, unfortunately, management fought tooth and nail against Awards, Flexiplace, Metrocheck, Office Space, Merit System Principles and many other provisions. Management could have implemented the new Flexiplace and Awards articles back in 2002, but refused. In the past few months Mr. Belt tried to have the new CBA dropped and discarded. He and Stephen Barber made sure that employees would not receive new benefits in time for last year's performance appraisals and awards. Dick Petta went along.

### Independent Action Saves the Day

The CBA is being implemented now because employees spoke out and expressed displeasure over the benefits denied when appraisals came out. The undersigned, and others who supported the Independent Union of Pension Employees, circulated flyers and other information to let employees know what Belt and Petta were up to and to share information about what was being lost. Furthermore, the Federal Labor Relations Authority has been

considering whether PBGC employees should have the right to vote again for the Independent Union. With the possible competition of a real union and the prospect of employees uniting, Belt and Petta have been forced to come to their senses – at least temporarily.

### NEW BENEFITS

Here is a summary of some of what your improved working conditions include:

FLEXIPLACE: Flexiplace doubles. A hundred employees will be added to flexiplace to bring it up to 50%. Those now in the flexiplace program will be entitled to 2 days a week to work at home! (Management wanted to leave it up to each manager to decide who could and could not participate and to deny flexiplace days anytime.) Employees with health problems will be able to work at home.

PERFORMANCE: Many more employees will receive Outstandings based on 18 points instead of the current 19 points, and Excellents based on 13 points instead of 15. Ratings will no longer be based on a quota system driven by dividing up a limited amount of awards money and playing favorites so that particular individuals will get higher appraisals at others' expense.

AWARDS: Excellent employees will receive a full 2% of salary with time off available to make up any difference. In the past, some Excellent employees have received as low as one-fifth of a percent.

DISCIPLINE: No employee may be disciplined (suspended) until after a neutral, third party makes a final decision. (Remember all the people who faced discipline over the email investigation last year when NAGE officials Robert Perry and Dwayne Jeffers ratted on employees?)

MERIT SYSTEM PRINCIPLES: Even though PBGC is a government corporation, it will now have to abide by Merit System Principles and treat employees fairly with respect to personnel matters and career opportunities. Individual managers can be

held accountable.

OFFICE SPACE: Guaranteed private offices and office sizes and a fair selection process. (Management wanted to be able to double employees up in offices or force employees into cubicles.)

METROCHECK: The maximum metrocheck allowable under law, including any increases, is guaranteed by the contract. (Management had proposed only $45 a month.)

FLEXIBLE LUNCH: Employees may take more than 45 minutes for lunch, so long as they work later.

STARTING TIME: Employees on 5/4-9 may start as late as 9:30 a.m.

### What's Ahead?

It is gratifying to know that PBGC employees will be enjoying very real improvements that we worked so hard and paid so much to win – including $11,000 to an arbitrator.

The two problems ahead, though are, first, that management controls the local union through Dick Petta, Robert Perry and Dwayne Jeffers. (Robert Perry has quit, and will be gone by May.) That means that managers can easily decide not to provide you with some of your new benefits because they know that the NAGE National and local will never stand up for you.

Second, management already has an agenda to force many concessions and move towards a pay-for-performance system as soon as a year from now. There are signs that they plan to justify it by accusing some employees now of poor performance.

Study your new contract. Take advantage of your new rights and benefits. Pay attention to what is going on. Remember who really worked hard for you. And, if you have any questions, feel free to give me a call.

Stuart Bernsen, ext. 3060