UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JACQUELINE WEST,

            **Plaintiff,**

       v.                           Civil Action 06-00531  (HHK)

JOHN POTTER,

            **Defendant.**

## MEMORANDUM OPINION

Jacqueline West ("West"), a former employee of the United States Postal Service, brings this action against John Potter, in his official capacity as Postmaster General of the United States Postal Service ("Postal Service"). West alleges that the Postal Service's treatment of her violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq*. In her prolix complaint, West alleges that the Postal Service discriminated against her on the basis of her race, sex, and disability, breached a settlement agreement with her, and retaliated against her because she engaged in protected Equal Employment Opportunity ("EEO") activity.

Before the court is the Postal Service's motion to dismiss or, in the alternative, for summary judgment [#20]. Upon consideration of the motion, West's opposition thereto, and the record of this case, the court concludes that the Postal Service's motion should be granted.

## I. BACKGROUND

The facts and circumstances pertinent to the instant motion are as follows. West worked for the Postal Service from at least 1991 through May 31, 2005.[1] From 1997 through 1999, she filed numerous complaints with the Equal Employment Opportunity Commission, alleging that she was a victim of discrimination by the Postal Service, based on her sex and religion, and harassment and retaliation. In July 1999, she filed a Title VII action against the Postal Service, *West v. Henderson*, Civ. No. 99-1975 (D.D.C. Nov. 3, 2000) ("*West I*"), grounded on these allegations. *West I* was resolved in favor of the Postal Service and against West when this court granted the Postal Service's motion for summary judgment. The *West I* court determined that West had failed to exhaust her administrative remedies and had failed to establish a prima facie case of discrimination.

While *West I* was pending, West requested and received a transfer from the Southern Maryland Processing and Distribution Center to the Curseen & Morris Processing and Distribution Center in Washington, D.C. ("D.C. Center"). West earlier had been transferred from the D.C. Center after a male Postal Service employee made threatening remarks about her and other female supervisors. West requested a transfer back to the D.C. Center, stating that "the reason for the indirect reassignment [to the Southern Maryland Center] is a moot issue." Decl. of Louis Higginbotham; *id*., Ex. 1. The Postal Service granted West's request and reassigned her to the D.C. Center. Despite her job description as a Supervisor of Maintenance Operations, West was assigned administrative duties on her return.

---

[1] The parties disagree as to whether West began working for the Postal Service in 1981 or 1991. There are no disputes, however, with respect to material dates or the sequence of events.

The parties disagree sharply regarding the reason for the change in West's job duties. West asserts that her new duties were part of a settlement of a worker's compensation claim. The Postal Service, however, disputes the existence of a settlement agreement and maintains that West was assigned administrative duties because she expressed an interest in such duties, demonstrated the necessary skills to perform them, and because no supervisory position was available at the time of her transfer.

After West had been performing administrative duties at the D.C. Center for four years, the Postal Service on May 18, 2005, informed her that she would be transferred to a recently vacated maintenance supervisor position, effective June 4, 2005. The Postal Service indicated that West was to be transferred because the administrative duties she was performing had been absorbed by others and because there was a need for her to fill a recently vacated maintenance supervisor position. West stopped coming to work after May 31, 2005.

On June 27, 2005, West requested EEO counseling claiming that the transfer that was to have taken place on June 4 was a violation of the settlement agreement that she had negotiated with the Postal Service prior to returning to D.C. Center. West also alleged a panoply of Title VII and Rehabilitation Act claims, all of which she presents in the instant lawsuit.

## II. ANALYSIS

As has been noted, plaintiff's amended complaint is prolix in the extreme. And, her opposition to the Postal Service's motion is similarly disjointed. Nevertheless, her claims may be summarized and addressed as follows.

**A.     West's Title VII claims**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e-2(a)(1).

The events underlying West's Title VII claims fall into four chronological groupings.  West's first claim is premised upon numerous instances of alleged discrimination that occurred prior to May 13, 2005.  The second claim is grounded on events that occurred on May 31, 2005, and relate to West's attempt to use her sick leave.  The third claim involves events that occurred after May 31, 2005, when West's nameplate was removed from her door and the persons whom she was to begin supervising on June 4 were instructed that she was on sick leave.  The fourth, and final, Title VII claim concerns the transfer of West that was scheduled to occur on June 4, 2005.

   *1.  Instances of alleged discrimination prior to May 13, 2005*

Before filing a lawsuit under Title VII, a plaintiff must exhaust her administrative remedies.  *See* 29 U.S.C. § 794a(a)(1); *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  The first step that a federal employee must take to exhaust her administrative remedies is to timely initiate contact with an EEO Counselor to arrange for informal counseling regarding the matter or matters alleged to be discriminatory.  The pertinent regulation provides in relevant part:

> (A)  Aggrieved persons who believe that they have been discriminated against on the basis of race . . . sex . . . or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
> (1)  An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a)(1).

The Postal Service argues that West's Title VII claim based upon matters that occurred before May 13, 2005,[2] must be dismissed because she failed to exhaust her administrative remedies. The Postal Service is correct.

It is undisputed that West did not contact an EEO counselor until June 27, 2005, when she complained of the transfer that had been scheduled to occur on June 4, 2005. Therefore, West's Title VII claim that is alleged to have arisen from events that occurred prior to May 13, 2005, or that were not the subject of her June 27 contact with the EEO counselor must be dismissed because West failed to exhaust her administrative remedies.

### 2. *Events That Occurred on May 31, 2005*

On May 31, 2005, the Postal Service charged West with 32 hours of leave without pay – instead of the sick leave she had properly requested – and this error was not corrected until after she received at least one paycheck. West argues that these circumstances amount to illegal discrimination proscribed by Title VII.

In order to establish a prima facie case of illegal employment discrimination a plaintiff must prove that she suffered an adverse employment action. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). The Postal Service argues that West's discrimination claim based upon its May 31, 2005 treatment of her sick leave request fails because this action on its part does not constitute an adverse employment action. Thus, the Postal Service argues, West is unable to establish a prima facie case of discrimination with respect to this claim. The Postal Service's position has merit.

---

[2] Among West's many grievances during this time period are that she was forced to work weekends, prohibited from attending a bone marrow drive, required to take a professional development course, passed over for promotion in favor of a non-disabled male employee, denied requested vacation leave, and referred to in a pejorative manner.

5

It is well settled in this circuit and judicial district that absent some consequential harm or injury, a delay does not affect the terms, conditions or privileges of employment and does not constitute an adverse employment action. *See, e.g.*, *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003); *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 224-25 (D.D.C. 2005); *Mack v. Strauss*, 134 F. Supp. 2d 103, 114 (D.D.C. 2001), *aff'd,* No. 00-1713, 2001 WL 1286263, (D.C. Cir. Sept. 28, 2001). West admits that all of the hours incorrectly charged to her as leave without pay were subsequently correctly recorded as sick leave. Because West does not show that she suffered any consequential harm from the delay in accurately designating her leave hours, she fails to make out a prima facie case of discrimination based on the events surrounding her sick leave request. These events do not constitute an adverse employment action. Consequently, West's claim of illegal discrimination premised on these events fail.

### 3. *Events That Occurred after May 31, 2005*

West argues that the removal of her nameplate from her door and the dissemination of false information concerning the reason for her absence from her office, which took place after May 31, 2005, amounted to illegal discrimination. This claim fails because West did not suffer an adverse employment action.

It is undisputed that West's last day of work at the Postal Service was May 31, 2005. Thus, the removal of her nameplate and the alleged dissemination of false information about her occurred when she was not working at the Postal Service. The proposition that such conduct could constitute an adverse employment action is illogical and is not supported by any authority that West's brings to this court's attention or of which this court is otherwise aware. Consequently, West's claim regarding the removal

6

of her nameplate from her door and the alleged dissemination of false information concerning the reason for her absence from her office must be dismissed.[3]

### *4. Proposed Transfer of June 4, 2005*

West argues that the transfer of her job and the responsibilities attendant to it constituted illegal discrimination, was retaliatory, and amounted to an illegal constructive discharge. West's position cannot withstand scrutiny.

West's argument that the proposed transfer of her job that was to take effect on June 4, 2005, constituted illegal discrimination and was retaliatory fails at the outset because the proposed transfer was not an adverse employment action. The D.C. Circuit has held that an employee faced with a threatened employment action does not suffer a cognizable injury from an action that does not occur. *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) ("threats . . . do not rise to the level of an adverse employment action because they result in no materially adverse consequences or objectively tangible harm."); *Lutkewitte v. Gonzalez*, 436 F.3d 248, 271 (D.C. Cir. 2006) (Brown, J., concurring) ("Threats of future adverse actions (whether explicit or implicit) may culminate in a tangible employment action if carried out, but they do not themselves meet the standard."). Likewise, EEO regulations mandate dismissal of complaints based only on a proposed or planned employment action. 29 C.F.R. § 1614.107(a)(5) ("the agency shall dismiss an entire complaint . . . [t]hat . . . alleges that a proposal to take a personnel action, or other preliminary step to taking a personnel action, is discriminatory").

---

[3] West also fails to establish a connection between her last documented EEO complaint which took place on June 30, 1998, and the Postal Service's alleged retaliatory actions of May and June 2005.

West's argument that the proposed transfer created a hostile work environment, eventually resulting in her constructive discharge, fares no better. While it is difficult to understand the logic of West's arguments in this regard, it suffices to point out that they fail because they lack evidence to support them. The only allegations of a hostile working environment that occurred within 45 days of West's contact with an EEO counselor occurred on June 4, 2005. However, as discussed *supra*, West's last day on the job was May 31, 2005. Thus, West can not logically claim that she endured a hostile work environment when she was not present. Moreover, West's constructive discharge claim fails because she failed to exhaust her administrative remedies. Although West contacted an EEO counselor on June 27, 2005, she did not allege that she was constructively discharged.

 B. **West's Rehabilitation Act Claims**

Individuals with disabilities who are otherwise qualified to work may not be discriminated against on the basis of their disability. The Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). Employers are required to "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability." 29 C.F.R. § 1630.9(a).

The crux of West's Rehabilitation Act claim is that the Postal Service discriminated against her on the basis of her disability, post traumatic stress disorder, by "withdrawing reasonable accommodations given her between 2001 and 2005 by transferring [her] and changing her work schedule." A.C. ¶ 71. This claims fails because West again ignores the significance of her decision to stop coming to work before the effective date of her transfer on June 4, 2005. West concedes that until she stopped coming to work, she had been provided the accommodations that she needed. Because West stopped coming to work she is unable to show either that she was otherwise qualified to perform the duties of the job or that the Postal Service was unwilling to provide her reasonable accommodation, if needed, to perform the duties of the job.

**C. West's Breach of Contract Claim**

West claims that the Postal Service breached a settlement agreement that she alleges resolved a prior worker's compensation claim. The Postal Service disputes the existence of such an agreement and argues, in the alternative, that even if such an agreement were to exist, this court is without jurisdiction to address it because West seeks damages of $10,000 or more for its breach. Such a claim, the Postal Service argues, is within the exclusive jurisdiction of the Court of Federal Claims. The Postal Service's position is well taken for the reasons set forth in its papers.

The "Tucker Act" provides that:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive

>department, or upon any express or implied contract with the United
>States, or for liquidated or unliquidated damages in cases not sounding in
>tort.

28 U.S.C. § 1491(a)(1).

A primary purpose of the Tucker Act is to ensure that most monetary claims against the government are adjudicated by one central judicial body – the Court of Federal Claims. *Kidwell v. Dep't of the Army*, 56 F.3d 279, 284 (D.C. Cir. 1995). The D.C. Circuit follows a bright-line rule in deciding whether cases involving monetary claims in excess of $10,000 belong in the Court of Federal Claims or in the district court. *Bliss v. England*, 208 F. Supp. 2d 2, 7 (D.D.C. 2002) (citing *Kidwell*, 56 F.3d at 283, 285). While the Court of Federal Claims and the district court have concurrent jurisdiction over claims for less than $10,000, the Court of Federal Claims has exclusive jurisdiction over contract claims seeking a recovery over $10,000. 28 U.S.C. § 1346(a)(2)*; Brown v. U.S.,* 389 F.3d 1296, 1297 (D.C. Cir. 2004). To determine which court has jurisdiction, the court must examine both the type of relief sought by West and, if the relief she seeks is monetary, the amount of such relief.

West first contends that the primary relief she seeks on her breach of contract claim – specific performance – means that her claim belongs in district court. This argument is unavailing, however, because West is barred from seeking specific relief from the Postal Service for breach of contract. *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986) ("The sole remedy for an alleged breach of contract by the federal government is a claim for money damages, either in the United States Claims Court under

the Tucker Act . . . or, if damages of no more than $10,000 are sought, in district court under the Little Tucker Act.").[4]

With respect to the monetary relief sought by West, the Postal Service points out that "[i]t appears that Ms. West is seeking more than $10,000 in compensatory damages," Def.'s Mot. 14, and West appears to concede as much in her opposition. Pl.'s Opp'n 12 ("the damages sought in all six Counts come to more than $10,000"). West argues, however, that the true question presented is whether her "lawsuit could be read as asking for less than $10,000." *Id*. Assuming that such is so, it is evident that West seeks money damages in excess of $10,000. West seeks monetary relief in the form of, *inter alia,* back pay, compensatory damages, attorney's fees and costs, and prejudgment and post-judgment interest. Based on the date of the alleged breach of contract (June 4, 2005), and the date West filed her amended complaint (December 23, 2006), West's complaint seeks back pay for a period of at least 18 months. Given West's 2005 annual salary of $58,828, A.C. ¶ 16, the complaint clearly seeks back pay alone exceeding $10,000. Consequently, the Court of Federal Claims has exclusive jurisdiction over West's breach of contract claim.

---

[4] Although West also seeks tort damages, the Court of Federal Claims still has exclusive jurisdiction. *Rochon v. Gonzales*, 438 F.3d 1211, 1215 (D.C. Cir. 2006) ("[W]here the primary thrust of [a] complaint is breach of contract, even if a [claim sounding in tort] would lie, the Claims Court would retain jurisdiction over the suit.") (internal quotation marks and citations omitted). As the court has dismissed West's Title VII and Rehabilitation Act claims, any surviving claim for relief must necessarily stem from West's breach of contract cause of action.

### III.  CONCLUSION

For the foregoing reasons, the court concludes that the Postal Service's motion for summary judgment must be granted.[5]

Henry H. Kennedy, Jr.<br>
United States District Judge

Dated: March 3, 2008

---

[5] The court also agrees with the Postal Service that many of West's Title VII and Rehabilitation Act claims are barred by the doctrine of *res judicata*.